## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.** | § | |
| | § | |
| **v.** | § | |
| | § | **C.A. NO. 1:18-CV-00178** |
| **SPACE SHIPPING, LTD.; GEDEN** | § | |
| **HOLDINGS LTD.; ADVANTAGE** | § | **ADMIRALTY** |
| **ARROW SHIPPING, LLC; GENEL** | § | |
| **DENIZCILIK NAKLIYATI A.S.** | § | |
| **A/K/A GEDEN LINES;** | § | |
| **ADVANTAGE TANKERS, LLC;** | § | |
| **ADVANTAGE HOLDINGS, LLC;** | § | |
| **FORWARD HOLDINGS, LLC;** | § | |
| **MEHMET EMIN KARAMEHMET;** | § | |
| **GULSUN NAZLI KARAMEHMET-** | | |
| **WILLIAMS; and TUGRUL** | | |
| **TOKGÖZ** | | |

## ADVANTAGE DEFENDANTS'
## MOTION TO VACATE ATTACHMENT OR,
## ALTERNATIVELY, FOR REDUCTION IN SECURITY

Plaintiff Psara Energy, Ltd. ("Psara") has filed an action against Defendants Advantage Arrow Shipping, LLC, Advantage Tankers, LLC, Advantage Holdings, LLC, and Forward Holdings, LLC (collectively, the "Advantage Defendants"), Geden Holdings LTD., Genel Denizcilik Nakliyati A.S. a/k/a Geden Lines, and Space Shipping, LLC ("Space Shipping") (collectively, the "Geden Group") and the individuals Mehmet Emin Karamehmet, Gulsun Nazli Karamehmet-Williams, and Tugrul Tokgöz. In this action, Psara has sought and obtained attachment of the motor tanker ADVANTAGE ARROW (the "Vessel"), a vessel owned by Advantage Arrow Shipping, as security for a debt allegedly owed not by any of the Advantage

Defendants but by one or more members of the Geden Group.

The Advantage Defendants, making their appearance specially and not generally and pursuant to Federal Rule of Civil Procedure Supplemental Rule for Admiralty or Maritime Claims E(8), and expressly reserving all defenses, particularly as to jurisdiction, subject matter jurisdiction, and venue, make this Motion to Vacate the attachment[1] Psara has obtained in this action against the Advantage Defendants. If this Honorable Court is not inclined to vacate the attachment at this time, the Advantage Defendants move in the alternative for an order reducing the amount of security necessary to obtain the release of the motor tanker ADVANTAGE ARROW (the "Vessel").

The Advantage Defendants' immediate priority is obtaining a vacatur of the attachment of the Vessel so that it may continue its voyage, but the Advantage Defendants reserve the right to seek damages from Psara for the wrongful attachment of the Vessel.

## **INTRODUCTION**

Psara has obtained an attachment of the Vessel based on the allegation that the Advantage Defendants are liable for the debts of the Geden Group (or, perhaps, one or more single-vessel-owning companies within the ownership of the Geden

---

[1] Psara has also wrongfully attached the motor tanker ADVANTAGE START (a vessel owned by a separate but related Advantage entity who is not a defendant in this action) in the Eastern District of Louisiana. The attachment of the ADVANTAGE START will be the subject of a separate request for relief in that court.

PD.23611915.1

Group). However, the Advantage Defendants have litigated these claims with Psara and others before, and prevailed.

In 2015, Psara, Tank Punk, Inc., and Eclipse Liquidity, Inc. made substantively identical claims in the Southern District of Texas in cause numbers 4:15-cv-01645, 4:15-cv-01673, and 4:15-cv-01675 (which were ultimately consolidated into the first-filed action).[2] Although Psara, Tank Punk, and Eclipse Liquidity (all represented by the same counsel representing Psara here) clothed their request for relief in different legal arguments in the Southern District of Texas actions (alter ego and veil-piercing causes of action, as opposed to the successor liability and fraudulent transfer causes of action here), the factual allegations upon which those clothes hang are the same.

What Psara has failed to disclose in its pleadings in the instant action is that its factual allegations regarding the transfer of ownership of various vessels to the Advantage Defendants have previously been examined in detail by Magistrate Francis Stacy in the Southern District of Texas, who found there was nothing improper in the transactions that would warrant any relief. *See* Memorandum and Recommendation Granting Defendants' Amended Motion to Vacate Attachments and Dismiss (and accompanying Order Nunc Pro Tunc (Doc. 76) amending same to

---

[2] Psara itself has been startlingly prolific in asserting harassing claims against various Advantage entities, having now filed no fewer than six such suits since 2013: C.A No. 18-411 (Eastern District of Louisiana); No. 18-178 (Eastern District of Texas); No. 16-1305 (Eastern District of Louisiana); No. 16-4840 (Eastern District of Pennsylvania); 15-1673 (Southern District of Texas); and No. 15-355 (Eastern District of Texas).

reflect that it applies to the action filed by Psara), Doc. 64 in No. 4:15-cv-01645 in the United States District Court for the Southern District of Texas, Houston Division (attached as Exhibit 1).

Psara's own papers make clear that the Advantage Defendants and the Geden Group are entirely separate entities under separate ownership. However, Psara alleges (as it has before in multiple different actions in various jurisdictions) a hodge-podge of facts it contends justify holding the Advantage Defendants liable for the alleged debts of one or more entities within the Geden Group, largely on the basis that the Advantage Defendants purchased vessels from the Geden Group. However, if the factual allegations made by Psara are compared to the allegations that must be made and the facts that must be negated in order to support Psara's attachment, it is clear that Psara has not alleged a colorable claim.

## ARGUMENT

As a threshold matter, it should be noted that Psara has presented legal arguments regarding the facts alleged, but has not pleaded what substantive law applies to those facts. Psara's own papers demonstrate that the parties are corporate entities organized under the laws of Turkey, Malta, and the Marshall Islands, and individuals who are citizens or residents of the United Kingdom, the Swiss Confederation, and Turkey, and that the disputes touch on vessels registered at different times under the flags of Malta and the Marshall Islands. Psara does not

- 4 -

allege that any of the allegedly wrongful conduct occurred in the United States, or that the United States has any connection to the disputes or the parties, aside from the fortuity that a vessel owned by one of the parties happened to make a port call within the Eastern District of Texas at the instance of a non-party time charterer. If this Motion to Vacate is not granted, the Advantage Defendants therefore reserve the right to allege that the substantive law of some other jurisdiction applies to the dispute.

In particular, it should be noted that the underlying claim (in respect of the CV STEALTH) arises under a bareboat charter governed by English law and subject to London arbitration. Psara has not alleged in those proceedings that the Advantage Defendants have any liability under English law for the debts of any of the Geden Group entities, or that the transfers of vessels to the Advantage Defendants were in any way fraudulent. But, for purposes of the instant motion, because Psara's Complaint discusses various touchstones of U.S. law causes of action, the Advantage Defendants presume Psara relies on U.S. substantive law, and will address the Complaint's deficiencies vis-à-vis U.S. substantive law.

## 1.The Attachment Should be vacated

### *Psara has the Burden to Show the Attachment Should not be Vacated*

Psara has used Rule B of the Supplemental Admiralty Rules to attach property belonging to the Advantage Defendants in this District, as well as the Eastern District

of Louisiana. Pursuant to Federal Rule of Civil Procedure E(4)(f), "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f), and "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Naftomar Shipping and Trading Co. v. KMA Intern. S.A.*, 2011 WL 888951, *2 (S.D. Tex., March 10, 2011). In other words, Psara bears the burden of showing that the requirements of Rule B and E are met. Here, Psara cannot show it has made a *prima facie* case to maintain the attachment.

In order to show that the attachment of the Advantage Defendants' property was proper, Psara must show that: (1) it has a valid *prima facie* admiralty claim against the Advantage Defendants; (2) the Advantage Defendants cannot be found within this district; (3) the Advantage Defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2nd Cir. 2006) (abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.,* 585 F.3d 58 (2nd Cir. 2009)). Only element (1) is at issue in this Motion to Vacate.

_Pleading Standard_

The proper standard for determining whether a plaintiff has demonstrated a valid _prima facie_ admiralty claim for purposes of a motion to vacate under Rule E is unclear. _See, e.g._, _Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp., N.V._, 572 F.3d 96, 103 n. 2 (2d Cir. 2009). "There is some debate as to whether the _prima facie_ standard is purely a pleading standard, or whether it also incorporates an evidentiary requirement that there be 'reasonable grounds' for believing that the conditions for attachment exist." _Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd._, 2009 WL 3076094, *3 (S.D.N.Y. Sept. 28, 2009). Some "courts have compared the showing required in a 'reasonable grounds' analysis to the more familiar standard of probable cause," _Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd._, 475 F.Supp.2d 275, 278–79 (S.D.N.Y. 2006) (internal citation omitted).

The case of _A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al._, 1999 WL 311941, *1 (E.D. La. May 17, 1999) is instructive in this regard. In that case, the court followed the reasonable grounds/probable cause standard, finding that "[a]t a post-arrest hearing, the plaintiff has the burden to establish probable cause for the arrest." (citation omitted). "The hearing is not intended to definitively resolve the dispute between the parties; rather, the Court must make a preliminary determination whether reasonable grounds exist for the arrest." _Id._ Thus, courts in Rule E(4)(f)

PD.23611915.1

hearings do not make binding determinations of fact, but do determine if it is more likely than not that alleged facts are true. *Wajilam Exports*, 475 F.Supp. 2d at 280 (citation omitted).

## *Psara Has Not Pleaded a Prima Facie Claim*

Not only do the facts and evidence not support Psara's entitlement to an attachment, Psara has not even pleaded sufficient allegations that, even if true, would entitle it to maintain the attachment of the Advantage Defendants' property.

The factual allegations pleaded in support of Psara's claims are in essence identical to the factual allegations examined by Magistrate Stacy in the prior Texas action. *Compare* Exhibit 1 at 3-4 to Psara's Complaint in the instant action, Doc. 1 at ¶44. In that prior Texas action, the parties exchanged thousands of pages of discovery and took the depositions of multiple witnesses, including Plaintiffs' corporate representative Despoina Bacha (who also executed the Verification attached to Psara's Complaint in the instant action), and Gulsan Nazli Karamehmet Williams ("Williams") and Tugrul Tokgoz ("Tokgoz") (both of whom are individual defendants in the instant action). Based on a thorough examination of a full evidentiary record after extensive discovery and oral argument, Magistrate Stacy recommended that the attachments in that action be vacated and the causes of action dismissed. However, the parties resolved the claims for security before the District Judge could adopt Magistrate Stacy's findings as his own (but after Judge Werlein

issued an Order Nunc Pro Tunc clarifying that Magistrate Stacy's Memorandum and Recommendation also applied to Psara's cause of action).

The Advantage Defendants recognize that, because Magistrate Stacy's Memorandum and Recommendation was not a final judgment on the merits, it does not have a strictly *res judicata* or collateral estoppel effect against the claims asserted by Psara in the instant action and, in a subsequent action in the Eastern District of Pennsylvania, the district judge allowed Psara to pursue discovery on its successor liability and fraudulent transfer theories. However, the Advantage Defendants respectfully submit that Magistrate's Stacy thorough and thoughtful prior examination and weighing of the evidence persuasively demonstrates that there is nothing wrongful about the transactions that Psara now alleges should be unwound to the prejudice of the Advantage Defendants, who purchased the subject vessels in arms-length transactions in full conformity with the ordinary course of such transactions.

Further, the facts upon which Psara relies for its arguments that the Advantage Defendants are liable on a successor liability theory or that the vessel sales should be unwound on a fraudulent transfer theory would not, even if established, amount to evidence of wrongful conduct. The arrangements, relationships, and transactions described in Psara's Complaint are in fact commonplace in the maritime industry. *See, e.g., Swaidan Trading Co., LLC v. Dileton Maritime S.A.*, No. 18-994 (E.D. La.

April 16, 2018), 2018 WL 1791155 at *10.

*The Advantage Defendants Cannot Be Liable for the Debts of the Prior Owners of the Subject Vessels on a Successor Liability Theory*

Courts within the Fifth Circuit have previously applied the holding of *Golden State Bottling Co. v. Nat'l Labor Relations Board*, 414 U.S. 168 (1973) in order to determine the elements of a claim for successor liability in the maritime context:

> [T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

*Royal Ins. Co. v. Smatco Indus., Inc.*, 201 B.R. 755, 757 (E.D. La. 1996) (citing *Golden State Bottling Co. v. Nat'l Labor Relations Board*, 414 U.S. 168 (1973)).

It should be noted at the outset that the successor-liability test first requires that the predecessor corporation must have sold "all of its assets to another." As Magistrate Stacy found, the Geden Group Defendants *did not* sell all of their assets to the Advantage Defendants—instead, Magistrate Stacy credited documentary evidence and the testimony of Tokgoz that Geden Holdings sold 50-60 of its vessels over a period of five to six years, including eleven vessels to the Advantage Defendants in 2015. Exhibit 1 at 13; *see also* Transcript of Deposition of Tokgoz at 45 (attached as Exhibit 2). So, if Psara is arguing that Advantage Holdings has successor liability as the corporate successor to Geden Holdings, the threshold test

- 10 -

for successor liability cannot be met.

If Psara is instead arguing that the single-vessel-owning entity Advantage Arrow Shipping, LLC has successor liability as the corporate successor of Target Shipping, Ltd. (the single-vessel-owning entity that previously owned the ADVANTAGE ARROW), that argument also must fail because (even assuming without conceding that successor liability would attach) in order to establish liability for the debts of Space Shipping or even Geden Holdings, Psara would still have to pierce the corporate veils of all the various corporate entities on either side of the vessel sale.

That is, even if Psara is able to demonstrate a prima facie claim that Advantage Arrow Shipping, LLC has successor liability for the debts of its alleged predecessor Target Shipping, Ltd., there is no evidence or allegation that Target Shipping, Ltd. owed any debt to Psara. Psara would therefore have to pierce the corporate veils up through the various holding companies of the Geden Group and then pierce the corporate veils back down to Space Shipping, Ltd. in order to impose any obligation for the alleged debt against Space Shipping for which Psara seeks security.

Magistrate Stacy has already allowed discovery on those issues and determined that a "Rule B attachment cannot be sustained on the alleged alter ego veil piercing theory" on the exact same facts that are alleged here. *See* Exhibit 1 at 24.

In any event, Psara has not even pleaded that it is entitled to pierce the corporate veils of the various entities such that liability can reach back to the alleged debts of Space Shipping. This is not surprising because, in light of Magistrate Stacy's findings, alter ego and veil piercing are likely the last arguments Psara would wish to bring to the attention of this Court.

Because Psara has not pleaded sufficient facts to entitle it to maintain an attachment of the Advantage Defendants' property to secure the alleged debts of any Geden Group entity, the attachment must be vacated.

### *The Advantage Defendants Cannot Be Liable for the Debts of the Prior Owners of the Subject Vessels on a Fraudulent Transfer Theory*

Although courts sitting in admiralty have incorporated the analysis of corporate successor liability prescribed in *Golden State Bottling Co.* as detailed above, the Advantage Defendants have been unable to locate any case doing the same with respect to admiralty claims sounding in a fraudulent transfer theory. Presumably, then, Psara would have this Court apply Texas state law to its claim for fraudulent transfer (notwithstanding the fact that none of the parties or transactions have a single point of contact with the State of Texas).[3]

Under Texas law on fraudulent transfers, a transfer of property can be

---

[3] Presumably, also, Psara would have the District Court for the Eastern District of Louisiana apply Louisiana law on fraudulent transfers to the attachment of the ADVANTAGE START currently pending in that jurisdiction, notwithstanding the facts that Louisiana law may be different, and that the state of Louisiana is as remote from the parties and transactions as the state of Texas is. Texas has adopted the Uniform Fraudulent Transfer Act; in 2004 Louisiana repealed its adoption of the Uniform Fraudulent Transfer Act.

unwound if "the creditor's claim arose before or within a reasonable time after the transfer was made . . ." Tex. Bus. & Com. Code Ann. § 24.005. The vessel transfers Psara seeks to unwind occurred prior to June 2015. However, Psara seeks security for unpaid charter hire allegedly owed by Space Shipping for February and March 2018, and the allegedly deficient condition of the CV STEALTH upon her redelivery in March of 2018. The alleged debts Psara seeks to secure by unwinding the vessel sales, then, accrued almost three years after the transfers Psara seeks to unwind. The Advantage Defendants respectfully submit that a period of almost three years between the vessel transfers and the accrual of the debt the Geden Group allegedly sought to avoid cannot qualify as "a reasonable time," particularly in circumstances where the incurrence of the alleged debt post-dates the transfer rather than vice-versa.

Further, in order to qualify as a fraudulent transfer, the debtor must have made the transfer "(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer . . ." Tex. Bus. & Com. Code Ann. § 24.005. But, as Psara and its counsel well know, Magistrate Stacy (again, after allowing voluminous and relatively lengthy discovery) determined "the evidence in the record shows that the sale of the assets to the Advantage Defendants was upon terms which were objectively reasonable to both the Geden Group Defendants and the Advantage Defendants at

the time, with the value of the 11 tankers that were being sold set by third party brokers." Exhibit 1, at 13.

Because the vessel transfers were arms' length transactions for demonstrably reasonable value, the sworn testimony of Despoina Bacha (who, not coincidentally, is the person who executed the verification attesting to the veracity of the facts in Psara's Complaint in the instant action) demonstrates that Psara <u>could not have been disadvantaged by the transfers</u>:

> Q:   So am I to understand, ma'am, that even though the—if the sale of these vessels, if Geden received the value of its equity in these vessels, plaintiffs could not have been disadvantaged by that sale. Is that what you're saying?
>
> A:   Yes.

Deposition of Despoina Bacha at 81, attached as Exhibit 3. Based on the prior deposition testimony of Psara's own representative, Psara could not have been injured by these allegedly fraudulent transfers.

*<u>Equitable Vacatur is Appropriate and the Advantage Defendants are Entitled to Attorneys' Fees for Psara's Wrongful Attachment and Failure to Satisfy Its Duty of Candor to the Court</u>*

Vacatur of the attachment of the Vessel is also appropriate because Psara appears to have failed to observe the special duty to disclose to the Court all of the relevant facts known to it when it applied for an *ex parte* attachment, and to ensure that the facts verified in the Complaint are true. *ST Shipping and Transport, Inc. v.*

*Golden Fleece Maritime, Inc.*, No. 07 Civ. 11147(SAS), 2008 WL 4178189, at *7 (S.D.N.Y. Sept. 9, 2008) (observing that attorneys' "obligation" to "maintain a duty of honesty in all proceedings . . . is at its apex when the court must rely on the verified submissions of counsel before issuing an order ex parte" and that "[t]he conformance of the extraordinary maritime attachment remedy with the strictures of due process 'is premised on the assurance that plaintiffs and their counsel will act with care and candor'") (*quoting Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F.Supp.2d 197, at 203 (S.D.N.Y. 2007)). "In ex parte proceedings such as Rule B attachments, parties have a heightened obligation to bring material facts to the attention of the Court, even, and indeed, particularly when they are adverse." *Transfield ER Cape Ltd. v. STX Pan Ocean Co. Ltd.*, No. 09 Civ. 1250(JGK), 2009 WL 691273, at *4 (S.D.N.Y. Mar. 17, 2009). Unless Psara was more forthcoming with the Court in its oral representation during an ex parte hearing than it was in its pleadings, this heightened duty of candor was not met here.

As detailed above, essentially identical arguments have been made against the Advantage Defendants by Psara and its counsel in serial actions in multiple jurisdictions over the past several years. Similar arguments and identical facts have been substantively addressed in the Southern District of Texas, and found to be unsupported by the evidence obtained through substantial discovery. The fact that Psara and its counsel apparently failed to disclose the prior attachments and

Magistrate Stacy's rejection of the claims is evidence of the weakness of Psara's claims.

Psara's apparently cavalier attitude toward the duty of full disclosure has, as Psara no doubt knew it would, caused significant damages to the Advantage Defendants. "[A]n erroneous attachment of [property] is extremely burdensome on the compan[y] whose [property is] attached." *REA Navigation, Inc. v. World Wide Shipping Ltd.,* 2009 WL 3334794, *3 (S.D.N.Y., Oct.14, 2009). In this case, the Advantage Defendants have incurred tens of thousands of dollars in attorneys' fees, have had to place the attached vessel offhire resulting in a loss of revenue, and are at risk of losing a valuable long-term time charter entirely if the Vessel is not quickly released and allowed to proceed with her voyage. All of these costs have been incurred so that the Advantage Defendants can defend a case that should never have been brought, and an attachment that likely never would have been granted had Psara satisfied its duty of candor by advising the Court of all the relevant facts.

Psara's pattern of harassing the Advantage Defendants through serial, meritless actions throughout the United States warrants equitable vacatur of the attachment. The Advantage Defendants reserve the right to seek monetary damages for Psara's wrongful attachment.

## 2. Alternatively, the Claimed Security Should be Reduced

*Psara has Grossly Overstated the Security to Which it is Allegedly Entitled*

Psara alleges it is entitled to security in the aggregate amount of $19,860,063.80, calculated as follows: (1) $18,000,000 for the "repaired value" of the CV STEALTH (notably failing to give any credit for the actual value of the vessel as received by Psara upon redelivery); (2) $510,208.33 in unpaid charter hire; (3) $6,515.50 in awarded legal costs; (4) $943,340.00 in interest at 6% compounded quarterly for one year; and (5) $400,000 in recoverable legal fees and costs. Psara is either grossly mistaken in how its claimed damages will be calculated in the London arbitration, or is deliberately misleading the Court in a calculated effort to inflict maximum financial distress on the Advantage Defendants.

The bareboat charter party for the CV STEALTH between Psara and Defendant Space Shipping (from which all of Psara's claimed damages stem), provides for the application of English law. Under English law, in the event a charterer breaches its duty to redeliver a vessel in the condition specified in the charter party, the proper measure of damages is the diminution in value of the vessel by reason of the charterer's breach. M. Davis, Bareboat Charters §15.12 at 90 (Informa Law 2005), citing *Channel Island Ferries Ltd. v. Cenargo Navigation Ltd.* (The "Rozel"), [1994] 2 Lloyd's Rep. 161. Even so, the owner can only recover the full cost of effecting the repairs if it is reasonable in all the circumstances. Id.

In order to provide the court with evidence of the diminution in value of the CV STEALTH upon redelivery, the Advantage Defendants respectfully submit the

- 17 -

Declaration of Mr. Paul Willcox of C.W. Kellock & Co., an internationally recognized ship valuation company based in London. *See* Declaration of Paul Willcox dated April 24, 2018 ("Willcox Declaration"), attached as Exhibit 4. A copy of C.W. Kellock's Company Resume is appended as Exhibit "A" to the Willcox Declaration. As will be seen upon a review of the Company Resume, Mr. Willcox has qualified to provide expert testimony in the Southern District of Texas regarding ship values and practices regarding the sale and purchase of ships. Exhibit "B" to the Willcox Declaration is a valuation certificate for the value of the CV STEALTH in sound trading condition (i.e., fully repaired), which is assessed to be $9,500,000.00. The second valuation certificate, appended as Exhibit "C" to the Willcox Declaration, is for the demolition (i.e., scrap) value of the vessel, which is assessed to be $7,825,000.00. Applying the proper measure of potentially recoverable damages under English law, the proper measure of potential damages for Plaintiff's redelivery damage claim is the difference between the two figures, or $1,675,000.00.[4]

The quarterly compounded interest that is allegedly potentially recoverable should therefore also be adjusted accordingly.

Finally, Psara provides no support or evidence for its claimed entitlement to

---

[4] Psara provides no evidence, beyond its own conclusory say-so, in support of its allegation that the CV STEALTH in a fully repaired condition would be worth $18,000,000, and does not calculate any setoff value for the current value of the ship.

security for $400,000 in recoverable legal fees and costs. The Advantage Defendants respectfully submit that this figure is overstated, and that Psara should be required to provide something more than its own say-so in support of its entitlement to security for such legal fees.

## CONCLUSION

Plaintiffs have obtained ex parte relief and attached a vessel belonging to the Advantage Defendants. The attachment must be vacated, because Psara cannot demonstrate a prima facie claim that it is entitled to the attachment.

The Advantage Defendants pray that the attachment be vacated, and that they be awarded their attorneys' fees and costs. The Advantage Defendants pray for all other and further relief to which they may be justly entitled.

Respectfully submitted,

*s/ Marc G. Matthews*

Marc G. Matthews
Texas Bar #24055921
Federal ID No. 705809
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
marc.matthews@phelps.com

**ATTORNEY-IN-CHARGE
FOR DEFENDANTS ADVANTAGE
ARROW SHIPPING, LLC;
ADVANTAGE TANKERS, LLC;
ADVANTAGE HOLDINGS, LLC; AND
FORWARD HOLDINGS, LLC**

- 19 -

OF COUNSEL:
**Phelps Dunbar LLP**
Brian D. Wallace (LA Bar #17191; Fed. ID 205890)
wallaceb@phelps.com

## <u>CERTIFICATE OF SERVICE</u>

 I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned on this the 26th day of April, 2018 upon all counsel of record.


     *s/ Marc G. Matthews*
     Marc G. Matthews

PD.23611915.1