**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| **PSARA ENERGY, LTD.** : | |
| : | |
| **Plaintiff** : | |
| : | **No. 1:18-cv-00178** |
| **SPACE SHIPPING, LTD.; GEDEN HOLDINGS:** | |
| **LTD.; ADVANTAGE ARROW SHIPPING,** : | |
| **LLC; GENEL DENIZCILIK NAKLIYATI A.S.** : | |
| **A/K/A GEDEN LINES; ADVANTAGE** : | |
| **TANKERS, LLC; ADVANTAGE HOLDINGS,** : | **ADMIRALTY** |
| **LLC;  FORWARD HOLDINGS, LLC;** : | |
| **MEHMET EMIN KARAMEHMET;** : | |
| **GULSUN NAZLI  KARAMEHMET -** : | |
| **WILLIAMS; and TUĞRUL TOKGÖZ** : | |
| : | |
| **Defendants** : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO VACATE**
**ATTACHMENT OR, ALTERNATIVELY, FOR REDUCTION IN SECURITY**

Plaintiff PSARA ENERGY, LTD. submits the following Response in Opposition to the

Motion of Defendants ADVANTAGE ARROW SHIPPING, LLC; ADVANTAGE TANKERS,

LLC; ADVANTAGE HOLDINGS, LLC; and FORWARD HOLDINGS, LLC (collectively, the

"Advantage Defendants"), and respectfully requests that the Advantage Defendants' Motion be

denied, all for the reasons as follows:

## I.  INTRODUCTION

*Procedural Background*

Before the Court is the Advantage Defendants' Rule E(4)(f) motion under the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter

the "Supplemental Rules") to vacate this Court's April 20, 2018 Order Authorizing Issuance of

Process of Maritime Attachment and Garnishment (Doc. 4) of the M/T ADVANTAGE ARROW

(the "Vessel").  The history of Plaintiff's substantive underlying maritime claim and the identity of the parties involved are adequately and thoroughly pled in the Verified Complaint (Doc. 1), and Plaintiff will rely on those pleadings here as the backdrop to its Response in Opposition to the Advantage Defendants' Motion.

The procedural history of the claim before the Court is relatively straightforward. The ADVANTAGE ARROW was recently attached pursuant to Supplemental Rule B on April 20, 2018 (Doc. 5), and the Movants filed their Motion, styled "Advantage Defendants' Motion to Vacate Attachment or, Alternatively, for Reduction in Security" on April 26, 2018. (Doc. 7). Accordingly, Plaintiff files this Response in Opposition, requesting the Court to maintain the attachment.

## II.  ARGUMENT

### A.  *Standard of Proof*

A motion to vacate an attachment under Supplemental Rule E(4)(f) will fail where the plaintiff is able to make the requisite showing why the attachment should not be vacated. This required showing is comprehensively summarized in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).

> [I]n addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. [W]e believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

2

*Id.* at 445; s*ee also*, *Vinmar Int'l, Ltd. v. M/T Clipper Makishio*, No. H-09-3829, 2009 U.S. Dist. LEXIS 127956, at *2 (S.D. Tex. Dec. 9, 2009) (holding, in a case under Rule B and Rule C, that while the plaintiff bears the burden of showing why the order should not be vacated, "the procedure is not intended to resolve definitely the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant. Plaintiff… is required to make a *prima facie* showing that it is entitled to the damages sought and secured by the arrest and attachment.") (emphasis added) (internal citations omitted).

B. *Psara Established it has a Valid Prima Facie Admiralty Claim Against the Defendants*

The Advantage Defendants contend that under the four *Aqua Stoli* criteria, "[o]nly element (1) is at issue in this Motion to Vacate." (Doc. 7 at 6). Advantage Defendants' argument that Plaintiff has not stated a valid *prima facie* admiralty claim rests on a bit of "old news."  Advantage Defendants rely on the July 6, 2016 Memorandum and Recommendation by Magistrate Judge Stacy in the civil action in the Southern District of Texas. *See Tank Punk, Inc. v. Spike Shipping, Ltd., et al.*, No. 4:15-cv-01645, *consol.*, 15-cv-1673 *and* 15-cv-1675 (Doc. 64) (S.D. Tex. July 6, 2016). The Advantage Defendants' reliance on Magistrate Stacy's Memorandum and Recommendation is misplaced for a number of reasons.

First, the civil actions in that consolidated case were dismissed with prejudice by agreement of all of the parties, in an order entered by the court in that consolidated case.  A copy of the order is hereto attached as **EXHIBIT 1.**

Second, before the dismissal of the consolidated action by stipulation of the parties, the Advantage Defendants tried to raise this identical collateral estoppel argument at another (E)(4)(f) hearing before District Court Judge Wendy Beetlestone in the United States District Court for the

3

Eastern District of Pennsylvania in Civil Action 16-cv-4840 (WB). Judge Beetlestone did not

accept the Defendants' collateral estoppel argument and disposed of it as follows:

> Well, let me tell you my thinking on this is that with respect to the collateral
> estoppel argument, there is no District Court decision. There's no final judgment
> on the merits. There's *de novo* review of the R&R. Looking at the R&R, quite apart
> from that fundamental issue, it appears to apply only to tank punk and there's an
> issue in my mind as to whether the substantive law would be different in this case
> given that that is decided under Fifth Circuit law. And there may be some Third
> Circuit law here. And certainly looking at the law in the Third Circuit, it's quite
> clear that an R&R is only a recommendation. I believe, in fact, that a Magistrate
> Judge has no authority to issue an opinion. It is actually beyond the scope of their
> authority. So, clearly, there's no collateral estoppel, at least at this point. There -- it
> may be that once the District Court has ruled that that issue will once again be
> relevant.

*Psara Energy, Ltd. v. Space Shipping, Ltd.*, No. 16-cv-04840-WB (Doc. 46) (E.D. Pa. Sept. 16,

2016), extract from Transcript of Rule E(4)(f) Hearing, p. 73, attached as **EXHIBIT 2**.

Third, underlying the dismissal with prejudice noted in EXHIBIT 1, there was a settlement

agreement between the parties dated December 8, 2016, whereby the parties settled all of

Plaintiff's underlying claims including all charter hires that were due and owing to Plaintiff at that

time. A duplicate original of the signed settlement agreement is in Plaintiff's hands and will be

produced at the hearing of this matter for the Court to review, but will not be filed via CM/ECF as

it is a confidential document.

Fourth, the Rule B attachment in the Eastern District of Pennsylvania resulted in the

Court's denial of the Advantage Defendants' motion to vacate the attachment. Shortly thereafter,

the Advantage Defendants posted substitute security and ultimately reached a settlement with the

plaintiff in that case. The United States District Court for the Eastern District of Pennsylvania's

Order dismissing the suit without prejudice and releasing the substitute security is hereto attached

as **EXHIBIT 3**.

Under Fifth Circuit law, the recommendations of a magistrate judge do not result in a final judgment until the district court makes them a final judgment.  Until the district court adopts them in a final judgment, a magistrate's recommendations do not have a collateral estoppel effect. *Stripling v. Jordan Prod. Co*., 234 F.3d 863, 868 (5th Cir. 2000) ("[T]he magistrate judge's order did not qualify as a final judgment, such that it would provide a preclusive collateral estoppel effect.").

In *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 116 F. Supp. 3d 349 (S.D.N.Y 2015), the district court held that a plaintiff can file multiple Rule B attachment motions to enforce a judgment and not have its claims precluded based on a previous Rule B filing. "[I]t is well-settled that judgment creditors can file successive attachment motions before final judgment has been entered in the underlying suit." *Id.* at 355 (quoting *NML Capital, Ltd. v. Banco Cent. de la Republica Arg.*, 652 F.3d 172, 185 (2d Cir. 2011)). The *D'Amico* decision stands for the principle that a Rule B plaintiff can file successive attachment actions prior to disposition of its underlying claim on final judgment. *Id.* at 355-56. Moreover, the *D'Amico* court held that the use of "collateral estoppel must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Id.* at 357 (internal quotation omitted). Accordingly, absent a legal basis to assert collateral estoppel, the recommendations of Magistrate Stacy, which were never adopted in the consolidated suits that were dismissed, cannot have any relevance or application in this case, as a matter of law.

C. *Newly Discovered-Evidence*

Significantly, the additional time and intense discovery Plaintiff pursued in the Pennsylvania proceeding has uncovered further facts that cast an entirely new light on the questionable transmutation of the Geden Group into the Advantage Tankers Group.

**Perjured Deposition Testimony**

Following Plaintiff's suit in the United States District Court in the Eastern District of Pennsylvania, and pursuant to the ruling of the District Court in that case, Plaintiff pursued discovery into the background of the restructuring of Geden Holdings, Ltd. and its metamorphosis into Advantage Tankers.  The discovery included not only further discovery from parties to the suit, but also discovery from third parties.  What was produced in the said discovery is summed up in the declaration of Ms. Despoina Bacha which is hereto attached as **BACHA DECLARATION** and the exhibits thereto hereinafter referred to as **BACHA EXHIBITS**.

As is set out in BACHA DECLARATION, the transformation of Geden Holdings into Advantage Tankers involved not only the eleven (11) crude oil tanker vessels, one of which is the ADVANTAGE ARROW, but also the restructuring of the ownership of seven (7) additional product carrier tankers (referred to in BACHA DECLARATION as the 7 product tankers), and the involvement of a corporate entity named Future Holdings, Ltd. The role played by Future Holdings, Ltd. in the entire restructuring of the Geden-Group into the Advantage Tankers Group seems to have been a critical one, as it is referred to repeatedly in the correspondence of Geden Holdings with its bankers who worked the refinancing arrangements for the transition. *See* BACHA EXHIBIT O at Bates Nos. D05187, D05190, D05191.

When the depositions of Tokgoz, Karamehmet-Williams and Mat were taken in January 2016, Future Holdings, Ltd. was already in existence as an active Marshall Islands corporation

6

established since July 2013. *See* BACHA EXHIBITS D and E.  Not only was Future Holdings,

Ltd. in existence, but at least since June 2014 it was actively engaged in business, and in this regard

it had substantial sums of money transferred to or from one of its bank accounts in Turkey through

and American intermediary bank in New York as it is clearly shown in BACHA EXHIBIT K.

Future Holdings, Ltd. was controlled by Karamehmet-Williams and Tokgoz as its two

shareholders, and Tokgoz served as its President, Secretary and Director. BACHA EXHIBIT D.

The perjury of each deponent with reference to Future Holdings, Ltd. is recounted and

documented in detail at ¶¶ 30-32, 34-35 of the BACHA DECLARATION and BACHA

EXHIBITS attached thereto.  The deponents, two of whom are defendants in this case, feigned that

Future Holdings, Ltd. was an inactive corporation that was intended to go into business but never

got its start.  The deponents also falsely testified that Future Holdings, Ltd. did not have any assets

or funds.  However, the response to the subpoena served on the New York intermediary bank

(BACHA EXHIBIT K) told another story.  Future Holdings, Ltd. had at its disposal - and operated

- at least seven (7) product tankers, formerly of the Geden-Group. These seven (7) product tankers

were reflagged in the Marshall Islands and registered behind a façade of one of Geden's financing

banks. *See* BACHA DECLARATION, Table I at p.4; *see also* BACHA DECLARATION ¶¶ 14-

19; *see also* BACHA EXHIBITS C1-C4. Additionally, the subpoena yielded evidence in the form

of a letter signed by Tokgoz, which shows Future Holdings, Ltd. controlled the seven (7) product

tankers and had substantial assets.  *See* BACHA EXHIBIT F; *see also* BACHA DECLARATION

¶¶ 23-27.

The upshot of all this is that the individuals that control Advantage Tankers and its

subsidiary one-ship companies committed perjury in their depositions on the very issue of the

restructuring of Geden Holdings, Ltd. and its transformation into Advantage Tankers.  In doing

so, they deceived not only Plaintiff but the courts as well. Advantage Defendants now proffer as evidence to support their motion to vacate the attachment the very same evidence tainted by perjury. *See e.g.* Doc 7-2.  The Court should not give any credit to this tainted testimony or to any of the Defendants' arguments that Advantage Tankers' subsidiaries purchased the eleven (11) crude oil tankers in an arm's length transaction.

**Geden Holdings Ltd. Owns the 11 One-ship Companies of the Advantage Group**

Nowhere in their memorandum in support of their motion to vacate the attachment of the ADVANTAGE ARROW do the Advantage Defendants attempt to dispute the allegations of the Verified Complaint at ¶¶ 45-47,72-73 and specifically Exhibit 4 thereof, which on its face contradicts their representation that the controlling holding company of the eleven (11) tanker vessels is Advantage Tankers. *See* Verified Complaint Exhibit 3, Doc 1-1, p. 34.  Exhibit 4 of the Verified Complaint - the consent letter addressed to Shell Western Supply and Trading Ltd. - quite clearly states that the ownership of the eleven (11) one-ship companies of the Advantage Tankers Group remains with Geden Holdings, Ltd.  Shell's representative, Mr. Dave Chapman, gave sworn testimony on this issue and confirmed in his deposition that this was the intent and understanding of the parties.  *See* Verified Complaint Exhibit 5, Doc 1-1, pp. 51-52.  The long and short of it is that Geden Holdings, Ltd., in the person of Tokgoz, represented to their principal customer, Shell Western Supply and Trading, Ltd., that Geden Holdings, Ltd. continued to control the eleven (11) one-ship companies of the Advantage Group, notwithstanding the formal change of ownership representations made to the financing banks of the Advantage Tankers Group.  This inexplicable contradiction and utter failure of the Advantage Defendants to rebut it in their motion to vacate the attachment should be noted by the Court in making its decision.

Advantage Tankers and its subsidiaries are the "NEWCO" envisioned in the ownership restructuring plan that was provided by Geden Holdings' restructuring experts as a means of ring-fencing its assets beyond the reach of its creditors. *See* BACHA DECLARATION at ¶ 38. Faithfully applying this advice, Geden Holdings' management (acting through Future Holdings, Ltd.) decided to create such a "Newco" to take the unpaid creditors' heat away from Geden Holdings, Ltd.  *See* BACHA DECLARATION at ¶ 40 and associated BACHA EXHIBIT O.

D.  *Some Miscellaneous Legal Issues - Including Choice of Law*

Advantage Defendants argue that the applicable law in this Rule B proceeding might be English Law (Doc 7, p. 5), but then they also argue that Texas law is applicable on the issues of successor corporation and fraudulent transfers.  *See* Doc.7, pp. 12-14.  They are mistaken on both accounts.  In *Blue Whale Corp. v. Grand China Shipping Dev. Co*., 722 F.3d 488, 499 (2d Cir. 2013), a case involving similar issues as the case at hand, the Second Circuit Court of Appeals noted that the plaintiff in that action did not invoke the Southern District of New York's admiralty jurisdiction by serendipity. The presence of the property of the defendant in the district and the applicability of federal maritime law were the strongest choice of law factors that dictated the application of American maritime law, along with the need for security "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies."

State law may apply in admiralty in certain specific narrowly defined circumstances. "Although state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system it cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law or to disrupt the harmony it strives to bring to international and interstate relations." *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d

815, 818 (5th Cir. 1972).  In the case at hand, there is no gap to be filled with reference to state law.

The Fifth Circuit Court of Appeals has adopted into its admiralty jurisprudence the concept of successor corporation liability.  *In re Louisiana Crawfish Producers*, 772 F.3d 1026, 1030 (5th Cir. 2014).  In *Louisiana Crawfish Producers*, the Fifth Circuit brought into its admiralty jurisprudence the rule of *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n. 5 (1973), which holds:

> The general rule of corporate-successor liability is that a corporation that purchases another corporation is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

*Id.* (internal quotations omitted).

The same can be said about Advantage Defendants' arguments regarding the "fraudulent transfer" basis of Plaintiff's claim.  Plaintiff does not need to and does not rely on Tex. Bus. & Com. Code Ann. §24.005. (Doc.7, p.13) or any state law.  The controlling precedent is *Swift Co Packers v. Compania Colombiana Del Caribe* 339 U.S. 684 (1950), wherein the Supreme Court of the United States held that a court siting in admiralty has the power "to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim." *See also Flame S.A. v. Freight Bulk Pte. Ltd,* 807 F.3d 572, 582 (4th Cir. 2015).

Advantage Defendants have the audacity to argue to the Court that they cannot be liable for the debts of the prior owners of the subject vessel on a successor liability theory.  *See* Doc. 7, pp. 10-12.  They do so by trying to import in the discussion issues of corporate veil piercing, even though Plaintiff has not pled and does not rely on a corporate veil piercing theory.  Advantage Defendants' should bear in mind the admonition of the Fifth Circuit Court of Appeals in *Bridas*

*S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 416 (5th Cir. 2006), wherein the Court of Appeals noted "[i]n making an alter ego determination, a court is 'concerned with reality and not form, [and with] how the corporation operated.' *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 693 (5th Cir. 1985). Unlike the theory of agency, which interprets a contractual relationship, *Bridas I,* 345 F.3d at 358, alter ego examines the actual conduct of the parent vis-a-vis its subsidiary."

In responding, Plaintiff would refer to the conduct of Geden Holdings, Ltd. in this regard, whereby it expropriated its subsidiary one-ship-companies and transferred their assets to new one-ship-companies. Despite this ruse, Geden Holdings has nevertheless admitted to its customer Shell Western Supply and Trading Ltd. that it ultimately controls the assets. *See* Verified Complaint Exhibit 4, Doc. 1-1, pp. 35-40; and Exhibit 5 Doc. 1-1, pp. 41-47.  This undertaking was the implementation of a detailed plan to create "newcos" that would have only assets but no liabilities to non-lending creditors. *See* BACHA DECLARATION at ¶¶ 38-41.  There is plenty in all of this for the Court to find the domination, control and fraud elements that the Fifth Circuit Court of Appeals identifies as conditions for making a necessary alter ego determination if it so chooses. *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 416-418 (5th Cir. 2006).  However, the same result would follow whether the Court applies a successor liability theory or a fraudulent transfer theory, as Plaintiff suggests.

Geden Holdings, Ltd. gave Plaintiff its express undertaking in writing that it was the owner of a large number of vessels, and that in consideration of the Owners' undertaking not to arrest or attach these vessels as security, Geden Holdings, Ltd. guaranteed the obligations of its subsidiary SPACE.  *See* Verified Complaint Exhibit 2, Doc 1-1 at p. 30.  Geden Holdings, Ltd. also warranted to Plaintiff that it was the controlling shareholder of a large fleet of vessels. *See* Verified Complaint

Exhibit 8, Doc. 1-2 at p, 17.  Geden Holdings, Ltd. breached both its undertaking and its warranty.

It transferred the assets to successor corporations in order to ring-fence them from creditors. Geden

Holdings has repudiated its obligations as performance guarantor of SPACE. *See* BACHA

DECLARATION  ¶38. Accordingly, the successor corporation's assets, including the

ADVANTAGE ARROW, may be attached as security.

Last, but not least, the Advantage Defendants' suggestion that Plaintiff "could not have

been disadvantaged by the transfers" (Doc. 7, p 14) epitomizes the Geden-Group's dishonest ways.

It relies on an out of context quote from a deposition to put forward a half-truth.  For the Court's

information, the witness testified that Plaintiff would not have been disadvantage *if* Geden

Holdings, Ltd. had paid its outstanding obligations.  *See* extract from the deposition testimony of

Ms. Despoina Bacha hereto attached as **EXHIBIT 4.**

E.  *Equitable Vacatur*

In a last-ditch effort to gain some traction for the motion to vacate the attachment, the

Advantage Defendants rely on an equitable vacatur argument. *See* Doc. 7, pp. 14-16. However,

the legal hurdles they face are formidable. "[W]e have cautioned that equitable vacatur is

appropriate 'only in certain limited circumstances.'" *ProShipLine, Inc. v. Aspen Infrastructures,*

*Ltd.*, 585 F.3d 105, 113 (2nd Cir. Court 2009) (*citing Aqua Stoli Shipping, Ltd. v. Gardner Smith*

*Pty., Ltd* 460 F3d 434, 444).

> For example, equitable vacatur may be appropriate where the defendant can
> demonstrate   that "1) [it] is subject to suit in a convenient adjacent jurisdiction;
> 2) the plaintiff could obtain in personam jurisdiction over the defendant in the
> district where the plaintiff is located; or 3) the plaintiff has already obtained
> sufficient security for the potential judgment, by attachment or otherwise.

*Id.*; *see also, Malin Int'l Ship Repair & Drydock v. Oceanografia, S.A. De C.V.*, 2013 U.S. Dist.

LEXIS 3033, at *8 (S.D. Tex. 2013).

Defendants have not specifically cited any factual grounds as reasons that might support their demand for equitable vacatur in this case. They hypothesize that "unless Psara was more forthcoming with the Court in its oral representation during an *ex parte* hearing than it was in its pleadings, this heightened duty of candor was not met here." Casting groundless aspersions is not an effective substitute for either cogent reasoning or factual support. *Golden Fleece Maritime, Inc., No.* 07 Civ. 11147 (SAS), 2008 WL 4178189, at *7 (S.D.N.Y. 2008), on which the Advantage Defendants rely, involved a case in which a plaintiff attached property of the defendant in the same district on two separate occasions and did not disclose in the second application that the first civil action with attachment was pending before the same court and the same parties. This is not the case here. It is respectfully submitted that in the case at hand, Plaintiff did disclose in the Verified Complaint the pendency of another action at Doc.1, p. 11 at fn. 2, which reads: "Plaintiff is also filing a Rule B attachment against another vessel of Defendants in the Eastern District of Louisiana, in which it has sought the attachment of the M/T ADVANTAGE START. It appears from the Marshall Islands mortgage records of the said vessel that the equity of the Defendants in the said vessel is approximately $8,000,000.00 and therefore insufficient to secure Plaintiff's claim, considering the lender mortgagee's interest."

Advantage Defendants' arguments make much ado about previous proceedings in other jurisdictions in which Plaintiff had filed claims under Rule B in order to obtain security for unpaid charter hires. *See* Doc. 7, pp. 15-16. In most of these filings, Plaintiff was successful in compelling Advantage Tankers and their affiliates to pay the outstanding hires and/or to provide security out of which, eventually, outstanding hires were settled. There is nothing in the Supplemental Rules that requires a Rule B plaintiff to recount in its pleadings its litigation history experience in dealing with a recalcitrant bad debtor. Moreover, there is no statutory or other limit on how many times a

Rule B creditor may apply for the remedy available under Rule B.  Quite to the contrary, a plaintiff with a maritime claim may use the procedure of Rule B repeatedly if the value of the property attached in one district falls short of plaintiffs' claimed damages; the prior action does not bar commencement of a new action attaching property found in another district.  *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 125 (S.D.N.Y. 1979).  This is so because "any recovery by the plaintiffs therein is *quasi in rem* in nature and limited to the value of the attached goods or credits." *Id.*; *see also*, *Williamson v. Recovery L.P.*, 542 F.3d 43, 51 (2d Cir. 2008) ("Plaintiffs have not yet obtained sufficient security for a potential judgment.").

Turning briefly to the rhetoric the Advantage Defendants employ in their memorandum's parade of grievances (Doc. 7, p. 16) over previous Rule B attachments, Plaintiff would urge Advantage Defendants that an easy way to avoid having their vessels attached is to act in good faith and honor their obligations. If they choose to disregard such obligations as honoring arbitration awards and paying agreed charter hire, they should expect to have their property attached as all maritime actors do. Merchants engaging in maritime commerce "must reasonably expect to be sued where their property may be found." *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A.*, 773 F.2d 1528, 1536 (11th Cir. 1985).  The Defendants here are no exception.

F.    *Reduction of Security*

Plaintiff has already served its statement of claim in London arbitration against Space Shipping Ltd.  A copy of the statement of the claim in arbitration served on the solicitors of Space is hereto attached as **EXHIBIT 5**.   The claim served by Psara was drafted by Barrister Mr. Alexander Wright with Chambers at 4 Pump Court in London.  Mr. Wright, in the submission of the claim to the arbitration tribunal, goes into substantial detail as to the reasons why the claim for

the damage to the CV STEALTH is for U.S. $18,000,000.  The claim submission sums up the damages claimed as follows:

> The Vessel is in such bad condition that in Owners' view it would cost more to tow her and repair her than her (repaired) market value. Owners therefore claim as damages an amount equivalent to the (repaired) market value of the Vessel, which is USD 18 million.

EXHIBIT 5, pp. 5-6 at ¶ 20.

The repaired market value of the vessel is clearly reflected in the valuation report obtained on behalf of Plaintiff from international ship sale and purchase brokers Cass Technava in Piraeus, Greece. Technava's report together with the declaration of Mr. Lambros Bampilis verifying its genuineness are hereto attached as **EXHIBIT 6.**

Plaintiff, the registered owner of the CV STEALTH, has put forth a vessel valuation which strongly contradicts the vessel valuation offered by defendants.  For purposes of this Rule E(4)(f) hearing the most significant fact is that Plaintiff has put forth evidence that shows there are reasonable grounds for a maritime claim which has been submitted to the arbitration tribunal having jurisdiction over the merits of the dispute.  Plaintiff has also submitted a valuation that contradicts the lowball figures put forth by Defendants.  Plaintiff reserves the right to submit further valuation reports from vessel sale and purchase brokers at the hearing of this motion.

### III. CONCLUSION

For the foregoing reasons, and what might be added in oral argument at the hearing of this Motion, Plaintiff respectfully submits that it has provided good reasons that the attachment of the ADVANTAGE ARROW should be maintained and not be dismissed or vacated.

Dated: April 28, 2018
          Houston, Texas

Respectfully submitted,

GAITAS, KENNEDY & CHALOS, P.C.

By:    /s/George A. Gaitas
George A. Gaitas
State Bar No. 24058885
Federal Bar No. 705176
Sean D. Kennedy
State Bar No. 24102006
Federal Bar No. 1007545
Jonathan M. Chalos
State Bar No. 24097482
Federal Bar No. 3008683
6250 Westpark Dr.
Suite 222
Houston, Texas 77057
Telephone: 281-501-1800
Fax: 832-962-8178
E-mail:gaitas@gkclaw.com
kennedy@gkclaw.com
chalos@gkclaw.com

*Attorneys for Plaintiff*
Psara Energy, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2018, I electronically filed the foregoing Motion with the Clerk of the Court using the cm/ECF system, which will send notification of such filing to all attorneys of record at their email addresses on file with the Court.

/s/George A. Gaitas
George A. Gaitas