# EXHIBIT
# BACHA DECLARATION

| | | |
|---|---|---|
| PSARA ENERGY, LTD. | : | |
| | : | |
| Plaintiff | : | 1:18-cv-00178 |
| | : | |
| SPACE SHIPPING, LTD.; GEDEN HOLDINGS: | | |
| LTD.; ADVANTAGE ARROW SHIPPING, | : | |
| LLC; GENEL DENIZCILIK NAKLIYATI A.S. | : | |
| A/K/A GEDEN LINES; ADVANTAGE | : | |
| TANKERS, LLC; ADVANTAGE HOLDINGS, | : | ADMIRALTY |
| LLC; FORWARD HOLDINGS, LLC; | : | |
| MEHMET EMIN KARAMEHMET; | : | |
| GULSUN NAZLI KARAMEHMET - | : | |
| WILLIAMS; and TUĞRUL TOKGÖZ | : | |
| | : | |
| Defendants | : | |

I, Despoina Bacha, under 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1.     I am an individual of sound mind, and have never been convicted of a crime of moral turpitude. This declaration is submitted in support of the retention of the maritime attachment and garnishment of the property of the Defendants (the M/T ADVANTAGE ARROW) obtained by PSARA ENERGY LIMITED (hereinafter "Plaintiff") in the above styled proceedings, and against Defendants' motion to vacate this court's order dated April 20, 2018 authorizing the issuance of the process.

2.     I am a citizen of Greece, resident of Athens and a lawful representative of the Plaintiff. I am duly authorized on its behalf to make this declaration which is based on my personal knowledge, documents, and writings contained in the records of the Plaintiff company; on public records in Malta and other countries; on information provided to me by lawyers, and solicitors in other countries; and other information available to the public at large.

1

3    I am familiar with the business transactions out of which Plaintiff's claim arises. My declaration is also based on documents and information given to me by employees of the Plaintiff and respective attorneys.

4.    I am familiar with the contents of the Original Verified Complaint (Doc. 1, 1:18-cv-00178, hereinafter referred to as "Verified Complaint") filed in the above captioned action, which I have verified, and in making this Declaration in support thereof, I incorporate same by reference into this declaration.

5.    By way of a historical background of this case, in addition to the allegations of the Verified Complaint and the exhibits which were filed with it, I note the following facts:

6.    First, Geden Holdings, Ltd., and Genel Denizcilik Nakliyati A.S. (hereinafter referred to by its trading name "Geden Lines"), had operated for some time under the common trading name Geden Lines as an integrated owner and operator of seagoing vessels. A list of the vessels owned and managed by them in December 2012 is extracted from their web page for that time period and is hereto attached as **EXHIBIT A.**

7.    Second, in March or April 2010, Geden Holdings, Ltd. represented to Plaintiff that it was the sole shareholder of the corporate one-ship-companies that owned the vessels listed in EXHIBIT A. *See* Doc. 1-2, p. 17; *see also* Doc. 1-1, pp. 35-40. Geden Lines represented to be the manager company of the fleet owned by Geden Holdings, Ltd. I will collectively refer to Geden Holdings, Ltd., the one-ship companies it owned, and Geden Lines as "the Geden-Group."

8.    Third, approximately in early 2013, the Geden-Group experienced economic problems with the sustained shipping markets crisis that caused: a decline in the value of vessels; poor chartering market rates; and payment of higher daily charter hire rates for chartered-in third party ships that it was employing.

9.     Fourth, the Geden-Group tried debt work outs with financing and other creditors throughout 2013, but these proved to be ineffective. An earlier attempt in the first half of 2012 to infuse new capital through an initial public offering had also failed. Accordingly, the Geden-Group's owners sought alternative solutions.

10.    To cope with its economic distress issues, the Geden-Group turned to restructuring the ownership of its assets. It commissioned a professional firm of consultants to come up with a restructuring plan which is attached to the Verified Complaint as Exhibit 9, and is referred to in detail in ¶¶ 65-69 of the Verified Complaint. This restructuring blueprint, with some variations was followed as noted below.

11.    The Geden-Group owned and operated 2 fleets of liquid cargo vessels. Restructuring of ownership was implemented along the lines of these fleets. One fleet consisted of Crude Carriers – a mixture of 11 Aframax and Suezmax ships[1], and the other part consisted of Product / Chemical carriers[2].

12.    In the middle of 2013 (approximately from June 2013 through August 2013), the ownership of the 7 product tankers changed as part of its restructuring of the ownership of the one-ship corporate entities that were the registered owners of these ships. Their ownership passed on to new one-ship corporate owners as shown in table 1 below.

---

[1] The Crude Carrier fleet consisted of the following vessels: PROFIT now renamed ADVANTAGE SOLAR; BLUE now renamed ADVANTAGE SKY; BLANK now renamed ADVANTAGE START; TARGET now renamed ADVANTAGE ARROW; TRUE now renamed ADVANTAGE AVENUE; VALUE now renamed ADVANATGE AWARD; BRAVO now renamed ADVANTAGE ATOM; POWER now renamed ADVANTAGE ANTHEM; PINK now renamed ADVANTAGE SUMMER; REEF now renamed ADVANTAGE SPRING; ROYAL now renamed ADVANATGE SUN. For the sake of brevity these vessels will be collectively referred to as "the 11 tanker vessels".

[2] The chemical product carrier fleet consisted of the following vessels: ROCK, now renamed STONE I; ROCKET now renamed STEEL; CARGO now renamed STYLE; COTTON now renamed SKY; ACOR now renamed STAR I; CARRY now renamed SILENT; ROVA now renamed SINGLE. I will refer to these vessels collectively as "the 7 product tankers".

**TABLE I**

| VSL FORMER NAME | FORMER OWNER | VSL NEW NAME | NEW OWNER |
|---|---|---|---|
| ROCK | ROCK SHIPPING LTD | STONE I | STONE SHIPPING LLC |
| ROCKET | ROCKET SHIPPING LTD | STEEL | STEEL SHIPPING LLC |
| CARGO | CARGO SHIPPING LTD | STYLE | STYLE SHIPPING LLC |
| COTTON | COTTON SHIPPING LTD | SKY | SKY SHIPPING LLC |
| ACOR | ACOR SHIPPING LTD | STAR I | STAR TRANSPORTATION LLC |
| CARRY | CARRY SHIPPING LTD | SILENT | SILENT SHIPPING LLC |
| ROVA | ROVA SHIPPING LTD | SINGLE | SINGLE SHIPPING LLC |

13.   Attached to this declaration as **EXHIBIT B** is a list of the Geden-Group's fleet of owned vessels as it appeared in October 2013 on the website of the Geden-Group for that month. Comparing this list with the list of vessels as these appear in **EXHBIT A** of this declaration bears out the changes in the ownership of the 7 product tankers.

14.   In order to establish what underlies the transformation in corporate ownership, registration, and vessel name changes shown in Table I, I obtained information from the Maltese and Marshall Islands Ship Registries, and from my research I established the following:

A. The 7 product tankers were renamed and transferred from the Maltese Ship Register to the Marshall Islands Ship Register. The new corporate vessel owners are limited liability companies established in the Marshall Islands.

B. Notwithstanding the transfer to another flag register, there is a ship mortgage registered in the Malta ship mortgage register in favor of "DVB Bank SE of Platz Der Republik – 6 D60225 Frankfurt AM Main, Federal Republic of Germany, acting through its branch at Parklaan 2, Rotterdam, the Netherlands mortgagee for vessels." By contrast, there is no ship mortgage

registered in the Marshall Islands, where the 7 product tankers are flagged. This suggests to me that the said vessels have or had dual registration in Malta and in the Marshall Islands.

15.     I obtained records from the corporate register of the Marshall Islands which show that at least three of the vessel owner corporate entities to which the vessels are registered are subsidiaries of the DVB bank group as follows: The Marshall Islands limited liability company "HUDSON SHIPPING HOLDCO LLC" is the parent company and management company of SILENT SHIPPING, LLC; SINGLE SHIPPING, LLC and STAR TRANSPORTATION LLC, respectively the corporate registered owners of the product tankers SILENT, SINGLE and STAR.

16.     The Manager of HUDSON SHIPPING HOLDCO, LLC is shown in the LLC formation documents as "DVB Investment Management NV." The individual signatories for and on behalf of the manager are Alexandra Sponselee and John Romer, both of whom are employees of the DVB bank organization. John Romer is with DVB America, NV, of Mountainview California; and Alexandra Sponsellee, on the date of the signature of the formation of HUDSON SHIPPING HOLDCO, LLC, was employed as a Senior Vice President of DVB Bank America N.V.

17.     Similarly, the signatories of each of the one-ship LLC's owned by HUDSON SHIPPING HOLDCO are, or were, at the relevant time, employees of DVB Investment Management NV, in Curacao, Netherland Antilles.

18.     Copies of the incorporation documents that bear out the facts set out in the foregoing ¶¶ 16-17 are attached hereto as **EXHBITS C1; C2; C3; and C4.**

19.     The restructuring transactions noted in the foregoing ¶¶ 14-17, and summarized in Table I, were carried on by and through a unit of DVB Bank known at the time as "Strategic

Management and Restructuring Team" which operated from the New York branch of the bank at 609 Fifth Avenue, New York, New York, 10017.

20.    After the transfer of corporate ownership and name change of the 7 product tankers, their commercial employment and management remained in the hands of parties who are named Defendants in these proceedings, *i.e.* GULSUN NAZLI KARAMEHMET-WILLIAMS (hereinafter "KARAMEHMET-WILLIAMS") and TUGRUL TOKGOZ (hereinafter "TOKGOZ"), through a parallel corporate structure which mirrored the one-ship company structure set out in Table I under the umbrella of a Marshall Islands corporate entity by the name of Future Holdings, Ltd.

21.    FUTURE HOLDINGS, LTD. is a Marshall Islands Corporation incorporated on July 11, 2013. It has an authorized capital of 500 shares. 375 of these shares are held by KARAMEHMET-WILLIAMS and 125 of these shares are held by TOKGÖZ. TOKGÖZ is also the sole director, president and secretary of FUTURE HOLDINGS, LTD. A copy of the certificate of incorporation and certificate of incumbency bearing out these facts is hereto attached respectively as **EXHIBIT D** and **EXHIBIT E**.

22.    The 7 product tankers disponent owning companies, which have the commercial exploitation of these vessels, are controlled by FUTURE HOLDINGS, LTD. as noted in the February 29, 2016 letter of Future Holdings, Ltd. hereto attached as **EXHIBIT F**.

23.    The 7 corporate entities that exercise the actual commercial activity over the 7 product tankers as their respective corporate "disponent owners" are set out below in Table II.

TABLE II

| VESSEL | REGISTERED OWNER | DISPONENT OWNER |
|--------|------------------|-----------------|
| STEEL | STEEL SHIPPING LLC | MILAN MARITIME LTD |
| STONE | STONE SHIPPING LLC | BOSTON MARITIME LTD. |
| STYLE | STYLE SHIPPING LLC | PARIS MARITIME LTD. |

6

| STAR I | STAR TRANSPORTATION LLC | AMSTERDAM MARITIME LTD |
|---|---|---|
| SILENT | SILENT SHIPPING LLC | BARCELONA MARITIME LTD. |
| SINGLE | SINGLE SHIPPING LLC | ISTANBUL MARITIME LTD |
| SKY | SKY SHIPPING LLC | LONDON MARITIME LTD. |

24.     Copies of the Certificate of Incorporation and certificate of incumbency of Amsterdam Maritime, Ltd. is hereto attached as **EXHIBIT G.**  It is evident from the face of the Certificate of Incumbency that the sole director, president and secretary of Amsterdam Maritime, Ltd. is TOKGÖZ. It is also evident from the face of the Certificate of incumbency that the operating address of Amsterdam Maritime, Ltd. is Buyukdere Cad. Yapi Kredi Plaza Blok K. 12 34430 Istanbul, Turkey – which is the business address of GEDEN HOLDINGS, LTD. and GEDEN LINES.

25.     Copies of the Certificate of Incorporation and certificate of incumbency of Barcelona Maritime, Ltd. is hereto attached as **EXHIBIT H.**   It is evident from the face of the Certificate of Incumbency that the sole director, president and secretary of Amsterdam Maritime, Ltd. is TOKGÖZ.  It is also evident from the face of the Certificate of incumbency that the operating address of Barcelona Maritime, Ltd. is Buyukdere Cad. Yapi Kredi Plaza Blok K. 12 34430 Istanbul, Turkey – which is the business address of GEDEN HOLDINGS, LTD. and GEDEN LINES.

26.     Copies of the Certificate of Incorporation and certificate of incumbency of Boston Maritime, Ltd. is hereto attached as **EXHIBIT I.**   It is evident from the face of the Certificate of Incumbency that the sole director, president and secretary of Amsterdam Maritime, Ltd. is TOKGÖZ.  It is also evident from the face of the Certificate of incumbency that the operating

address of Boston Maritime, Ltd. is Buyukdere Cad. Yapi Kredi Plaza Blok K. 12 34430 Istanbul, Turkey – which is the business address of GEDEN HOLDINGS, LTD. and GEDEN LINES.

27. Under time charter parties that have been entered by the above vessels by their purported disponent owners with STI Chartering and Trading, Ltd. dated February 29, 2016, the time charter hires are paid to the bank account of Future Holdings. Ltd. with Finansbank, Istanbul, Turkey.

28. In the said charter parties entered by the owners of the 7 product tankers, there is a rider "change of ownership" clause which entitles the owners of the said vessels to sell them to Advantage Product Tankers, LLC of the Marshall Islands.

29. Advantage Product Tankers, LLC, according to the website of ADVANTAGE TANKERS, LLC "… has been set up in 2017 in order to strengthen Advantage Holdings LLC's presence in tanker market. Advantage Products operates in product / chemical tanker segment only and currently owns and operates 5 handysize tankers."[3]

30. In earlier proceedings in January 2016 (Civil Action No. 4:15-CV-1645), which were then pending in the United States District Court for the Southern District of Texas against several of the parties including ADVANTAGE ARROW SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A, GEDEN LINES; ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; and FORWARD HOLDINGS, LLC, the plaintiff, Eclipse Liquidity, took depositions of KARAMEHMET-WILLIAMS, TOKGÖZ, and Mehmet Mat (hereinafter referred to as "MAT"). MAT is a director of GEDEN HOLDINGS, LTD. and its chief financial officer. He is also the Chief Financial Officer of ADVANTAGE TANKERS, LLC. The

---

[3] http://www.advantageproducttankers.com/

facts that were probed in these depositions included the role played by Future Holdings, Ltd in the restructuring of GEDEN HOLDINGS, LTD.

31.     Defendant KARAMEHMET-WILLIAMS was deposed on January 14, 2016. She was asked if she knew what FUTURE HOLDINGS, LTD. was and she testified that it was a non-operative company; that on October 6th, 2014 FUTURE HOLDINGS, LTD. did not hold any assets; and that FUTURE HOLDINGS, LTD. did not have any property or any money at the time. *See* KARAMEMHMET–WILLIAMS Depo. Extracts 40:4-25; 1:155; 44:1-2, hereto attached as **EXHIBIT J**. In actual fact, bank transfer records produced by an intermediary bank in the United States during discovery in response to a subpoena in civil action 2:16-cv-04840 in the United States District Court for the Eastern District of Pennsylvania, which involved essentially the same parties, show substantial payments in and out of one of the bank accounts of FUTURE HOLDINGS, LTD. The total in and out transfers from this one of several bank accounts of FUTURE HOLDINGS, LTD. from June through October 2014 exceed the amount of $ 2,000,000.00. These bank transfers show that FUTURE HOLDINGS, LTD. dealt with substantial funds at all times and it was far from an inactive business entity, contrary to what KARAMEHMET-WILLIAMS testified to during her deposition. A copy of the spreadsheet reflecting the bank transfers to or from FUTURE HOLDINGS, LTD. through the said intermediary bank is being filed together with this declaration, but under seal, as **EXHIBIT K**.

32.     From the foregoing, it follows that KARAMEHMET-WILLIAMS did not truthfully testify in her deposition regarding FUTURE HOLDINGS, LTD., a corporate entity which she controls.

33.     In the same previous proceedings in which the deposition of Defendant KARAMEHMET-WILLIAMS was taken, there was also another deposition taken of MAT who

9

is the Chief Financial Officer of GEDEN HOLDINGS, LTD. and also of ADVANTAGE TANKERS, LLC. That deposition was taken on January 15, 2016. When MAT was specifically asked about FUTURE HOLDINGS, LTD., he falsely testified that in October 2014, FUTURE HOLDINGS, LTD. was a company without any assets and without any money. (MAT DEPOSITION 46:1-5). A copy of the relevant extract from MAT's deposition is hereto attached as **EXHIBIT L**. MAT's testimony is demonstrably false by reference to **EXHIBIT K** which shows that, far from being without any assets and without any money, Future Holdings, Ltd. had substantial funds and was actively engaged in business.

34. In the same proceedings in which the deposition of Defendant KARAMEHMET-WILLIAMS was taken, the deposition of TOKGÖZ was taken on January 13, 2016. He was at all relevant times the Chief Executive officer and a director of GEDEN HOLDINGS, LTD., and also the Chief Executive officer and a director of ADVANTAGE TANKERS, LLC. When TOKGÖZ was specifically asked about FUTURE HOLDINGS, LTD. he falsely testified that he did not know whether FUTURE HOLDINGS, LTD., had assets and, whether or not it did was a question that needed to be asked of KARAMEHMET-WILLIAMS. At the time, as noted in **EXHIBIT D** and **EXHIBIT E**, TOKGÖZ was the CEO, a director and a substantial shareholder of FUTURE HOLDINGS, LTD. **EXHIBIT K** shows that FUTURE HOLDINGS, LTD. had assets and was actively engaging in business. TOKGOZ's testimony that he didn't know whether a company he controlled as Director, CEO and principal shareholder had assets is not credible. *See* TOKGOZ DEPOSITION at pp. 67-68, hereto attached as **EXHIBIT M**.

35. It is evident from the foregoing that ADVANTAGE TANKERS, LLC's directors and Defendants TOKGÖZ, KARAMEHMET-WILLIAMS and the CFO of ADVANTAGE TANKERS, gave false evidence under oath in proceedings related to issues of this case.

36.    In sum, it is well documented that Defendants KARAMEHMET-WILLIAMS and TUĞUL TOKGÖZ have presided over the restructuring of the corporate ownership of the 7 product tankers' fleet, which formed part of the original GEDEN HOLDINGS, LTD. They have carved out of it an ownership structure of corporate entities (HUDSON SHIPPING HOLDCO LLC and FUTURE HOLDINGS, LTD.) which took over the Geden-Group's shipping assets, and is carrying on a profitable business under new corporate names while immunizing itself from the reach and recourse of creditors such as Plaintiff.

**The Restructuring of the 11 Crude Oil Tankers**

37.    The restructuring of the ownership of the 11 crude oil tankers followed a different pattern from that of the 7 product tankers, in part because there were several lending creditors involved in the case of the crude tankers. However, the same blueprint contained in Exhibit 9 of the Verified Complaint provided the basic restructuring plan.

38.    From my review of the documents that have been produced in the long course of the litigation of this case, the following facts stand out as evidence of the restructuring of ownership objectives as defined by Geden's restructuring experts in its Project Hermitage report attached to the Verified Complaint as Exhibit 9:

> Current Proposal - Strategy and Objectives": i.e. "Ring-fence potential sources of disruption, holdout, or nuisance (such as arrests or sister-ship arrests"..."Common set of incentives and exposure to recovery protects lenders from disruptive behaviour onset by other stakeholders with a markedly different position"....Sister-ship arrest risk minimized given shareholding structure in Newco". ALIX PARTNERS PROJECT HERMITAGE at p. 40) (Emphasis added)

39.    ADVANTAGE TANKERS, LLC is a creature of GEDEN HOLDINGS, LTD. It was put together by the management of GEDEN HOLDINGS, LTD. and GEDEN LINES to take over and operate the assets of the 11 crude oil tankers.

11

40.     ADVANTAGE TANKERS, LLC came into being formally when it was incorporated in December 8, 2014. *See* certificate of incumbency hereto attached as **EXHIBIT N.** However, some months before that in their correspondence with the existing lenders, the officers of GEDEN HOLDINGS, LTD., including MAT, were already implementing the restructuring blueprint that provided for a new business entity, Advantage Tankers, LLC, to play the role of the "Newco," On October 6, 2014 MAT e-mailed ND/LB bank:

> Future Holdings is still willing to proceed with the crude investment and decided to proceed alone. The Newco, Advantage Tankers ("AT") will acquire 5 aframax and 4 suezmaxes as originally Planned." (emphases added).

MAT Deposition Exhibit 5 at Bates No. D05191 hereto attached as **EXHIBIT O.**

41. The same Defendants in previous litigation have maintained that KARAMEHMET-WILLIAMS acquired the equity of the Geden-Group in a straightforward sale of the 11 crude oil tankers. However, when pressed with documentary discovery to disclose further specifics of the purported money transfers, *i.e.* the proof of payment for the acquisition of the assets, the said Defendant was unwilling or unable to respond. **EXHIBIT P.**

42.     Defendant TOKGOZ, who is a common director and officer of GEDEN HOLDINGS, LTD. and ADVANTAGE TANKERS, LLC, expressly represented and confirmed in the Consent Letter to Shell Western Supply & Trading Ltd. dated February 6, 2015 that the ultimate control over the one-ship companies of the Advantage Tankers Group[4] would rest with GEDEN HOLDINGS, LTD. even after the sale of the vessels to the Advantage Tankers Group. *See* Doc. 1-1, pp. 35-40.

43.     In the Consent Letter to Shell Western Supply & Trading Ltd., the very nature of the transaction made with the sale of the 11 tanker vessels by the Geden-Group to the Advantage

---

[4] Advantage Tankers, LLC and subsidiaries as in Doc1, p.27 Table 1.

Tankers Group is referred to as "reorganisation efforts" *Id.* at Bates No. 1248, not a straightforward sale of assets.

44.     In turn, the intention of GEDEN HOLDINGS, LTD. and ADVANTAGE TANKERS, LLC that the ownership over the one-ship companies of the Advantage Tankers Group would remain with GEDEN HOLDINGS, LTD. following the transfer of the vessel from the one-ship companies of the Geden-Group, was "Agreed, consented and accepted" by Shell Western Supply & Trading Ltd. *Id at Bates No. D01250.*     This was re-affirmed under oath by the representative of Shell Western Supply and Trading Limited Dave Chapman in his deposition on November 30, 2016. *See* Doc. 1-1, p. 45.

45.     The nature of the involvement of GEDEN HOLDINGS, LTD. as a promoter and contractual predecessor in interest of ADVANTAGE TANKERS, LLC., and not as a straightforward seller of property to a good faith buyer, is reflected also in the following documents that reflect the financing/re-financing of ADVANTAGE TANKERS, LLC:

A. The Fee letter of CIT Finance LLC dated November 19, 2014 extract thereof hereto attached as **EXHIBIT Q,** is signed and accepted in all respects by GEDEN HOLDINGS, LTD. as a deed on the last page.

B.     E-mail Correspondence dated January 21, 2015 from GEDEN LINES to CIT extending commitment CIT Finance LLC. Copy hereto attached as **EXHIBIT R.**

C.     A commitment letter by GEDEN HOLDINGS, LTD. dated November 18, 2014, which on its face spells out that GEDEN HOLDINGS, LTD. is "...acting on behalf of a new investment and operating company in the process of being formed, called Advantage Tankers LLC, " accepted and agreed in all respects on November 19, 2014 by GEDEN HOLDINGS, LTD. *See* Extracts hereto attached as **EXHIBIT S.**

13

Under the penalties of perjury under the laws of the United States I declare that the contents of the above and foregoing declaration are true and correct.

Signed in Athens, Greece this 26 day of April 2018

Despoina Bacha

# EXHIBIT A

.:Geden Lines::.

http://www.gedenlines.com:80/en/fleet/geden_fleet.asp

https://web.archive.org/web/20121227074843/http://www.gedenlines.com:80/en/fleet/geden_fle...

Go

42 captures
4 May 2006 - 27 Dec 2012

AUG DEC JAN
▼ 27 ▲
2011 2012 2013

▼ About this capture

# Geden Fleet

**GEDEN LINES**

- Geden Lines
- Policy
- Geden Fleet

- G.O.L.
- Picture Gallery
- Human Resources
- Contact
- Site Map

## TANKERS

| Name | Build | DWT | NRT | Capacity |
|---|---|---|---|---|
| M/T Profit | 2009 | 156,643 | 49,031 | 171,260 |
| M/T Blue | 2010 | 156,643 | 49,031 | 171,260 |
| M/T Pink | 2010 | 156,643 | 49,031 | 171,260 |
| M/T Reef | 2010 | 156,597 | 49,031 | 171,260 |
| M/T Royal | 2012 | 156,516 | 49,031 | 171,259.8 |
| M/T Blank | 2011 | 156,597 | 49,031 | 171,260 |
| M/T Hero | 2011 | 156,532 | 49,031 | 171,260 |
| M/T Center | 2011 | 156,516 | 49,031 | 171,259.8 |
| M/T Aqua | 2007 | 115,000 | 35,396 | 127,728 |
| M/T Action | 2007 | 115,000 | 35,396 | 127,200 |
| M/T Bravo | 2011 | 116,014 | 35,873 | 127,511 |
| M/T Power | 2011 | 116,087 | 35,873 | 127,511 |
| M/T Value | 2011 | 115,984 | 35,873 | 127,511 |
| M/T Target | 2009 | 115,748 | 35,396 | 127,542 |
| M/T True | 2010 | 115,785 | 35,396 | 127,542 |
| M/T Spike | 2010 | 115,897 | 35,396 | 127,542 |
| M/T Avor | 2010 | 115,867 | 35,396 | 127,542 |
| M/T Enjoy | 2011 | 74,150 | 21,800 | 80,650 |
| M/T Marka | 2012 | 74,127 | 21,800 | 80,650 |
| M/T Citron | 2007 | 47,000 | 12,000 | 52,005 |
| M/T Citrus | 2008 | 47,000 | 12,000 | 52,005 |

**GEDEN FLEET**

TANKERS

- M/T Profit
- M/T Blue
- M/T Pink
- M/T Reef
- M/T Royal
- M/T Blank
- M/T Hero
- M/T Center
- M/T Aqua
- M/T Action
- M/T Bravo
- M/T Power
- M/T Value
- M/T Target
- M/T True
- M/T Spike
- M/T Avor
- M/T Enjoy
- M/T Marka
- M/T Citron
- M/T Citrus
- M/T Acor
- M/T Carry
- M/T Rova
- M/T Cotton
- M/T Cargo
- M/T Rock
- M/T Rocket

BULK CARRIERS

42 captures
4 May 2006 - 27 Dec 2012

AUG **DEC** JAN
**27**
2011 2012 2013

Go

▼ About this capture

| | | | | |
|---|---|---|---|---|
| M/T Cotton | 2007 | 37,900 | 9,915 | 40,801 |
| M/T Cargo | 2008 | 37,900 | 9,915 | 40,801 |
| M/T Rock | 2008 | 37,900 | 9,915 | 40,801 |
| M/T Rocket | 2008 | 37,900 | 9,915 | 40,801 |

**BULK CARRIERS**

| Name | Build | DWT | NRT | Capacity |
|---|---|---|---|---|
| M/V Proud | 2009 | 178,000 | 58,745 | 193,247 |
| M/V Flash | 2009 | 177,800 | 58,745 | 193,247 |
| M/V Pretty | 2011 | 175,974.8 | 59,546 | 198,252 |
| M/V Angel | 2011 | 175,934 | 59,546 | 198,252 |
| M/V Scope | 2006 | 175,000 | 58,000 | 193,247 |
| M/V Fantastic | 2010 | 56,940 | 19,231 | 67,681 |
| M/V Asia | 2010 | 56,940 | 19,231 | 67,681 |
| M/V Amazing | 2010 | 56,940 | 19,231 | 67,681 |
| M/V South | 2012 | 55,443 | 18,550 | 70,773 |
| M/V Metropol | 2012 | 55,415 | 18,550 | 67,681 |
| M/V West | 2012 | 55,415 | 18,550 | 67,681 |
| M/V East | 2012 | 55,398 | 18,550 | 70,773 |
| M/V Namrun | 2007 | 55,000 | 18,150 | 69,452 |
| M/V Tarsus | 2008 | 53,100 | 18,159 | 65,049 |
| M/V Spot | 2008 | 53,100 | 18,159 | 65,049 |
| M/V Clear | 2009 | 53,100 | 18,159 | 65,049 |
| M/V Baytur | 2001 | 52,261 | 16,985 | 66,731 |

- M/V Angel
- M/V Scope
- M/V Fantastic
- M/V Asia
- M/V Amazing
- M/V South
- M/V Metropol
- M/V West
- M/V East
- M/V Namrun
- M/V Tarsus
- M/V Spot
- M/V Clear
- M/V Baytur

**FLEET UNDER MANAGEMENT**

- CV Stealth
- CS Stealth
- M/T Bull
- M/T Buddy





# Geden Lines

In the words of Mr. Tugrul Tokgoz, the company's CEO: "**The company is a shipping company who is not only having a modern fleet, but also a well managed fleet that is respected by charterers, insurers, owners of cargo, port authorities and everyone involved in the maritime industry.**"

Geden has developed over the many years of its operations, an excellent track record, reputation and image both within the local as well as the international shipping community. This is mainly due to the company has been committed in the shipping industry since **1975**; the management is skilled with many years of experience and has established long lasting contacts with a number of international first class charterers.

Geden operates a fleet of **45** vessels which includes 8 Suezmax Crude Oil Tankers, 9 Aframax Crude Oil Tankers, 2 LR1 Crude/Product Tankers, 7 37K DWT Ice Class 1A Chemical Product Tankers, 2 47K DWT Chemical Product Tankers, 5 Capesize Bulk Carriers and 12 Supramax Bulk Carriers; totalling to **4,339,401** DWT with an average age profile of **2.73** years.

## GEDEN LINES

- Geden Lines
- Policy
- Geden Fleet

- G.O.L.
- Picture Gallery
- Human Resources
- Contact
- Site Map

## GEDEN FLEET

### TANKERS

- M/T Profit
- M/T Blue
- M/T Pink
- M/T Reef
- M/T Royal
- M/T Blank
- M/T Hero
- M/T Center
- M/T Aqua
- M/T Acton
- M/T Bravo
- M/T Power
- M/T Value
- M/T Target
- M/T True
- M/T Spike
- M/T Avor
- M/T Enjoy
- M/T Marka
- M/T Citron
- M/T Citrus
- M/T Acor
- M/T Carry
- M/T Rova
- M/T Cotton
- M/T Cargo
- M/T Rock
- M/T Rocket

### BULK CARRIERS

http://www.gedenlines.com:80/en/home/index.asp    Go

69 captures
3 Aug 2005 - 24 Dec 2013

SEP  DEC  OCT
27
2011  2012  2013

About this capture

69 captures
3 Aug 2005 · 24 Dec 2013

SEP **DEC** OCT

▼ **27** ▲

**2011** 2012 2013

Go

▼ About this capture

* M/V Angel
* M/V Scope
* M/V Fantastic
* M/V Asia
* M/V Amazing
* M/V South
* M/V Metropol
* M/V West
* M/V East
* M/V Namrun
* M/V Tarsus
* M/V Spot
* M/V Clear
* M/V Baytur

**FLEET UNDER MANAGEMENT**

* CV Stealth
* CS Stealth
* M/T Bull
* M/T Buddy



# EXHIBIT B

http://gedenlines.com/en/home/index.asp

Go

69 captures
3 Aug 2005 - 24 Dec 2013

DEC   OCT   DEC
▼     06    ▲
2012  2013  2014

▶ About this capture



# GEDEN LINES

- Geden Lines
- Policy
- Geden Fleet

- G.O.L.
- Picture Gallery
- Human Resources
- Contact
- Site Map

## Geden Lines

In the words of Mr. Tugrul Tokgoz, the company's CEO: **"The company is a shipping company who is not only having a modern fleet, but also a well managed fleet that is respected by charterers, insurers, owners of cargo, port authorities and everyone involved in the maritime industry."**

Geden has developed over the many years of its operations, an excellent track record, reputation and image both within the local as well as the international shipping community. This is mainly due to the company has been committed in the shipping industry since **1975**; the management is skilled with many years of experience and has established long lasting contacts with a number of international first class charterers.

Yapi Kredi Plaza Levent Mh. Comert Sk. (A-Blok. No:1A) K:12 34330 Levent - Istanbul  Turkey
Phone: + 90 (212) 319 51 00   Fax:+ 90 (212) 283 16 04 05
gedenlines@gedenlines.com

## GEDEN FLEET

### TANKERS

- M/T Profit
- M/T Blue
- M/T Pink
- M/T Reef
- M/T Royal
- M/T Blank
- M/T Hero
- M/T Center
- M/T Bravo
- M/T Power
- M/T Value
- M/T Target
- M/T True
- M/T Spike
- M/T Avor
- M/T Citron
- M/T Citrus

### BULK CARRIERS

- M/V Proud
- M/V Flash
- M/V Pretty
- M/V Angel
- M/V Scope
- M/V Cash
- M/V Fantastic
- M/V Asia
- M/V Amazing
- M/V World



.:Geden Lines:.

https://web.archive.org/web/20131006021014/http://gedenlines.com/en/home/index.asp

69 captures
3 Aug 2005 - 24 Dec 2013

▼ About this capture

* M/V Sharp
* M/V West
* M/V East
* M/V Namrun
* M/V Tarsus
* M/V Spot
* M/V Clear

**FLEET UNDER MANAGEMENT**

* CV Stealth
* CS Stealth
* M/T Bull
* M/T Buddy
* M/T Star I
* M/T Silent
* M/T Single
* M/T Sky
* M/T Style
* M/T Stone I
* M/T Steed



| http://www.gedenlines.com:80/en/fleet/geden_fleet.asp | | Go |

42 captures
4 May 2006 - 27 Dec 2012

AUG | DEC | JAN
▼ 27 ▲
2011 | **2012** | 2013

▼ About this capture



# GEDEN LINES

- Geden Lines
- Policy
- Geden Fleet

- G.O.L.
- Picture Gallery
- Human Resources
- Contact
- Site Map

## Geden Fleet

### TANKERS

| Name | Build | DWT | NRT | Capacity |
|------|-------|-----|-----|----------|
| M/T Profit | 2009 | 156,643 | 49,031 | 171,260 |
| M/T Blue | 2010 | 156,643 | 49,031 | 171,260 |
| M/T Pink | 2010 | 156,643 | 49,031 | 171,260 |
| M/T Reef | 2010 | 156,597 | 49,031 | 171,260 |
| M/T Royal | 2012 | 156,516 | 49,031 | 171,259.8 |
| M/T Blank | 2011 | 156,597 | 49,031 | 171,260 |
| M/T Hero | 2011 | 156,532 | 49,031 | 171,260 |
| M/T Center | 2011 | 156,516 | 49,031 | 171,259.8 |
| M/T Aqua | 2007 | 115,000 | 35,396 | 127,728 |
| M/T Action | 2007 | 115,000 | 35,396 | 127,200 |
| M/T Bravo | 2011 | 116,014 | 35,873 | 127,511 |
| M/T Power | 2011 | 116,087 | 35,873 | 127,511 |
| M/T Value | 2011 | 115,984 | 35,873 | 127,511 |
| M/T Target | 2009 | 115,748 | 35,396 | 127,542 |
| M/T True | 2010 | 115,785 | 35,396 | 127,542 |
| M/T Spike | 2010 | 115,897 | 35,396 | 127,542 |
| M/T Avor | 2010 | 115,867 | 35,396 | 127,542 |
| M/T Enjoy | 2011 | 74,150 | 21,800 | 80,650 |
| M/T Marka | 2012 | 74,127 | 21,800 | 80,650 |
| M/T Citron | 2007 | 47,000 | 12,000 | 52,005 |
| M/T Citrus | 2008 | 47,000 | 12,000 | 52,005 |

### GEDEN FLEET

**TANKERS**

- M/T Profit
- M/T Blue
- M/T Pink
- M/T Reef
- M/T Royal
- M/T Blank
- M/T Hero
- M/T Center
- M/T Aqua
- M/T Action
- M/T Bravo
- M/T Power
- M/T Value
- M/T Target
- M/T True
- M/T Spike
- M/T Avor
- M/T Carry
- M/T Rova
- M/T Cotton
- M/T Cargo
- M/T Rock
- M/T Rocket

**BULK CARRIERS**

42 captures
4 May 2006 - 27 Dec 2012

AUG DEC JAN
27
2011 2012 2013

Go ▼ About this capture

| M/T Cotton | 2007 | 37,900 | 9,915 | 40,801 |
| M/T Cargo | 2008 | 37,900 | 9,915 | 40,801 |
| M/T Rock | 2008 | 37,900 | 9,915 | 40,801 |
| M/T Rocket | 2008 | 37,900 | 9,915 | 40,801 |

## BULK CARRIERS

| Name | Build | DWT | NRT | Capacity |
| --- | --- | --- | --- | --- |
| M/V Proud | 2009 | 178,000 | 58,745 | 193,247 |
| M/V Flash | 2009 | 177,800 | 58,745 | 193,247 |
| M/V Pretty | 2011 | 175,974.8 | 59,546 | 198,252 |
| M/V Angel | 2011 | 175,934 | 59,546 | 198,252 |
| M/V Scope | 2006 | 175,000 | 58,000 | 193,247 |
| M/V Fantastic | 2010 | 56,940 | 19,231 | 67,681 |
| M/V Asia | 2010 | 56,940 | 19,231 | 67,681 |
| M/V Amazing | 2010 | 56,940 | 19,231 | 67,681 |
| M/V South | 2012 | 55,443 | 18,550 | 70,773 |
| M/V Metropol | 2012 | 55,415 | 18,550 | 57,681 |
| M/V West | 2012 | 55,415 | 18,550 | 67,681 |
| M/V East | 2012 | 55,398 | 18,550 | 70,773 |
| M/V Namrun | 2007 | 55,000 | 18,150 | 69,452 |
| M/V Tarsus | 2008 | 53,100 | 18,159 | 65,049 |
| M/V Spot | 2008 | 53,100 | 18,159 | 65,049 |
| M/V Clear | 2009 | 53,100 | 18,159 | 65,049 |
| M/V Baytur | 2001 | 52,261 | 16,985 | 66,731 |

- M/V Angel
- M/V Scope
- M/V Fantastic
- M/V Asia
- M/V Amazing
- M/V South
- M/V Metropol
- M/V West
- M/V East
- M/V Namrun
- M/V Tarsus
- M/V Spot
- M/V Clear
- M/V Baytur

## FLEET UNDER MANAGEMENT

- CV Stealth
- CS Stealth
- M/T Bull
- M/T Buddy

42 captures
4 May 2006 - 27 Dec 2012

Go

AUG DEC JAN

**27**

**2011** 2012 2013

▼ About this capture

# EXHIBIT C1



# THE REPUBLIC OF THE MARSHALL ISLANDS

## REGISTRAR OF CORPORATIONS

RE: **HUDSON SHIPPING HOLDCO LLC**

REG. NO.: **962446**

EXISTENCE: **June 18, 2013**

THIS IS TO CERTIFY that the within document is a true and correct copy of the **CERTIFICATE OF FORMATION** of the above named Limited Liability Company, duly filed with the Registrar of Corporations effective on the date indicated above pursuant to the Marshall Islands Limited Liability Company Act.

WITNESS my hand and the official seal of the Registry on **April 5, 2016**.



Deputy Registrar



# APOSTILLE

*(Hague Convention of 5 October 1961/*
*Convention de la Haye du October 1961)*

1. Country: The Republic of the Marshall Islands

**This Public Document**

2. has been signed by: Tanya L. Lawson

3. acting in the capacity of: Deputy Registrar, Republic of the Marshall Islands

4. bears the seal/stamp of: Registrar of Corporations, Republic of the Marshall Islands

**Certified**

5. at: Reston, Virginia    6. on: April 5, 2016

7. by: Special Agent of the Republic of the Marshall Islands

8. Number: R-10307 – 04/16

9. Seal /stamp:        10: Signature:



# CERTIFICATE OF FORMATION

## OF

# HUDSON SHIPPING HOLDCO LLC

## AS A

## LIMITED LIABILITY COMPANY

### REPUBLIC OF THE MARSHALL ISLANDS

### REGISTRAR OF CORPORATIONS

### DUPLICATE COPY

**NON RESIDENT**

The original of this Document was filed in
accordance with section 9 of the
Limited Liability Company Act on

June 18, 2013



Deputy Registrar

Reg. No. 962446

## CERTIFICATE OF FORMATION OF
## HUDSON SHIPPING HOLDCO LLC
## UNDER SECTION 9 OF THE LIMITED LIABILITY COMPANY ACT

The undersigned, Iron Stone Trust, Manager of Hudson Shipping Holdco LLC, for the purpose of forming a Marshall Islands Limited Liability Company, hereby certifies:

1. The name of the Limited Liability Company is: Hudson Shipping Holdco LLC.

2. The address of its Registered Agent in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960. The name of its Registered Agent at such address is The Trust Company of the Marshall Islands, Inc.

3. The formation date of the Limited Liability Company is the date of the filing of this Certificate of Formation with the Registrar or Deputy Registrar of Corporations.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation on this 18th day of June 2013.

Iron Stone Trust

Name: Willem de Bruijn
Title: Authorised signatory

LIMITED LIABILITY COMPANY AGREEMENT

OF

HUDSON SHIPPING HOLDCO LLC

A Marshall Islands Limited Liability Company

Dated: 18 June 2013

# TABLE OF CONTENTS

Page

1.  DEFINED TERMS ........................................................................................................ 1
2.  ORGANIZATION ....................................................................................................... 2
    2.1  Formation .......................................................................................................... 2
    2.2  Name ................................................................................................................. 2
    2.3  Purpose .............................................................................................................. 2
    2.4  Registered Office; Registered Agent ................................................................. 3
    2.5  Principal Office .................................................................................................. 3
    2.6  Term .................................................................................................................. 3
    2.7  Liability to Third Parties .................................................................................... 3
3.  CAPITAL CONTRIBUTIONS ..................................................................................... 3
    3.1  Capital Contributions ........................................................................................ 3
    3.2  No Interest on Capital Contributions ................................................................. 3
4.  MANAGEMENT ......................................................................................................... 3
    4.1  Management By Manager ................................................................................... 3
    4.2  Indemnification .................................................................................................. 4
5.  DISTRIBUTIONS ........................................................................................................ 4
    5.1  Distributions/Available Cash ............................................................................. 4
6.  BOOKS AND RECORDS; FISCAL YEAR ................................................................. 5
    6.1  Books and Records. ............................................................................................ 5
    6.2  Fiscal Year ......................................................................................................... 5
7.  MISCELLANEOUS ..................................................................................................... 5
    7.1  Complete Agreement .......................................................................................... 5
    7.2  Governing Law ................................................................................................... 5
    7.3  Headings. ............................................................................................................ 5
    7.4  Severability ........................................................................................................ 5
    7.5  Execution in Counterparts................................................................................... 5
    7.6  Amendment......................................................................................................... 6

i

# LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the "**Agreement**") of Hudson Shipping Holdco LLC (the "**Company**"), is made and entered into effective as of the 18th day of June 2013, by and between the Company and Iron Stone Trust a Trust company organized and existing under the laws of Curaçao (the "**Member**").

## RECITALS

WHEREAS, the Member has arranged for the formation of the Company under the laws of the Republic of the Marshall Islands and in its capacity as the sole Member of the Company, now desires to organize the Company and provide for the management of the Company and its affairs and for the conduct of its business.

NOW, THEREFORE, it is agreed as follows:

1. **DEFINED TERMS**

The terms used in this Agreement, with their initial letters capitalized, shall, unless the context thereof otherwise requires, have the meanings specified in this Section 1. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. When used in this Agreement, the following terms shall have the meanings set forth below:

(a) "**Act**" shall mean the Limited Liability Company Act of 1996 of the Republic of the Marshall Islands, as the same may be amended from time to time.

(b) "**Agreement**" shall mean this Limited Liability Company Agreement as originally executed and as amended, modified, supplemented or restated from to time in accordance with the terms of this Agreement.

(c) "**Authorized Signatories**" shall mean those individuals from time to time certified by the Manager as having the authority to act singly or jointly (as the case may be) for and on behalf of the Manager pursuant to the provisions of Section 4.1 of this Agreement.

(d) "**Business**" shall mean the formation, ownership, management and operation of any Subsidiary.

(e) "**Certificate**" shall mean the Certificate of Formation filed pursuant to the Act with the Republic of the Marshall Islands Registrar of Corporations pursuant to which the Company was organized as a Marshall Islands limited liability company.

(f)     **"Company"** shall have the meaning set forth in the preamble.

(g)     **"Indemnified Party"** shall have the meaning set forth in Section 4.2 of this Agreement.

(h)     **"Investment"** shall mean any investment in the maritime business.

(i)     **"Manager"** shall mean DVB Investment Management NV or any duly appointed successor thereto.

(j)     **"Member"** shall have the meaning set forth in the preamble and shall have the same meaning as the term "member" under the Act.

(k)     **"Person"** shall mean a natural person, corporation, partnership, joint venture, trust, estate, unincorporated association, limited liability company, or any other juridical entity.

(l)     **"Subsidiary"** shall mean any entity formed by the Company for the purpose of making an Investment.

## 2.     ORGANIZATION

### 2.1     Formation.

The Company was formed as a limited liability company under the Act on 18 June 2013 by the filing of the Certificate with the office of the Marshall Islands Registrar of Corporations. Any and all actions in connection with such formation are hereby ratified, confirmed and approved.

### 2.2     Name.

The name of the Company formed by the filing of the Certificate is "Hudson Shipping Holdco LLC" and all Business of the Company shall be conducted in the name set forth in the Certificate or such other names that comply with applicable law as the Member may from time to time designate.

### 2.3     Purpose.

The purpose for which the Company is established is to engage in the Business and in any lawful activity permitted by the Act as the Company may deem necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the Business.

### 2.4     Registered Office; Registered Agent.

The registered office of the Company required by the Act to be maintained in the Republic of the Marshall Islands shall be the office of the initial registered agent named in the Certificate or such other office as the Member may designate from time to time in the manner provided by law. The registered agent of the Company in the Republic of Marshall Islands shall

be the initial registered agent named in the Certificate or such other person or persons as the Member may designate from time to time in the manner provided by law.

### 2.5 Principal Office.

The principal office of the Company shall be the Company's registered office except as otherwise may be determined by the Member.

### 2.6 Term.

The Company shall have perpetual existence unless the Company is dissolved in accordance with the Act.

### 2.7 Liability to Third Parties.

The Member shall not be liable for the debts, obligations or liabilities of the Company, including, without limitation, under a judgment, decree or order of a court.

## 3. CAPITAL CONTRIBUTIONS

### 3.1 Capital Contributions.

The Member shall contribute such sums and/or assets as it, in its sole discretion, shall deem necessary or appropriate to enable the Company to carry out its Business.

### 3.2 No Interest on Capital Contributions.

Except as otherwise expressly provided herein, the Member shall not receive any interest on its capital contributions to the Company.

## 4. MANAGEMENT

### 4.1 Management By Manager.

The management of the Company shall be vested in the Manager. The Manager, acting through its Authorized Signatories, or through appointed delegates under including but not limited to any services agreements (if not the same as the Authorized Signatories) directly or indirectly may make all decisions and take all actions for the Company as in its sole discretion it shall deem necessary or appropriate to enable the Company to carry out the purposes for which the Company was formed including, without limitation, the following:

> (a) entering into, making and performing contracts, agreements, undertakings and guarantees of whatsoever kind and nature in the name and on behalf of the Company, inclusive of this Agreement and any amendments and/or restatements thereof;

> (b) setting aside reserves, opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for the

payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

(c)    selling, conveying, mortgaging, pledging, exchanging and disposing of property;

(d)    incurring liabilities, borrowing money, issuing notes, bonds and other obligations and securing any of the Company's obligations by mortgage or pledge of any of the Company's property or income;

(e)    collecting sums due to the Company; bringing and defending on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise;

(f)    selecting, removing, and changing the authority and responsibility of lawyers, auditors and other advisers and consultants;

(g)    issuing Powers of Attorney in favor of such persons as it may deem necessary or appropriate to carry out and implement any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1; and

(h)    the adoption of such resolutions, including by unanimous written consent, as it may deem necessary or appropriate to approve any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1.

### 4.2    Indemnification.

The Company shall indemnify and hold harmless, to the fullest extent permitted by law, the Manager, and each officer, employee or duly appointed attorney-in-fact of the Manager (individually, an "**Indemnified Party**") from and against all costs, losses, liabilities, and damages paid or incurred by such Indemnified Party in connection with the affairs of the Company.

## 5.    DISTRIBUTIONS

### 5.1    Distributions/Available Cash.

The Member, in its capacity as sole Member, shall in its sole discretion determine from time to time to what extent (if any) the Company's cash on hand exceeds the current and anticipated needs of the Company. To the extent any such excess exists, the Member may make distributions to itself as sole Member or anyone else at the sole discretion of the Member, subject to Section 40 of the Act.

## 6. BOOKS AND RECORDS; FISCAL YEAR

### 6.1 Books and Records.

The books and records of the Company shall, at the cost and expense of the Company, be kept and cause to be kept by the Company at the principal office of the Company or at such other location as the Member may from time to time determine.

### 6.2 Fiscal Year.

Unless otherwise determined by the Member, the Company's books and records shall be kept on a December 31 calendar year basis and shall reflect all Company transactions and be appropriate and adequate for conducting the Company's affairs.

## 7. MISCELLANEOUS

### 7.1 Complete Agreement.

This Agreement constitutes the complete and exclusive statement of the agreement regarding the management and governance of the Company and it affairs and replaces and supersedes all prior agreements regarding the management and governance of the Company and its affairs.

### 7.2 Governing Law.

This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the Republic of the Marshall Islands without giving regard to principles of conflicts of law.

### 7.3 Headings.

All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

### 7.4 Severability.

If any provision of this Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

### 7.5 Execution in Counterparts.

This Agreement may be executed in one or more counterparts with the effect as if the parties executing the several counterparts had all executed one counterpart, but in such event each such counterpart shall constitute an original and all of such counterparts shall constitute one and the same agreement.

### 7.6 Amendment.

All amendments to this Agreement must be in writing and signed by the Company and the Member.

[Intentionally Left Blank]

IN WITNESS WHEREOF, this Limited Liability Company Agreement has been executed by a duly authorized representative of Company and the Member as of the date first set forth above.

Hudson Shipping Holdco LLC

By:

Name: Alexandra Sponselee & John Römer
Title: Authorised signatories of the Manager

Iron Stone Trust

By:

Name: Sharella Roos
Title: Authorised signatory of Secure Trustees BV

# EXHIBIT C2



# THE REPUBLIC OF THE MARSHALL ISLANDS

## REGISTRAR OF CORPORATIONS

RE: **SILENT SHIPPING LLC**

REG. NO.: **962460**

EXISTENCE: **June 21, 2013**

THIS IS TO CERTIFY that the within document is a true and correct copy of the **CERTIFICATE OF FORMATION** of the above named Limited Liability Company, duly filed with the Registrar of Corporations effective on the date indicated above pursuant to the Marshall Islands Limited Liability Company Act.

WITNESS my hand and the official seal of the Registry on **April 5, 2016**.

Deputy Registrar



# APOSTILLE

*(Hague Convention of 5 October 1961/*
*Convention de la Haye du October 1961)*

1. Country: The Republic of the Marshall Islands

*This Public Document*

2. has been signed by: Tanya L. Lawson

3. acting in the capacity of: Deputy Registrar, Republic of the Marshall Islands

4. bears the seal/stamp of: Registrar of Corporations, Republic of the Marshall Islands

*Certified*

5. at: Reston, Virginia     6. on: April 5, 2016

7. by: Special Agent of the Republic of the Marshall Islands

8. Number: R-10306 – 04/16

9. Seal /stamp:          10: Signature:





# CERTIFICATE OF FORMATION

## OF

## SILENT SHIPPING LLC

## AS A

## LIMITED LIABILITY COMPANY

### REPUBLIC OF THE MARSHALL ISLANDS

### REGISTRAR OF CORPORATIONS

### DUPLICATE COPY

The original of this Document was filed in
accordance with section 9 of the
Limited Liability Company Act on

**NON RESIDENT**



June 21, 2013



Deputy Registrar

**Reg. No. 962460**

**CERTIFICATE OF FORMATION OF**
**SILENT SHIPPING LLC**
**UNDER SECTION 9 OF THE LIMITED LIABILITY COMPANY ACT**

The undersigned, Hudson Shipping Holdco LLC, Manager of Silent Shipping LLC, for the purpose of forming a Marshall Islands Limited Liability Company, hereby certifies:

1.   The name of the Limited Liability Company is: Silent Shipping LLC.

2.   The address of its Registered Agent in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960. The name of its Registered Agent at such address is The Trust Company of the Marshall Islands, Inc.

3.   The formation date of the Limited Liability Company is the date of the filing of this Certificate of Formation with the Registrar or Deputy Registrar of Corporations.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation on this 21st day of June 2013.

Hudson Shipping Holdco LLC

Name: Asandro van Aerde & John Römer
Title: Authorised signatories of the Manager

DVB Investment Management N.
Zeelandia Office Park
Kaya W.F.G. Mensing 14
Curaçao
Netherlands Antilles

The Manager

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## SILENT SHIPPING LLC

### A Marshall Islands Limited Liability Company

Dated: 19 June 2013

# TABLE OF CONTENTS

Page

1. DEFINED TERMS ................................................................................................................ 1
2. ORGANIZATION ............................................................................................................... 2
   2.1 Formation ................................................................................................................. 2
   2.2 Name ........................................................................................................................ 2
   2.3 Purpose .................................................................................................................... 2
   2.4 Registered Office; Registered Agent ...................................................................... 3
   2.5 Principal Office ........................................................................................................ 3
   2.6 Term ......................................................................................................................... 3
   2.7 Liability to Third Parties ......................................................................................... 3
3. CAPITAL CONTRIBUTIONS .......................................................................................... 3
   3.1 Capital Contributions .............................................................................................. 3
   3.2 No Interest on Capital Contributions ...................................................................... 3
4. MANAGEMENT ................................................................................................................ 3
   4.1 Management By Manager ........................................................................................ 3
   4.2 Indemnification ....................................................................................................... 4
5. DISTRIBUTIONS .............................................................................................................. 4
   5.1 Distributions/Available Cash .................................................................................. 4
6. BOOKS AND RECORDS; FISCAL YEAR ...................................................................... 5
   6.1 Books and Records. ................................................................................................. 5
   6.2 Fiscal Year .............................................................................................................. 5
7. MISCELLANEOUS ........................................................................................................... 5
   7.1 Complete Agreement .............................................................................................. 5
   7.2 Governing Law ........................................................................................................ 5
   7.3 Headings. ................................................................................................................. 5
   7.4 Severability ............................................................................................................. 5
   7.5 Execution in Counterparts ....................................................................................... 5
   7.6 Amendment ............................................................................................................. 6

## LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the **"Agreement"**) of Silent Shipping LLC (the **"Company"**), is made and entered into effective as of the 19th day of June 2013, by and between the Company and Hudson Shipping Holdco LLC a limited liability company organized and existing under the laws of the Republic of the Marshall Islands (the **"Member"**).

### RECITALS

WHEREAS, the Member has arranged for the formation of the Company under the laws of the Republic of the Marshall Islands and in its capacity as the sole Member of the Company, now desires to organize the Company and provide for the management of the Company and its affairs and for the conduct of its business.

NOW, THEREFORE, it is agreed as follows:

## 1.    DEFINED TERMS

The terms used in this Agreement, with their initial letters capitalized, shall, unless the context thereof otherwise requires, have the meanings specified in this Section 1. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. When used in this Agreement, the following terms shall have the meanings set forth below:

(a)    **"Act"** shall mean the Limited Liability Company Act of 1996 of the Republic of the Marshall Islands, as the same may be amended from time to time.

(b)    **"Agreement"** shall mean this Limited Liability Company Agreement as originally executed and as amended, modified, supplemented or restated from time to time in accordance with the terms of this Agreement.

(c)    **"Authorized Signatories"** shall mean those individuals from time to time certified by the Manager as having the authority to act singly or jointly (as the case may be) for and on behalf of the Manager pursuant to the provisions of Section 4.1 of this Agreement.

(d)    **"Business"** shall mean acquiring, financing, owning, operating, chartering and ultimately disposing of the shipping vessels and assets.

(e)    **"Certificate"** shall mean the Certificate of Formation filed pursuant to the Act with the Republic of the Marshall Islands Registrar of Corporations pursuant to which the Company was organized as a Marshall Islands limited liability company.

(f)    "**Company**" shall have the meaning set forth in the preamble.

(g)    "**Indemnified Party**" shall have the meaning set forth in Section 4.2 of this Agreement.

(h)    "**Investment**" shall mean any investment in the maritime business.

(i)    "**Manager**" shall mean Hudson Shipping Holdco LLC or any duly appointed successor thereto.

(j)    "**Member**" shall have the meaning set forth in the preamble and shall have the same meaning as the term "member" under the Act.

(k)    "**Person**" shall mean a natural person, corporation, partnership, joint venture, trust, estate, unincorporated association, limited liability company, or any other juridical entity.

## 2.    ORGANIZATION

### 2.1    Formation.

The Company was formed as a limited liability company under the Act on 20 May 2013 by the filing of the Certificate with the office of the Marshall Islands Registrar of Corporations. Any and all actions in connection with such formation are hereby ratified, confirmed and approved.

### 2.2    Name.

The name of the Company formed by the filing of the Certificate is "Silent Shipping LLC" and all Business of the Company shall be conducted in the name set forth in the Certificate or such other names that comply with applicable law as the Member may from time to time designate.

### 2.3    Purpose.

The purpose for which the Company is established is to engage in the Business and in any lawful activity permitted by the Act as the Company may deem necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the Business.

### 2.4    Registered Office; Registered Agent.

The registered office of the Company required by the Act to be maintained in the Republic of the Marshall Islands shall be the office of the initial registered agent named in the Certificate or such other office as the Member may designate from time to time in the manner provided by law. The registered agent of the Company in the Republic of Marshall Islands shall be the initial registered agent named in the Certificate or such other person or persons as the Member may designate from time to time in the manner provided by law.

### 2.5 Principal Office.

The principal office of the Company shall be the Company's registered office except as otherwise may be determined by the Member.

### 2.6 Term.

The Company shall have perpetual existence unless the Company is dissolved in accordance with the Act.

### 2.7 Liability to Third Parties.

The Member shall not be liable for the debts, obligations or liabilities of the Company, including, without limitation, under a judgment, decree or order of a court.

## 3. CAPITAL CONTRIBUTIONS

### 3.1 Capital Contributions.

The Member shall contribute such sums and/or assets as it, in its sole discretion, shall deem necessary or appropriate to enable the Company to carry out its Business.

### 3.2 No Interest on Capital Contributions.

Except as otherwise expressly provided herein, the Member shall not receive any interest on its capital contributions to the Company.

## 4. MANAGEMENT

### 4.1 Management By Manager.

The management of the Company shall be vested in the Manager. The Manager, acting through its Authorized Signatories, or through appointed delegates under including but not limited to any services agreements (if not the same as the Authorized Signatories) directly or indirectly may make all decisions and take all actions for the Company as in its sole discretion it shall deem necessary or appropriate to enable the Company to carry out the purposes for which the Company was formed including, without limitation, the following:

(a) entering into, making and performing contracts, agreements, undertakings and guarantees of whatsoever kind and nature in the name and on behalf of the Company, inclusive of this Agreement and any amendments and/or restatements thereof;

(b) setting aside reserves, opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

3

(c)     selling, conveying, mortgaging, pledging, exchanging and disposing of property;

(d)     incurring liabilities, borrowing money, issuing notes, bonds and other obligations and securing any of the Company's obligations by mortgage or pledge of any of the Company's property or income;

(e)     collecting sums due to the Company; bringing and defending on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise;

(f)     selecting, removing, and changing the authority and responsibility of lawyers, auditors and other advisers and consultants;

(g)     issuing Powers of Attorney in favor of such persons as it may deem necessary or appropriate to carry out and implement any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1; and

(h)     the adoption of such resolutions, including by unanimous written consent, as it may deem necessary or appropriate to approve any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1.

4.2     Indemnification.

The Company shall indemnify and hold harmless, to the fullest extent permitted by law, the Manager, and each officer, employee or duly appointed attorney-in-fact of the Manager (individually, an "**Indemnified Party**") from and against all costs, losses, liabilities, and damages paid or incurred by such Indemnified Party in connection with the affairs of the Company.

## 5.     DISTRIBUTIONS

5.1     Distributions/Available Cash.

The Member, in its capacity as sole Member, shall in its sole discretion determine from time to time to what extent (if any) the Company's cash on hand exceeds the current and anticipated needs of the Company. To the extent any such excess exists, the Member may make distributions to itself as sole Member or anyone else at the sole discretion of the Member, subject to Section 40 of the Act.

## 6. BOOKS AND RECORDS; FISCAL YEAR

### 6.1 Books and Records.

The books and records of the Company shall, at the cost and expense of the Company, be kept and cause to be kept by the Company at the principal office of the Company or at such other location as the Member may from time to time determine.

### 6.2 Fiscal Year.

Unless otherwise determined by the Member, the Company's books and records shall be kept on a December 31 calendar year basis and shall reflect all Company transactions and be appropriate and adequate for conducting the Company's affairs.

## 7. MISCELLANEOUS

### 7.1 Complete Agreement.

This Agreement constitutes the complete and exclusive statement of the agreement regarding the management and governance of the Company and it affairs and replaces and supersedes all prior agreements regarding the management and governance of the Company and its affairs.

### 7.2 Governing Law.

This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the Republic of the Marshall Islands without giving regard to principles of conflicts of law.

### 7.3 Headings.

All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

### 7.4 Severability.

If any provision of this Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

### 7.5 Execution in Counterparts.

This Agreement may be executed in one or more counterparts with the effect as if the parties executing the several counterparts had all executed one counterpart, but in such event each such counterpart shall constitute an original and all of such counterparts shall constitute one and the same agreement.

### 7.6 Amendment.

All amendments to this Agreement must be in writing and signed by the Company and the Member.

[Intentionally Left Blank]

IN WITNESS WHEREOF, this Limited Liability Company Agreement has been executed by a duly authorized representative of Company and the Member as of the date first set forth above.

**Silent Shipping LLC**

By: _____

Name: John Römer & Adnan Mohammed

Title:   Authorised signatories of the Manager

**Hudson Shipping Holdco LLC**

By: _____

Name: John Römer & Adnan Mohammed

Title:   Authorised signatories of the Manager

DVB Investment Management N.
Zeelandia Office Park
Kaya W.F.G. Mensing 14
Curaçao
Netherlands Antilles

The Manager

# EXHIBIT C3



# THE REPUBLIC OF THE MARSHALL ISLANDS

## REGISTRAR OF CORPORATIONS

RE: **SINGLE SHIPPING LLC**

REG. NO.: **962464**

EXISTENCE: **June 21, 2013**

THIS IS TO CERTIFY that the within document is a true and correct copy of the **CERTIFICATE OF FORMATION** of the above named Limited Liability Company, duly filed with the Registrar of Corporations effective on the date indicated above pursuant to the Marshall Islands Limited Liability Company Act.

WITNESS my hand and the official seal of the Registry on **April 5, 2016**.

_____
Deputy Registrar



# APOSTILLE

*(Hague Convention of 5 October 1961/*
*Convention de la Haye du October 1961)*

1. Country: The Republic of the Marshall Islands

***This Public Document***

2. has been signed by: Tanya L. Lawson

3. acting in the capacity of: Deputy Registrar, Republic of the Marshall Islands

4. bears the seal/stamp of: Registrar of Corporations, Republic of the Marshall Islands

*Certified*

5. at: Reston, Virginia    6. on: April 5, 2016

7. by: Special Agent of the Republic of the Marshall Islands

8. Number: R-10305– 04/16

9. Seal /stamp:        10: Signature:



# CERTIFICATE OF FORMATION

## OF

## SINGLE SHIPPING LLC

## AS A

## LIMITED LIABILITY COMPANY

**REPUBLIC OF THE MARSHALL ISLANDS**

**REGISTRAR OF CORPORATIONS**

**DUPLICATE COPY**

The original of this Document was filed in
accordance with section 9 of the
Limited Liability Company Act on

**NON RESIDENT**



June 21, 2013

Deputy Registrar

Reg. No. 962464

**CERTIFICATE OF FORMATION OF**
**SINGLE SHIPPING LLC**
**UNDER SECTION 9 OF THE LIMITED LIABILITY COMPANY ACT**

The undersigned, Hudson Shipping Holdco LLC, Manager of Single Shipping LLC, for the purpose of forming a Marshall Islands Limited Liability Company, hereby certifies:

1.   The name of the Limited Liability Company is: Single Shipping LLC.

2.   The address of its Registered Agent in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960. The name of its Registered Agent at such address is The Trust Company of the Marshall Islands, Inc.

3.   The formation date of the Limited Liability Company is the date of the filing of this Certificate of Formation with the Registrar or Deputy Registrar of Corporations.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation on this 21st day of June 2013.

Hudson Shipping Holdco LLC

Name: Asandro van Aerde & John Römer
Title: Authorised signatories of the Manager

DVB Investment Management NV
Zeelandia Office Park
Kaya W.F.G. Mensing 14
Curaçao
Netherlands Antilles

The Manager

**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**SINGLE SHIPPING LLC**

**A Marshall Islands Limited Liability Company**

Dated: 19 June 2013

# TABLE OF CONTENTS

Page

1. DEFINED TERMS ........................................................................................................ 1
2. ORGANIZATION ....................................................................................................... 2
   2.1 Formation ..................................................................................................... 2
   2.2 Name ........................................................................................................... 2
   2.3 Purpose ........................................................................................................ 2
   2.4 Registered Office; Registered Agent ............................................................ 3
   2.5 Principal Office ............................................................................................ 3
   2.6 Term ............................................................................................................ 3
   2.7 Liability to Third Parties .............................................................................. 3
3. CAPITAL CONTRIBUTIONS ..................................................................................... 3
   3.1 Capital Contributions ................................................................................... 3
   3.2 No Interest on Capital Contributions ............................................................ 3
4. MANAGEMENT ........................................................................................................ 3
   4.1 Management By Manager .............................................................................. 3
   4.2 Indemnification ............................................................................................ 4
5. DISTRIBUTIONS ...................................................................................................... 4
   5.1 Distributions/Available Cash ........................................................................ 4
6. BOOKS AND RECORDS; FISCAL YEAR ................................................................... 5
   6.1 Books and Records. ...................................................................................... 5
   6.2 Fiscal Year ................................................................................................... 5
7. MISCELLANEOUS ................................................................................................... 5
   7.1 Complete Agreement .................................................................................... 5
   7.2 Governing Law ............................................................................................. 5
   7.3 Headings. ..................................................................................................... 5
   7.4 Severability .................................................................................................. 5
   7.5 Execution in Counterparts. ........................................................................... 5
   7.6 Amendment. ................................................................................................. 6

## LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the **"Agreement"**) of Single Shipping LLC (the **"Company"**), is made and entered into effective as of the 19ᵗʰ day of June 2013, by and between the Company and Hudson Shipping Holdco LLC a limited liability company organized and existing under the laws of the Republic of the Marshall Islands (the **"Member"**).

## RECITALS

WHEREAS, the Member has arranged for the formation of the Company under the laws of the Republic of the Marshall Islands and in its capacity as the sole Member of the Company, now desires to organize the Company and provide for the management of the Company and its affairs and for the conduct of its business.

NOW, THEREFORE, it is agreed as follows:

## 1.     DEFINED TERMS

The terms used in this Agreement, with their initial letters capitalized, shall, unless the context thereof otherwise requires, have the meanings specified in this Section 1. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. When used in this Agreement, the following terms shall have the meanings set forth below:

> (a)     **"Act"** shall mean the Limited Liability Company Act of 1996 of the Republic of the Marshall Islands, as the same may be amended from time to time.

> (b)     **"Agreement"** shall mean this Limited Liability Company Agreement as originally executed and as amended, modified, supplemented or restated from to time in accordance with the terms of this Agreement.

> (c)     **"Authorized Signatories"** shall mean those individuals from time to time certified by the Manager as having the authority to act singly or jointly (as the case may be) for and on behalf of the Manager pursuant to the provisions of Section 4.1 of this Agreement.

> (d)     **"Business"** shall mean acquiring, financing, owning, operating, chartering and ultimately disposing of the shipping vessels and assets.

> (e)     **"Certificate"** shall mean the Certificate of Formation filed pursuant to the Act with the Republic of the Marshall Islands Registrar of Corporations pursuant to which the Company was organized as a Marshall Islands limited liability company.

|     | (f)  | **"Company"** shall have the meaning set forth in the preamble. |
|-----|------|----------------------------------------------------------------|

(f)    **"Company"** shall have the meaning set forth in the preamble.

(g)    **"Indemnified Party"** shall have the meaning set forth in Section 4.2 of this Agreement.

(h)    **"Investment"** shall mean any investment in the maritime business.

(i)    **"Manager"** shall mean Hudson Shipping Holdco LLC or any duly appointed successor thereto.

(j)    **"Member"** shall have the meaning set forth in the preamble and shall have the same meaning as the term "member" under the Act.

(k)    **"Person"** shall mean a natural person, corporation, partnership, joint venture, trust, estate, unincorporated association, limited liability company, or any other juridical entity.

## 2. ORGANIZATION

### 2.1 Formation.

The Company was formed as a limited liability company under the Act on 20 May 2013 by the filing of the Certificate with the office of the Marshall Islands Registrar of Corporations. Any and all actions in connection with such formation are hereby ratified, confirmed and approved.

### 2.2 Name.

The name of the Company formed by the filing of the Certificate is "Single Shipping LLC" and all Business of the Company shall be conducted in the name set forth in the Certificate or such other names that comply with applicable law as the Member may from time to time designate.

### 2.3 Purpose.

The purpose for which the Company is established is to engage in the Business and in any lawful activity permitted by the Act as the Company may deem necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the Business.

### 2.4 Registered Office; Registered Agent.

The registered office of the Company required by the Act to be maintained in the Republic of the Marshall Islands shall be the office of the initial registered agent named in the Certificate or such other office as the Member may designate from time to time in the manner provided by law. The registered agent of the Company in the Republic of Marshall Islands shall be the initial registered agent named in the Certificate or such other person or persons as the Member may designate from time to time in the manner provided by law.

### 2.5 Principal Office.

The principal office of the Company shall be the Company's registered office except as otherwise may be determined by the Member.

### 2.6 Term.

The Company shall have perpetual existence unless the Company is dissolved in accordance with the Act.

### 2.7 Liability to Third Parties.

The Member shall not be liable for the debts, obligations or liabilities of the Company, including, without limitation, under a judgment, decree or order of a court.

## 3. CAPITAL CONTRIBUTIONS

### 3.1 Capital Contributions.

The Member shall contribute such sums and/or assets as it, in its sole discretion, shall deem necessary or appropriate to enable the Company to carry out its Business.

### 3.2 No Interest on Capital Contributions.

Except as otherwise expressly provided herein, the Member shall not receive any interest on its capital contributions to the Company.

## 4. MANAGEMENT

### 4.1 Management By Manager.

The management of the Company shall be vested in the Manager. The Manager, acting through its Authorized Signatories, or through appointed delegates under including but not limited to any services agreements (if not the same as the Authorized Signatories) directly or indirectly may make all decisions and take all actions for the Company as in its sole discretion it shall deem necessary or appropriate to enable the Company to carry out the purposes for which the Company was formed including, without limitation, the following:

      (a)     entering into, making and performing contracts, agreements, undertakings and guarantees of whatsoever kind and nature in the name and on behalf of the Company, inclusive of this Agreement and any amendments and/or restatements thereof;

      (b)     setting aside reserves, opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

(c) selling, conveying, mortgaging, pledging, exchanging and disposing of property;

(d) incurring liabilities, borrowing money, issuing notes, bonds and other obligations and securing any of the Company's obligations by mortgage or pledge of any of the Company's property or income;

(e) collecting sums due to the Company; bringing and defending on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise;

(f) selecting, removing, and changing the authority and responsibility of lawyers, auditors and other advisers and consultants;

(g) issuing Powers of Attorney in favor of such persons as it may deem necessary or appropriate to carry out and implement any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1; and

(h) the adoption of such resolutions, including by unanimous written consent, as it may deem necessary or appropriate to approve any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1.

### 4.2 Indemnification.

The Company shall indemnify and hold harmless, to the fullest extent permitted by law, the Manager, and each officer, employee or duly appointed attorney-in-fact of the Manager (individually, an **"Indemnified Party"**) from and against all costs, losses, liabilities, and damages paid or incurred by such Indemnified Party in connection with the affairs of the Company.

## 5. DISTRIBUTIONS

### 5.1 Distributions/Available Cash.

The Member, in its capacity as sole Member, shall in its sole discretion determine from time to time to what extent (if any) the Company's cash on hand exceeds the current and anticipated needs of the Company. To the extent any such excess exists, the Member may make distributions to itself as sole Member or anyone else at the sole discretion of the Member, subject to Section 40 of the Act.

## 6. BOOKS AND RECORDS; FISCAL YEAR

### 6.1 Books and Records.

The books and records of the Company shall, at the cost and expense of the Company, be kept and cause to be kept by the Company at the principal office of the Company or at such other location as the Member may from time to time determine.

### 6.2 Fiscal Year.

Unless otherwise determined by the Member, the Company's books and records shall be kept on a December 31 calendar year basis and shall reflect all Company transactions and be appropriate and adequate for conducting the Company's affairs.

## 7. MISCELLANEOUS

### 7.1 Complete Agreement.

This Agreement constitutes the complete and exclusive statement of the agreement regarding the management and governance of the Company and it affairs and replaces and supersedes all prior agreements regarding the management and governance of the Company and its affairs.

### 7.2 Governing Law.

This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the Republic of the Marshall Islands without giving regard to principles of conflicts of law.

### 7.3 Headings.

All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

### 7.4 Severability.

If any provision of this Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

### 7.5 Execution in Counterparts.

This Agreement may be executed in one or more counterparts with the effect as if the parties executing the several counterparts had all executed one counterpart, but in such event each such counterpart shall constitute an original and all of such counterparts shall constitute one and the same agreement.

### 7.6 Amendment.

All amendments to this Agreement must be in writing and signed by the Company and the Member.

[Intentionally Left Blank]

IN WITNESS WHEREOF, this Limited Liability Company Agreement has been executed by a duly authorized representative of Company and the Member as of the date first set forth above.

Single Shipping LLC

By:
Name: John Römer & Adnan Mohammed
Title: Authorised signatories of the Manager

Hudson Shipping Holding LLC

By:
Name: John Römer & Adnan Mohammed
Title: Authorised signatories of the Manager

DVB Investment Management NV
Zeelandia Office Park
Kaya W.F.G. Mensing 14
Curaçao
Netherlands Antilles

The Manager

7

# EXHIBIT C4



# THE REPUBLIC OF THE MARSHALL ISLANDS

## REGISTRAR OF CORPORATIONS

RE:     **STAR TRANSPORTATION LLC**

REG. NO.:   **962462**

EXISTENCE: **June 21, 2013**

THIS IS TO CERTIFY that the within document is a true and correct copy of the **CERTIFICATE OF FORMATION** of the above named Limited Liability Company, duly filed with the Registrar of Corporations effective on the date indicated above pursuant to the Marshall Islands Limited Liability Company Act.

WITNESS my hand and the official seal of the Registry on **April 5, 2016**.

Deputy Registrar



# APOSTILLE

*(Hague Convention of 5 October 1961/*
*Convention de la Haye du October 1961)*

1. Country: The Republic of the Marshall Islands

***This Public Document***

2. has been signed by: Tanya L. Lawson

3. acting in the capacity of: Deputy Registrar, Republic of the Marshall Islands

4. bears the seal/stamp of: Registrar of Corporations, Republic of the Marshall Islands

***Certified***

5. at: Reston, Virginia      6. on: April 5, 2016

7. by: Special Agent of the Republic of the Marshall Islands

8. Number: R-10304– 04/16

9. Seal /stamp:            10: Signature:



# CERTIFICATE OF FORMATION

## OF

## STAR TRANSPORTATION LLC

### AS A

### LIMITED LIABILITY COMPANY

**REPUBLIC OF THE MARSHALL ISLANDS**

**REGISTRAR OF CORPORATIONS**

**DUPLICATE COPY**

The original of this Document was filed in
accordance with section 9 of the
Limited Liability Company Act on

June 21, 2013

Deputy Registrar

**NON RESIDENT**



Reg. No. 962462

**CERTIFICATE OF FORMATION OF**
**STAR TRANSPORTATION LLC**
**UNDER SECTION 9 OF THE LIMITED LIABILITY COMPANY ACT**

The undersigned, Hudson Shipping Holdco LLC, Manager of Star Transportation LLC, for the purpose of forming a Marshall Islands Limited Liability Company, hereby certifies:

1.  The name of the Limited Liability Company is: Star Transportation LLC.

2.  The address of its Registered Agent in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960. The name of its Registered Agent at such address is The Trust Company of the Marshall Islands, Inc.

3.  The formation date of the Limited Liability Company is the date of the filing of this Certificate of Formation with the Registrar or Deputy Registrar of Corporations.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation on this 21st day of June 2013.

Hudson Shipping Holdco LLC

Name: Akandro van Aerde & John Römer
Title: Authorised signatories of the Manager

DVB Investment Management n
Zeelandia Office Park
Kaya W.F.G. Mensing 14
Curaçao
Netherlands Antilles

The Manager

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## STAR TRANSPORTATION LLC

### A Marshall Islands Limited Liability Company

Dated: 19 June 2013

# TABLE OF CONTENTS

Page

1. DEFINED TERMS ......................................................................................... 1
2. ORGANIZATION ........................................................................................ 2
    2.1    Formation ........................................................................................... 2
    2.2    Name ................................................................................................. 2
    2.3    Purpose ............................................................................................. 2
    2.4    Registered Office; Registered Agent ................................................ 3
    2.5    Principal Office ................................................................................ 3
    2.6    Term .................................................................................................. 3
    2.7    Liability to Third Parties .................................................................. 3
3. CAPITAL CONTRIBUTIONS ...................................................................... 2
    3.1    Capital Contributions ....................................................................... 3
    3.2    No Interest on Capital Contributions ............................................... 3
4. MANAGEMENT .......................................................................................... 3
    4.1    Management By Manager .................................................................. 3
    4.2    Indemnification ................................................................................ 4
5. DISTRIBUTIONS ........................................................................................ 4
    5.1    Distributions/Available Cash ............................................................ 4
6. BOOKS AND RECORDS; FISCAL YEAR ................................................... 5
    6.1    Books and Records. .......................................................................... 5
    6.2    Fiscal Year ....................................................................................... 5
7. MISCELLANEOUS ..................................................................................... 5
    7.1    Complete Agreement ........................................................................ 5
    7.2    Governing Law ................................................................................. 5
    7.3    Headings. .......................................................................................... 5
    7.4    Severability ...................................................................................... 5
    7.5    Execution in Counterparts ................................................................ 5
    7.6    Amendment ....................................................................................... 6

i

## LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the **"Agreement"**) of Star Transportation LLC (the **"Company"**), is made and entered into effective as of the 19th day of June 2013, by and between the Company and Hudson Shipping Holdco LLC a limited liability company organized and existing under the laws of the Republic of the Marshall Islands (the **"Member"**).

### RECITALS

**WHEREAS**, the Member has arranged for the formation of the Company under the laws of the Republic of the Marshall Islands and in its capacity as the sole Member of the Company, now desires to organize the Company and provide for the management of the Company and its affairs and for the conduct of its business.

**NOW, THEREFORE**, it is agreed as follows:

## 1.  DEFINED TERMS

The terms used in this Agreement, with their initial letters capitalized, shall, unless the context thereof otherwise requires, have the meanings specified in this Section 1. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. When used in this Agreement, the following terms shall have the meanings set forth below:

(a)  **"Act"** shall mean the Limited Liability Company Act of 1996 of the Republic of the Marshall Islands, as the same may be amended from time to time.

(b)  **"Agreement"** shall mean this Limited Liability Company Agreement as originally executed and as amended, modified, supplemented or restated from time to time in accordance with the terms of this Agreement.

(c)  **"Authorized Signatories"** shall mean those individuals from time to time certified by the Manager as having the authority to act singly or jointly (as the case may be) for and on behalf of the Manager pursuant to the provisions of Section 4.1 of this Agreement.

(d)  **"Business"** shall mean acquiring, financing, owning, operating, chartering and ultimately disposing of the shipping vessels and assets.

(e)  **"Certificate"** shall mean the Certificate of Formation filed pursuant to the Act with the Republic of the Marshall Islands Registrar of Corporations pursuant to which the Company was organized as a Marshall Islands limited liability company.

(f)    **"Company"** shall have the meaning set forth in the preamble.

(g)    **"Indemnified Party"** shall have the meaning set forth in Section 4.2 of this Agreement.

(h)    **"Investment"** shall mean any investment in the maritime business.

(i)    **"Manager"** shall mean Hudson Shipping Holdco LLC or any duly appointed successor thereto.

(j)    **"Member"** shall have the meaning set forth in the preamble and shall have the same meaning as the term "member" under the Act.

(k)    **"Person"** shall mean a natural person, corporation, partnership, joint venture, trust, estate, unincorporated association, limited liability company, or any other juridical entity.

## 2. ORGANIZATION

### 2.1 Formation.

The Company was formed as a limited liability company under the Act on 20 May 2013 by the filing of the Certificate with the office of the Marshall Islands Registrar of Corporations. Any and all actions in connection with such formation are hereby ratified, confirmed and approved.

### 2.2 Name.

The name of the Company formed by the filing of the Certificate is "Star Transportation LLC" and all Business of the Company shall be conducted in the name set forth in the Certificate or such other names that comply with applicable law as the Member may from time to time designate.

### 2.3 Purpose.

The purpose for which the Company is established is to engage in the Business and in any lawful activity permitted by the Act as the Company may deem necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the Business.

### 2.4 Registered Office; Registered Agent.

The registered office of the Company required by the Act to be maintained in the Republic of the Marshall Islands shall be the office of the initial registered agent named in the Certificate or such other office as the Member may designate from time to time in the manner provided by law. The registered agent of the Company in the Republic of Marshall Islands shall be the initial registered agent named in the Certificate or such other person or persons as the Member may designate from time to time in the manner provided by law.

### 2.5 Principal Office.

The principal office of the Company shall be the Company's registered office except as otherwise may be determined by the Member.

### 2.6 Term.

The Company shall have perpetual existence unless the Company is dissolved in accordance with the Act.

### 2.7 Liability to Third Parties.

The Member shall not be liable for the debts, obligations or liabilities of the Company, including, without limitation, under a judgment, decree or order of a court.

## 3. CAPITAL CONTRIBUTIONS

### 3.1 Capital Contributions.

The Member shall contribute such sums and/or assets as it, in its sole discretion, shall deem necessary or appropriate to enable the Company to carry out its Business.

### 3.2 No Interest on Capital Contributions.

Except as otherwise expressly provided herein, the Member shall not receive any interest on its capital contributions to the Company.

## 4. MANAGEMENT

### 4.1 Management By Manager.

The management of the Company shall be vested in the Manager. The Manager, acting through its Authorized Signatories, or through appointed delegates under including but not limited to any services agreements (if not the same as the Authorized Signatories) directly or indirectly may make all decisions and take all actions for the Company as in its sole discretion it shall deem necessary or appropriate to enable the Company to carry out the purposes for which the Company was formed including, without limitation, the following:

> (a) entering into, making and performing contracts, agreements, undertakings and guarantees of whatsoever kind and nature in the name and on behalf of the Company, inclusive of this Agreement and any amendments and/or restatements thereof;
>
> (b) setting aside reserves, opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

(c)     selling, conveying, mortgaging, pledging, exchanging and disposing of property;

(d)     incurring liabilities, borrowing money, issuing notes, bonds and other obligations and securing any of the Company's obligations by mortgage or pledge of any of the Company's property or income;

(e)     collecting sums due to the Company; bringing and defending on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise;

(f)     selecting, removing, and changing the authority and responsibility of lawyers, auditors and other advisers and consultants;

(g)     issuing Powers of Attorney in favor of such persons as it may deem necessary or appropriate to carry out and implement any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1; and

(h)     the adoption of such resolutions, including by unanimous written consent, as it may deem necessary or appropriate to approve any decisions made or actions taken on behalf of the Company pursuant to this Section 4.1.

## 4.2     Indemnification.

The Company shall indemnify and hold harmless, to the fullest extent permitted by law, the Manager, and each officer, employee or duly appointed attorney-in-fact of the Manager (individually, an "**Indemnified Party**") from and against all costs, losses, liabilities, and damages paid or incurred by such Indemnified Party in connection with the affairs of the Company.

## 5.     DISTRIBUTIONS

### 5.1     Distributions/Available Cash.

The Member, in its capacity as sole Member, shall in its sole discretion determine from time to time to what extent (if any) the Company's cash on hand exceeds the current and anticipated needs of the Company. To the extent any such excess exists, the Member may make distributions to itself as sole Member or anyone else at the sole discretion of the Member, subject to Section 40 of the Act.

## 6.    BOOKS AND RECORDS; FISCAL YEAR

### 6.1    Books and Records.

The books and records of the Company shall, at the cost and expense of the Company, be kept and cause to be kept by the Company at the principal office of the Company or at such other location as the Member may from time to time determine.

### 6.2    Fiscal Year.

Unless otherwise determined by the Member, the Company's books and records shall be kept on a December 31 calendar year basis and shall reflect all Company transactions and be appropriate and adequate for conducting the Company's affairs.

## 7.    MISCELLANEOUS

### 7.1    Complete Agreement.

This Agreement constitutes the complete and exclusive statement of the agreement regarding the management and governance of the Company and it affairs and replaces and supersedes all prior agreements regarding the management and governance of the Company and its affairs.

### 7.2    Governing Law.

This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the Republic of the Marshall Islands without giving regard to principles of conflicts of law.

### 7.3    Headings.

All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

### 7.4    Severability.

If any provision of this Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

### 7.5    Execution in Counterparts.

This Agreement may be executed in one or more counterparts with the effect as if the parties executing the several counterparts had all executed one counterpart, but in such event each such counterpart shall constitute an original and all of such counterparts shall constitute one and the same agreement.

### 7.6    Amendment.

All amendments to this Agreement must be in writing and signed by the Company and the Member.

[Intentionally Left Blank]

IN WITNESS WHEREOF, this Limited Liability Company Agreement has been executed by a duly authorized representative of Company and the Member as of the date first set forth above.

Star Transportation LLC

By:

Name: John Römer & Adnan Mohammed
Title: Authorised signatories of the Manager

Hudson Shipping Holdco LLC

By:

Name: John Römer & Adnan Mohammed
Title: Authorised signatories of the Manager

DVB Investment Management.
Zeelandia Office Park
Kaya W.F.G. Mensing
Curaçao
Netherland's Antilles

The Manager

7

# EXHIBIT D

# REPUBLIC OF THE MARSHALL ISLANDS
## OFFICE OF THE REGISTRAR OF CORPORATIONS

## CERTIFICATE OF INCORPORATION

I HEREBY CERTIFY that

**Future Holdings Ltd.**

is duly incorporated and has filed articles of incorporation under the provisions of the Marshall Islands Business Corporations Act on

**July 11, 2013**

WITNESS my hand and the official seal of the Registry on **July 11, 2013**.



_____

Deputy Registrar

Reg. No. 62614

## CERTIFICATE OF INCUMBENCY

### OF

### Future Holdings Ltd.

We, The Trust Company of the Marshall Islands, Inc. (TCMI) of Majuro, Republic of the Marshall Islands, being the duly appointed Registered Agent of Future Holdings Ltd. (the "Company"), a non-resident domestic company incorporated in the Marshall Islands on July 11, 2013 with corporation number 62614, hereby confirm the following:

1. The Company is in Good Legal Standing in the Marshall Islands.

2. As far as can be determined from the documents recorded with the Registered Agent of the Company at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Republic of the Marshall Islands MH 96960:

    a. The Company's operating address is: Buyukdere Cad. Yapi Kredi Plaza A Blok K. 12 34430 Istanbul Turkey.

    b. The number of shares the Corporation is authorized to issue is: five hundred (500) registered shares without par value.

    c. The current directors are:

| Name | Optional Information |
|------|----------------------|
| ALI TUGRUL TOKGOZ | |

    d. The current officers are:

| Name | Title |
|------|-------|
| ALI TUGRUL TOKGOZ | President |
| ALI TUGRUL TOKGOZ | Secretary |

    e. The current shareholders are:

| Name | No. of Shares Held |
|------|--------------------|
| GULSUN NAZLI KARAMEHMET WILLIAMS | 375 |
| ALI TUGRUL TOKGOZ | 125 |

WITNESS my hand and the official seal of The Trust Company of the Marshall Islands, Inc. on July 16, 2013.

The Trust Company of the Marshall Islands, Inc.
Registered Agent
Authorized Signature

# EXHIBIT E

# CERTIFICATE OF INCUMBENCY

## OF

## Future Holdings Ltd.

We, The Trust Company of the Marshall Islands, Inc. (TCMI) of Majuro, Republic of the Marshall Islands, being the duly appointed Registered Agent of Future Holdings Ltd. (the "Company"), a non-resident domestic company incorporated in the Marshall Islands on July 11, 2013 with corporation number 62614, hereby confirm the following:

1. The Company is in Good Legal Standing in the Marshall Islands.

2. As far as can be determined from the documents recorded with the Registered Agent of the Company at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Republic of the Marshall Islands MH 96960:

   a. The Company's operating address is: Buyukdere Cad. Yapi Kredi Plaza A Blok K. 12 34430 Istanbul Turkey

   b. The number of shares the Corporation is authorized to issue is five hundred (500) registered shares without par value.

   c. The current directors are:

   | Name | Optional Information |
   |------|----------------------|
   | ALI TUGRUL TOKGOZ | |

   d. The current officers are:

   | Name | Title |
   |------|-------|
   | ALI TUGRUL TOKGOZ | President |
   | ALI TUGRUL TOKGOZ | Secretary |

   e. The current shareholders are:

   | Name | No. of Shares Held |
   |------|--------------------|
   | GULSUN NAZLI KARAMEHMET WILLIAMS | 375 |
   | ALI TUGRUL TOKGOZ | 125 |

WITNESS my hand and the official seal of The Trust Company of the Marshall Islands, Inc. on **February 26, 2016.**

The Trust Company of the Marshall Islands, Inc.
Registered Agent
Authorized Signature

On this 26th day of February, 2016 before me personally came G.Sahbal empowered as a Sole signatory of the Registered Agent, known to me to be the individual who executed the foregoing instrument and she duly acknowledged to me that the execution was her act and deed.

A.Kaplama
Special Agent

# APOSTILLE

*(Hague Convention of 5 October 1961/*
*Convention de la Haye du October 1961)*

1. Country: The Republic of the Marshall Islands

*This Public Document*

2. has been signed by: A.Kaplama

3. acting in the capacity of: Special Agent, Republic of the Marshall Islands

4. bears the seal/stamp of: Registrar of Corporations, Republic of the Marshall Islands

## Certified

5. at: Istanbul, Turkey      6. on: February 26, 2016

7. by: Special Agent of the Republic of the Marshall Islands

8. Number: U-10354-2/2016

9. Seal /stamp:      10: Signature: 

# EXHIBIT F

# FUTURE HOLDINGS LTD.

### Trust Company Complex Ajeltake Road, Ajeltake Island, Majuro, The Marshall Islands MH96960

29 February 2016

To Whom It May Concern,

We herewith confirm that;

(i)     We are the 100% shareholders of all the following seven SPCs. which is evidenced by the Certificates of Incumbency all dated 11th of July 2013 and nothing in the shareholding structure has changed in the intervening period.

         a.   Amsterdam Maritime Ltd
         b.   Barcelona Maritime Ltd
         c.   Istanbul Maritime Ltd
         d.   London Maritime Ltd
         e.   Boston Maritime Ltd
         f.   Paris Maritime Ltd
         g.   Milan Maritime Ltd

(ii)     As per the enclosed Certificate of Incumbency dated 26th of February 2016, our UBOs are Mrs. Gulsun Nazli Karamehmet Williams & Mr. Ali Tugrul Tokgoz.

Yours Sincerely;

Ali Tugrul Tokgoz
Director
for and on behalf of
FUTURE HOLDINGS LTD

# EXHIBIT G

## CERTIFICATE OF INCUMBENCY

### OF

### Amsterdam Maritime Ltd.

We, The Trust Company of the Marshall Islands, Inc. (TCMI) of Majuro, Republic of the Marshall Islands, being the duly appointed Registered Agent of Amsterdam Maritime Ltd. (the "Company"), a non-resident domestic company incorporated in the Marshall Islands on June 21, 2013 with corporation number 62272, hereby confirm the following:

1. The Company is in Good Legal Standing in the Marshall Islands.

2. As far as can be determined from the documents recorded with the Registered Agent of the Company at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Republic of the Marshall Islands MH 96960:

    a.     The Company's operating address is: Buyukdere Cad. Yapi Kredi Plaza A Blok K. 12 34430 Istanbul Turkey

    b.     The number of shares the Corporation is authorized to issue is: five hundred (500) registered shares without par value.

    c.     The current directors are:

| Name | Optional Information |
|---|---|
| ALI TUGRUL TOKGOZ | |

    d.     The current officers are:

| Name | Title |
|---|---|
| ALI TUGRUL TOKGOZ | President |
| ALI TUGRUL TOKGOZ | Secretary |

    e.     The current shareholders are:

| Name | No. of Shares Held |
|---|---|
| Future Holdings Ltd. | 500 |

WITNESS my hand and the official seal of The Trust Company of the Marshall Islands, Inc. on July 11, 2013.

The Trust Company of the Marshall Islands, Inc.
Registered Agent
Authorized Signature

OF THE MARSHALL ISLANDS
CORPORATE
SEAL
1990
REPUBLIC OF THE MARSHALL ISLANDS
THE TRUST COMPANY OF THE MARSHALL ISLANDS, INC.

# REPUBLIC OF THE MARSHALL ISLANDS
## OFFICE OF THE REGISTRAR OF CORPORATIONS

## CERTIFICATE OF INCORPORATION

I HEREBY CERTIFY that

**Amsterdam Maritime Ltd.**

is duly incorporated and has filed articles of incorporation under the provisions of the Marshall Islands Business Corporations Act on

**June 21, 2013**

WITNESS my hand and the official seal of the Registry on **June 21, 2013.**

_____
Deputy Registrar

Reg. No. 62272

# EXHIBIT H

## REPUBLIC OF THE MARSHALL ISLANDS
### OFFICE OF THE REGISTRAR OF CORPORATIONS

# CERTIFICATE OF INCORPORATION

I HEREBY CERTIFY that

**Barcelona Maritime Ltd.**

is duly incorporated and has filed articles of incorporation under the provisions of the Marshall
Islands Business Corporations Act on

**June 21, 2013**

WITNESS my hand and the official seal of
the Registry on **June 21, 2013**.

_____
Deputy Registrar



**Reg. No. 62273**

# CERTIFICATE OF INCUMBENCY

## OF

### Barcelona Maritime Ltd.

We, The Trust Company of the Marshall Islands, Inc. (TCMI) of Majuro, Republic of the Marshall Islands, being the duly appointed Registered Agent of Barcelona Maritime Ltd. (the "Company"), a non-resident domestic company incorporated in the Marshall Islands on June 21, 2013 with corporation number 62273, hereby confirm the following:

3. The Company is in Good Legal Standing in the Marshall Islands.

4. As far as can be determined from the documents recorded with the Registered Agent of the Company at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Republic of the Marshall Islands MH 96960:

   a. The Company's operating address is: Buyukdere Cad, Yapi Kredi Plaza A Blok K. 12 34430 Istanbul Turkey

   b. The number of shares the Corporation is authorized to issue is: five hundred (500) registered shares without par value.

   c. The current directors are:

   | Name | Optional Information |
   | --- | --- |
   | ALI TUGRUL TOKGOZ | |

   d. The current officers are:

   | Name | Title |
   | --- | --- |
   | ALI TUGRUL TOKGOZ | President |
   | ALI TUGRUL TOKGOZ | Secretary |

   e. The current shareholders are:

   | Name | No. of Shares Held |
   | --- | --- |
   | Future Holdings Ltd. | 500 |

WITNESS my hand and the official seal of The Trust Company of the Marshall Islands, Inc. on **July 11, 2013.**

The Trust Company of the Marshall Islands, Inc.
Registered Agent
Authorized Signature

# EXHIBIT I

# REPUBLIC OF THE MARSHALL ISLANDS
## OFFICE OF THE REGISTRAR OF CORPORATIONS

## CERTIFICATE OF INCORPORATION

I HEREBY CERTIFY that

**Boston Maritime Ltd.**

is duly incorporated and has filed articles of incorporation under the provisions of the Marshall Islands Business Corporations Act on

**June 21, 2013**

WITNESS my hand and the official seal of the Registry on **June 21, 2013**.



_____

Deputy Registrar

Reg. No. 62274

# CERTIFICATE OF INCUMBENCY

## OF

### Boston Maritime Ltd.

We, The Trust Company of the Marshall Islands, Inc. (TCMI) of Majuro, Republic of the Marshall Islands, being the duly appointed Registered Agent of Boston Maritime Ltd. (the "Company"), a non-resident domestic company incorporated in the Marshall Islands on June 21, 2013 with corporation number 62274, hereby confirm the following:

5. The Company is in Good Legal Standing in the Marshall Islands.

6. As far as can be determined from the documents recorded with the Registered Agent of the Company at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Republic of the Marshall Islands MH 96960:

    a. The Company's operating address is: Buyukdere Cad. Yapi Kredi Plaza A Blok K. 12 34430 Istanbul Turkey

    b. The number of shares the Corporation is authorized to issue is: five hundred (500) registered shares without par value.

    c. The current directors are:

| Name | Optional Information |
|------|---------------------|
| ALI TUGRUL TOKGOZ | |

    d. The current officers are:

| Name | Title |
|------|-------|
| ALI TUGRUL TOKGOZ | President |
| ALI TUGRUL TOKGOZ | Secretary |

    e. The current shareholders are:

| Name | No. of Shares Held |
|------|-------------------|
| Future Holdings Ltd. | 500 |

WITNESS my hand and the official seal of The Trust Company of the Marshall Islands, Inc. on July 11, 2013.

The Trust Company of the Marshall Islands, Inc.
Registered Agent
Authorized Signature

# EXHIBIT J

# In The Matter Of:

*ECLIPSE LIQUIDITY, INC et al V*
*AVOR NAVIGATION LTD et al*

---

*Nazli Williams*
*January 14, 2016*

---

*European Deposition Services*
*59 Chesson Road*
*London W14 9QS*
*United Kingdom*
*www.european-depositions.com*



Original File 140116Williams[1].txt
Min-U-Script® with Word Index

Page 37

1  not her e-mail.
2      A. Yes, it has nothing.
3      MR GAITAS: Well, can you explain it? You
4  know Mr Mat?
5      A. Yes, I do.
6      Q. On October 2014 he was not working for
7  Advantage Tankers, was he?
8      A. It is an e-mail, I don't think it is
9  really a big deal. You can ask him about this.
10     Q. I will ask him about it?
11     A. Yes. I am not on these e-mails.
12     Q. Let's go into the text of this e-mail.
13  If you look at page 5188:
14     "We have an agreed revised term sheet
15  whereby the loan amount has been increased to
16  61 million from the previous agreed amount of
17  51 million. So basically we achieved what we have
18  asked in Hamburg for the above ones which was crucial
19  for the success of the deal."
20     If you go further down on the page 5189
21  where it starts:
22     "DVB; is proceeding with our proposed terms
23  in return for some adjustments on product deal.
24  Commerzbank; we had some back and forth but my
25  feeling is Commerzbank is ready to proceed."

Page 38

1      Then look at the last penultimate line:
2      "Needless to say once again we need your
3  valuable support."
4      Who is he referring to when he says "we
5  need your support". Who is this "we" he refers to?
6      MR QUARTARO: I object. It is not her
7  e-mail, she didn't write it. If the witness has a
8  belief what the author was referring to.
9      MR GAITAS: That is my question. It is
10  always if she knows who he refers to. If she has no
11  idea, then she has no idea. Do you know who Mr Mat
12  is talking about?
13     A. No, I mean I think you can ask
14  Mr Mehmet Mat himself. The short answer to your
15  question is yes, I have an idea.
16     Q. What is your idea?
17     A. From the names of the banks I can
18  assume that these are conversations he probably had
19  in efforts to actually get the Company off the
20  ground.
21     Q. And on whose behalf was Mr Mat
22  speaking?
23     A. I don't know.
24     Q. You know that Mr Mat at the time on
25  October 30th, 2014 was employed by Geden Holdings

Page 39

1  Limited?
2      A. I don't know specifically if it was the
3  holding company, but I knew of his relations to
4  Geden, yes.
5      Q. And his relation to Geden was that he
6  was chief financial officer, perhaps?
7      A. Perhaps.
8      Q. Do you speak with him during this
9  period of time in October?
10     A. I spoke mostly with Tugrul, our CEO.
11     Q. Not with Mr Mat?
12     A. Not so much.
13     Q. You spoke some?
14     A. No, mostly with Tugrul.
15     Q. If you go over to the next page, 5190,
16  there is an e-mail that starts at the bottom of this
17  page, and do you see the date of the transmission of
18  this e-mail is October 6th, 2014, do you agree?
19     A. I see it.
20     Q. It starts:
21     "By way of an update please be advised as
22  follows. Please note that Future Holdings,
23  Centerbridge and NSF have decided to terminate the
24  efforts for c0-investing in a joint venture for the
25  crude vessels.

Page 40

1      Future Holdings is still willing to proceed
2  with the crude investment and decided to proceed
3  alone."
4      What's Future Holdings, do you know?
5      A. At the moment it is a non-operative
6  company currently.
7      Q. At the time of this e-mail?
8      A. I don't recall what it was. You know I
9  am reading it on his e-mail so I don't know exactly
10  what it was, but it was the holding company. I am
11  just going to guess now, so I would rather not.
12     Q. Your understanding is that Geden
13  Holdings was a holding company, what did it hold?
14     A. Look, this is his e-mail, I don't know
15  even what relation you are asking me. Future
16  Holdings today as it stands is a non operative
17  company, so ...
18     Q. On page 5191, move just a little bit
19  down, just the line above the number:
20     "With reference to the terms previously
21  offered by DVB, we would like the following changes
22  on the term sheet to be considered by yourselves.
23     1: shareholder of Guarantor: Future
24  Holdings Limited. (Majority owned by Mrs Karamehmet
25  Williams)."?

Page 41

1      A.  Yes.
2      Q.  Did you own Future Holdings?
3      A.  Yes, and I still do.  I told you it is
4  a non-operative company at the moment.
5      Q.  When I asked you previously you didn't
6  seem to know?
7      A.  I didn't know in relation to what
8  Mehmet Mat's e-mail was saying so ...
9      Q.  Let me ask you this, that Company on
10  October 6th, 2014 owned nothing?
11      A.  It is a holding company.
12      Q.  What did it hold?
13      A.  It was going to be the holding company
14  that would hold the tankers.
15      Q.  But what property did this Company hold
16  on October 6th, 2014?
17      A.  I don't know what you are referring to.
18      Q.  What assets did they have, it is a
19  Company that you owned at the time and it was going
20  to do a deal to buy a bunch of tankers?
21      A.  That is correct.
22      Q.  What assets did Future Holdings hold at
23  the time?
24      A.  I don't recall.  No assets, I suppose
25  is the answer.

Page 42

1      Q.  Where was Future Holdings Company
2  incorporated?
3      A.  I believe it was the Marshall Islands,
4  but I am not one hundred percent sure right now
5  because I have not dealt with that name and Company
6  for a while.
7      Q.  Who were its directors?
8      A.  I think it was me and Tugrul.
9      Q.  Where are the records of this Company
10  kept?
11      A.  Why do you ask?
12      MR QUARTARO: If you know the answer to the
13  question answer, if you don't you can say that too.
14      A.  I can't recall right now.
15      MR GAITAS: Please don't instruct the
16  witness. I am going to object to you instructing the
17  witness. If you don't know answer "I don't know"?
18      MR QUARTARO: She is entitled to say if she
19  knows, George.
20      MR GAITAS: She knows and we set this as a
21  ground rule.  Not to answer if she doesn't know is a
22  ground rule.  There is no need to repeat it every
23  time I ask a question.
24      MR QUARTARO: But you are asking her about
25  documents that she's not on.  I think the questions

Page 43

1  need to be clear, "if you know".  There is not a lot
2  of foundation to that.
3      MR GAITAS: We just laid that out once, but
4  please not every time I ask the question, "I don't
5  know".
6      Now, we are going to the previous page that
7  we looked, 5190, where it says:
8      "Please note Future Holdings and
9  Centerbridge and NSF have decided to terminate the
10  efforts for co-investing in a joint venture for the
11  crude vessels."?
12      A.  I see it.
13      Q.  "Future Holdings is still willing to
14  proceed with the crude investment and decided to
15  proceed alone."?
16      What ability did Future Holdings have at
17  the time to proceed alone to purchase however many
18  tanks, 10, 11 that were up for sale?
19      A.  Please ask again?
20      Q.  What ability did Future Holdings have
21  at the time to purchase a number of tankers?
22      A.  Equity.
23      Q.  What equity did it have?
24      A.  What do you mean what equity?
25      Q.  I asked you what ability, financial

Page 44

1  ability did Future Holdings have at the time, did it
2  have any property, any money?
3      A.  No.  I will say I don't know.
4      Q.  It is your Company and you don't know?
5      A.  You are asking in relation to these
6  e-mails so I don't know exactly I should answer on
7  the back of these e-mails.  If you want to ask me --
8      Q.  It is a very simple question.  Forget
9  the e-mails.  On October 6th, 2014 did Future
10  Holdings have any assets?
11      A.  I did.  I had already proposed to
12  invest, so ...
13      Q.  So your assets were Future Holdings
14  assets?
15      MR QUARTARO: Objection.
16      A.  Future doesn't mean anything to me
17  right now really.
18      MR GAITAS: Did it then?
19      A.  Yes, it was owned by me but, again, it
20  is not something that materialized.
21      Q.  What do you mean didn't materialize?
22      A.  That Company is not in -- is not
23  operative, that is what I mean.
24      Q.  Was it operative then?
25      A.  Not quite yet, the Company was in

# EXHIBIT K FILED UNDER SEAL

# EXHIBIT L

# In The Matter Of:

*ECLIPSE LIQUIDITY, INC et al V*
*AVOR NAVIGATION LTD et al*

*Mehmet Mat*
*January 15, 2016*

*European Deposition Services*
*59 Chesson Road*
*London W14 9QS*
*United Kingdom*
*www.european-depositions.com*



Original File 150116Mat[1].txt
Min-U-Script® with Word Index

Page 1

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
2                    HOUSTON DIVISION

3

4   ECLIPSE LIQUIDITY, INC.,

5            Plaintiff,

6

7        v.

8

9   AVOR NAVIGATION LTD.; ADVANTAGE
    ARROW SHIPPING, LLC; GENEL C.A. NO. 4:15-CV-1645
10  DENIZCILIK NAKLIYATI A.S. A/K/A
    GEDEN LINES; ADVANTAGE TANKERS,
11  LLC; ADVANTAGE HOLDINGS, LLC; and
    FORWARD HOLDINGS, LLC
12

13           Defendants.

14

15  PSARA ENERGY, LTD.,

16           Plaintiff,

17

18       v.

19

20  SPACE SHIPPING, LTD.; ADVANTAGE
    ARROW SHIPPING, LLC; GENEL
21  DENIZCILIK NAKLIYATI A.S. A/K/A
    GEDEN LINES; ADVANTAGE TANKERS,
22  C.A. NO. 4:15-CV-1673 LLC;
    ADVANTAGE HOLDINGS, LLC; and
23  FORWARD HOLDINGS, LLC

24       Defendants.

25

Page 2

1   TANK PUNK, INC.,

2

3            Plaintiff

4

5

6   SPIKE SHIPPING, LTD.; ADVANTAGE
    ARROW SHIPPING, LLC; GENEL C.A.
7   NO. 4:15-CV-01675
    DENIZCILIK NAKLIYATI A.S. A/K/A
8   GEDEN LINES; ADVANTAGE TANKERS,
    LLC; ADVANTAGE HOLDINGS, LLC;
9   And FORWARD HOLDINGS, LLC

10

11           Defendants.

12

13

14

15          Deposition of Mehmet Mat

16

17          Taken at the offices of:

18

19          Watson, Farley & Williams

20              15 Appold Street

21              London, EC2A 2HB

22

23          Friday, 15th January 2016

24              At 10.05 a.m.

25

Page 3

1   For the Plaintiffs:

2

3              George A. Gaitas
               Jonathan Chalos
4              CHALOS & CO. P.C.
               7210 Tickner Street
5              Houston, TX 77055
               Tel: +713-936-2427
6              gaitas@chaloslaw.com

7

8   For the Advantage Defendants:

9

10

11             Neil Quartaro
               WATSON, FARLEY, AND WILLIAMS (NEW YORK) LLP
12             1133 Avenue of the Americas, 11th Floor
               New York, New York 10036
13             nquartaro@wfw.com

14

15  Also Present:

16             Kay Hendrick - Court Reporter

17

18

19

20

21

22

23

24

25

Page 4

1                  I N D E X

2

3   MEHMET MAT                                      5

4   Examination by Mr Gaitas:                       5

    Cross-examination by Mr Quartaro:              64

5

6              E X H I B I T S

7   1   ... ... ... ... ... ... ... ...5

8   2   ... ... ... ... ... ... ... ...8

9

10

11  3   ... ... ... ... ... ... ... .22

12

13  4   ... ... ... ... ... ... ... .23

14

15  5   ... ... ... ... ... ... ... .38

16

17  6   ... ... ... ... ... ... ... .56

18

19  7   ... ... ... ... ... ... ... .61

20

21  8   ... ... ... ... ... ... ... .62

22

23  9   ... ... ... ... ... ... ... .62

24

25  10  ... ... ... ... ... ... ... .63

Page 45

1  question.  You can answer.
2      **A. I see no wrongdoing in there.**
3      **MR GAITAS:** Okay.  If you go to page 5191
4  of this bundle of e-mails?
5      **A. Yes.**
6      Q. The guarantor was going to be in the
7  first full paragraph, you referred to it as the
8  Newco Advantage Tankers AR, what does that mean, it
9  was going to be a new company?
10     **A. Yes, a new company to be incorporated,**
11 **the name Advantage Tankers which we have reserved the**
12 **names etc.**
13     Q. And there is mention of an entity
14 called Future Holdings, what is that?
15     **A. Yes, Future Holdings was the Company**
16 **that belongs to Mrs Williams and she intended to use**
17 **that Company in case of the joint venture with NSF**
18 **and Centerbridge and, therefore when she wanted to**
19 **act alone she has set up another Company to avoid any**
20 **possible conflicts that may arise in the future, and**
21 **she wanted to work with a clean cut company Forward**
22 **Holdings.**
23     Q. When you were talking with Mr Schubert
24 Advantage Tankers was just a name reserved?
25     **A. Right.**

Page 46

1      Q. And Future Holdings was a Company that
2  was just a name again, it didn't have any assets?
3      **A. Correct.**
4      Q. Or any money?
5      **A. Correct.**
6      Q. And how was a Company with no assets
7  going to guarantee debts?
8      **A. I mean we knew that the equity would be**
9  **invested and that the equity would be used towards**
10 **the acquisition of the assets. Without the equity**
11 **then there would be no deal and we wouldn't be able**
12 **to buy the ships.**
13     Q. Let me ask you something, was there any
14 correspondence in writing with Miss Karamehmet when
15 you were making these representations to the banks,
16 did you have anything in writing from her that she
17 was going to commit?
18     **A. I had no direct communications with**
19 **Mrs Williams at that time. My CEO was talking to her**
20 **at that time and I don't know if they have**
21 **encountered any written things.**
22     Q. How could you make these
23 representations to lenders if you have nothing in
24 writing, if you had seen nothing in writing, if she
25 was going to commit or not going to commit any

Page 47

1  money, any contract or any promise in writing and
2  signed?
3      **A. I mean it is known personally and they**
4  **have a certain knowledge that she will be committing.**
5      Q. Had you met her before?
6      **A. No, but my CEO had met her before.**
7      Q. Did you talk to Mr Karamehmet about
8  this?
9      **A. No, I did not.**
10     Q. He was your sole shareholder?
11     **A. Yes, but I have my CEO dealing with**
12 **him.**
13     Q. So was it all done on the faith to
14 Mr Tokgoz?
15     **A. Yes.**
16     Q. Let's look at another e-mail in this
17 bundle, page 5188.  This is dated October 30th,
18 2014, yes?
19     **MR QUARTARO:** This is Bates page 51?
20     **MR GAITAS:** 5188 at the lower end.
21     **A. I see it.**
22     Q. Would you agree that this is addressed
23 to Mr Sebastian Schubert?
24     **A. Yes, I do.**
25     Q. Of Nord LB?

Page 48

1      **A. Umm hmm.**
2      Q. And you report to him that CIT has
3  agreed revised terms?
4      **A. Yes.**
5      Q. And Unicredit is working.  You say to
6  him in the last line of this e-mail:
7  "So basically we achieved what we have
8  asked in Hamburg for the above ones which was crucial
9  for the success of the deal."
10     And in the last paragraph you say:
11 "Needless to say once again we need your
12 valuable support for the above projects as well as
13 the bilateral aframax loan for the successful closing
14 on the project."
15     Mr Mat, who is "we"?
16     **A. I am writing this e-mail on behalf of**
17 **Advantage Tankers.**
18     Q. Advantage Tankers does not exist?
19     **A. We are working on a project with**
20 **Advantage Tankers, we reserved the names and when we**
21 **are making the representations to the bank about the**
22 **whole thing the project is called Advantage Tankers.**
23     Q. Let's look at it again.  Advantage
24 Tankers on October 30th, does not exist.  You have
25 not talked to Mr Karamehmet himself.  You are a

# EXHIBIT M

# In The Matter Of:

*ECLIPSE LIQUIDITY, INC et al V*
*AVOR NAVIGATION LTD*

---

*Ali Tugrul Tokgoz*
*January 13, 2016*

---

*European Deposition Services*
*59 Chesson Road*
*London W14 9QS*
*United Kingdom*
*www.european-depositions.com*



Original File 130116Tokgoz[1].txt
Min-U-Script® with Word Index

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     HOUSTON DIVISION

 3

 4   ECLIPSE LIQUIDITY, INC.,

 5            Plaintiff,

 6

 7            v.

 8

 9   AVOR NAVIGATION LTD.; ADVANTAGE
     ARROW SHIPPING, LLC; GENEL C.A. NO. 4:15-CV-1645
10   DENIZCILIK NAKLIYATI A.S. A/K/A
     GEDEN LINES; ADVANTAGE TANKERS,
11   LLC; ADVANTAGE HOLDINGS, LLC; and
     FORWARD HOLDINGS, LLC
12

13                     Defendants.

14

15   PSARA ENERGY, LTD.,

16            Plaintiff,

17

18            v.

19

20   SPACE SHIPPING, LTD.; ADVANTAGE
     ARROW SHIPPING, LLC; GENEL
21   DENIZCILIK NAKLIYATI A.S. A/K/A
     GEDEN LINES; ADVANTAGE TANKERS,
22   C.A. NO. 4:15-CV-1673 LLC;
     ADVANTAGE HOLDINGS, LLC; and
23   FORWARD HOLDINGS, LLC

24            Defendants.

25
```

Page 2

```
 1   TANK PUNK, INC.,

 2

 3            Plaintiff

 4

 5

 6   SPIKE SHIPPING, LTD.; ADVANTAGE
     ARROW SHIPPING, LLC; GENEL C.A.
 7   NO. 4:15-CV-01675
     DENIZCILIK NAKLIYATI A.S. A/K/A
 8   GEDEN LINES; ADVANTAGE TANKERS,
     LLC; ADVANTAGE HOLDINGS, LLC;
 9   And FORWARD HOLDINGS, LLC

10

11            Defendants.

12

13

14

15         Deposition of Ali Tugrul Tokgoz

16

17            Taken at the offices of:

18

19         Watson, Farley & Williams

20               15 Appold Street

21               London, EC2A 2HB

22

23         Wednesday, 13th January 2016

24               At 10.00 a.m.

25
```

Page 3

```
 1   For the Plaintiffs:

 2

 3               George A. Gaitas
                 Jonathan Chalos
 4               CHALOS & CO. P.C.
                 7210 Tickner Street
 5               Houston, TX 77055
                 Tel: +713-936-2427
 6               gaitas@chaloslaw.com

 7

 8

 9   For the Advantage Defendants:

10

11

12               Neil Quartaro
                 WATSON, FARLEY, AND WILLIAMS (NEW YORK) LLP
13               1133 Avenue of the Americas, 11th Floor
                 New York, New York 10036
14               nquartaro@wfw.com

15

16   Also Present:

17            Kay Hendrick - Court Reporter

18

19

20

21

22

23

24

25
```

Page 4

```
 1                   I N D E X

 2

 3   ALI TUGRUL TOKGOZ                              8

 4   Examination by Mr Gaitas:                      8

 5

 6                E X H I B I T S

 7

 8   1   .........................................9

 9

10   2   ........................................11

11

12   3   ........................................14

13

14   4   ........................................20

15

16   5   ........................................21

17

18   6   ........................................28

19

20   7   ........................................39

21

22   8   ........................................51

23

24   9   ........................................56

25
```

Page 65

1     **A. Yes.**
2     Q. You signed this in order for Forward
3  Holdings to come into being?
4     **A. Correct.**
5     Q. And all of these documents, Exhibits 9,
6  10 and 11 are all dated December 8th --
7     **A. Yes.**
8     Q. -- 2014. I will show you another
9  document that I will ask the Court Reporter to mark
10  as Exhibit 12.
11     (Exhibit 12 marked for identification)
12     Do you see that?
13     **A. Yes.**
14     Q. In the middle of the page approximately
15  there is an e-mail that continues on to the next
16  page. Do you see the e-mail address from which this
17  e-mail was transmitted?
18     **A. Yes.**
19     Q. It is mmat@advantagetankers.com?
20     **A. Correct.**
21     Q. It appears to be from Mr Mehmet Mat?
22     **A. Yes.**
23     Q. And it is addressed to Mr Sebastian
24  Schubert?
25     **A. Yes.**

Page 66

1     Q. Do you know Mr Sebastian Schubert?
2     **A. Yes.**
3     Q. He is an officer from Norddeutche Bank
4  Girozentrale?
5     **A. Yes.**
6     **MR QUARTARO:** We will refer to Norddeutche
7  Bank Girozentrale as Nord LB for the purpose of this
8  and the remaining two depositions being conducted
9  this week.
10     **MR GAITAS:** I will ask the Court Reporter
11  to mark Exhibit 13.
12     (Exhibit 13 marked for identification)
13     It appears to be another e-mail?
14     **A. All right.**
15     Q. From Mr Mehmet Mat?
16     **A. Yes.**
17     Q. Addressed to the same Mr Sebastian
18  Schubert?
19     **A. Yes.**
20     Q. And it continues on to the next page?
21     **A. Yes.**
22     Q. Let's look at the content of these two
23  e-mails?
24     **A. All right.**
25     **MR QUARTARO:** Give the witness a moment to

Page 67

1  familiarize himself with the document, please.
2     **MR GAITAS:** Yes.
3     **A. Yes.**
4     Q. It begins:
5     "Please note that Future Holdings,
6  Centerbridge and NSF have decided to terminate their
7  efforts for co-investing in a joint venture for the
8  crude vessels."?
9     **A. Yes.**
10     Q. Who is Future Holdings?
11     **A. It is a Company owned by Miss Nazli**
12  **Karamehmet Williams.**
13     Q. And Centerbridge?
14     **A. It is a fund in New York.**
15     Q. NSF?
16     **A. Again a hedge fund in New York.**
17     Q. Go to the next page:
18     "Future Holdings is still willing to
19  proceed with the crude investment and decided to
20  proceed alone."
21     Does Future Holdings have anything to do
22  with restructuring or --
23     **A. No. As much as I know, no.**
24     Q. Was this a Company with assets?
25     **A. No. I mean it is a Company owned by**

Page 68

1  **Miss Williams, so that has to be asked to her. It**
2  **has at least shipping assets. It may have different**
3  **assets, I don't know.**
4     Q. You don't know?
5     **A. No.**
6     Q. If you go down to the bottom of the
7  second page of Exhibit 13, it says:
8     "We are approaching each of the lenders to
9  reconfirm their commitments with subject to several
10  amendments to be made on the agreed term sheets."
11     Then the next paragraph:
12     "With reference to the terms previously
13  offered by DVB we would like the following changes on
14  the term sheet to be considered by yourselves."
15     Who is we?
16     **A. Advantage Tankers.**
17     **MR QUARTARO:** Objection.
18     **MR GAITAS:** Advantage Tankers?
19     **A. Yes.**
20     Q. If you look at the date, this e-mail
21  was transmitted in the previous one that we saw,
22  Exhibits 12 and 13, Advantage Tankers did not exist?
23     **A. Correct. As a Company it didn't but**
24  **there is history about Advantage Tankers. Once this**
25  **Nazli Karamehmet Williams decided to invest in**

# EXHIBIT N

# CERTIFICATE OF INCUMBENCY

## OF

## ADVANTAGE TANKERS LLC

We, The Trust Company of the Marshall Islands, Inc. (TCMI) of Majuro, Republic of the Marshall Islands, being the duly appointed Registered Agent of ADVANTAGE TANKERS LLC (the "Company"), a non-resident domestic company incorporated in the Marshall Islands on December 8, 2014 with corporation number 963198, hereby confirm the following:

1. The Company is in Good Legal Standing in the Marshall Islands.

2. As far as can be determined from the documents recorded with the Registered Agent of the Company at the Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Republic of the Marshall Islands MH 96960:

   a. The Company's operating address is: Buyukdere Cad. Yapi Kredi Plaza A Blok K 12 34330 Levent Istanbul Turkey

   b. The current managers are:

   | Name | Optional Information |
   | --- | --- |
   | ALI TUGRUL TOKGOZ | |
   | GULSUN NAZLI KARAMEHMET WILLIAMS | |
   | SIGVALD DAGFINN LUNDE | |

   c. The current members are:

   | Name | Optional Information |
   | --- | --- |
   | ADVANTAGE HOLDINGS LLC | |

WITNESS my hand and the official seal of The Trust Company of the Marshall Islands, Inc. on January 8, 2015.

The Trust Company of the Marshall Islands, Inc.
Registered Agent
Authorized Signature

THE TRUST COMPANY OF THE MARSHALL ISLANDS
CORPORATE SEAL 1990
REPUBLIC OF THE MARSHALL ISLANDS INC.

EXHIBIT
5
14-1-16 RH

D01982

On this 8th day of January 2015 before me personally came G.Sahbal empowered as a Sole signatory of the Registered Agent, known to me to be the individual who executed the foregoing instrument and she duly acknowledged to me that the execution was her act and deed.

B.Gokkilic
Special Agent

D01983

## APOSTILLE

*(Hague Convention of 5 October 1961/*
*Convention de la Haye du October 1961)*

1. Country: The Republic of the Marshall Islands

*This Public Document*

2. has been signed by: B.Gokkilic

3. acting in the capacity of: Special Agent, Republic of the Marshall Islands

4. bears the seal/stamp of: Registrar of Corporations, Republic of the Marshall Islands

*Certified*

5. at: Istanbul, Turkey     6. on: January 8, 2015

7. by: Special Agent of the Republic of the Marshall Islands

8. Number: U/07312/1/2015

9. Seal /stamp:     10: Signature:

D01984

# EXHIBIT O

From: Sebastian Schubert [mailto:sebastian.schubert@nordlb.de]
Sent: Friday, October 31, 2014 12:11 PM
To: Mehmet MAT
Cc: Christina Winkler (christina.winkler@nordlb.de); Tugrul TOKGOZ
Subject: Antwort: Advantage Tankers

Dear Mehmet,

Thanks for your below email and the so far good news.

We are indeed in discussions on all fronts. At the moment we are having some trouble in the "Blue"-transaction because of one difficult Lender and its not the Agent this time. There are discussions ongoing at high level incl. my Head Oliver Faak already between this Lender and us. However we are of the opinion, that we will achieve a reasonable result for all of us soon.

With regard to True and Target we are able to offer the following terms:

|  | Main Terms |
|---|---|
| Borrower | New SPC (MI) |
| Guarantor | Advantage Tankers LLC (MI) to own the Borrower and to provide Corporate Guarantee for the facility. Advantage tankers to be owned by Future Holdings, ultimately owned by Mrs. Nazli Karamehmet. |
| Technical & Commercial Manager | Genel Denizcilik |
| Vessel | m/t True ("True") and m/t Target ("Target") |
| Purchase price | tbd |
| Employment | Long Term TC / 5 years to Shell; |
| Rate | One vessel: USD 17,500/day floor for the first 3 years. One vessel: USD 17,500/day floor for 5 years. plus profit split based on TD7/TD9; 50/50 Profit split is applicable if the rates are in between $17,500 -$45,000; Last 2 year rate will be based on TD7/TD9 only, no profit sharing. |
| Commitment | "True": the lesser of US$29,700,000 and 75% of the FMV. "Target": the lesser of US$27,500,000 and 75% of the FMV in total US$57,200,000 (equal to the loan outstanding after repayment in Nov/Dec 2014 for the existing facility of "True" and "Target") |
| Lenders | NORD/LB -- providing 100% of the commitment (the Agent) |
| Availability Period | 31 Dec 2014 with option to extend in Lenders option. |
| Repayment | 20 Quarterly installments of USD 600,000 each per vessel. together with a balloon payment of US$17,700,000 ("True") and US$16,500,000 ("Target"). Last 2 year rate will be based on TD5 only, no profit sharing. |
| Cash Sweep | 50% of the Profit Split received by the Borrowers to be used for quarterly mandatory prepayments |
| Upfront Fee | 1% of maximum Commitment amount |
| VMC | 115% (87%LTV) during Year 1-2, and 125% (80%) thereafter |
| Corporate Covenants | Minimum Liquidity of US$10 mio. |
| Minimum Liquidity | US$500,000 at Borrower's level, to be maintained throughout the facility term; |
| Dividend Restriction | No dividends during the first 24 months; afterwards dividends are allowed subject to (i) no event of defaults continuing or foreseeable and (ii) Debt Service Cover ratio >1 and leverage <=60% on Guarantor level |
| Securities | Standard, including: - First priority mortgages over the vessels; - pledge over Borrower's shares; - pledge over Earnings Account (to be held with Lender(s)); - Assignment of any TC with duration >12 months; - Assignment of Employment to Shell, with Step-in-Rights (QEL applies); Managers' undertakings |


EXHIBIT
5
15-1-16 KH

D05187

| Other Terms & Conditions | Standard for this kind of transaction |
|---|---|

Best regards

Sebastian

Sebastian Schubert
NORD/LB
Norddeutsche Landesbank Girozentrale
Director | Bankabteilungsdirektor
International Ship Finance Group
Internal Post Code 2214/6570
Friedrichswall 10
30159 Hannover Germany

Phone: +49 511 361 - 6570
Mobile: +49 173 621 37 19
Fax:    +49 511 361 - 4785
e-mail: sebastian.schubert@nordlb.de

Sitz der Gesellschaft: Hannover, Braunschweig, Magdeburg
Handelsregister: AG Hannover HRA 26247, AG Braunschweig HRA 10261, AG Stendal HRA 22150

Von:      Mehmet MAT <m.mat@advantagetankers.com>
An:       "Sebastian Schubert (sebastian.schubert@nordlb.de)" <sebastian.schubert@nordlb.de>
Kopie:    "Christina Winkler (christina.winkler@nordlb.de)" <christina.winkler@nordlb.de>, Tugrul TOKGOZ <tt@advantagetankers.com>
Datum:    30.10.2014 10:27
Betreff:  Advantage Tankers

Dear Sebastian,

Hope all is well.

By way of an update please note our positions with the other lenders on AT project.

-    CIT : We have an agreed revised term sheet whereby the loan amount has been increased to 61 mln from the previously agreed amount of 51 mln.
-    UC : Unicredit is working on approval of the revised terms whereby the overall loan amount is increased by USD 9.9 mln (in comparison with the previous term sheet- usd 28.5 mln vs 25.2 mln per vessel).

So basically we achieved what we have asked In Hamburg for the above ones which was crucial

D05188

for the success of the deal.

Regarding the remaining 3 transactions where Nord LB plays a key role ;

- DVB; is proceeding with our proposed terms in return for some adjustments on product deal,
- Commerzbank; we had some back and forth but my feeling is that Commerzbank itself is ready to proceed with USD 36 mln leverage.

Needless to say once again we need your valuable support for the above projects as well as the bilateral aframax loan for the successful closing of the project.

Looking forward to your good news.

Regards

Mehmet

D05189

Dear Mehmet,

Thanks for your below email.

We confirm our availability for a meeting on Friday around 11am in Hamburg. Please advise meeting place.

In the meantime we will review the terms.

Best regards

Sebastian

**Sebastian Schubert**
NORD/LB
Norddeutsche Landesbank Girozentrale
Director | Bankabteilungsdirektor
International Ship Finance Group
Internal Post Code 2214/6570
Friedrichswall 10
30159 Hannover Germany

Phone:  +49 511 361 - 6570
Mobile: +49 173 621 37 19
Fax:     +49 511 361 - 4785
e-mail: sebastian.schubert@nordlb.de

Sitz der Gesellschaft: Hannover, Braunschweig, Magdeburg
Handelsregister: AG Hannover HRA 26247, AG Braunschweig HRA 10261, AG Stendal HRA 22150

Von:     Mehmet MAT <m.mat@advantagetankers.com>
An:      Sebastian Schubert <sebastian.schubert@nordlb.de>
Kopie:   Christina Winkler <christina.winkler@nordlb.de>, Tugrul TOKGOZ <tt@advantagetankers.com>
Datum:   06.10.2014 11:27
Betreff:  Advantage Tankers

Dear Sebastian,

By way of an update please be advised as follows.

Please note that Future Holdings, Centerbridge and NSF have decided to

D05190

terminate the efforts for co-investing in a joint venture for the crude vessels.

Future Holdings is still willing to proceed with the crude investment and decided to proceed alone. The Newco, Advantage Tankers ("AT") will acquire 5 aframax and 4 suezmaxes as initially planned. All 9 vessels will continue with the existing Shell charters but the charter rate will be based on a floor rate plus profit sharing whereby the floor rate would be sufficient to cover the debt service plus opex for the first three years (USD 17,500 pd).

We are approaching each of the lenders to re confirm their commitments with subject to several amendments to be made on the agreed term sheets.

With reference to the terms previously offered by DVB, we would like the following changes on the term sheet to be considered by yourselves.


1.      Shareholder of Guarantor : Future Holdings Ltd. (majority owned by Mrs. Karamehmet Williams).

2.      Loan amount : The lesser of 75% of the charter free fair market value of the vessels and USD 33 MM for True ( 31 MM for Target).

3.      Margin : 2.5 % p.a.

I just want to highlight that under the proposed structure i) AT will not be exposed to any expensive funding (either by means of preferred equity or mezzanine facility) which will enable itself to have a profitable operation from day one and ii) the Lenders will enjoy the secure cash flow as a result of the floor rates offered by Shell during the first three years.

Given the above positive developments, we hope our proposal would be welcomed by yourselves.

In order to expediate the process and discuss further, we would like to have a meeting in Hamburg together with DVB and Shell on Friday October 10th.<x-apple-data-detectors://2>

I would appreciate if you can advise your availibility preferably around 11 am<x-apple-data-detectors://4>.

Best regards,

Mehmet

D05191

# EXHIBIT P

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PSARA ENERGY, LTD. | : |
| | : |
| Plaintiff | : |
| | : |
| SPACE SHIPPING, LTD.; ADVANTAGE | : |
| AVENUE SHIPPING, LLC; GENEL | : |
| DENIZCILIK NAKLIYATI A.S. A/K/A | : CIVIL ACTION NO. 16-cv-4840 |
| GEDEN LINES; ADVANTAGE TANKERS, | : |
| LLC; ADVANTAGE HOLDINGS, LLC; | : |
| FORWARD HOLDINGS, LLC; MEHMET | : |
| EMIN KARAMEHMET and GULSUN NAZLI | : |
| KARAMEHMET WILLIAMS | : |
| | : |
| Defendants. | : |

### PSARA ENERGY, LTD.'s REQUEST FOR PRODUCTION OF DOCUMENTS

TO:     Defendant – Gulsun Nazli Karamehmet Williams

Pursuant to the Federal Rules of Civil Procedure, you are hereby requested to produce the

items in the following Requests for Production within 30 days after service.

/s/ George A. Gaitas
George A. Gaitas
Federal Bar No.705176
CHALOS & CO, P.C.
7210 Tickner Street
Houston, Texas 77055
Telephone: (713) 936-2427
Fax: (866) 702 4577
e-mail: georgegaitas@chaloslaw.com
*Admitted Pro Hac Vice*
*Attorney for Psara Energy, Ltd.*

*Of Counsel:*
Mary Elisa Reeves, Esq.
Reeves McEwing LLP
Tel: 267-324-3773
reeves@lawofsea.com

1

## CERTIFICATE OF SERVICE

I hereby certify that I forwarded a true and correct copy of the foregoing and following Request for Production of Documents to the following counsel of record via electronic mail and certified U.S.P.S. on this 28th day of September 2016: Neil Quartaro, WATSON, FARLEY, & WILLIAMS, 250 West 55th Street, New York, New York, 10019

/s/ George A. Gaitas
George A. Gaitas

## DEFINITIONS

1. "Defendant", "You", and/or "Your" means Defendant: Gulsun Nazli Karamehmet Williams, as well as all other persons acting or purporting to act on your behalf, including any attorney, employee, agent, other representative, and/or anyone to whom these requests are addressed who has actual or constructive possession and/or custody and/or control of the item(s) production of which is demanded, whether in their individual possession, custody, or control or in the possession custody or control of other individuals.

2. "Document," "Documents," "internal communication," "internal communications," "record," "records," "written communication," and "written correspondence" shall be liberally construed and mean, without limitation, all written, typed, or printed matter, all electronic and digital records and all magnetic or other media of any kind or description, (including, without limitation, letters, correspondence, telegrams, memoranda, notes, records, minutes, contracts, agreements, or notations of telephone or personal conversations, conferences, inter-office communications, email, microfilm, bulletins, circulars, pamphlets, photographs, facsimiles, invoices, tape recording, computer printouts and work sheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, and all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature, in Your actual possession, custody, or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys, or other agents, whether or not prepared by You.

3. "File" means any aggregation or collection of documents maintained, held, stored, or used together, including without limitation, all collections of documents maintained, held or stored in folders, notebooks, or other devices for separating or organizing documents, whether contained in a paper or electronic format.

4. "Electronic Format" means the native format in which the document was created and/or was received which should be produced in a medium such as a CD ROM disk or USB memory stick. Where production of a file is required, the entire file must be produced.

5. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

8. "Communication" means any oral or written communication of which the party has knowledge, information, or belief

9. "Date" means the exact date, month and year, if ascertainable, or, if not, the best available approximation.

10. The word "and" means "and/or"

11. The word "or" means "and/or"

12. "Identify" or "Identification" means:

   a. As to a person: when used in reference to an individual, the terms "identify" or "identification" means to state his/her full name, present address or last known address, telephone number, occupation, employer, and business address.
   b. As to an entity: when used in reference to an entity such as a public or private corporation, governmental entity, partnership or association, the terms "identify" or "identification" means to state its full name, present or last known business or operating address, and the name of its chief executive officer and the agent for service of process;
   c. As to a document: when used in reference to a document, the terms "identify" or "identification" shall include the following: The title, heading, or caption of such document; the date appearing on such document; a general description of the document; the name of the person who signed the document or statement that it was unsigned; name of the person or persons who prepared the document; Name of the person or persons to whom the document was addressed and to whom the document was sent; the physical location of the document.

# REQUEST FOR PRODUCTION OF DOCUMENTS

With regard to the document hereto attached as EXHIBIT 1, provide copies of the documents identified in the requests below as follows, authenticated by the respective banks that have issued same and/or have the original documents in their possession:

## REQUEST No.1

With reference to the transfer of the amount of $52,000,000 with both transfer and value date 18/2/2015 and slip No. 201501039062814:

A) The debit advice to you issued by the transferor bank that made the transfer on your behalf and/or in your name to Garanti bank in favor of Advantage Holdings, LLC;

B) If the transfer originated from a bank with which you had maintained and/or are currently maintaining a bank account, provide a copy of the mandate for the opening of the bank account together with proof of the persons, natural or legal, who have signature over the said bank account;

C) A copy of your instructions to the transferor bank to make the transfer of the $52,000,000 identified in EXHIBIT 1 in favor of Advantage Holdings, LLC;

D) Copies of bank statements of the transferor bank (whether monthly, quarterly annual as the practice may be) which transferred the $52,000,000 from your bank account and/or in your name for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

E) Copies of "SWIFT" notes evidencing the routing of transfers in and out of the bank account(s) identified for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

F) Copies of debit and credit advices to you or to another on your behalf for transfers in and out of the bank account(s) identified in your responses to the foregoing evidencing the routing of transfers in and out of the said bank account(s) for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

G) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $52,000,000 was made, please provide a copy of any instrument against which payment was made or of any evidence of transfer of the funds to the transferor bank naming you as beneficiary or otherwise authorizing you to transfer in your name or on your behalf these funds in favor of Advantage Holdings, LLC;

H) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $52,000,000 was made, please provide a copy of your instructions to the transferor bank to effect the transfer and a copy of the said bank's confirmation of the transfer;

**REQUEST No.2**

With reference to the transfer of the amount of $75,000,000 with both transfer and value date 29/4/2015 and slip No. 2015010473922788:

A) The debit advice to you issued by the transferor bank that made the transfer on your behalf and/or in your name to Garanti bank in favor of Advantage Holdings, LLC;

B) If the transfer originated from a bank with which you had maintained and/or are currently maintaining a bank account, provide a copy of the mandate for the opening of the bank account together with proof of the persons, natural or legal who have signature over the said bank account;

C) A copy of your instructions to the transferor bank to make the transfer of the $75,000,000 identified in EXHIBIT 1 in favor of Advantage Holdings, LLC;

D) Copies of bank statements of the transferor bank (whether monthly, quarterly annual as the practice may be) which transferred the $75,000,000 from your bank account and/or in your name for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

E) Copies of "SWIFT" notes evidencing the routing of transfers in and out of the bank account(s) identified for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

F) Copies of debit and credit advices to you or to another on your behalf for transfers in and out of the bank account(s) identified in your responses to the foregoing evidencing the routing of transfers in and out of the said bank account(s) for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

G) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $75,000,000 was made, please provide a copy of any instrument against which payment was made or of any evidence of transfer of the funds to the transferor bank naming you as beneficiary or otherwise authorizing you to transfer in your name or on your behalf these funds in favor of Advantage Holdings, LLC;

**REQUEST No.3**

With reference to the transfer of the amount of $48,350,000 with both transfer and value date 11/5/2015 and slip No. 201501047946233:

A) The debit advice to you issued by the transferor bank that made the transfer on your behalf and/or in your name to Garanti bank in favor of Advantage Holdings, LLC;

B) If the transfer originated from a bank with which you had maintained and/or are currently maintaining a bank account, provide a copy of the mandate for the opening of the bank account together with proof of the persons, natural or legal who have signature over the said bank account;

C) A copy of your instructions to the transferor bank to make the transfer of the $48,350,000 identified in EXHIBIT 1 in favor of Advantage Holdings, LLC;

D) Copies of bank statements of the transferor bank (whether monthly, quarterly annual as the practice may be) which transferred the $48,350,000 from your bank account and/or in your name for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

E) Copies of "SWIFT" notes evidencing the routing of transfers in and out of the bank account(s) identified for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

F) Copies of debit and credit advices to you or to another on your behalf for transfers in and out of the bank account(s) identified in your responses to the foregoing evidencing the routing of transfers in and out of the said bank account(s) for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

G) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $48,350,000 was made, please provide a copy of any instrument against which payment was made or of any evidence of transfer of the funds to the transferor bank naming you as beneficiary or otherwise authorizing you to transfer in your name or on your behalf these funds in favor of Advantage Holdings, LLC;

H) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $48,350,000 was made, please provide a copy of your instructions to the transferor bank to effect the transfer and a copy of the said bank's confirmation of the transfer;

**REQUEST No.4**

With reference to the transfer of the amount of $20,000,000 with both transfer and value date 22/5/2015 and slip No. 201501047972124:

A) The debit advice to you issued by the transferor bank that made the transfer on your behalf and /or in your name to Garanti bank in favor of Advantage Holdings, LLC;

B) If the transfer originated from a bank with which you had maintained and/or are currently maintaining a bank account, provide a copy of the mandate for the opening of the bank account together with proof of the persons, natural or legal who have signature over the said bank account;

C) A copy of your instructions to the transferor bank to make the transfer of the $20,000,000 identified in EXHIBIT 1 in favor of Advantage Holdings, LLC;

D) Copies of bank statements of the transferor bank (whether monthly, quarterly annual as the practice may be) which transferred the $20,000,000 from your bank account and/or in your name

for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

E) Copies of "SWIFT" notes evidencing the routing of transfers in and out of the bank account(s) identified for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

F) Copies of debit and credit advices to you or to another on your behalf for transfers in and out of the bank account(s) identified in your responses to the foregoing evidencing the routing of transfers in and out of the said bank account(s) for the period beginning February 18, 2014 through the date of your answer to these requests for production of documents;

G) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $20,000,000 was made, please provide a copy of any instrument against which payment was made or of any evidence of transfer of the funds to the transferor bank naming you as beneficiary or otherwise authorizing you to transfer in your name or on your behalf these funds in favor of Advantage Holdings, LLC;

H) If the transfer originated from a bank with which you do not maintain a bank account in your name from which the transfer of $20,000,000 was made, please provide a copy of your instructions to the transferor bank to effect the transfer and a copy of the said bank's confirmation of the transfer;

**REQUEST No.5**

With reference to the transfers identified in the preceding 4 requests for production of documents, provide copies of your accounting records reflecting credits and disbursements of the sums identified, together with the supporting documents for the said transaction commencing on June 1, 2014 through the date of your response to these requests.

# EXHIBIT 1



**Hesap Hareketleri**

16/12/2015

| | | |
|---|---|---|
| IBAN: | TR10 0006 2000 1190 0009 0886 52 | |
| Hesap Adı: | USD VADESİZ | |
| Şube: | MECİDİYEKÖY TİCARİ | |
| Tarih Aralığı: | 18/02/2015 - 29/05/2015 | |
| Hareket Tipi: | Tümü | |

| | |
|---|---|
| Unvan: | FORWARD HOLDINGS LLC |
| VKN: | 80734234 |
| Adres: | TRUST COMPANY COMPLEX AJELTEKE ROAD MARSHALL ADALARI |
| Döküm. | 001 |

| İŞLEM TARİHİ | VALOR TARİHİ | KANAL | İŞLEM AÇIKLAMASI | TUTAR | BAKİYE | FİŞ NO |
|---|---|---|---|---|---|---|
| | | | DEVREDEN BAKİYE | | 510,92 | |
| 18/02/2015 | 18/02/2015 | ŞB | Gönderen:GULSUN NAZLI KARAMEHMET WILLIAMS-01024HR056581--Ref.li YP Havale | 52.000.000,00 | 52.000.510,92 | 201501039062814 |
| 18/02/2015 | 18/02/2015 | ŞB | Alıcı : ADVANTAGE HOLDINGS LLC AJELTAKE ROAD 96960 MAJURO-01024HS056602--Ref.li YP Havale | -52.000.000,00 | 510,92 | 201501039062817 |
| 18/02/2015 | 18/02/2015 | ŞB | 01024HS056602 - KESINTI VE EKLERİ-Para Transferi Hesaptan Hesaba | -20,00 | 490,92 | 201501039062819 |
| 29/04/2015 | 29/04/2015 | ŞB | Gönderen:GULSUN NAZLI KARAMEHMET WILLIAMS-01024HR056505--Ref.li YP Havale | 75.000.000,00 | 75.000.490,92 | 201501047392788 |
| 30/04/2015 | 30/04/2015 | ŞB | Alıcı : ADVANTAGE HOLDINGS LLC AJELTAKE ROAD 96960 MAJURO-01024HS058516 -- Ref.li YP Havale | -75.000.000,00 | 490,92 | 201501047026629 |
| 30/04/2015 | 30/04/2015 | ŞB | 01024HS058516 - KESINTI VE EKLERİ-Para Transferi Hesaptan Hesaba | -20,00 | 470,92 | 201501047036279 |
| 11/05/2015 | 11/05/2015 | ŞB | Gönderen:GULSUN NAZLI KARAMEHMET WILLIAMS-01024HR059765--Ref.li YP Havale | 48.350.000,00 | 48.350.470,92 | 201501047946233 |
| 11/05/2015 | 11/05/2015 | ŞB | Alıcı : ADVANTAGE TANKERS LLC AJELTAKE ROAD 96960 MAJURO -01024HS059812 -- Ref.li YP NORD LB | -21.000.000,00 | 27.350.470,92 | 201501047959743 |
| 11/05/2015 | 11/05/2015 | ŞD | 01024HS059812 - Muhabire Masraf Ödeme Tutarı | -150,00 | 27.350.320,92 | 201501047959748 |
| 18/05/2015 | 18/05/2015 | ŞB | Alıcı : ADVANTAGE TANKERS LLC AJELTAKE ROAD 96960 MAJURO -01024HS059874 -- Ref.li YP NORD LB | -20.400.000,00 | 6.950.320,92 | 201501047861125 |
| 18/05/2015 | 18/05/2015 | ŞB | 01024HS059874 - Muhabire Masraf Ödeme Tutarı | -150,00 | 6.950.170,92 | 201501047861129 |
| 22/05/2015 | 22/05/2015 | ŞB | Gönderen:GULSUN NAZLI KARAMEHMET WILLIAMS-01024HR059891--Ref.li YP Havale | 20.000.000,00 | 26.950.170,92 | 201501047972124 |
| 22/05/2015 | 22/05/2015 | ŞB | Alıcı : ADVANTAGE TANKERS LLC AJELTAKE ROAD 96960 MAJURO -01024HS059907 -- Ref.li YP NORD LB | -20.400.000,00 | 6.550.170,92 | 201501047981249 |
| 22/05/2015 | 22/05/2015 | ŞB | 01024HS059907 - Muhabire Masraf Ödeme Tutarı | -150,00 | 6.550.020,92 | 201501047989424 |
| 29/05/2015 | 29/05/2015 | ŞB | Alıcı : ADVANTAGE TANKERS LLC AJELTAKE ROAD 96960 MAJURO -01024HS059928 -- Ref.li YP NORD LB | -6.500.000,00 | 50.020,92 | 201501047981354 |
| 29/05/2015 | 29/05/2015 | ŞB | 01024HS059928 - Muhabire Masraf Ödeme Tutarı | -65,00 | 49.955,92 | 201501047981356 |

Bu doküman bilgi amaçlı hazırlanmıştır.Doküman üzerinde herhangi bir değişiklik yapılması ve/veya doküman üzerindeki bilgiler ile banka kayıtlarının uyuşmaması halinde banka kayıtları esas alınacaktır.
*ŞB: Şube ÇM: Çağrı Merkezi İNT: İnternet Bankacılığı MB: Mobil Bankacılık
Şirket Unvanı: T. Garanti Bankası A.Ş. Ticaret Sicil No: 159422
Levent Nispetiye Mah. Aytar Cnd. No:2 Beşiktaş 34340 İstanbul
Mersis No: 0879 0017 5660 0379
Web sitesi: www.garanti.com.tr

Detaylı bilgi için 444 0 333 Alo Garanti'yi arayabilirsiniz

Garanti

D00826

# EXHIBIT Q



CIT Finance LLC
11 West 42nd Street
New York, New York 10036

November 18, 2014

**Senior Secured Debt Facility**
**for the Acquisition of Two Suezmax Crude Tankers**

**CONFIDENTIAL**

Advantage Tankers LLC
c/o:   Geden Holdings Ltd.
     85 St. John Street
     Valletta, VLT 1165
     Republic of Malta

Attn.:  Mr. Tugrul Tokgoz

Dear Mr. Tokgoz:

This letter is the Fee Letter referred to in that certain Commitment Letter of even date herewith (together with the Term Sheet attached thereto, the "Commitment Letter") from CIT Finance LLC ("CIT" or the "Commitment Party") to you, whereby CIT has committed to provide up to $61,000,000 of the CIT Facility, as more fully described therein, subject to the terms and conditions set forth in the Commitment Letter. This Fee Letter sets forth fees not described in the Commitment Letter and certain other matters. All capitalized terms used in this Fee Letter and not otherwise defined shall have the meanings assigned to such terms in the Commitment Letter.

To induce CIT to execute and deliver the Commitment Letter, you and the Guarantor on a joint and several basis hereby agree to pay, or cause to be paid, to CIT the following fees:

1.   A Documentation Fee in an amount equal to $250,000, due and payable no later than ten Business Days after the execution of this Commitment by you;

2.   An Upfront Fee corresponding to 0.85% of each Tranche, due and payable on its Funding Date; and

3.   A Commitment Fee, due and payable in arrears on each monthly anniversary of the Close Date, or any later date CIT may agree to (each, including the Close Date, a "Measurement Date"), in an amount corresponding to 1.50% multiplied by (i) the average daily committed but unfunded amount of the CIT Facility Amount from the prior Measurement Date and by (ii) a fraction, the numerator of which is the number of calendar days elapsed between the current Measurement Date and the prior Measurement Date and the denominator of which is 360. For the purpose of this Clause (2), the CIT Facility Amount shall be $61,000,000.

The fees payable hereunder or pursuant hereto shall be payable in immediately available funds and, once paid, shall be non-refundable. In its sole discretion, CIT may allocate any of the fees payable in this Fee Letter to its affiliates and/or other Lenders.

Advantage Tankers LLC
November 18, 2014
Page 3

Very truly yours.

EXECUTED AS A DEED
by CIT FINANCE LLC acting by Andrea Zann
under authority of CIT FINANCE LLC
in accordance with the laws of its place of incorporation

By: _____
   Name:   Andrea Zann
   Title:   Director

Accepted and Agreed to in all Respects on November **19**, 2014:

EXECUTED AS A DEED
by GEDEN HOLDINGS LTD. acting by **Mehmet Mat**
under authority of GEDEN HOLDINGS LTD.
in accordance with the laws of its place of incorporation

By: _____
   Name:   MEHMET MAT
   Title:   CFO

# EXHIBIT R

## Keefe, Thomas

| | |
|---|---|
| **From:** | Mehmet MAT <mehmetmat@gedenlines.com> |
| **Sent:** | Wednesday, January 21, 2015 3:26 AM |
| **To:** | Zana, Andrea |
| **Cc:** | Keefe, Thomas; Tugrul TOKGOZ |
| **Subject:** | RE: CIT Commitment Extension |

Dear Andrea,

I acknowledge your below email and confirm our agreement to the extension.

Best Regards

Mehmet

**From:** Andrea.Zana@cit.com [mailto:Andrea.Zana@cit.com]
**Sent:** Wednesday, January 21, 2015 12:24 AM
**To:** Mehmet MAT
**Cc:** thomas.keefe@cit.com; Tugrul TOKGOZ
**Subject:** CIT Commitment Extension

Dear Mehmet –

This email serves as the confirmation that CIT's $61MM Commitment evidenced by that certain Commitment dated November 18, 2014 has been extended from December 31st, 2014 to February 16th, 2015 under the same terms of conditions.

Please acknowledge this extension by replying to this email in the affirmative.

Thank you,

Andrea

**Andrea Zana**
Director
Maritime Finance

+1 212 771 9322 (tel)

**Andrea.Zana@cit.com**

11 West 42nd Street
New York, NY 10036
**www.cit.com/maritime**

Securities and investment banking services are offered through CIT Capital Securities LLC, an affiliate of CIT

This email message and any accompanying materials may contain proprietary, privileged and confidential information of CIT Group Inc. or its subsidiaries or affiliates (collectively, "CIT"), and are intended solely for the recipient(s) named above. If you are not the intended recipient of this communication, any use, disclosure, printing, copying or distribution, or reliance on the contents, of this communication is strictly prohibited. CIT disclaims any liability for the review, retransmission, dissemination or other use of, or the

taking of any action in reliance upon, this communication by persons other than the intended recipient(s).    If you have received this communication in error, please reply to the sender advising of the error in transmission, and immediately delete and destroy the communication and any accompanying materials.    To the extent permitted by applicable law,    CIT and others may inspect, review, monitor, analyze, copy, record and retain any communications sent from or received at this email address.

# EXHIBIT S



**CIT Finance LLC**
11 West 42nd Street
New York, New York 10036

November 18, 2014

**Senior Secured Debt Facility
for the Acquisition of Two Suezmax Crude Tankers**

**CONFIDENTIAL**

Advantage Tankers LLC
c/o:    Geden Holdings Ltd.
       85 St. John Street
       Valletta, VLT 1165
       Republic of Malta

Attn.:  Mr. Tugrul Tokgoz

Dear Mr. Tokgoz:

Geden Holdings Ltd. (the "Commitment Guarantor" or "you"), acting on behalf of a new investment and operating company in the process of being formed, called Advantage Tankers LLC ("Guarantor"), has advised CIT Finance LLC (together with its affiliates, "Agent" or the "Commitment Party", sometimes also referred to herein as "CIT", "we" or "us") that it is seeking senior secured term debt to finance a portion of the price of Guarantor's planned acquisition from affiliates of the Commitment Guarantor (the "Transaction") of two Suezmax crude tankers, the 2011-built M/T *Blank* (IMO Number 9466570) and the 2012-built M/T *Royal* (IMO Number 9513141) (either one, a "Ship" and, together, the "Ships"). Each Ship will be owned by a single purpose company in the process of being formed (either one, a "Borrower" and, together, the "Borrowers").

Once the Guarantor and the Borrowers are established and the Transaction is complete, each Borrower will be directly owned by the Guarantor, whose membership interests will be owned by Forward Holdings Ltd., a Marshall Islands company whose membership interests will be majority owned by Mrs. Gulsun Nazli Karamehmet Williams and minority owned by the Guarantor's management. The Guarantor and the Borrowers will be managed by a related party to the Commitment Guarantor, Genel Denizcilik Nakliyati A.S., which will also act as technical and commercial manager of the Ships.

1.     **Commitments**

The Commitment Guarantor has requested that the Commitment Party commit to provide the Borrowers with a senior secured term loan facility (the "CIT Facility") totaling up to $61,000,000 (the "CIT Facility Amount") in two separate cross-defaulted and cross-collateralized tranches (each, a "Tranche"), each corresponding to the lower of (i) 60.0% of the charter-free fair market value of the applicable Ship provided by an Approved Appraiser (the "FMV") and (ii) $30,500,000. Each Tranche shall be available in a single advance, to be drawn in connection with the closing of the purchase by applicable Borrower of the corresponding Ship (the "Advance").

Securities and investment banking services provided through CIT Capital Securities LLC, an affiliate of CIT.

Very truly yours,

CIT FINANCE LLC

By: _____

    Name:    Andrea Zana
    Title:    Director

**The Foregoing Is Hereby Accepted and
Agreed to in all Respects by the Undersigned on 19 November, 2014:**

GEDEN HOLDINGS LTD.

By: _____

    Name:    MEHMET MAT
    Title:    CFO