IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PSARA ENERGY, LTD. | § | |
| | § | |
| v. | § | |
| | § | C.A. NO. 1:18-CV-00178-MAC |
| SPACE SHIPPING, LTD.; | § | |
| GEDEN HOLDINGS LTD.; | § | ADMIRALTY |
| ADVANTAGE ARROW | § | |
| SHIPPING, LLC; GENEL | § | |
| DENIZCILIK NAKLIYATI A.S. | § | |
| A/K/A GEDEN LINES; | § | |
| ADVANTAGE TANKERS, LLC; | § | |
| ADVANTAGE HOLDINGS, LLC; | § | |
| FORWARD HOLDINGS, LLC; | § | |
| MEHMET EMIN | § | |
| KARAMEHMET; GULSUN | § | |
| NAZLI KARAMEHMET- | § | |
| WILLIAMS; and TUGRUL | § | |
| TOKGÖZ | § | |

**EMERGENCY OPPOSED MOTION BY ADVANTAGE DEFENDANTS
FOR ORDER REGARDING PAYMENT OF CUSTODIAL COSTS**

Defendants Advantage Arrow Shipping, LLC, Advantage Tankers, LLC, Advantage Holdings, LLC, and Forward Holdings, LLC (collectively, the "Advantage Defendants"), making their appearance specially and not generally and pursuant to Federal Rule of Civil Procedure Supplemental Rule for Admiralty or Maritime Claims E(8), and expressly reserving all defenses, particularly as to jurisdiction, subject matter jurisdiction, and venue, file this Emergency Motion for Order Regarding Payment of Custodial Costs.

1

As the Court is no doubt painfully aware by now, Plaintiff Psara Energy, Ltd. obtained a Rule B attachment of the motor tanker ADVANTAGE ARROW (the "Vessel") on April 20, 2018. At the time the Vessel was served with the attachment papers, she was conducting cargo operations at the Motiva Berth No. 2 in Port Neches, Texas. *See* Return of Service, Doc. 8.

At the conclusion of cargo operations, the Vessel was required to depart the Motiva berth so that Motiva's commercial operations could continue. Unable to leave the jurisdiction of the Court due to the attachment, the Vessel had to be moved to some other dock or anchorage within the Eastern District of Texas.

The office of the U.S. Marshal does not allow seized vessels to travel to the offshore anchorage in the Gulf of Mexico, because that area is beyond the jurisdiction of the Eastern District of Texas. Therefore, some lay berth or anchorage had to be located within the Sabine-Neches waterway itself.

The Advantage Defendants understand that three possible locations were identified: the Fina anchorage, the Sun anchorage, and a city dock at the Port of Port Arthur. The Fina anchorage was occupied at the time, and in any event the Sabine Pilots do not allow vessels to remain at the Fina anchorage for any extended period of time because it is used as a turning basin.

The Sun anchorage is a private anchorage that charges $8,000 per day. However, on information and belief, the Sun anchorage will not allow vessels

that are under arrest or attachment because of the possibility that such vessels may be detained indefinitely.

That left the Port of Port Arthur as the only viable option. For a ship of the Vessel's size, the Port of Port Arthur charges $11,447.20 per day. The Vessel's local agent, Marserve, Inc., was able to obtain a 25% discount on that day rate, bringing the cost down to $8,585.40 per day, plus incidental charges such as mooring, security, and water. *See* Port of Port Arthur invoice, attached as Exhibit 1. Through May 2, 2018, wharfage charges accrued as a result of Plaintiff's attachment totaled $94,963.49. Those charges continue to grow every day the Vessel remains under attachment.

The Advantage Defendants anticipate that Plaintiff may complain that it did not choose the Port of Port Arthur, and should not be held responsible for the decision to dock the Vessel there. Plaintiff's counsel has repeatedly requested "documentation" detailing who ordered the Vessel to the Port of Port Arthur. The undersigned has provided to opposing counsel the only documentation in the Advantage Defendants' possession—the invoice from the Port of Port Arthur. The Advantage Defendants respectfully submit that, with only one place to put the Vessel and Plaintiff having made no response to multiple requests to identify a safe alternative, it matters little who made the decision to dock the Vessel there.

Even if the Advantage Defendants are able to post substitute security to allow the Vessel to be released from attachment, the Port of Port Arthur has indicated it will not release the Vessel to sail until the wharfage fees have been paid. *See* Correspondence from Marserve, Inc. dated May 1, 2018, attached as Exhibit 2.

Plaintiff has disclaimed any responsibility for the wharfage costs. *See* Correspondence between counsel for the Parties, attached as Exhibit 3. Despite the undersigned's invitation to Plaintiff's counsel to identify an alternative safe berth or anchorage where the Vessel could have been taken at the time or to which it should be shifted now, no such identification has been made. *See* Id. As the Court indicated at the recent hearing, it is unsurprising that no safe alternative can be found within the District.

However, it is the claimants in an attachment or arrest action who are required to pay the costs of maintaining the property while it is in judicial custody. *See, e.g., Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 353 (5th Cir. 1997) (holding that "all claimants are eventually required to share in" the costs of maintaining a vessel under arrest).

Chapter 28, section 1921 of the United States Code provides that the "The United States marshals or deputy marshals **shall** routinely collect . . . fees for . . . [t]he keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, . . .

4

watchmen's or keepers' fees. . . . The marshals **shall** collect, **in advance**, a deposit to cover the initial expenses for [such costs], and periodically thereafter such amounts as may be necessary to pay such expenses until the litigation is concluded." 28 U.S.C. § 1921 (emphasis added).[1] Logically, the only party from whom the marshals' fees can be collected "in advance" of service by the marshal of a warrant of attachment is the party who obtained that warrant.

Section 1921 requires the Marshal's Service to collect the wharfage fees from Plaintiff and to do so "in advance." An invoice for those fees from the Port of Port Arthur has been provided to the U.S. Marshal's Service. However, the Advantage Defendants understand that the Marshal's Service is not collecting payment from Plaintiff. *See* Correspondence with the Marshal's Service, attached as Exhibit 4.

To the extent there is any ambiguity in section 1921, the United States Marshal's Service Policy Directives, attached as Exhibit 5, make clear who must pay these costs of custody, and when:

> Due to local labor situations and prevailing work conditions, some districts are required to pay a higher hourly or daily rate for keepers, **wharfage**, etc., than other districts. Regardless of the going rate, the USM shall insist on at least a 10-day advance for his or her expenses unless the local rules provide otherwise. The custody and safekeeping of vessels, cargo, and other seized property pursuant to civil, admiralty, or

---

[1] The Advantage Defendants have every expectation that the Marshal did in fact obtain the customary $10,000 advance from Plaintiff prior to serving the attachment on the Vessel. However, it appears that Plaintiff is not being required to periodically replenish that deposit as costs are incurred.

5

> bankruptcy actions on behalf of private litigants, rests with the USM affecting the seizure and are conditioned upon the advance of sufficient funds by the arresting party to cover the costs incidental to the safekeeping and custody requirements . . . **The initial arresting party is responsible for making the payments** . . . Following the seizure of a vessel . . . the USM will maintain a minimum balance of 5 days' deposit, to cover the continuing costs of the seizure. When the arresting party's deposit reaches the 5 day minimum, the USM will request an additional deposit of funds which is sufficient to cover the continuing costs of the seizure for a reasonable time, e.g., 10 days. If this party fails to deposit the requested funds, the USM will immediately seek relief from the district court including, but not limited to, the right to release the property from arrest or attachment and **the arresting party and its counsel will be obligated for any balance due and any sanctions deemed appropriate by the court** . . . [N]o vessel or property should be seized or continued under seizure without receipt of the required advance deposit.

*See* United States Marshal's Service Policy Directives, attached as Exhibit 5, at pp. 7-8 (emphasis added).

The Fifth Circuit has also made it clear that when the Marshal seizes property pursuant to court order but leaves the responsibility of storing and safekeeping the property to another, it is mandatory under section 1921 for the Marshal to collect all fees and expenses from the party who obtained the attachment:

> The court holds the marshal responsible for the execution of the writ, including the storage and safekeeping of the seized property although it is customary and common practice for the marshal on

6

> occasion to delegate certain of these duties, including storage and safekeeping to others. He seized the corn in this case, but left it in the hold of the M/V DERBY NORTH where it was located at the time it was seized. By this action, Canadian was forced to assume all the duties and responsibilities of a custodian warehouseman for the marshal. If he delegates the responsibility for storing and safekeeping to a third party as he did in this case, it is mandatory under 28 U.S.C. § 1921(a)(1)(E) for him to collect all fees and expenses from the seizing creditor . . .

*Marastro Compania Naviera S.A. v. Canadian Maritime Carriers, Ltd.*, 963 F.2d 754, 757 (5th Cir. 1992) (per curiam).

*Marastro* involved a third party who intervened to collect storage fees incurred when the Marshal seized a cargo of corn but left the corn in the hold of a vessel owned by a third party. Cases citing to *Marastro* generally hold that the costs of maintaining property that is under judicial seizure cannot be recovered as costs by a litigant on the merits who has a proprietary interest in the property. To be clear, the Advantage Defendants do not seek to recover these costs as damages. The Advantage Defendants have not paid these costs, so have nothing to recover at this time. Rather, the Advantage Defendants seek an order either (1) directing the Marshal to collect these costs from Plaintiff as they are incurred (as the Marshal is required to do pursuant to section 1921), or (2) directing Plaintiff to pay these costs directly.

## Conclusion

Chapter 28, section 1921 of the United States Code, *Marastro* and its progeny, and the U.S Marshal's Service's own Policy Directives make it crystal clear that third parties who provide services to preserve and maintain property under seizure have a right to be paid by the party effecting the seizure. So that the Vessel may sail immediately upon her release from the attachment, the Advantage Defendants ask for an order directing that all wharfage fees and other custodial costs incurred during the pendency of the attachment be paid by Plaintiff, either directly or through the Marshal's Service. The Advantage Defendants pray for all other and further relief to which they may be justly entitled.

Respectfully submitted,

*/s/ Marc G. Matthews*
Marc G. Matthews
Texas Bar #24055921
Federal ID No. 705809
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
marc.matthews@phelps.com

**ATTORNEY-IN-CHARGE
FOR DEFENDANTS ADVANTAGE
ARROW SHIPPING, LLC;
ADVANTAGE TANKERS, LLC;
ADVANTAGE HOLDINGS, LLC; AND
FORWARD HOLDINGS, LLC**

OF COUNSEL:
**Phelps Dunbar LLP**
Brian D. Wallace (LA Bar #17191; Fed. ID 205890)
wallaceb@phelps.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned on this the 4th day of May, 2018 upon all counsel of record.

*/s/ Marc G. Matthews*
Marc G. Matthews

## CERTIFICATE OF CONFERENCE

I certify that I have complied with the meet-and-confer requirement of Local Rule CV-7(h). During the week of April 30, 2018, I conferred with opposing counsel George Gaitas and Jonathan Chalos via email and telephone regarding the relief sought by this motion, and counsel are unable to agree and are at an impasse, leaving an open issue for the Court to resolve. This motion is opposed by counsel for Plaintiff.

*/s/ Marc G. Matthews*
Marc G. Matthews

9