**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.**<br><br>**v.**<br><br>**SPACE SHIPPING, LTD.; GEDEN HOLDINGS LTD.; ADVANTAGE ARROW SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES; ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; FORWARD HOLDINGS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMEHMET-WILLIAMS; and TUGRUL TOKGÖZ** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **C.A. NO. 1:18-CV-00178**<br><br>**ADMIRALTY** |

**ADVANTAGE DEFENDANTS' F.R.C.P. 12(b) DEFENSES AND MOTION FOR REFERRAL TO ARBITRATION**

Subject to and without waiving their restricted appearance pursuant to Supplemental Rule for Admiralty or Maritime Claims E(8), Defendants Advantage Arrow Shipping, LLC; Advantage Tankers, LLC; Advantage Holdings, LLC; and Forward Holdings, LLC (collectively, the "Advantage Defendants"), respectfully submit their Rule 12(b) defenses, and move this Honorable Court for an order referring this dispute to arbitration.[1]

[1] In submitting their Rule 12(b) defenses, the Advantage Defendants maintain their restricted appearance in these proceedings under Rule E(8). *See Teyseer Cement Co. v. Halla Maritime Corp.*, 794 F.2d 472, 478 (9th Cir. 1986) (holding that defendant's assertion of a forum selection clause as a defense, filing of a compulsory counterclaim, and defense of a judgment on appeal did not abrogate Rule E(8) special appearance status); *see also Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 424 F.3d 852, 863 (9th Cir. 2005); *World Fuel Servs. Europe, Ltd. v. Thoresen Shipping Singapore Private Ltd.*, 155 F.Supp. 3d 1226 (S.D. Ala. 2015).

Plaintiff's claims are subject to the provisions of the Federal Arbitration Act (9 U.S.C. § 1*et seq*.) ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") (enforced in U.S. courts via 9 U.S.C. § 201-08) . Pursuant to the FAA and the New York Convention, this Honorable Court should enforce the arbitration clause of the governing charter party, and direct the parties to arbitrate Plaintiff's substantive claims in London arbitration. Alternatively, the Advantage Defendants ask the court to simply stay all further proceedings pursuant to Section 3 of the FAA until such time as Plaintiff voluntarily submits its claims in arbitration against the Advantage Defendants.[2]

**PROCEDURAL HISTORY**

On April 20, 2018, Plaintiff Psara Energy, Ltd. ("Psara") filed the instant litigation against the Advantage Defendants, Space Shipping Ltd. ("Space Shipping"), Geden Holdings, LTD., and Genel Denizcilik Naklyiyati A.S. a/k/a Geden Lines (collectively, the "Geden Group") and the individuals Mehmet Emin Karamehmet, Gulsun Nazli Karamehmet-Williams, and Tuğrul Tokgöz.

Pursuant to Supplemental Rule B, the Court ordered issuance of process of maritime attachment and garnishment relating to the motor tanker ADVANTAGE ARROW, a vessel owned by Advantage Arrow Shipping. The Advantage Defendants made a restricted appearance under Rule E(8) on April 27, 2018, and filed a motion to vacate the attachment, which is currently pending before the Court.

---

2 The Advantage Defendants stipulate they will not object to the jurisdiction of an arbitral panel appointed pursuant to the terms of the London Maritime Arbitrators Association, as contemplated by the arbitration clause contained in the subject charter party.

In compliance with the May 4, 2018 order of the Magistrate Judge (Doc 18), substitute security of $4,000,000.00 was posted on May 11, 2018, and the ADVANTAGE ARROW was released later that day.

**FIRST DEFENSE**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court lacks personal jurisdiction over the Advantage Defendants.

**THIRD DEFENSE**

Pursuant to Federal Rule of Civil Procedure 12(b)(4) and (5), Plaintiff's claims must fail for lack of sufficient process and lack of sufficient service of process.

**FOURTH DEFENSE**

Pursuant to Federal Rule of Civil Procedure 12(b)(7), Plaintiff's claims must fail for failure to join a necessary party under Rule 19.

**FIFTH DEFENSE**

Pursuant to Federal Rule of Civil Procedure 12(b)(3) (or, alternatively, 12(b)(6)), Plaintiff's claims arise out of a charter party that requires arbitration of all disputes; therefore, this is an improper venue for resolution of Plaintiff's substantive claims, and this action should be stayed in favor of arbitration in the proper venue.

**ARGUMENT**

At their root, Plaintiff's claims all allegedly arise out of a charter party between Plaintiff and Space Shipping. That charter party contains a valid and enforceable

arbitration clause, requiring that all disputes arising out of the charter party be resolved in London arbitration.[3]

The Plaintiff commenced London arbitration proceedings against Space Shipping as long ago as June 13, 2013. While Plaintiff contends in these proceedings that the Advantage Defendants are liable for any arbitration award made against Space Shipping (which would be impermissible unless no distinction is to be drawn between Space Shipping and the Advantage Defendants), Plaintiff has at no stage sought to join the Advantage Defendants in those arbitration proceedings. If, as Plaintiff contends, the Advantage Defendants are the successors to Space Shipping and are therefore liable for losses incurred by Plaintiff under the charter party, the Advantage Defendants would be as much "charterers" of the CT STEALTH as Space Shipping is, and would be no less subject to the terms of the arbitration clause.

The Fifth Circuit recognizes a breed of equitable estoppel that allows non-signatories to an agreement containing an arbitration clause to properly invoke that arbitration clause. Because Plaintiff's claims against the Advantage Defendants allegedly arise directly from the charter party between Plaintiff and Space Shipping, and because Plaintiff alleges successor liability on the part of the Advantage Defendants for Space Shipping's obligations under the charter party, the Advantage Defendants are entitled to rely on the agreement to arbitrate all disputes arising out of the charter party. Consequently, the Court should either i) compel Psara to arbitrate its claims against the Advantage Defendants and retain jurisdiction only to

[3] Plaintiff has relied upon that arbitration clause in commencing arbitration against Defendant Space Shipping.

enter its decree upon any arbitral award pursuant to Sections 8 and 207 of the FAA, or ii) stay the proceedings pending arbitration pursuant to Section 3 of the FAA.

## I. THE DISPUTE IS GOVERNED BY AN ARBITRATION AGREEMENT

### *A. The Arbitration Agreement*

Plaintiff's contract with Space Shipping contains an arbitration clause governing the appropriate forum for dispute resolution. Plaintiff and Space Shipping agreed that:

> (a) This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of the Clause.

BIMCO Standard Bareboat Charter, Doc. 1-1, at § 30.

In signing the charter party including this arbitration provision, Plaintiff waived its right to invoke the jurisdiction of any state or federal forum to litigate claims "arising out of or in connection with"[4] that agreement.

### *B. Background Principles of Federal Law*

The FAA governs treatment of private disputes relating to previous agreements between parties to arbitrate, and provides that a "written provision" in a contract which provides for "settle[ment] by arbitration" of "a controversy . . . arising

[4] Given that the charter party is governed by English Law, it is worth noting that in *Fiona Trust & Holding v. Privalov* and others [2008] 1 Lloyds Rep 254, the English House of Lords gave these words a wide construction on the basis of a presumption that parties would have *"intended any dispute arising out of the relationship into which they had entered or purported to enter to be decided by the same tribunal…"* (Headnote and paras. 13 and 15). It would therefore be consistent with that approach for this Court to rule that a dispute as to whether the Advantage Defendants should be liable to the Plaintiff for debts of Space Shipping under the charter party should be determined by "same tribunal" that is currently seized of the dispute between Psara and Space Shipping, namely the LMAA arbitration panel.

out of" that "contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "An arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of [Title 9], falls under the [New York] Convention." 9 U.S.C. § 202.

The Supreme Court has expressed a strong preference for enforcement of arbitration agreements under the FAA. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S.1, 24 (1983) (stating the FAA embodies a "congressional declaration of a liberal federal policy favoring arbitration agreements"); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2007) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)) ("Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'").

Chapter Two of the FAA incorporates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1970), 3 U.S.T. 2517, T.I.A.S. No. 6997, commonly known as the New York Convention. An agreement to arbitrate is governed by the New York Convention if: (1) it is in writing, (2) the place of the arbitration is in a country that is a signatory to the Convention, (3) the dispute arises out of a commercial relationship, and (4) at least one of the parties is not a citizen of the United States. *DiMercurio v. Sphere Drake, Ins. Plc.*, 202 F.3d 71, 74 n. 2. (1st Cir. 2000). The instant charter party is in writing, the United Kingdom is a signatory to the convention, the dispute regards the commercial hire of the CT STEALTH, and no

party is a United States citizen. Thus, enforcement of the arbitration agreement falls under Chapter Two of the FAA. However, because there is no conflict between Chapter One and Chapter Two of the FAA, for purposes of the arguments asserted in this motion, both chapters apply. 9 U.S.C. § 208.

Though an arbitration clause is a form of contractual agreement and in the normal course applies only to signatories, federal courts consistently have held that non-signatories can also invoke an arbitration agreement under certain circumstances. *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006). The Supreme Court has recognized six of these circumstances: "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, [and] waiver and estoppel." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009) (citation omitted); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995). These exceptions apply equally under domestic and international proceedings under Chapter One and Chapter Two. While the New York Convention requires there to be "an agreement in writing," it does not require that writing to be signed by all parties to a dispute if they are otherwise bound to it under customary principles of contract law, including the principles of equitable estoppel. *See, e.g.*, *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 (S.D.N.Y. 1997) (ruling that "once a party establishes that . . . a signed writing exists, the general rules of contract law apply to determine which parties are subject to arbitration . . . . The [Convention's] writing requirement does not foreclose the application of the . . . principles under which nonsignatories sometimes can be obligated by . . . agreements signed by others . . . ."); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*

*GMBH,* 206 F.3d 411, 418 n. 7 (4th Cir. 2000) (holding that the doctrine of estoppel is equally applicable under Chapter One of the FAA and under the New York Convention); *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F.Supp. 2d 182, 187 (E.D.N.Y. 2006) (arbitration compelled under the New York Convention where the plaintiff, as an additional insured, sought coverage under an insurance policy subject to London arbitration); *see also J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l., Inc.*, 198 F.3d 88, 97-98 (2nd Cir. 1999).

Courts apply equitable estoppel to "preclude one who accepts the benefits [of an agreement] from repudiating the accompanying or resulting obligation[s]." *Kingsley Capital Mgmt., LLC v. Sly*, 820 F. Supp. 2d 1011 (D. Ariz. 2011) (quoting Am. Jur. *Estoppel* § 65). *See also Int'l Paper Co.*, 206 F.3d at 418 ("To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.") (alteration in original) (citation omitted); *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995); *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2nd Cir. 1999); *Zurich Am. Ins. Co. v. Watts Indus. Inc.* 417 F.3d 682, 688 (7th Cir. 2005).

The Fifth Circuit has held that a non-signatory can compel arbitration under equitable estoppel in two circumstances: (1) where the "signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory" and (2) where "the

signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). "When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement." *Id.*

In *Grigson*, the trustee for the owners of a film signed a contract with a distributor and the producers of the film, which required all disputes arising out of the contract to be submitted to arbitration in California. The trustee later filed suit against two of the film's actors in a dispute over its distribution. The Fifth Circuit found the claim to be "so intertwined with, and dependent upon" the original distribution agreement, as well as the trustee's earlier suit against the distributor, that the trustee was bound under the arbitration clause. The Fifth Circuit held, under an equitable estoppel theory, that a signatory cannot "have it both ways" by seeking the benefits of an agreement containing an arbitration clause, while simultaneously disregarding the requirement to arbitrate on the basis that the other party is not a signatory. *Grigson*, 210 F.3d at 528.

Similarly, in *MS Dealer* (favorably cited by the Fifth Circuit in *Grigson*), the plaintiff contracted with an individual for the purchase of a car by way of an agreement that submitted all disputes to arbitration. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). The purchase agreement incorporated a service contract purchased through a third-party provider. When the purchaser filed

suit against each party for fraud, the Court ruled that the non-signatory could compel arbitration since the signatory's claim "ma[de] reference to and presume[d] the existence of" language from the original contract . . . and depend[ed] entirely upon [the plaintiff's] contractual obligation." *Id.* at 947-48. The *MS Dealer* court also found that the fact the claims against the car's seller and the service provider were "based on the same facts and [we]re inherently inseparable" provided an independent basis upon which to compel arbitration. *Id.* at 948 (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 758 (11th Cir. 1993); *see also Sam Reisfeld & Son Import Co. v. SA Eteco*, 530 F.2d 679 (5th Cir. 1976); *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D. Ala. 1997); *Allied Prof'ls Ins. Co. v. Fitzpatrick*, 169 So. 3d 138 (Fla. Dist. Ct. App. 2015).

The court in *Caporicci U.S.A. Corp. v. Prada S.p.A.* recently applied these principles of estoppel to allow a non-signatory to compel arbitration in a dispute arising under the New York Convention. *Caporicci U.S.A. Corp. v. Prada S.p.A.*, No. 18-20859-CIV, 2018 WL 2264194, at *3 (S.D. Fla. May 7, 2018). The plaintiff brought suit against providers of alligator hatchlings and eggs, but only one of the defendants was a signatory to the original contract which required arbitration of disputes in Milan, Italy. The court ruled that the non-signatory providers could compel arbitration because the plaintiff's claims "factually relate[d] to the interpretation and performance of the agreement and [we]re inextricably intertwined with its claims." *Id.* (internal alterations and quotations omitted).

Subsequent to the *Grigson* and *MS Dealer* decisions, the Supreme Court in *Arthur Andersen* ruled that determination of whether a party is bound by an

arbitration agreement is necessarily rooted in "traditional principles of state law." *Arthur Andersen*, 556 U.S. 624, 631 (2009) (citation omitted). Most courts interpret this decision to require state contract law be used in resolving a dispute's arbitrability. *See, e.g., Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 260-61 (5th Cir. 2014); *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2012).[5] However, admiralty disputes such as the instant action are governed by federal law, so decisions such as *Grigson* and *MS Dealer* that apply federal common law remain controlling and squarely on point. Additionally, because actions and proceedings arising under Chapter Two of the FAA are "deemed to arise under the laws and treaties of the United States," 9 U.S.C. § 203, federal common law controls as in *Grigson* and *MS Dealer*. *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 n.5 (S.D.N.Y. 1997) ("[W]here jurisdiction is alleged under chapter 2 of the Federal Arbitration Act, the issue of enforceability and validity of the arbitration clause is governed by federal law.").

### ***C. Background Principles of Texas State Law***

To the extent Plaintiff's complaint alleges any claims against the Advantage Defendants under Texas state law, or to the extent the Court determines it must apply Texas state law in light of the Supreme Court's *Arthur Andersen* decision, the same principles of equitable estoppel apply.

[5] As it did not apply state law, *MS Dealer* was either abrogated or overruled by the Ninth Circuit in *Lawson*, and *Grigson* similarly applied a form of federal common law in lieu of identifying the state law to be applied. *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011).

For example, in *Muecke Co., Inc. v. CVS Caremark Corp.*, several retail pharmacies filed claims against a competitor's related entities based on alleged violations of a provider agreement to which only one of the competitor entities was a party. *Muecke Co. v. CVS Caremark Corp.*, 615 F. App'x 837, 842 (5th Cir. 2015). The agreement contained an arbitration clause, and the Fifth Circuit applied Texas state law in holding that the non-signatory defendants could compel arbitration because the claims were "bound up" with the original provider agreement. *See also Lexington Ins. Co. v. Alliance Residential Mgmt., L.L.C.,* No. CIV. 4:10-CV-729, 2010 WL 4226460, at *6 (S.D. Tex. Oct. 20, 2010) (ruling that where a signatory relied on the terms of an agreement containing an arbitration clause, the non-signatory defendant could compel arbitration). Additionally, in *Hays v. HCA Holdings, Inc.*, the Fifth Circuit (applying Texas state law) determined that "intertwined claims estoppel" allowed a non-signatory to compel arbitration. *Hays v. HCA Holdings, Inc.*, 838 F.3d 605 (5th Cir. 2016).

### *D. Application of Law to the Current Dispute*

Given these background principles of contract law adopted by both state and federal courts, Plaintiff should be equitably estopped from litigating in this Court the substantive claims asserted in the Complaint. Plaintiff's claims against the Advantage Defendants arise out of a contract between Plaintiff and Space Shipping that contains a clause requiring arbitration in London of all disputes arising out that contract. The Complaint expressly presumes and relies not merely on the existence of the charter party, but specifically on its terms, conditions, and the obligations

arising therefrom. Indeed, without the charter party, there would be no cause of action against any defendant.

Significantly, Plaintiff and Space Shipping did not restrict the applicability of the arbitration clause to disputes only between themselves, but instead chose to employ broader language that limits the threshold requirement for arbitration to the relationship between the dispute and the contract itself.

**30. Dispute Resolution**

*) **(a)** This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.
The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

Thus, Plaintiff's Complaint clearly falls within the scope of the contract's requirement that "any dispute arising out of or in connection with this Contract" be submitted to arbitration. Doc. 1-1, at § 30.

The claims brought against Space Shipping and the Advantage Defendants are also "so intertwined with, and dependent upon" each other as to justify application of equitable estoppel to Plaintiff's attempt to litigate in this Court. The Complaint alleges causes of action against all defendants based entirely on the same facts and circumstances, rooted in the same legal theories, and seeking the same form and magnitude of damages. Doc. 1 at 26. The arbitration clause governs any contractual dispute between Plaintiff and Space Shipping, and the same dispute with the Advantage Defendants should be treated no differently. Plaintiff assented to

arbitration in signing the charter party, and thus it is reasonable for a non-signatory to be permitted to compel arbitration for a claim identical to that asserted against a signatory. Plaintiff asserts the Advantage Defendants are liable under the charter party, so the charter party should govern how the dispute is resolved.

## II. PLAINTIFF'S SUBSTANTIVE CLAIMS MUST BE ARBITRATED IN LONDON

Because Plaintiff's claims are subject to the charter party's arbitration agreement, the Court should direct the parties to arbitrate their dispute pursuant to Section 206 of the FAA, and retain jurisdiction only to enter a decree on any arbitral award pursuant to Sections 8 and 207 of the FAA. Alternatively, the litigation should be stayed pursuant to Sections 3 of the FAA pending Plaintiff's voluntary submission to London arbitration.[6]

In *Ruiz v. Donahoe*, the Fifth Circuit endorsed Federal Rule of Civil Procedure 12(b)(3) as the appropriate procedural mechanism by which to file a motion to compel arbitration and dismiss a claim.[7] *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015) ("[A]greements to arbitrate implicate forum selection and claims-processing rules not subject matter jurisdiction."). This is consistent with other precedent prior to *Donahoe* where the Fifth Circuit evaluated—under a 12(b)(3) framework—motions to compel arbitration and dismiss claims that had been filed pursuant to 12(b)(1). *See, e.g., Sinners & Saints, L.L.C. v. Noire Blanc Films, L.L.C.*, 937 F. Supp. 2d 835, 844–

[6] Section 3 and Section 8 of the FAA do not conflict with any provision of the New York Convention. Section 206 allows a court to "direct…arbitration" under the Convention just as does Section 8, and nowhere does the Convention address stays of litigation. Thus, in the absence of conflict, both Sections 3 and 8 apply to this dispute. 9 U.S.C. § 208.

[7] Because one of the purposes of a Rule B attachment is to provide security in aid of arbitration, and because Section 8 of the FAA contemplates the Court retaining jurisdiction to enforce any arbitral award, the Advantage Defendants are not seeking a dismissal at this time.

45 (E.D. La. 2013); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

Though the Fifth Circuit has expressed a preference for Rule 12(b)(3) as the proper procedural vehicle under such circumstances, in an abundance of caution this motion is made in the alternative under Rule 12(b)(6), as the Plaintiff makes no justiciable claim upon which this Court can grant relief.

### ***A. The Parties Should be Directed to Arbitration Pursuant to Section 8 of the FAA***

The Court should stay these proceedings and direct the parties to arbitration as required by Sections 8 and 206 of the FAA. Section 8 relates specifically to admiralty proceedings, and states:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8.

Section 206 states:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. . . .

9 U.S.C. § 206

Having proceeded against the Advantage Defendants by libel and seizure of the ADVANTAGE ARROW, Plaintiff has no further right to litigate this dispute or

invoke the jurisdiction of this court aside from the entry of a decree based on any potential award from the arbitration proceedings in London. Section 8 explicitly provides for a court to compel arbitration rather than limiting its action to granting a stay of the litigation, and Section 206 empowers the Court to direct the parties to London arbitration.

Additionally, Plaintiff, as a signatory to the charter party, agreed that any claims arising out of the charter will be governed by the terms of the London Maritime Arbitration Associations ("LMAA"). Paragraph 12 of the LMAA terms specifically provides for the jurisdiction of the tribunal to extend to "determining **all disputes arising under or in connection with the transaction** the subject of the reference. . . ."[8] There can be no dispute that Plaintiff's allegations that the Advantage Defendants are liable for the payment of any potential sums awarded against Space Shipping's alleged breach of the charter party arise "in connection with the transaction" to which Plaintiff is currently subject to arbitration. As such, pursuant the LMAA's terms, the existing arbitral tribunal also retains jurisdiction over Plaintiff's claims against the Advantage Defendants, as any requirement for an

---

8 Paragraph 12 of the LMAA terms provides as follows:

> Notwithstanding the terms of any appointment of an arbitrator, unless the parties otherwise agree the jurisdiction of the tribunal shall extend to determining all disputes arising under or in connection with the transaction the subject of the reference, and each party shall have the right before the tribunal makes its award (or its last award, if more than one is made in a reference) to refer to the tribunal for determination any further dispute(s) arising after the commencement of the arbitral proceedings. When and how such dispute is dealt with in the reference shall be in the discretion of the tribunal.

independent arbitration agreement would be unnecessarily duplicative of the jurisdiction already conferred over Plaintiff's claims via agreed-upon LMAA terms.

### *B. Alternatively, the Litigation Should be Stayed Pending Plaintiff's Voluntary Submission of its Claims to London Arbitration Pursuant to Section 3 of the FAA*

In accordance with the congressional preference for resolution of disputes by arbitration expressed by the FAA, Section 3 requires of federal and state courts as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

To obtain a stay of litigation under Section 3, a movant must show (1) that an agreement between the parties to arbitrate disputes exists, and (2) that the issues raised are within the scope of that agreement. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257-58 (5th Cir. 1996); *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). As discussed above, a valid and enforceable arbitration clause exists between Plaintiff and Space Shipping, and all disputes between Plaintiff and the Advantage Defendants are governed by that clause under a theory of equitable estoppel based solely on Plaintiff's allegations. Upon a determination that these requirements are

satisfied, the Fifth Circuit construes Section 3 of the FAA as *mandating* a stay pending the results of arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (quoting *Campeau Corp. v. May Dep't Stores Co.*, 723 F. Supp. 224, 226–27 (S.D.N.Y. 1989)) ("[A] stay is mandatory upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'"); *see also Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004) (reversing a lower court's refusal to grant a stay pending arbitration, ordering that it "*must* grant the [non-signatory's request for a] stay if the claim at issue is indeed covered by the arbitration agreement") (emphasis added).

The Court should therefore stay this litigation pending arbitration in London between Plaintiff and the Advantage Defendants. Plaintiff conceded such in the related matter filed in the Eastern District of Louisiana by noting that "[its] legal research . . . found numerous decisions upholding the authority of the [Louisiana] court to stay a Rule B proceedings pending the outcome of arbitration" pursuant to Section 3 of the FAA. *Psara Energy, Ltd. v. Space Shipping, Ltd., et al.*, No. 2:18-cv-04111-ILRL-JCW (E.D. La. Filed May 25, 2018) (Doc. 28, at 5). Because Section 3, on its face, cannot apply unless the issue in suit is referable to arbitration, Plaintiff has implicitly conceded and judicially admitted that "the issue involved in such suit . . . is referable to arbitration . . . ." *Id.* Accordingly, should the Court not *direct* the instant dispute to arbitration, the Advantage Defendants respectfully request the Court stay these proceedings indefinitely until Plaintiff voluntary submits its claims to arbitration in London.

## CONCLUSION

The Plaintiff's substantive claims are subject in their entirety to arbitration in London, England. The Advantage Defendants pray that the Court direct the parties to arbitration in London, and retain jurisdiction over the dispute only to enter a decree on any award in the arbitration. In the alternative, the Advantage Defendants pray that the Court stay the proceedings pending Plaintiff's voluntary submission to arbitration in London. The Advantage Defendants pray for all other relief to which they may be justly entitled.

Respectfully submitted,

BY: *s/ Marc G. Matthews*

Marc G. Matthews
Texas Bar #24055921
Federal ID No. 705809
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
marc.matthews@phelps.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS ADVANTAGE ARROW SHIPPING, LLC; ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; AND FORWARD HOLDINGS, LLC**

OF COUNSEL:
**Phelps Dunbar LLP**
Brian D. Wallace (LA Bar #17191; Fed. ID 205890)
wallaceb@phelps.com

**CERTIFICATE OF CONFERENCE**

I certify that I conferred with counsel for Plaintiff regarding the relief requested in the foregoing Motion, and he is OPPOSED.

*s/ Marc G. Matthews*
Marc G. Matthews

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned on this the 15th day of June, 2018 upon all counsel of record.

*s/ Marc G. Matthews*
Marc G. Matthews