**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| PSARA ENERGY, LTD. | : | |
|         **Plaintiff** | : | |
| | : | |
|    **v.** | : | |
| | : | |
| SPACE SHIPPING, LTD.; | : | |
| GEDEN HOLDINGS LTD.; | : | |
| ADVANTAGE ARROW SHIPPING, LLC; | : | |
| GENEL DENIZCILIK NAKLIYATI A.S. | : | **C.A. NO. 1:18-CV-00178-MAC** |
| A/K/A GEDEN LINES; ADVANTAGE | : | |
| TANKERS, LLC; ADVANTAGE | : | **ADMIRALTY** |
| HOLDINGS, LLC; FORWARD HOLDINGS, | : | |
| LLC; MEHMET EMIN KARAMEHMET; | : | |
| GULSUN NAZLI KARAMEHMET- | : | |
| WILLIAMS; and TUĞRUL TOKGÖZ | : | |
| | : | |
|         **Defendants** | : | |

**PLAINTIFF'S OPPOSITION TO ADVANTAGE DEFENDANTS'**
**F.R.C.P. 12(b) DEFENSES AND MOTION FOR REFERRAL TO ARBITRATION**

COMES NOW Plaintiff, Psara Energy Limited ("Psara"), through undersigned Counsel,

and responds to the Rule 12(b) Defenses and Motion for Referral to Arbitration [Doc. 29] of

Advantage Arrow Shipping, LLC; Advantage Tankers, LLC; Advantage Holdings, LLC; and

Forward Holdings, LLC (collectively, the "Advantage Defendants" or "Movants"), as follows.

**Procedural History**

On April 20, 2018, Plaintiff filed its Verified Complaint under Supplemental Admiralty

Rule B. The M/T ADVANTAGE ARROW (the "Vessel") was attached as security for Plaintiff's

maritime claims pending in London arbitration. [Doc. 5]. On April 27, 2018, the Advantage

Defendants moved to vacate the attachment under Supplemental Rule E(4)(f). [Doc. 7] With their

E(4)(f) motion, they contested whether Plaintiff's Verified Complaint states a valid *prima facie*

admiralty claim. [Doc. 7 at 20]. Movants contend they cannot be held liable under a theory of

1

successor corporation liability for the debts of the previous registered owner[1] of the Vessel. [Doc. 7 at 10-12]. They also argue they cannot be held liable for the debts of the previous owner under a fraudulent transfer theory. [Doc. 7 at 12-14]. Plaintiff opposed the Rule E(4)(f) motion. [Doc. 11].

On April 30, 2018, the Court held a Rule E(4)(f) hearing. [Doc. 13]. On May 4, 2018, the Court issued its Order setting the amount of substitute security of $4,000,000.00, but reserved judgment for a later time as to the Motion to Vacate. [Doc. 18 at 12]. The Advantage Defendants posted substitute security on May 11, 2018, and the Vessel was released later that day. [Doc. 25]. On June 15, 2018, the Advantage Defendants filed the motion opposed hereunder.

<u>**Summary of Plaintiff's Argument**</u>

Save for their motion based on Rule 12(b)(3), the movants have failed to provide any argument or case law citations in support of the remaining Rule 12(b) motions, and therefore have not met the minimum requirements set forth in Local Rule CV-7(c) governing briefing in support of motions.

Movants erroneously contend the bareboat charter party arbitration clause excludes this Court's jurisdiction to adjudicate issues properly raised in this Rule B action. The Federal Arbitration Act § 8, and the overwhelming weight of legal authority, allow attachment actions in aid of foreign arbitration to proceed concurrently with the arbitration proceedings.

Movants are not, as they contend, third parties entitled to enforce the bareboat charter arbitration clause despite being non-signatories. They did not even exist at the time the charter was entered into in 2010, only coming into being in 2014 as "newcos" for the purpose of ringfencing the assets of their corporate predecessor against claims of creditors such as the Plaintiff.

---

[1] Advantage Arrow Shipping, LLC became the registered owner of the Vessel on or about April 3, 2015.

The Rule B-related issues Movants request the Court to relegate to foreign arbitration are not arbitrable. This Court alone has jurisdiction to decide them. Foreign arbitrators may not resolve issues such as whether Plaintiff has submitted a valid maritime claim against defendants under a Rule B application. Foreign arbitration tribunals do not have jurisdiction to adjudicate issues arising under Rule B. This is particularly so in this case where the Rule B issues have been already submitted and are pending before the Court for decision.

## ARGUMENT

### A. Save for their motion under Rule 12(b)(3), Movants' remaining Rule 12(b) motions fail to meet the minimum briefing requirements of Local Rule CV-7(c).

Movants purport their motions are founded on Fed. R. Civ. P. Rule 12(b) (6), failure to state a claim upon which relief can be granted; 12(b)(2) lack of personal jurisdiction; 12(b)(4) and (5) lack of sufficient process and lack of sufficient service of process; 12(b)(7) failure to join a necessary party; and 12(b)(3) improper venue. [Doc. 29 at 3]. However, Movants' entire brief fails to provide a concise statement of the reasons for each of these affirmative defenses or reference to any case law that may support them except for the one based on Rule 12(b)(3) seeking referral of the Rule B issues pending before this Court to London arbitration. Local Rule CV-7(c) governing briefing in support of motions provides in relevant part: "The briefing shall contain a concise statement of the reasons in support of the motion and citation of authorities upon which the movant relies." Except as noted above, Defendants' briefing does not give even a clue to the Court and Plaintiff as to the Movants' reasons or supporting legal arguments why.

In *SimpleAir, Inc. v. Google Inc.*, 70 F. Supp. 3d 747 (E.D. Tex. 2014), the Court observed that the movant's "argument consists of a single sentence directed to each claim, and [movant] provides no explanation or analysis that might support its assertions." *Id.* at 762. The Court denied the motion, pointing to the fact that "Local Rule 7 requires a 'concise statement of the reasons in

support of the motion and a citation of the authorities upon which the movant relies.'" *Id.* The

Court refused to "ignore its own local rule and entertain bare assertions" like the ones the movant

put forward. *Id.* The Court held that the movant's single sentence directed to each claim, without

explanation or analysis in support of its assertions, "failed to meet even the low bar set by the

Court's Local Rules and Federal Rule of Civil Procedure 7(b)(1)(B)." *Id.*

Like the movant's assertions in *SimpleAir*, the Advantage Defendants' Rule 12(b) motions

(except for the motion to refer to arbitration under) consist only of a single sentence devoid of any

explanation or analysis. These motions presented without any context, legal argument or citation

to precedent fail "to meet even the low bar set by" Local Rule CV-7(c). *Id.*; *see also Acceleron,*

*LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, n. 3 (E.D. Tex. 2009) (noting the "highly suspect"

procedural posture, particularly in light of Local Rule CV-7(c), where the movant sought to assert

a F.R.C.P. 12(b)(2) defense in "a brief paragraph before their answer," denying that the court had

personal jurisdiction "without any further explanation or briefing").

For the foregoing reasons, Plaintiff respectfully requests the Court to deny all the foregoing

motions that the Advantage Defendants chose to assert in bare outline form without reasons,

argument, or citation to authority, save for the motion seeking referral to arbitration by asserting

improper venue under Rule12(b)(3), which the Court should consider and also deny for the reasons

stated below.

**B. Movants erroneously contend the bareboat charter arbitration clause preempts this Court's jurisdiction to adjudicate issues properly raised in this action under Rule B.**

The heading to section I of Movants' brief boldly proclaims: "THE DISPUTE IS GOVERNED

BY AN ARBITRATION AGREEMENT." [Doc. 29 at 5]. Movants do not clarify which "dispute" referred

to is the one governed by the arbitration agreement. There is the underlying dispute between Psara

Energy Limited and Space Shipping, Ltd., its charterer, that is currently proceeding in London

arbitration and concerns the redelivery condition of the CV STEALTH and unpaid bareboat charter hire.[2] The other dispute is this ancillary action under Rule B, seeking security in aid of the underlying arbitration, by *quasi in rem* proceeding against the Movants via maritime attachment of the M/T ADVANTAGE ARROW. The arbitration clause of the Psara-Space Shipping charter party indeed subjects that underlying dispute to the jurisdiction of the London arbitration tribunal and the application of English law. However, the Rule B attachment proceedings against the Movants, who are not signatories to the arbitration agreement, are not subject to the charter party arbitration clause and are not referable to London arbitration.

Movants incorrectly assert that "[i]n signing the charter party including this arbitration provision, Plaintiff waived its right to invoke the jurisdiction of any state or federal forum to litigate claims 'arising out of or in connection with that agreement.'" [Doc. 29 at 5]. Movants cannot support this assertion with reference to U.S. law or case precedent. Instead, Movants rely on an English House of Lords case [Doc. 29 at 5, n. 4], but even the holding in that foreign case does not support Movants' argument here in the least. *Fiona Trust & Hilding v Privalov, et al.* [2008] 1 Lloyd's Rep 254 concerned a dispute between two interests who were parties to eight different charter party agreements. The charterers in *Fiona Trust* commenced arbitration to enforce these contracts. Owners sought to restrain the arbitration, arguing that the charter parties had been rescinded as they had been obtained by bribery, and therefore the respective arbitration clauses had also been rescinded through the same legal event of rescission. The House of Lords per Lord Hoffman disagreed, holding that "the parties, as rational businessmen are likely to have intended any dispute arising out of the relationship into which they have entered or purported to enter to be decided by the same tribunal." *Id*. at 257. Lord Hoffman's opinion merely re-emphasized the

---

[2] Movants incorrectly refer to the vessel as the "CT STEALTH." [Doc. 29 at 6].

5

presumption that the parties to a contract who have included an arbitration clause intend that all questions arising out of that relationship should be determined in accordance with their agreed-upon dispute resolution procedure. A copy of the *Fiona Trust* decision is attached as **EXHIBIT 1.**

Citing *Fiona Trust*, the Movants reach a *non-sequitur* conclusion: "a dispute as to whether the Advantage Defendants should be liable to the Plaintiff for debts of Space Shipping under the charter party should be determined by the 'same tribunal' that is currently seized of the dispute between Psara and Space Shipping, namely the LMAA arbitration panel." [Doc. 29 at 5, n. 4]. *Fiona Trust* is distinguishable on its facts from the present case, and Movants' *non-sequitur* conclusion drawn from its misreading of *Fiona Trust* is erroneous for several reasons. Unlike the case at hand, in *Fiona Trust* the dispute was between signatories to the charter parties – there was no attempt by a third-party to invoke the arbitration agreement to which it was not a signatory.

In contrast with the facts of *Fiona Trust*, here the Movants contend they can claim the benefit of the Psara-Space Shipping arbitration agreement even though the Movants were not yet in existence and certainly were not in the contemplation of Plaintiff or Space Shipping when the bareboat charter was signed in 2010. Moreover, Movants' assertion that Plaintiff, by signing the Psara-Space Shipping charter party, "waived its right to invoke the jurisdiction of any state or federal forum to litigate claims 'arising out of or in connection with' that agreement" [Doc. 29 at 5] is contrary to the overwhelming weight of authority. For example, in *Anaconda v. American Sugar Refining Co.,* 32 U.S. 42 (1944), the United States Supreme Court, referring to § 8 of the Federal Arbitration Act,[3] held:

---

[3]   *See* 9 U.S.C.S. § 8 ("If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.").

> Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in the court.

*Id.* at 46. The plaintiff in *Anaconda* filed suit against the owner of a barge with a prayer for process of foreign attachment. *Id*. at 43. The owner "excepted to the jurisdiction of the court, relying on a provision of the charter party," which provided that the parties agreed to arbitrate any disputes "arising out of this charter… pursuant to the provisions of the United States Arbitration Act… except that the provisions of Section 8 thereof shall not apply to any arbitration hereunder." *Id.* (citing §8 of the Act, which provides that "the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel… according to the usual course of admiralty proceedings… and shall retain jurisdiction to enter its decree upon the award"). The district court dismissed the action on the ground that the parties were able to enter into an arbitration agreement that expressly precluded "resort to the usual process of seizure as security for compliance with any arbitral award." *Id*. at 43-44. The court of appeals reversed the district court and the U.S. Supreme Court agreed with the appellate court, holding that "a party can not stipulate away" the jurisdiction of a district court in admiralty over admiralty actions for obtaining security, "which the legislation declares open as heretofore." *Id*. at 46. The *Anaconda* holding is directly opposed to Movants' contention that Plaintiff's signing of the charter party with the arbitration provision served to "stipulate away" the right to invoke this Court's jurisdiction here.

Similarly, in *Andros Compania Maritima, S.A. v. Andre & Cie, S.A.*, 430 F. Supp. 88, 92 (S.D.N.Y. 1977), the court held that the "commencement of an action pursuant to the terms of Section 8 does not *per se* represent a plaintiff's disavowal, or 'bypass,' of his agreement to arbitrate…." The court observed that "a contractual provision for arbitration abroad, standing alone, scarcely precludes resort to our courts or, concomitantly, invocation of Section 8." *Id.* at 94.

*See also Beluga Chartering GMBH v. Korea Logistics Sys.*, 589 F. Supp. 2d 325, 329 (S.D.N.Y. 2008) (holding it is well established that "this Court has the power to order provisional relief pending a foreign arbitration"); *Filia Compania Naviera S.A. v. Petroship, S.A.*, No. 81 Civ. 7515 (RWS), 1982 U.S. Dist. LEXIS 9404, *6-8 (S.D.N.Y. Mar. 19, 1982) (rejecting contention that an agreement stipulating the charter party be governed by English law requires application of English law to bar a prejudgment attachment); *Atlas Chartering Serv., Inc. v. World Trade Group, Inc.*, 453 F. Supp. 861, 862-63 (S.D.N.Y. 1978) (holding there is "no conflict between the provisional remedy of attachment" and a charter party clause providing for London arbitration). Accordingly, it is evident Movants are mistaken in their assertion that the inclusion of an arbitration agreement in the bareboat charter is tantamount to a blanket waiver of the right to invoke the jurisdiction of this Court to litigate its claims brought pursuant to Rule B.

## C. Non-signatory third parties are not entitled to invoke an arbitration agreement except in limited circumstances that do not apply to Movants in this case.

Movants devote a lengthy portion of their brief to an argument that they are non-signatories to the arbitration agreement, but qualify under the theory of equitable estoppel to invoke the provisions of the arbitration clause in their favor. [Doc. 29 at 7-12]. As will be discussed below, whether Defendants do or do not qualify to invoke the charter party arbitration clause in their favor does not matter at this stage of the proceedings before the Court, which must proceed to adjudication of the probable cause basis for the Rule attachment. However, it appears highly unlikely in any event that Movants would qualify as third parties who are entitled to invoke an arbitration agreement to which they are not a party.

Movants did not exist prior to their formation in December 2014. [Doc. 11-17 at ¶40]. The Bareboat charter party between Plaintiff and Space Shipping was entered into in February 2010, some four years and nine months earlier. [Doc.1 at ¶14; Doc. 1-1 at 2]. There is nothing in the

charter party that contemplates the then-non-existent Movants acquiring any rights under the charter party. *See Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.,* 542 F. Supp. 2d 452, 459-60 (E.D. Va. 2008) (holding that because putative third-party beneficiary "did not exist at the time the contractual relationship was entered into... it clearly could not have been contemplated as a beneficiary of the contract"). Accordingly, the Movants, having sprung into being several years after the bareboat charter party was signed, have no right as non-signatories to invoke the charter party arbitration clause. Movants could not have been contemplated by the parties as beneficiaries of the bareboat charter that was entered into nearly five years before their incorporation.

Even if, for the sake of argument, Movants had existed at the time the charter party was executed, they would still not be entitled to compel Plaintiff to arbitrate the issues now pending before the Court. Citing *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 (S.D.N.Y. 1997), Movants argue: "While the New York Convention requires there to be 'an agreement in writing,' it does not require that writing to be signed by all parties to a dispute if they are otherwise bound to it under customary principles of contract law, including the principles of equitable estoppel." [Doc 29 at 7]. *Borsack* is distinguishable from this case in one important respect: in *Borsack* it was the <u>plaintiff</u> who was the third-party beneficiary suing under the contract containing the arbitration clause. Here, Movants are defendants claiming the benefit of a contract that was not, and could not have been, entered into for their benefit. *Borsack* holds that under "general contract principles, 'non-signatories [] fall within the scope of an arbitration agreement where that is the intent of the parties." *Id.* (citations omitted). No such intent can be shown here.

**D. The Rule B-related issues Movants ask the Court to relegate to foreign arbitration are not arbitrable. The Court must decide them.**

Movants' lengthy digression into the law governing compelling arbitration with non-signatories is largely beside the point. The current question facing this Court is whether Plaintiff

has a valid *prima facie* admiralty claim against the Movants and nothing more. *See Budisukma Permai SDN BHD v. N.M.K. Prods*., 606 F. Supp.2d 391, 398 n. 4; s*ee also Blue Whale Corp. v. Grand China Shipping Dev. Co*., 722 F.3d 488, 499 (2d Cir. 2013). Based on the allegations of the Verified Complaint that the Advantage Defendants are successor corporations of Geden Holdings, Ltd. *et al.* and/or the fraudulent transferees of the attached property, Plaintiff would respectfully argue it has shown that it has stated a valid *prima facie* claim against Movants.[4]

When a non-signatory party to compel its way into an arbitration between signatories, some of the issues must first be decided by the court, and may not be referred to the arbitrators for decision. For example, the questions of whether a party can be compelled to arbitrate, and what issues it can be compelled to arbitrate, are for the court rather than the arbitrator to decide. *See Executone Info. Sys. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994).[5] In *Webb v. Investacorp, Inc.*, the Fifth Circuit Court of Appeals stated:

> In some cases, an additional, threshold inquiry will be whether the parties agreed to arbitrate the issue of arbitrability itself or whether the parties intended for arbitrability to be decided by a court, as in a motion to compel arbitration. While contracting parties may agree to submit the question of arbitrability to an arbitrator, courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.

89 F.3d 252, 258 n. 3 (5th Cir. 1996) (internal citations and quotes omitted).

Movants nonetheless argue: "Having proceeded against the Advantage Defendants by libel and seizure of the ADVANTAGE ARROW, Plaintiff has no further right to litigate this dispute or

---

[4] As Movants have disputed this, it would be appropriate for the Court to order limited jurisdictional discovery on the issue. *See*, *e.g.*, *Hidrocarburos y Derivados, C.A. v. Lemos*, 435 F. Supp. 160, 178 (S.D.N.Y. 1978).
[5] It is a theoretical question whether Plaintiff should have to arbitrate against the Advantage Defendants each one of the contractual claims it is currently arbitrating against Space Shipping, Geden Holdings, *et al.*, after obtaining a ruling establishing the Advantage Defendants' status as successor corporations and/or fraudulent transferees of the former Geden assets. But even so, it would be erroneous for the Court to refer to London arbitration every issue relating to the attachment of the ADVANTAGE ARROW at this stage of the proceedings, because the fact of the Advantage Defendants' status as successor corporations and/or fraudulent transferees, and hence the validity of the Rule B attachment, must be established in this Court first.

invoke the jurisdiction of this court…." [Doc. 29 at 15-16]. Movants rely on Section 8 of the Federal Arbitration Act, which authorizes courts to compel arbitration. *Id*. at p.16. Movants also rely on the LMAA terms, which are incorporated in the arbitration clause as follows: "the jurisdiction of the tribunal shall extend to determining all disputes arising under or in connection with the transaction the subject of the reference…." [Doc. 29 at 16]. They suggest that these terms authorize the Court to refer all issues to arbitration. *Id.* Plaintiff specifically rejects such a self-serving interpretation under English law of the LMAA terms. Quite to the contrary, non-signatories to an arbitration agreement are not entitled to invoke it except in certain very limited circumstances not present here. In any event, under American law the courts, not the arbitrators, decide what issues are arbitrable as noted in the foregoing.

The issue of a non-signatory's claim to have the arbitrator rather than the court determine its successor corporation status has been considered and decided in U.S. admiralty jurisprudence. In *First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F. Supp. 2d 483, 484-85 (S.D.N.Y. 2008), the court considered this very issue, holding that whether the purported successor corporation is a party with whom plaintiff has an agreement to arbitrate is a question for the Court to determine before arbitration between the parties is compelled. The *Van Ommeren* court based its decision on *Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F. Supp. 160, 177 (S.D.N.Y. 1978), which held that Second Circuit precedents "require that the alter ego theory, and any other theory determinative of the identity of parties to an arbitration agreement, be tested by an action to compel arbitration under § 4, prior to the arbitration hearings." *See also Orion Shipping & Trading Co. v. Eastern States Petroleum Corp*., 312 F.2d 299, 301 (2d Cir. 1963); *Data-Stream AS/RS Technologies, LLC, v. China Int'l Marine Containers, Ltd*., 2003 U.S. Dist. LEXIS 19903, *8 (S.D.N.Y. 2003).

If, on the other hand, Movants argue that the issue of fraudulent transfer, on which Plaintiff's Rule B attachment is also predicated, is one that must be decided in the London arbitration the obstacles to be surmounted to get there are even more formidable. The arbitration agreement of the bareboat charter requires the arbitration tribunal to apply English law. The attachment of the ADVANTAGE ARROW and specifically the issue of whether or not the transfer of the vessel from the Geden Group to the Advantage Tankers Group is fraudulent, is one that must be decided by an admiralty court of the United States under American principles of equity, not under English law. Determination of whether or not the transfer of the vessel was fraudulent is, in the circumstances, incidental to the court's general jurisdiction and for maintaining the same the admiralty court has plenary power to decide conflicting claims to property. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A*., 339 U.S. 684, 694-95 (1950) ("The basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim."). The issue of whether a court of the United States has *quasi in rem* jurisdiction in a Rule B attachment case cannot be farmed out to foreign arbitrators based on a stipulation of London arbitration and English law in the bareboat charter.

Movants fail to distinguish between the two entirely different proceedings at hand.  One is the underlying English arbitration, which will determine the merits of the owner's claim under the charter party for unpaid hire and damage to its vessel. The arbitration proceedings are unquestionably governed by the stipulated English law. However, there are also the ancillary proceedings before this Court that relate to the Rule B attachment of the ADVANTAGE ARROW, and these are not subject to English law. The proceedings before this Court are governed by U.S. maritime law. The 2014 fraudulent ownership transfer of the shipping assets of the Geden Group,

which had guaranteed performance of the bareboat charter party, is considerably distant from the dispute over the failure of Space Shipping to perform its redelivery and hire payment obligations under the charter party. For this reason, the issue of fraudulent transfer is collateral to the charter party contract, and the Court is not bound by the charter party choice of law provisions. *See Blue Whale Corp. v. Grand China Shipping Dev. Co*., 722 F.3d 488, 496 (2d Cir. 2013); *Richardson Stevedoring & Logistics Servs. v. Daebo Int'l Shipping Co*., 2015 U.S. Dist. LEXIS 51645, * 20 (E.D. La. 2015) (alter ego claims are collateral to the underlying contract, and that agreement's choice of law was irrelevant to assessing plaintiffs' alter ego and fraudulent transfer theories).

When a party "properly invoke[s] admiralty jurisdiction, courts apply federal maritime choice-of-law rules." *Blue Whale* at 498. The Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), lays out a multi-factor choice-of-law test, the purpose of which is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum. *Id.* at 499 (citing *Lauritzen*, 345 U.S. at 591). As in *Blue Whale*, the relevant "transaction" in this case is not the alleged failure to comply with the charter party -- it is the Defendants' having engaged in the fraudulent transfer of assets including the ADVANTAGE ARROW. The Court in this Rule B action is charged only with determining whether Plaintiff has stated a valid *prima facie* fraudulent transfer claim against Defendants in furtherance of its motion to attach Defendants' Vessel in the District. Accordingly, United States law has the strongest "points of contact" with this claim by virtue of the location of the property, Plaintiff's corresponding choice of this forum, the unavailability of an alternative forum, and the absence of a dominant foreign choice of law.  *Id.* at 499-500.

The Second Circuit Court of Appeals in *Blue Whale* reversed and remanded the case to the District Court "for reconsideration of the *prima facie* validity of Blue Whale's Rule B alter-ego

claim under federal common law." *Id*. at 500; *see also Richardson Stevedoring & Logistics Servs. v. Daebo Int'l Shipping Co*., 2015 U.S. Dist. LEXIS 51645, * 20 (E.D. La. 2015). In light of these considerations, this Court should determine the validity of the "fraudulent transfer" basis for the attachment of the ADVANTAGE ARROW under federal admiralty law standards set out in *Swift & Co. Packers Compania Colombiana Del Caribe, S. A*., 339 U.S. 684, 694 (1950)*.* Relegating determination of this issue to an English arbitration panel, which bound to decide all disputes under English law, would be contrary to well-established principles of U.S. Admiralty law that governs Rule B practice.

   **E.   Additional reasons the Defendants' motion should be denied.**

   In addition to the foregoing reasons, the Advantage Defendants' motion should also be denied because they have already submitted to the Court the issues that they now seek to remove from its jurisdiction by their motion to compel arbitration or stay these proceedings. As noted in the procedural history of the case, Movants' Rule E(4)(f) motion to vacate the attachment specifically contested the Plaintiff's grounds for the attachment and presented arguments to the Court identical to the arguments which they would now rather submit to an arbitration panel in London: *i.e.*, the issues of successor corporation liability and fraudulent transfer discussed above.

   In their motion to vacate, Movants specifically argued the corporate successor liability issue [Doc. 7 at 10-12] and the fraudulent transfer issue [Doc. 7 at 12-14]. Movants also have had an opportunity to offer oral argument in support of these issues at the hearing in open court on April 30. Their motion to vacate offered both legal and factual arguments. Their legal arguments were based on American law. Now Movants are seeking another opportunity to raise the same arguments in another forum, this time before an English arbitration tribunal applying English law. Relegating to arbitration these issues that have been already submitted for decision to this Court

would contravene the rules governing Rule B practice and would be unfair to Plaintiff, who would be required to once again brief, argue, and submit to another tribunal the same issues that have already been briefed, argued, and submitted here and await this Court's decision.  In addition to the unfairness to Plaintiff, the prejudice that would be engendered, including the additional cost of retrying again the same issues, is sufficient justification for the Court to rule that Movants have made a well-considered choice to waive arbitration when they filed and argued in this Court their motion to vacate under Supplemental Rule 12(b)(6). *See Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 315-16 (1st Cir. 1997); *Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 298 (D Mass. 2011).

## CONCLUSION

The Advantage Defendants' motion fails to distinguish between and conflates two separate sets of proceedings: the London arbitration proceedings involving arbitrable underlying contractual claims; and the Rule B ancillary proceedings, which involve jurisdictional issues that only this Court, and not an English arbitration panel, may decide. The latter include the corporate successor liability and fraudulent transfer issues, and the Court's jurisdiction over property found in the District. Defendants have failed to cite a single case in which a U.S. court has referred such Rule B issues for decision by foreign arbitration. For the reasons stated above and considering the case law cited in support, as well as what might be added at oral argument of this motion, Plaintiff respectfully prays that the motion hereunder opposed be denied in all respects; that the Court decide the opposed motion to vacate in Plaintiff's favor; and that the Court grant Plaintiff such other and further relief the Court deems just, equitable, and proper.

[Signature on following page.]

Dated:  June 29, 2018
       Houston, Texas

Respectfully submitted,

GAITAS, KENNEDY & CHALOS, P.C.

By:    /s/George A. Gaitas
        George A. Gaitas
        State Bar No. 24058885
        Federal Bar No. 705176
        Sean D. Kennedy
        State Bar No. 24102006
        Federal Bar No. 1007545
        Jonathan M. Chalos
        State Bar No. 24097482
        Federal Bar No. 3008683
        6250 Westpark Dr., Ste. 222
        Houston, Texas 77057
        Telephone: 281-501-1800
        Fax: 832-962-8178
        E-mail: gaitas@gkclaw.com
                kennedy@gkclaw.com
                chalos@gkclaw.com

*Attorneys for Plaintiff*
Psara Energy, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing Opposition with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record at their email addresses on file with the Court.

                             /s/George A. Gaitas
                             George A. Gaitas