# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| PSARA ENERGY, LTD. | § | |
| | § | |
| v. | § | |
| | § | |
| SPACE SHIPPING, LTD.; GEDEN HOLDINGS LTD.; ADVANTAGE ARROW SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES; ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; FORWARD HOLDINGS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMEHMET-WILLIAMS; and TUGRUL TOKGÖZ | § § § § § § § § § § § § § § | C.A. NO. 1:18-CV-00178<br><br>ADMIRALTY |

## ADVANTAGE DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION TO HOLD PLAINTIFF IN CONTEMPT

Subject to and without waiving their restricted appearance pursuant to Supplemental Admiralty Rule E(8), Advantage Arrow Shipping, LLC; Advantage Start Shipping, LLC; Advantage Tankers, LLC; Advantage Holdings, LLC; and Forward Holdings, LLC ("the Advantage Defendants") respectfully submit this Motion to Dismiss and Alternative Motion to Hold Plaintiff in Contempt.

### Introduction

On January 4, 2019, the Court ordered Plaintiff Psara Energy, Ltd. ("Psara") to arbitrate the claims it asserted in its Verified Complaint against

the Advantage Defendants under both the applicable charterparty and the guarantee of that charterparty. Dkt. 40. This Court rejected Psara's attempt to argue it was stating claims against the Advantage Defendants only under the guarantee. Dkt. 37 at n.2; Dkt. 40 at 2-3.

After Magistrate Judge Hawthorn (at Dkt. 50) and District Judge Crone (at Dkt. 52) both found that Psara was not entitled to a stay of the order to arbitrate, the Fifth Circuit similarly denied Psara's request for a stay, holding that Psara had not shown a likelihood of success on the merits. *See* 5th Cir. Order dated May 21, 2019, attached as Exhibit A.

After more than four months' delay, Psara eventually initiated London arbitration under the charterparty, albeit without prejudice to its pending appeal, and stated claims against the Advantage Defendants under both the charterparty and the guarantee. Then, in what the Advantage Defendants view as a cynical effort to undermine this Court's order, Psara reversed its position in the London arbitration and requested that the arbitral panel rule (contrary to and in blatant disregard for the decision of this Court) that the arbitral tribunal had no jurisdiction to consider Psara's claims against the Advantage Defendants—a request which the tribunal granted.

Psara's antics have cost the Advantage Defendants considerable time and expense, both in terms of the fees and costs of the short-lived London arbitration and in having to continue to bear the financial and opportunity

costs of maintaining the $4.8 million in bonds posted as security in this case. Perhaps more importantly to the Court, Psara has acted in contempt of this Court's order by resisting and ultimately undermining the London arbitration.

**Factual Background and Procedural History**

Plaintiff Psara Energy, Ltd. ("Psara") filed suit in this Court against seven business entities and three individuals: Space Shipping, Ltd.; Geden Holdings, Ltd.; Advantage Arrow Shipping, LLC; Genel Denizcilik Nakliyati A.S.; Advantage Tankers, LLC; Advantage Holdings, LLC; Forward Holdings, LLC; Mehmet Emin Karamehmet; Gulsun Nazli Karamehmet-Williams; and Tuğrul Tokgöz. The Court's jurisdiction under Supplemental Admiralty Rule B was premised on the presence within the district of the motor tanker *Advantage Arrow*, a vessel owned by Defendant Advantage Arrow Shipping, LLC.

More or less simultaneously with its filing of the lawsuit in this Court, Psara filed a virtually identical action in the Eastern District of Louisiana, C.A. No. 2:18-cv-04111. The Louisiana district court's jurisdiction under Rule B was premised on the presence within that district of the motor tanker *Advantage Start*. Psara's Original Complaint in Louisiana differed from its Original Complaint in this Court only in that Psara sought the attachment of the *Advantage Start* rather than the *Advantage Arrow*, and the owner of the

*Advantage Start* (Advantage Start Shipping, LLC) was a named defendant in place of the owner of the *Advantage Arrow* (Advantage Arrow Shipping, LLC).

After Psara obtained Rule B attachments of the motor vessel *Advantage Arrow* in Texas and the motor vessel *Advantage Start* in Louisiana, the Advantage Defendants made restricted appearances in both actions.[1]

Based on Psara's *ex parte* representations, this Court and the Eastern District of Louisiana each issued a writ of attachment of the vessel within each court's respective jurisdiction, and set the value of the bond for the release of each vessel at $19,860,063.80.

Although Psara sought bonds totaling $19,860,063.80 as security in aid of arbitration, Magistrate Hawthorn found that Psara's claims, when fairly stated, amounted to only $2,694,507.78. Dkt. 18. Noting it is prudent to err on the high side, this Court and the Eastern District of Louisiana set the amount of security required for the release of the two vessels at a $4,800,000 (this Court set the amount at $4,000,000, and the Eastern District of Louisiana allowed for an additional $800,000).

The Advantage Defendants subsequently posted release bonds totaling $4.8 million, and both vessels were released from attachment. The Louisiana

---

[1] Advantage Arrow Shipping, LLC did not appear in the Louisiana action and Advantage Start Shipping, LLC did not appear in the Texas action because they were not named defendants in the respective actions.

4

action was then transferred to this Court and consolidated with the pending Texas action.

In the interim between the vessels' release and the consolidation of the cases, the Advantage Defendants moved this Court for an order referring Psara's claims against the Advantage Defendants to arbitration pursuant to the arbitration clause contained in the charterparty that is the foundational starting point for Psara's claims against all defendants. Magistrate Judge Hawthorn issued a Report and Recommendation detailing the reasons for his recommendation that the District Court grant the Advantage Defendants' motion and refer Psara's claims against them to London arbitration. Dkt. 37. In his Report and Recommendation, Magistrate Hawthorn "recommended that the court direct the parties to arbitrate their dispute in London . . . and retain jurisdiction only to enter a decree on any arbitral award." Dkt. 37 at 16.

On January 4, 2019, the District Court adopted Magistrate Hawthorn's findings and recommendations as the court's own opinion, and ordered that "the parties are directed to arbitrate their dispute as outlined in the charter party." Dkt. 40 at 3. The Court administratively closed the case, retaining jurisdiction to enforce any arbitration award. Id.

After filing notice it intended to appeal the Court's order referring Psara's claims to arbitration, Psara sought a stay of the order in this Court by way of a motion filed January 29, 2019. Dkt. 42. On March 29, 2019, Magistrate

5

Hawthorn issued a Report and Recommendation recommending that Psara's Motion to Stay be denied. Dkt. 50. On April 24, 2019, the Court issued an order adopting the Magistrate' Report and Recommendation, and denying Psara's motion for a stay pending appeal. Dkt. 52.

Psara then sought a stay from the Fifth Circuit on May 2, 2019. *See* Opposed Appellant's Motion to Stay District Court Order Pending Appeal, attached as Exhibit B. On May 21, 2019, the Fifth Circuit rejected Psara's application for a stay pending appeal, stating that Psara had not shown a likelihood of success on the merits, and had not made an adequate showing of irreparable harm. *See* Fifth Circuit *per curiam* order dated May 21, 2019, attached as Exhibit A.

Psara's appeal of the Court's order referring the claims to arbitration was fully briefed to the Fifth Circuit as of July 18, 2019, and is ripe for decision. No ruling has issued, and the appeal has not been set for oral argument.

**The Arbitral Award**

Via claim submissions dated June 18, 2019, Psara submitted its claims against the Advantage Defendants to the arbitral panel. *See* Psara's Claim Submissions, attached as Exhibit C. On the first page of Psara's submission, it acknowledged this Court's order of January 4, 2019, referring its claims against the Advantage Defendants to London arbitration.

Psara submitted claims under both the charterparty and the guarantee. Psara asked for a declaratory award that the Advantage Defendants "are successors to Geden Holdings for the purposes of successor liability, and fraudulent transferees of Geden Holdings' assets . . .", and that Psara is "entitled to pierce the corporate veil so as to enforce as against the Advantage [Defendants] claims arising against Geden Holdings under the Guarantee." Psara's Claim Submissions, Exhibit C at ¶ 79. Additionally, Psara asked for the following monetary relief: "(1) US$233,708.33 in unpaid hire as a debt and/or damages for breach of the Charterparty; and (2) US$18 million for breach of the maintenance obligations and/or by way of indemnification, less the net proceeds of scrappage." Psara's Claim Submissions, Exhibit C at ¶ 80. Psara's own submissions to the arbitral panel therefore make plain that Psara was seeking to recover against the Advantage Defendants under the charterparty itself, and not merely under Geden Holdings' guarantee of that charterparty.

Notwithstanding Psara's obvious understanding that this Court had referred all its claims against the Advantage Defendants to arbitration, Psara showed contempt for the Court's order by subsequently arguing the arbitral panel could not exercise jurisdiction over its claims against the Advantage Defendants, and that the panel should therefore enter an award finding that it had no jurisdiction over Psara's claims. *See* Reasons For and Forming Part

of the Final Award, attached as Exhibit D, at ¶ 55. In the words of the arbitral panel, "Owners were not asking us to determine what they called the underlying liability issues . . ." *See* Reasons For and Forming Part of the Final Award, attached as Exhibit D, at ¶ 34.

The arbitral panel accepted Psara's invitation to find that it lacked jurisdiction over Psara's claims, and entered a final award declaring that the panel had no jurisdiction over the claims being made by Psara against the Advantage Defendants. *See* Award, attached as Exhibit E, at ¶ 15. The arbitral panel's Final Award awarded no sums to Psara on its claims against the Advantage Defendants.

## Motion to Dismiss

Psara was successful in its argument that the arbitral panel had no jurisdiction over its claims against the Advantage Defendants, but in succeeding in its arbitration argument Psara has become the author of its own misfortune vis-à-vis any recovery in this Court. Having understood this Court's admonition that all its claims against the Advantage Defendants were to be arbitrated, Psara deliberately took the position in the arbitration—after arbitrators had been appointed by the parties and even after serving its own claim submissions—that the arbitral panel had no jurisdiction to award any sums from the Advantage Defendants to Psara. Although bound to accept this

8

Court's order that it was to arbitrate its claims, Psara has engineered a final arbitral award that allows Psara no recovery.

Psara having received no monetary or declaratory award on its claims against the Advantage Defendants, the Advantage Defendants respectfully submit they are entitled to a release of the security being held in the registry of this Court. That is, the arbitral panel has issued its final award, with no sums being awarded to Psara. Having no award with which it can execute against the bonds deposited with this Court, those bonds can serve no further purpose and should be released back to counsel for the Advantage Defendants. Once those bonds are released, the *res* conferring this Court with subject matter jurisdiction will have been extinguished, and Psara's claims should be dismissed with prejudice.

The Advantage Defendants respectfully submit that any other result would in effect nullify this Court's prior determination that Psara could not pursue its claims against the Advantage Defendants other than in arbitration.

**Alternative Motion to Hold Plaintiff in Contempt**

Via correspondence dated April 30 through May 6, 2019, counsel for the Advantage Defendants and counsel for Psara discussed why Psara had for the prior four months wholly failed to comply with the Court's order and commence arbitration of its claims against the Advantage Defendants. *See* E-mail correspondence dated April 30 – May 6, 2019, attached as Exhibit F.

Counsel for the Advantage Defendants advised counsel for Psara that Psara was effectively taking for itself the stay of the Court's order that it had been entirely unsuccessful in procuring either in this Court or at the appellate level. Psara's delay in complying with the order for arbitration resulted in prejudice to the Advantage Defendants because each day's delay in commencing the arbitration necessarily equated to a day's delay in the resolution of the dispute, a day during which the Advantage Defendants had $4.8 million tied up as security in this Court. When counsel for Psara expressed a belief there had been a "tacit understanding" that Psara need not comply with the Court's order while the appeal was pending, counsel for the Advantage Defendants made clear there was not any such understanding, nor could there reasonably have been. *See* id.

Disabused of its professed (and frankly nonsensical) belief there was a "tacit understanding" between the parties that Psara need not comply with the Court's unambiguous order to arbitrate its claims against the Advantage Defendants, Psara nominated its arbitrator and finally commenced its claims in arbitration on May 20, 2019—more than four and a half months after first being ordered to do so. *See* Notice of Arbitration, attached as Exhibit G.

Psara's arbitral submissions plainly demonstrate that Psara was under no misapprehension of what this Court ordered when it directed Psara to arbitrate its claims against the Advantage Defendants. Psara advised the

arbitral panel that the Advantage Defendants "have (pending appeal) successfully argued that only [the Arbitral] Tribunal has jurisdiction over the claims now made by [Psara]. That was the effect of the Crone Order for which the Advantage Respondents so strenuously contended." Psara's Reply Submissions, attached as Exhibit H, at ¶ 8(x). Psara understood that this Court had ordered that it have its claims against the Advantage Defendants determined in London arbitration: (". . . in the Rule B proceedings the Advantage Respondents contended, successfully, that **these disputes** should be referred to arbitration . . ." (emphasis added)). Exhibit H at ¶ 34. Psara understood that this Court ordered that Psara could recover the amounts being held as security in the registry of this Court only if the arbitral panel determined Psara was entitled to do so: ". . . the Crone Order directed that the Rule B proceedings be determined by the [Arbitral] Tribunal." Exhibit H at ¶ 52(i).

Notwithstanding its clear understanding of what this Court had ordered, Psara nonetheless subsequently argued to the arbitral panel that the panel had no jurisdiction to determine those claims, arguing that its claims against the Advantage Defendants were only for "enforcement" and that Psara was not making a substantive claim against the Advantage Defendants under the

11

charterparty. *See* Exhibit D, Reasons For and Forming Part of the Final Award, at ¶ 54.[2]

The party seeking an order of civil contempt must show, by clear and convincing evidence, that (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court's order. *Whitcraft v. Brown*, 570 F.3d 268 (5th Cir. 2009). In such a proceeding, the only issue is whether the respondent complied with the order; an absence of evidence that the noncompliance was willful is irrelevant. *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000).

Once the movant has established a failure to comply with the court's order, the burden shifts to the respondent to show mitigating circumstances or substantial compliance with the court's order such that the court should refrain from exercising its contempt power. *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995).

Here, the District Court's order (Dkt. 40) adopting the magistrate's Report and Recommendation as the Court's own opinion was inarguably in effect, and plainly required Psara to have its claims against the Advantage Defendants determined in arbitration. Psara failed to comply with the Court's order, first by failing to timely take any step to comply for more than four and

---

[2] The arbitral panel correctly noted that Psara has, at best, been inconsistent and confusing in its articulation of what its claims are. *See* Exhibit D at ¶¶ 34-35.

a half months, and then by arguing that the arbitrators were powerless to consider the claims the Court ordered Psara to submit to arbitration, and which Psara had in fact already submitted for the panel's consideration.

Even if Psara believed, contrary to the Court's order, that the arbitral panel did not have jurisdiction over its claims, the terms of The London Maritime Arbitrators Association (pursuant to which the arbitration was to be conducted) provide that parties to an arbitration may agree to expand or contract the arbitral panel's jurisdiction over their disputes. *See* LMAA Terms 2017, attached as Exhibit I, at ¶ 12 (". . . **unless the parties otherwise agree** the jurisdiction of the tribunal shall extend to determining all disputes arising under or in connection with the transaction the subject of the reference, and each party shall have the right before the tribunal makes its award . . . to refer to the tribunal for determination of any further dispute(s) arising after the commencement of the arbitral proceedings . . ." (emphasis added)). Psara was therefore at liberty to submit its claims for ultimate determination by the tribunal as this Court had directed, notwithstanding its continued insistence that this Court's order requiring it to do so was erroneous.

If Psara believes it has cleverly convinced the arbitral panel to, in effect, nullify this Court's prior determination that Psara's claims are arbitrable, it may have been too clever by half. Because Psara was at liberty to voluntarily submit its claims against the Advantage Defendants to arbitration (as it in fact

13

did in its initial submissions), its decision to subsequently argue that those same claims were not subject to the arbitral panel's jurisdiction is in direct contravention of this Court's prior order.

The Advantage Defendants having shown that (1) a court order was in effect; (2) the order required Psara to submit its claims to arbitration; and (3) Psara failed to comply with the order, *Whitcraft*, 570 F.3d 268, Psara bears the burden to show mitigating circumstances or substantial compliance. *FDIC*, 43 F.3d at 170. Considering all the circumstance described above, the Advantage Defendants do not believe Psara can do so.

The Advantage Defendants respectfully submit that that the release of the Advantage Defendants' security and dismissal of Psara's claims is the proper sanction for Psara's decision to initially ignore this Court's order for four and a half months, and then argue (in direct contravention of the Court's order) that its claims are non-arbitrable. Anything short of such a sanction would essentially bring back into this Court the same issues the Court previously determined were subject to arbitration, and would in effect reward Psara for its flouting of this Court's order.

WHEREFORE, considering the foregoing, the Advantage Defendants pray that, whether through a simple order of dismissal or alternatively through an order holding Psara in contempt, the claims against the Advantage Defendants be dismissed with prejudice and the security released back to

counsel for the Advantage Defendants. The Advantage Defendants pray for all other and further relief to which they may be justly entitled.

>Respectfully submitted,
>
>BY: */s/ Marc G. Matthews*
>Marc G. Matthews
>Texas Bar #24055921
>Federal ID No. 705809
>500 Dallas Street, Suite 1300
>Houston, Texas 77002
>Telephone: (713) 626-1386
>Telecopier: (713) 626-1388
>marc.matthews@phelps.com
>
>**ATTORNEY-IN-CHARGE**
>**FOR THE ADVANTAGE**
>**DEFENDANTS**

OF COUNSEL:
**Phelps Dunbar LLP**
Brian D. Wallace (LA Bar #17191; Fed. ID 205890)
wallaceb@phelps.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned on this the 3rd day of January, 2020, upon all counsel of record.

>*/s/ Marc G. Matthews*
>Marc G. Matthews