CASE NO. 19-40071

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

PSARA ENERGY, LIMITED,

Plaintiff-Appellant

v.

ADVANTAGE ARROW SHIPPING, L.L.C.; ADVANTAGE TANKERS, L.L.C.;
ADVANTAGE HOLDINGS, L.L.C.; FORWARD HOLDINGS, L.L.C.,

Defendants-Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PSARA ENERGY, LIMITED,

Plaintiff-Appellant

v.

ADVANTAGE START SHIPPING, L.L.C.; ADVANTAGE TANKERS, L.L.C.;
ADVANTAGE HOLDINGS, L.L.C.; FORWARD HOLDINGS, L.L.C.,

Defendants-Appellees

---

ON APPEAL  FROM THE UNITED STATES DISTRICT COURT, EASTERN
DISTRICT OF TEXAS, BEAUMONT DIVISION, CIVIL ACTIONS NO. 1:18-
CV-178 AND 1:18-CV-364

---

**OPPOSED APPELLANT'S MOTION TO STAY DISTRICT COURT
ORDER PENDING APPEAL**

---

Respectfully submitted:

GAITAS & CHALOS, P.C.

EXHIBIT
B

George A. Gaitas
Texas State Bar No. 2405885
Federal Bar No. 705176
Jonathan M. Chalos
Texas State Bar No. 24097482
Federal Bar No. 3008683
6250 Westpark Drive
Suite #222
Houston, TX 77057
Tel: (281) 501-1800
Fax: (832) 962-8178

*Attorneys for Psara Energy, Limited*

# CERTIFICATE OF CONFERENCE

Pursuant to 5th Cir. R. 27.4, I certify that I conferred with counsel for Appellees regarding the relief sought in this motion. Counsel for Appellees is OPPOSED to the motion and intends to file a response.

/s/George A. Gaitas
George A. Gaitas

## CERTIFICATE OF INTERESTED PERSONS
### CASE NO. 19-40071

(1)    No. 19-40071, Psara Energy, Limited v. Space Shipping Ltd, et al
USDC No. 1:18-CV-178
USDC No. 1:18-CV-364

(2)    The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest
in the outcome of this case.  These representations are made in order that the
judges of this court may evaluate possible disqualification or recusal.

George A. Gaitas
Gaitas & Chalos, P.C.
6250 Westpark Dr.
Suite #222
Houston, TX 77057
Tel: 281-501-1800
Attorney for Plaintiff-Appellant,
Psara Energy, Ltd.

Marc G. Matthews
Phelps Dunbar LLP
500 Dallas St.
Suite #1300
Houston, TX 77002
Tel: 713-626-1386
Attorney for Defendants-
Appellees Advantage
Arrow Shipping
Shipping, LLC;
Advantage Tankers LLC;
Advantage Holdings
LLC; Forward Holdings
LLC; Advantage Start
Shipping, LLC

Jonathan M. Chalos
Gaitas & Chalos, P.C.
6250 Westpark Dr.
Suite #222
Houston, TX 77057
Tel: 281-501-1800
Attorney for Plaintiff-Appellant,
Psara Energy, Ltd.

Brian D. Wallace
Phelps Dunbar LLP
366 Canal St.
Suite #2000
New Orleans, LA 70130
Tel: 504-566-1311
Attorney for Defendant-
Appellee Advantage
Start Shipping, LLC

**ADVANTAGE ARROW SHIPPING, LLC; ADVANTAGE START SHIPPING, LLC; ADVANTAGE TANKERS, LLC; ADVANTAGE HOLDINGS, LLC; FORWARD HOLDINGS, LLC,**
Marc G. Matthews
Phelps Dunbar LLP
500 Dallas St.
Suite #1300
Houston, TX 77002

*Attorney of Record for Defendants--Appellees*

Interest: Defendants moved to compel arbitration and were ordered to arbitrate under the same final order that administratively closed the case and denied all pending motions as moot. The Court retained jurisdiction only to enforce any arbitration award.


**PSARA ENERGY, LTD.**
George A. Gaitas
Gaitas & Chalos, P.C.
6250 Westpark Dr.
Suite #222
Houston, TX 77057

*Attorney of Record for Plaintiff—Appellant*

Interest: Plaintiffs opposed Defendant's motion to compel arbitration and were ordered to arbitrate under the same order that administratively closed the case and denied all pending motions as moot. The Court retained jurisdiction only to enforce any arbitration award.

**Other Interested Parties:**

Defendants that have not appeared in district court proceedings:

Mehmet Emin Karamehmet; Gulsun Nazli Karamehmet-Williams; Tuğrul Tokgöz; Space Shipping, Ltd.; Geden Holdings, Ltd.; Genel Denizcilik Nakliyati A.S.

Interest:   Officers and/or directors and/or ultimate beneficial owners of Geden Holdings, Ltd.; Genel Denizcilik Nakliyati; Space Shipping, Ltd.; and successor corporations and fraudulent transferees Advantage Tankers, LLC; Advantage Holdings, LLC; Forward Holdings, LLC.

/s/George A. Gaitas
George A. Gaitas

# TABLE OF CONTENTS

Certificate of Conference…………..……………………………………..……...i

Certificate of Interested Persons…………..…………………………….…....ii

Table of Contents ………….……………………….…….……………….…..v

Table of Authorities ………….………….…………….…………….………...vii

Preliminary Statement…………….…………………………………….……1

Proceedings in the District Courts...……….…………………………….……2

    **A.**    Factual Background.…………….……………………………2

    **B.**    Procedural History.………………………………………...3

The District Court's Reasons for Denying the Stay...……………………….…..7

Argument.…………….…………………………………………………9

    **I.**    Plaintiff Respectfully Requests the Court to Stay the Order
        of the District Court.…………………………………………..9

    **II.**    Legal Standards Governing Stays Pending Appeal……………….....10

        **A.**    Plaintiff Has A Substantial Possibility of Success on Appeal…11

            **(1)** The District Court erroneously ordered arbitration
            of the issue of the ownership of the property attached under
            Rule B, a matter squarely within its exclusive admiralty
            jurisdiction and, therefore, inherently non-arbitrable…………11

            **(2)** The Decision of the District Court to refer to
            arbitration corporate identity and successor corporation
            issues was unsupported by case authority and contrary
            to practice in similar Rule B cases………………………….....13

**(3)** The Decision of the District Court to refer to arbitration issues arising from collateral Rule B proceedings for security rests on an erroneous reading of the charter party and the arbitration clause, and is contrary to decided case law.............................................................................13

**(4)** The District Court erroneously referred to arbitration non-arbitrable issues and did not even deal with the issue of arbitrability.............................................................15

**(5)** The District Court should have addressed and sustained Plaintiff's argument that Appellees had waived arbitration in pursuing and submitting for decision a Rule E(4)(f) motion to vacate..........................16

**B.** Plaintiff Will Suffer Irreparable Injury if a stay is not granted...........................................................17

**C.** Appellees will not suffer harm from a stay of the District Court's Order................................................20

**D.** Granting the stay would serve the public interest................21

Conclusion and Prayer for Relief........................................................22

Certificate of Service........................................................................23

Certificate of Compliance...................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Amoco Overseas Oil Co. v. Compagnie National Algerienne de Navigation*
(Co. N.A. N."), 605 F.2d 648, 656 (2d Cir. 1979)…………………………………..21

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434,
437-438 (2d Cir. 2006)………………………………………………………………11

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488,496
(2d Cir. 2013)……………………………………………………………….......12

*British Marine PLC v. Aavanti Shipping & Chartering Ltd.*, 2014 U.S. Dist.
LEXIS 76390 at *5-6 (E.D.N.Y. 2014)………......……………………………..13

*Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391, 398
at fn. 4 (S.D.N.Y. 2008)……………………………………………………………..13

*Consub Del. LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 114
(2d Cir. 2008)………………………………………………………………14,15

*D'Amico Dry d.a.c. v. Primera Mar. (Hellas) Ltd.*,
348 F. Supp. 3d 365, 392-393 (S.D.N.Y. 2018)…………………………………..12

*Executone Info. Sys. v. Davis,* 26 F.3d 1314, 1321 (5th Cir. 1994)………………15

*First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*,
540 F. Supp. 2d 483 (S.D.N.Y. 2008)…………………………………………13

*Flame S.A. v. Freight Bulk Pte Ltd.*, 807 F.3d 572, 582-583 (4th Cir. 2015)…….12

*Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018)………………...16,17

*Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 670 (1982)…………………….11

*Hidrocarburos y Derivados, C.A. v. Lemos,* 453 F. Supp. 160, 177
(S.D.N.Y. 1978)……………………………………………………………..13

*Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011)....................................19

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*,
961 F. Supp. 600, 610 (S.D.N.Y. 1997)...................................................13

*MC Asset Recovery LLC v. Castex Energy, Inc. (In re Mirant Corp.)*,
613 F.3d 584, 588 (5th Cir 2010)..........................................................16

*Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*,
120 F.3d 304, 315-16 (1st Cir. 1997)......................................................16

*Paine Webber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990)..............17

*Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632
(9th Cir.1982)...................................................................................14

*Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)....................................11

*Sapic v. Gov't of Turkmenistan.*, 345 F.3d 347, 354 at Fn. 4
(5th Cir. 2003)...................................................................................18

*Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69
(2d Cir. 2009)................................................................................11,14

*Swift Co Packers v. Compania Colombiana Del Caribe* 339 U.S. 684,
689 at Fn. 3,  694-695 (1950)..............................................................9,12

*United States v. Transocean Deepwater Drilling, Inc.*,
537 Fed. Appx. 358, 360 (5th Cir. 2013)..................................................10

*Webb v. Investacorp, Inc.*89 F.3d 252, 258 n. 3 (5th Cir. 1996)..............15,18

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211,214 (5th Cir. 2003)........18

**Statutes:**

28 U.S.C. § 1333..............................................................................11,22

**Other Authorities:**

Federal Rules of Appellate Procedure Rule 8……………………………….......1, 9

Federal Rules of Civil Procedure Supplemental Rules – Rule B……………*Passim*

Federal Rules of Civil Procedure Supplemental Rules – Rule E(4)…………*Passim*

# PRELIMINARY STATEMENT

Plaintiff-Appellant, PSARA ENERGY LIMITED, ("Plaintiff" or "PSARA") submits this Memorandum of Law, along with the accompanying Declaration of Attorney George Gaitas, in support of its motion, pursuant to F.R.A.P. Rule 8(a)(2) for a stay of the Order of the District Court dated January 4, 2019. ROA.928-930. That Order compelled arbitration in London of the issue of the ownership of assets attached under process of maritime attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions[1]. Plaintiff's Rule B Verified Complaints pled the attached tanker vessels, the ADVANTAGE ARROW and ADVANTAGE START, were assets of Plaintiff's obligors held by Defendants-Appellees ("Appellees" or "Defendants") as successor corporations and/or fraudulent transferees. Plaintiff contends this issue is within the exclusive admiralty jurisdiction of the District Court under Rule B and inherently non-arbitrable. It was erroneously referred to arbitration without considering the issue of arbitrability. Contrary to the express wording of the arbitration agreement and provisions of the charter party that allow Plaintiff to obtain pre-judgment security in other jurisdictions, and contrary to the law on this very issue in all decided Rule B cases, it was referred to arbitration. Plaintiff also appeals the Order compelling arbitration, notwithstanding waiver of arbitration by Appellees by reason

---

[1] Hereinafter, "Rule B"

of their earlier fully litigated motion to vacate the attachment based on the very same issues the District Court referred to arbitration.

If the Court does not grant the stay and the issues are arbitrated under English law, it is probable the arbitration tribunal in London will reach a decision contrary to the eventual decision of this Court. Moreover, the arbitration tribunal may decide the property attached is not property of the Appellees, and the District Court will be bound to vacate the attachment based on an award of the arbitration tribunal deciding issues this Court may rule are not arbitrable. Apart from the impairment or loss of valuable security, in a claim against insolvent obligors, which would be irreparable harm; not granting a stay may lead to the legally illogical result of a foreign arbitration award deciding an issue which lies within the Court's exclusive admiralty jurisdiction. Staying the arbitration order pending appeal is imperative.

## PROCEEDINGS IN THE DISTRICT COURTS

### A. Factual Background

PSARA bareboat-chartered its vessel CV STEALTH ("Vessel"), to Space Shipping, Ltd. ("SPACE" or "charterer"). ROA.13, 37-63. Charterer's performance was guaranteed by its parent company Geden Holdings, Ltd. ("GEDEN") ROA.13. (*See* Complaint at ROA.13-14, 27, 63, 67, 70-71, 79; and performance guarantee at ROA.64-67). SPACE sub-time-chartered the Vessel to ST Shipping & Transport Pte. Ltd. ROA.15. ST Shipping sub-voyage-chartered

the Vessel to lift a cargo up to 400,000 bbls of Venezuelan crude to the United States. *Id.*

While so employed, the Vessel was detained on September 14, 2014 by Venezuelan authorities on suspicion of lifting stolen oil. ROA.15. She remained detained for more than three years. SPACE altogether failed to maintain her during detention, leading to extensive damage, loss of class status, and inability to sail under her own power. ROA.16. SPACE towed the ship to Trinidad where she was redelivered to PSARA on March 24, 2018. ROA.16. PSARA claims damages from SPACE in London arbitration demanding: an amount equivalent to the repaired market value of the Vessel; and unpaid charter hire, interest, legal, and other costs. ROA.33. GEDEN's performance guarantee had been accepted by Plaintiff on the express representation of GEDEN that it was the ultimate beneficial owner of 11 crude oil tankers. ROA.27. Approximately throughout the first half of 2015, GEDEN surreptitiously transferred its entire fleet of crude oil tankers to Appellees, a business group controlled by the same ultimate beneficial owners as GEDEN. ROA.19-20.

## B. Procedural History

To secure its claim for damage and unpaid bareboat hire, PSARA, on April 20, 2018, brought suit in the United States District Court for the Eastern District of Texas, with a prayer for maritime attachment and garnishment of the MT

ADVANTAGE ARROW under Rule B. Plaintiff's claim for the attachment of the ADVANTAGE ARROW as property of its contractual obligors was premised on Appellees' status as: (1) successor corporations of GEDEN (ROA.21-24); and (2) fraudulent transferees of the ADVANTAGE ARROW, to the detriment of Plaintiff as creditor (ROA.27-31). The Magistrate Judge, accordingly, issued an order of maritime attachment. ROA.177-179.

Concurrently, PSARA also sued in the Eastern District of Louisiana and attached another vessel, the MT ADVANTAGE START. ROA.1164-1328. The E.D. of Louisiana Verified Complaint also relied on the successor corporation and fraudulent transferee status of Appellees. ROA.1176-1181.

Appellees moved in both district courts, under Supplemental Rule E(4)(f), to vacate the respective attachments. ROA.184-436; ROA.1336-1413. Among the grounds urged in support of Appellees' motions to vacate were that Appellees were neither successor corporations of GEDEN nor fraudulent transferees. ROA.192-196.; ROA.204-429; ROA.1336-1345. Plaintiff opposed the motions in both courts. ROA.443-628; ROA.1414-1420.

The ADVANTAGE ARROW motion to vacate was heard on April 30, 2018. ROA.630; *see also* Transcript at ROA.1062-1110. At the conclusion of the hearing, the Magistrate Judge stated he would decide the motion to vacate once the ADVANTAGE ARROW was released against substitute security. ROA.1108:13-

25[2]. On May 4, 2018, the Magistrate Judge ordered substitute security for the release of the ADVANTAGE ARROW in the amount of $4,000,000. The order stated: "The court will address the 'Motion to Vacate Attachment' at a later time." ROA.721.

The ADVANTAGE START motion to vacate was heard on May 16, 2018. ROA.1517-1546. The Louisiana District Court did not vacate the attachment. Instead, it ordered substitute security in the sum of $800,000. ROA.1478. It dismissed Defendants' motion to vacate as moot and transferred venue of the Rule B proceeding for the ADVANTAGE START to the Eastern District of Texas. ROA.1498-1500. The actions were consolidated into a single proceeding. ROA.868-869.

On June 15, 2018 – a month and a half after the Rule E(4)(f) hearing of April 30, 2018 – with the District Court's ruling on the Rule E(4)(f) motion still pending, Appellees moved to compel arbitration. They argued, even if they were not signatories to the bareboat charter, all of PSARA's claims arose from the charter between PSARA and SPACE, which contains a valid and enforceable arbitration clause. ROA.808-827. PSARA opposed Defendants' motion arguing the status of Appellees as successor corporations of GEDEN and/or fraudulent transferees was not arbitrable in a Rule B attachment and, therefore, should be retained for

---

[2] When citing to specific lines in a transcript contained in the record on appeal, the relevant page number in the ROA will be cited first, followed by a colon and the corresponding line citation, *e.g.* ROA page 1108, lines 13 through 25.

determination on their merits in plenary proceedings by the District Court. ROA.837-842. In addition, Plaintiff argued these issues had been fully submitted for decision to the Magistrate Judge in Appellees' Rule E(4)(f) motion to vacate the attachment, which had been argued on the basis of U.S. law, and a ruling of the District Court was imminent. Forcing Plaintiff to submit the very same issues for decision by an arbitral tribunal was prejudicial and Defendants-Appellees had made a well-considered choice to waive arbitration. *Id.* at 842-843.

On October 11, 2018, the Magistrate Judge heard the motion to compel arbitration. ROA.1111-1138. On November 20, 2018, he issued his Report and Recommendations (ROA.867-883) ("November R&R") "...granting the motion, directing the parties to arbitration, and staying the case pending resolution of the arbitrable issues." *Id.* at 867. The November R&R did not identify which issues were arbitrable. However, it was clear from the Magistrate Judge's statements at the hearing, there was nothing left for the court to deal with but to execute the arbitration award after it was made in London. ROA.1129:25, 1130:1-5.

On December 4, 2018, Plaintiff-Appellant filed its objections to the November R&R. ROA.892-894. On January 4, 2019, the Eastern District of Texas Court issued an Order adopting the November R&R, overruling Plaintiff's objections. ROA.928-930. On January 28, 2019, Plaintiff filed its Notice of Appeal. ROA.931-933. On January 29, 2019, Plaintiff filed its motion to stay the Order

compelling arbitration pending the outcome of the appeal. ROA.934-995, 1038-1044. On April 24, 2019, the District Court issued an order denying Plaintiff's stay application. *See* Attorney Declaration of George Gaitas (hereinafter "Gaitas Declaration") and copy of the relevant order attached thereto as GAITAS EXHIBIT 1.

## THE DISTRICT COURT'S REASONS FOR DENYING THE STAY

The District Court's Order did not articulate any reasons for denying the Motion to Stay. Instead, it referred to the Magistrate Judge's Report and Recommendations stating: "after considering Psara's objections, the court finds they are without merit and that Judge Hawthorn's findings and ultimate conclusion are correct." *Id.* at p. 2. Copy of the said R&R is attached to Gaitas Declaration as GAITAS EXHIBIT 2 (hereinafter "March R&R"). The reasons set out in the March R&R may be summarized as follows:

With regard to the probability of Plaintiff's success on the merits on appeal the R&R stated:

> Psara first contends the district court erred in finding that it waived the argument that it is suing the Advantage Defendants under a performance guarantee rather than the charter party that contains a binding arbitration clause. Doc. No. 42 at 11–12. Yet, the district court stated in the alternative, that even if Psara did not waive such an argument, it still had no merit. See Doc. No. 40 at 2.......

Gaitas Declaration, GAITAS EXHIBIT 2 at p.3.

As to Plaintiff's argument that Appellees did not cite a single decision from a court of the United States referring the issue of the corporate identity of the owner of an asset seized in Rule B proceedings or the issue of such an owner as a fraudulent transferee to arbitration (ROA.945), the March R&R stated citation to a case was unnecessary as the arbitration clause provided: "This Contract shall be governed by and construed in accordance with English law and *any dispute arising out of or in connection with this Contract* shall be referred to arbitration in London... Doc. No. 1-1 (emphasis added)." Gaitas Declaration, GAITAS EXHIBIT 2 at pp. 3-4.

With regard to irreparable harm resulting from the reference to an arbitral tribunal, under English law, of non-arbitrable issues within the District Court's exclusive admiralty jurisdiction the March R&R states:

> The potential for not succeeding on the merits of a claim—under the choice of law specifically agreed to by Psara—is not considered an irreparable injury. In any event, should Psara succeed on appeal before the Fifth Circuit, any injury suffered in arbitration will be ameliorated by the Court of Appeals' mandate. Thus, such an injury cannot be characterized as "irreparable."

*Id.* at p. 4.

With regard to Plaintiff's argument Defendants-Appellees will not be harmed if the stay is granted, the March R&R stated they would be, by reason of the annual bond premium cost and not utilizing $4.8 million in counter-security. *Id.* at p. 5

With regard to the argument the stay is in the public interest, the March R&R stated:

Because the undersigned found that Psara's claims against the Advantage Defendants relate to the charter party, and Psara even conceded that the issues "touch upon the charter party" (Doc. No. 45-1 at 7), the public interest lies in not delaying arbitration.

*Id.* at p. 5.

## ARGUMENT

## I.  PLAINTIFF RESPECTFULLY REQUESTS THE COURT TO STAY THE ORDER OF THE DISTRICT COURT

Pursuant to Federal Rule of Appellate Procedure ("F.R.A.P.") 8, a party must ordinarily first move in the district court for a stay of the order pending appeal. F.R.A.P. Rule 8(a). Plaintiff has done so. Its motion was denied. Plaintiff's brief on appeal will be due in a few days. It will not be long before the Court has an opportunity to consider the merits of the appeal. But, if the stay is not granted and Plaintiff does not submit the critical issue of the ownership of the property attached to arbitration, the District Court has warned, in no uncertain terms, it will dismiss the case for failure to prosecute. ROA.1133:4-11. This would result in the release of the substitute security and appellate review of the order referring the issue of the ownership of the attached res to arbitration will become an empty rite. *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950). These concerns are not assuaged - on the contrary they are heightened - by statements in the March R&R such as: "In any event, should Psara succeed on appeal before the Fifth Circuit, any injury suffered in arbitration will be ameliorated by the

Court of Appeals' mandate." (Gaitas Declaration, GAITAS EXHIBIT 2 at p. 4); and "Should the claims between Psara and the Advantage Defendants resolve in arbitration before the appeal is disposed in the Fifth Circuit, the undersigned will likely keep the substitute security in place until such time as the Fifth Circuit has decided the appeal." *Id.* at p. 5, fn. 1. The point is, that without an order of a stay, Plaintiff will be required to contest arbitrability of Rule B attachment issues simultaneously before two tribunals; the Fifth Circuit Court of Appeals under American law, and a London arbitral panel under English law. If Plaintiff prevails in this appeal, and Appellees prevail on the same issues in arbitration, the result might be two conflicting inconsistent judgments, with no end in sight to the spiraling litigation and its ultimate resolution.

## II. LEGAL STANDARDS GOVERNING STAYS PENDING APPEAL

When deciding whether to grant a stay pending appeal, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Transocean Deepwater Drilling, Inc.*, 537 Fed. Appx. 358, 360 (5th Cir. 2013) (citing *Nken v. Holder*, 556 U.S. 418, 433, 434 (2009)). Under this "traditional standard", the first two factors "are the most critical." *Id.* However, "...on motions

for stay pending appeal the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when <u>a serious legal question</u> is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (*emphasis added*).

## A.   Plaintiff Has a Substantial Possibility of Success on Appeal

Plaintiff, at a minimum, has a substantial possibility of success on appeal, and more likely a substantial probability. As the test itself makes clear, an appellant need not demonstrate a "probability" of success, but a "substantial case on the merits." *Id.* In the case at hand several serious legal issues are involved. *Id.* Plaintiff will show the balance of equities favors granting the stay.

### (1)   The District Court erroneously ordered arbitration of the issue of the ownership of the property attached, a matter squarely within its exclusive admiralty jurisdiction and, therefore, inherently non-arbitrable

District courts have exclusive admiralty jurisdiction over *quasi-in-rem* Rule B attachments. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437-438 (2d Cir. 2006); 28 U.S.C. §1333; *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 670 (1982). Part of this jurisdiction is the determination of the ownership of the property attached under Rule B. "As a remedy quasi in rem, the validity of a Rule B attachment depends entirely on the determination that the res at issue is the property of the defendant at the moment the res is attached." *Shipping*

*Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69 (2d Cir. 2009). In Rule B cases, the ownership of the property attached is sometimes decided by the courts with reference to equitable principles in order to prevent the eventual judgment of the admiralty court from being thwarted by commonly employed schemes such as pre-attachment fraudulent transfers; alter ego corporate ownership structures; successor corporations; etc. *See e.g. Swift Co Packers v. Compania Colombiana Del Caribe* 339 U.S. 684, 689 at Fn. 3, 694-695 (1950); *Flame S.A. v. Freight Bulk Pte Ltd., 807 F.3d 572, 582-583* (4th Cir. 2015); *d'Amico Dry d.a.c. v. Primera Mar. (Hellas) Ltd.*, 348 F. Supp. 3d 365, 392-393 (S.D.N.Y. 2018).

Plaintiff brought Rule B proceedings to obtain *quasi-in-rem* jurisdiction over its obligors and security for its current claims against SPACE and GEDEN. The claims are predicated on the status of Appellees as successor corporations of Plaintiff's obligors and/or fraudulent transferees of their assets. At the outset, in opposing Appellees' motion to compel arbitration, Plaintiff argued Rule B proceedings are collateral to those arising under the charter party and the GEDEN performance guarantees (ROA.55-67, 1220-1222). *See e.g. Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 496 (2nd Cir 2013); ROA.832-836, 839-842.

It is a contradiction in terms for the District Court to have exclusive admiralty jurisdiction over Rule B attachments and refer to foreign arbitration for decision the

ownership of the asset attached.  Arbitration tribunals are not competent to decide Rule B issues.

> **(2)    The Decision of the District Court to refer to arbitration corporate identity and successor corporation issues was unsupported by case authority and contrary to practice in similar Rule B cases**

Every decided Rule B case Plaintiff has been able to find addressing the issue of the identity of the owner of the asset attached, the district court has retained it for decision and not referred it to arbitration.  *See e.g. Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F. Supp. 160, 177 (S.D.N.Y. 1978); *First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F. Supp. 2d 483 (S.D.N.Y. 2008); *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 610 (S.D.N.Y. 1997); *British Marine PLC v. Aavanti Shipping & Chartering Ltd.*, 2014 U.S. Dist. LEXIS 76390, at *6 (E.D. NY 2014); *Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391, 398 at Fn. 4 (S.D.N.Y. 2008).  ROA.839, 890.

Appellees have not cited a single court decision to the contrary supporting their argument that such issues may be referred to arbitration.  Similarly, the District Court did not justify its decision to refer the ownership of the asset issues to arbitration by reference to any authority.

> **(3)    The Decision of the District Court to refer to arbitration issues arising from collateral Rule B proceedings for security rests on an erroneous reading of the charter party and the arbitration clause, and is contrary to decided case law.**

The March R&R recommendation to refer to arbitration the collateral Rule B claims and issues rests on its judgment that citation of authority for such referral is "unnecessary" as "...the arbitration clause within the charter party at issue is straightforward: This Contract shall be governed by and construed in accordance with English law and *any dispute arising out of or in connection with this Contract shall be referred to arbitration in London...*". Gaitas Declaration, GAITAS EXHIBIT 2 at p. 3-4. The March R&R concludes: "Psara cannot credibly argue that the dispute over whether the Advantage Defendants are fraudulent transferees of Space Shipping is not a dispute arising out of or in connection with Space Shipping's alleged breach of the charter party." *Id.* at p. 4.

Two Appellate courts have rejected the reasoning that a charter party forum selection clause containing such wording limits a party's pursuit of security to the contractually selected forum. *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982), held that "[a]n attachment does not fit neatly within the word 'dispute'." The same reasoning was followed in *Consub Del. LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 114 (2d Cir. 2008) (*affirming Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 311 (S.D.N.Y. 2007)); *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009).

Moreover, the District Court's decision to refer all issues to arbitration, including the collateral Rule B issues, rests entirely on reading the arbitration clause in isolation from the rest of the charter party (Rider Clause 10), which provides that Plaintiff may take action "...to recover amounts, to claim damages and/or to exercise any other right or remedy to which the owners may be entitled under this Charter or at law, in equity or otherwise as a consequence of the occurrence of the termination event." ROA.57. The very wording of the charter party anticipates the involvement of courts, apart from London arbitration, for the purpose of obtaining security. *See Consub*, 476 F. Supp. 2d at 312. Rule B collateral provisional remedies for security are not governed by the charter party arbitration clause.

### (4) The District Court erroneously referred to arbitration non-arbitrable issues and did not even deal with the issue of arbitrability

In opposing the motion to compel arbitration, Plaintiff identified several issues that were not arbitrable by the very nature of the claims before the Court. ROA.837-842. These included successor corporation liability and fraudulent transfer, as well as the issue of arbitrability itself. ROA.837-838. Plaintiff relied on *Executone Info. Sys. v. Davis,* 26 F.3d 1314, 1321 (5th Cir. 1994), which holds "...the question of whether a party can be compelled to arbitrate, as well as the question of what issues a party can be compelled to arbitrate, is an issue for the court rather than the arbitrator to decide." Plaintiff also relied on *Webb v. Investacorp, Inc.*89 F.3d

252, 258 at n. 3 (5th Cir. 1996), wherein this Court noted "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." There is nothing in the November R&R addressing the issue of arbitrability. Plaintiff also raised the issue of arbitrability in its Objections to the November R&R. ROA.885, 887.  Nonetheless, the District Court compelled arbitration without any reference to arbitrability.

> **(5)    The District Court should have addressed and sustained Plaintiff's argument that Appellees had waived arbitration in pursuing and submitting for decision a Rule E(4)(f) motion to vacate**

It was noted in the foregoing that the motion to compel arbitration was filed some 45 days following the Rule E(4)(f) hearing and final submission for decision. *Supra.* at p. 5.  Plaintiff-Appellant strongly opposed the motion to compel arbitration arguing that the continuing pursuit of the Rule E(4)(f) motion to vacate amounted to a "...well-considered choice to waive arbitration." ROA.843. In support of its waiver argument, Plaintiff-Appellant relied on *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 315-16 (1st Cir. 1997).

In the Fifth Circuit, the standard for waiver of arbitration is set in *MC Asset Recovery LLC v. Castex Energy, Inc.* (*In re Mirant Corp.*), 613 F.3d 584, 588 (5th Cir. 2010).  "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* at 588 (citation omitted); *see also Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th

Cir. 2018). "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Castex,* 613 F.3d at 588 (citing *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd*., 575 F.3d 476, 480 (5th Cir. 2009)); *Forby*, 909 F.3d. at 784. What identifies a motion to compel arbitration as one susceptible to being denied on the grounds of waiver is when the movant, being fully aware of its right to compel arbitration from the outset, nevertheless seeks a determination of merits issues, not as a perfunctory alternative, and attempts to "…game the system by seeking a decision on the merits while keeping the arbitration option as a backup plan in case the effort fails." *Castex,* 613 F.3d at 589-590. The other necessary element for waiver of arbitration is prejudice. "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Id*. at 591 (citation omitted); *Forby,* 909 F.3d at 784. In the case at hand, prejudice is documented in the considerable costs incurred in maintaining the attachment, *i.e.* approximately USD 180,000. ROA.656-685, 719-720.

## B.  Plaintiff Will Suffer Irreparable Injury if a stay is not granted

The issue of arbitrability was raised by Plaintiff: in opposing the motion to compel arbitration (ROA.837-842); in its objections to the R&R following the October 11th hearing (ROA.885-889); and finally, in the motion for stay pending appeal (ROA.944-945). *In Paine Webber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990), the Third Circuit Court of Appeals held "the <u>harm to a party would be</u>

17

per se irreparable if a court were to abdicate its responsibilities to determine the scope of an arbitrator's jurisdiction and, instead, were to compel a party who has not agreed to do so, to submit to an arbitrator's own determination of his authority." (*emphasis added*). The Fifth Circuit Court of Appeals took note of this in *Sapic v. Gov't of Turkmenistan.*, 345 F.3d 347, 354 at Fn. 4 (5th Cir. 2003). When a court considers a motion to compel arbitration, the court must determine whether the parties agreed to arbitrate the dispute. It must also consider whether any federal statute or policy renders the claims non-arbitrable. When considering the first question, there are two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The Order compelling arbitration does not bear out any enquiry was made by the Court regarding arbitrability. In opposing the Motion to Compel, Plaintiff cited *Webb v. Investacorp, Inc.* 89 F.3d 252, 258 at n. 3 (5th Cir. 1996) (referring to the arbitrability threshold enquiry), which held that "…courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." ROA.838. There is no finding of clear and unmistakable evidence in the Court's Order (ROA.928-930) adopting the November R&R (ROA.867-883) or, indeed, any reference to arbitrability whatsoever.

The harm to Plaintiff is irreparable for yet another reason. The March R&R notes "…the undersigned will likely keep the substitute security in place until such time as the Fifth Circuit has decided the appeal." Gaitas Declaration, GAITAS EXHIBIT 2 at p. 5, fn. 3; *supra.* at p. 10.   However, the Order compels arbitration of the collateral Rule B attachment issues by a tribunal which is not jurisdictionally competent and coerces Plaintiff to do so, under penalty of dismissal of its claim for security. ROA.1133:1-11. It may be argued, as the March R&R states, that the harm in not granting the stay would not be irreparable because, at the end of the day, there will be security to satisfy Plaintiff's claim if Plaintiff should prevail. "However, the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.' For example, some courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citing *Lee v. Bickell*, 292 U.S. 415, 421 (1934)).  This will be the end result in this case if the Order is not stayed.   Plaintiff will be forced to contend in arbitration, under English law, that Appellees are successor corporations and/or fraudulent transferees of GEDEN.   In parallel, the parties will be litigating, in this appeal, whether or not the District Court erred in compelling arbitration.  Assuming Plaintiff is not successful in the London arbitration, but successful in this appeal, the District Court will be required next to rule on the issues of successor liability and/or fraudulent transfer, this time under

American law. The District Court's decision in this regard would be also appealable. As this is a case under the Court's admiralty jurisdiction, the considerable costs engendered in such serial litigation would not be recoverable. Such harm is indeed irreparable.

## C. Appellees will not suffer harm from a stay of the District Court's Order

In opposing Plaintiff's motion for a stay in the District Court, Appellees argued the stay would increase their costs of maintaining the security while the appeal is pending. The March R&R appears to have given credence to these rationalizations and seems to adopt them. Gaitas Declaration, GAITAS EXHIBIT 2 at p. 5. Plaintiff objected. *See* copy of Plaintiff's objection attached to Gaitas Declaration as GAITAS EXHIBIT 3 at p. 8. (Objection No. 6).

The substitute security form and content for the release of the vessel were approved by order of the Magistrate Judge on May 11, 2018. ROA.793-796. The substitute security, a bond of even date (ROA.797-800), expressly contemplates appeals. ROA.798.

It was, accordingly, within the contemplation of Appellees that appellate proceedings would be pursued and costs of maintaining security would be increased accordingly. There was nothing in the order, or in the wording of the bond itself, reserving a claw back benefit for Appellees if there was an appeal. It was Appellees

choice to provide substitute security, which they did presumably believing it was beneficial. A stay is part of the course of the litigation and any increased substitute security costs thereby incurred are part of their voluntary choice.

**D.    Granting the stay would serve the public interest**

Admiralty and maritime claims enjoy a favored status as a matter of national policy:

> [s]ince the constitutional power of the federal courts is separately derived in admiralty, U.S. Constitution Art. III § 2, suits under admiralty jurisdiction involve separate policies to some extent. This tradition suggests not only that jurisdiction by attachment of property should be accorded special deference in the admiralty context, but also that maritime actors must reasonably expect to be sued where their property may be found.

*AmocoOverseas Oil Co. v. Compagnie Nationale Algerienne de Navigation* (Co. N.A. N."), 605 F.2d 648, 656 (2d Cir. 1979).

As noted in the foregoing, a substantial error in the decision of the District Court was to compel arbitration of a Rule B issue which is within its own exclusive jurisdiction as a court of the United States. This error was based on its interpretation of the arbitration clause as prohibiting Plaintiff's pursuit of security in courts other than the contractually selected forum for charter party disputes. This interpretation has been rejected by courts of appeal that have had dealt with the very issue. *Supra.* at pp. 14-15. It is also contrary to the practice of courts in Rule B cases. *See* case law cited *supra.* at p. 13. The District Court's interpretation of the arbitration clause

relegates the exclusive admiralty jurisdiction of a U.S. court under 28 U.S.C. §1333 to fully adjudicate Rule B issues to a foreign arbitration tribunal. This is contrary to any known or existing authority and contrary to existing policy as expressed in Rule B and 28 U.S.C. §1333.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, PSARA respectfully requests that Court grant its motion to stay the District Court's order compelling arbitration.

Respectfully submitted,

Dated: May 2, 2019

GAITAS & CHALOS, P.C.

/s/George A. Gaitas
George A. Gaitas
Texas State Bar No. 2405885
Federal Bar No. 705176
6250 Westpark Dr.
Suite 222
Houston, Texas 77057
Tel:   (281) 501-1800
Fax:   (832) 962-8178
E-mail: gaitas@gkclaw.com

*Attorneys for Psara Energy, Limited*

22

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 2nd day of May 2019 this Motion to Stay of Appellant Psara Energy Limited was electronically filed with the Clerk of the United States Court of Appeals for the Fifth Circuit by means of the CM/ECF system.

Marc G. Matthews
Phelps Dunbar LLP
500 Dallas St.
Suite #1300
Houston, TX 77002
Tel: 713-626-1386
Email: marcus.matthews@phelps.com


/s/George A. Gaitas
George A. Gaitas

23

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 27(d)(2)(A) because this brief contains 5,196 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in 14-point font size, Times New Roman.


/s/George A. Gaitas
George A. Gaitas

CASE NO. 19-40071

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

PSARA ENERGY, LIMITED,

Plaintiff-
Appellant

v.

ADVANTAGE ARROW SHIPPING, L.L.C.; ADVANTAGE TANKERS,
L.L.C.; ADVANTAGE HOLDINGS, L.L.C.; FORWARD HOLDINGS,
L.L.C.,

Defendants-Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PSARA ENERGY, LIMITED,

Plaintiff-
Appellant

v.

ADVANTAGE START SHIPPING, L.L.C.; ADVANTAGE TANKERS,
L.L.C.; ADVANTAGE HOLDINGS, L.L.C.; FORWARD HOLDINGS,
L.L.C.,

Defendants-Appellees

---

ON APPEAL  FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION, CIVIL
ACTIONS NO. 1:18-CV-178 AND 1:18-CV-364

---

**DECLARATION OF ATTORNEY GEORGE A. GAITAS IN
SUPPORT OF PLAINTIFF'S MOTION TO STAY PENDING
APPEAL OF ORDER OF REFERRAL TO ARBITRATION**

I, George A. Gaitas , pursuant to Section 1746 of Title 28 United States Code, hereby declare and say the following under the penalty of perjury:

     1.     I am an individual of sound mind and have never been convicted of a crime of moral turpitude.

     2.     I am an attorney at law with the law firm of Gaitas & Chalos, P.C. and I represent the Appellant Psara Energy Limited (hereinafter "Psara") in this appeal.

     3.     **GAITAS EXHIBIT 1** is a copy of the Order Overruling Plaintiff's Objections to Magistrate Judge's Report and Recommendation denying Plaintiff's Motion to Stay Pending Appeal. (1:18-cv-00178 Doc. 52).

     4.     **GAITAS EXHIBIT 2** is a copy of the Report and Recommendation Denying Plaintiff  Psara Energy's Motion to Stay Pending Appeal of Referral to Arbitration.  (1:18-cv-00178 Doc. 50).

     5.     **GAITAS EXHIBIT 3** is a copy of Plaintiff's Objections to the Magistrate Judge's Report and Recommendations on the Motion to Stay Pending Appeal (1:18-cv-00178 Doc. 51) .

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the _1st_ day of _May_____ , 2019, in Houston, Texas.

_George A. Gaitas_

George A. Gaitas

1

# GAITAS EXHIBIT 1

UNITED STATES DISTRICT COURT                EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| PSARA ENERGY, LTD., | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CASE NO.  1:18-CV-00178-MAC |
| | § | |
| SPACE SHIPPING, LTD.,  ET AL., | § | |
| Defendants. | § | |

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS
## TO REPORT AND RECOMMENDATION DENYING
## PLAINTIFF'S MOTION TO STAY PENDING APPEAL

The court referred this case to the Honorable Zack Hawthorn, United States Magistrate

Judge, for pretrial management.  Doc. No. 9.  Pending before the court is Plaintiff Psara Energy,

Ltd.'s (Psara) "Motion to Stay Pending Appeal of Order Referring Parties to Arbitration."  Doc.

No. 42.  On March 29, 2019, Judge Hawthorn entered a report (Doc. No. 50) recommending the

court deny Psara's motion because Psara did not meet its burden of showing that the circumstances

justify imposing a stay.  Judge Hawthorn also recommended denying as moot Psara's "Motion to

Strike."  Doc. No. 51.

A party who files timely, written objections to a magistrate judge's report and

recommendation is entitled to a *de novo* determination of those findings or recommendations to

which the party specifically objects.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)-(3).

"Parties filing objections must specifically identify those findings [to which they object].

Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*

*v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by*

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

Psara raises several objections to Judge Hawthorn's report, but these objections are largely a restatement of the arguments asserted in the pending motion (Doc. No. 42) and in Psara's previous response to the Advantage Defendants "Motion for Referral to Arbitration." Doc. No. 30. Accordingly, after considering Psara's objections, the court finds they are without merit and that Judge Hawthorn's findings and ultimate conclusion are correct.

It is, therefore, **ORDERED** that the report and recommendation of the magistrate judge (Doc. No. 50) is **ADOPTED**, Psara's "Motion to Stay Pending Appeal of Order Referring Parties to Arbitration" (Doc. No. 42) is **DENIED**, and that Psara's "Motion to Strike" (Doc. No. 48) is **DENIED as MOOT**.

SIGNED at Beaumont, Texas, this 24th day of April, 2019.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

# GAITAS EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

PSARA ENERGY, LTD.,

          Plaintiff,

vs.

SPACE SHIPPING, LTD., ET AL.,

          Defendants.

No.1:18-CV-00178-MAC

## REPORT AND RECOMMENDATION DENYING PLAINTIFF PSARA ENERGY'S MOTION TO STAY PENDING APPEAL OF REFERRAL TO ARBITRATION

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management. On January 4, 2019, the court adopted the undersigned's Report and Recommendation directing the parties to arbitrate their dispute as outlined in the charter party, but retaining jurisdiction to enforce any arbitration award. Doc. Nos. 37, 40. Pending before the court is Plaintiff Psara Energy, LTD.'s, (Psara) "Motion to Stay Pending Appeal of Referral to Arbitration." Doc. No. 42. On February 11, 2019, Defendants Advantage Arrow Shipping, LLC, Advantage Holdings, LLC, Advantage Tankers, LLC, and Forward Holdings, LLC (collectively, the Advantage Defendants) filed a response. Doc. No. 45. On February 14, 2019, Psara filed a reply. Doc. No. 46. On February 20, 2019, the Advantage Defendants filed a sur-reply. Doc. No. 47. Subsequently, Psara filed a "Motion to Strike Defendants' Sur-reply" (Doc. No. 48) which the Advantage Defendants filed a response to on February 22, 2019. Doc. No. 49.

## I.     BACKGROUND

On April 20, 2018, Psara filed suit for breach of contract against the Advantage Defendants, pursuant to FED. R. CIV. P. 9(h), Rule B of the Supplemental Rules for Certain Admiralty and

Maritime Claims (Rule B), and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration. Doc. No. 1 at 1–2. On June 15, 2018, the Advantage Defendants filed their "Opposed Motion for Referral to Arbitration." Doc. No. 29. On October 11, 2018, the undersigned held a hearing on the motion and subsequently entered a "Report and Recommendation" granting the motion to compel arbitration. Doc. No. 37. Over Psara's objections, this court adopted the report and recommendation and directed the parties to arbitrate their dispute as outlined in the charter party. *See* Doc. Nos. 1-1; 40. Psara now requests a stay of the court's order granting the referral to arbitration, pending appeal. Doc. No. 42.

## II.     LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks and citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34 (quotation marks, citations, and brackets omitted). In determining a motion to stay pending appeal, the court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 429, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009)). "The first two factors of the traditional standard are the most critical." *Id.*, (quoting *Nken* at 434, 129 S. Ct. 1749.)

1.  *Psara has not shown that it is likely to succeed on the merits.*

The stay applicant must make a strong showing that it is likely to succeed on the merits.

*Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 393 (5th Cir. 2013) (citing *Hilton v.*

*Braunskill*, 481 U.S. 770, 776 (1987)).  This does not necessarily mean that the applicant needs to

always show a "probability" of success on the merits.  *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.

1981).  Instead, the applicant needs to only "present a substantial case on the merits when a serious

legal question is involved and show that the balance of the equities weighs heavily in favor of

granting the stay."  *Id.* (citation omitted).  If the consideration of the other three factors is not

heavily tilted in the applicant's favor, the applicant must then make a more substantial showing of

likelihood of success on the merits in order to obtain a stay pending appeal.  *Ruiz*, 650 F.2d at 565–

66.

For reasons explained below, Psara has not shown the remaining three factors weigh

heavily in its favor.  Thus, Psara must make "a more substantial showing" of a likelihood of success

on the merits on appeal.  In its motion, Psara first contends the district court erred in finding that

it waived the argument that it is suing the Advantage Defendants under a performance guarantee

rather than the charter party that contains a binding arbitration clause.  Doc. No. 42 at 11–12.  Yet,

the district court stated in the alternative, that even if Psara did not waive such an argument, it still

had no merit.  *See* Doc. No. 40 at 2.

Secondly, Psara argues that the Advantage Defendants "did not cite a single case in which

a court of the United States has referred to arbitration the decision of the corporate identity of the

owner of an asset seized in Rule B proceedings or the issue of such an owner as a fraudulent

transferee."  Doc. No. 42 at 12.  Citation to a case to these exact specific facts is unnecessary

because the arbitration clause within the charter party at issue is straightforward: "This Contract

shall be governed by and construed in accordance with English law and *any dispute arising out of or in connection with this Contract* shall be referred to arbitration in London..." Doc. No. 1-1 (emphasis added). Psara can not credibly argue that the dispute over whether the Advantage Defendants are fraudulent transferees of Space Shipping is not a dispute arising out of or *in connection with* Space Shipping's alleged breach of the charter party.

    2.  *Psara will not be irreparably injured absent a stay.*

    Psara alleges that the "risk of irreparable harm to Plaintiff arises not from an imminent release of the security, but from the very submission of the non-arbitrable issues to an arbitration tribunal for resolution under English law." Doc. No. 42 at 8. Therefore, Psara contends that this court will have secondary jurisdiction only on whether to enforce any arbitral award and "has virtually bound itself to accept the arbitration award." *Id.* at 10. Psara further states that "[a] likely direct consequence of this may be that if the arbitrators decide under English law—which they are required to apply under the arbitration clause of the charter—the Advantage Defendants are neither successor corporations nor fraudulent transferees of the assets attached, the Court would be bound to release the substitute security." *Id.* The potential for not succeeding on the merits of a claim— under the choice of law specifically agreed to by Psara—is not considered an irreparable injury. In any event, should Psara succeed on appeal before the Fifth Circuit, any injury suffered in arbitration will be ameliorated by the Court of Appeals' mandate. Thus, such an injury cannot be characterized as "irreparable."

    3.  *Issuance of the stay will injure other parties interested in the proceeding.*

    Psara asserts that a stay will not result in any harm to the Advantage Defendants because the surety bonds posted as substitute security will continue to remain in place throughout the arbitration, and allowing the security to remain in place for this appeal will not materially extend

the time that the substitute security must remain available. Doc. No. 42 at 11. The Advantage
Defendants argue that not only must they pay the annual premiums totaling $48,450 per year on
the surety bonds, but they are also deprived of utilizing the $4.8 million in counter-security in the
interim and until the bonds are released by the Court at the conclusion of this action. Doc. No. 45
at 9. While Psara believes that the nature, amount, and duration of the security will not be
materially impacted by the granting of the stay, the undersigned finds that the Advantage
Defendants would be injured by staying these proceedings.[1]

    4.  *Public interest lies in directing to arbitration.*

    The Advantage Defendants argue that the public interest lies in directing the parties to
arbitration because the Supreme Court has held that it is an abuse of discretion to enter a stay that
has the effect of delaying "the prompt arbitration that Congress envisaged." *See Moses H. Cone
Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). Psara responds that public policy
does not favor "bundling cases, parties and issues off to arbitration without first deciding who
agreed to arbitrate and what issues." Doc. No. 46 at 5. Yet, the undersigned already conducted
analysis on who agreed to arbitrate in the previous report and recommendation. *See* Doc. No. 37.
The undersigned also determined that the current claims against the Advantage Defendants should
be arbitrated based upon the arbitration clause's broad language that "any dispute arising out of or
in connection with the Contract." *Id.* Because the undersigned found that Psara's claims against
the Advantage Defendants relate to the charter party, and Psara even conceded that the issues
"touch[ ] upon the charter party" (Doc. No. 45-1 at 7), the public interest lies in not delaying
arbitration.

---

[1] Should the claims between Psara and the Advantage Defendants resolve in arbitration before the appeal is
disposed in the Fifth Circuit, the undersigned will likely keep the substitute security in place until such time as the
Fifth Circuit has decided the appeal.

Moreover, Psara cites to the idea that "ensuring parties are able to enforce judgments is in the public interest." *Castleton Commodities Shipping Co. PTE v. HSL Shipping & Logistics NA, Inc.*, 2016 U.S. Dist. LEXIS 129557, *18 (E.D. La. Sept. 22, 2016). The undersigned's report and recommendation explicitly stated that the Rule B attachment will remain in effect in this court and apply as valid security for the claim. Doc. No. 37 at 16. Therefore, the parties will still be able to enforce judgments, but only following arbitration.

## III.   RECOMMENDATION

The undersigned recommends **DENYING** Psara's "Motion to Stay Pending Appeal of Order Referring Parties to Arbitration (Doc. No. 42) because Psara did not meet its burden of showing that the circumstances justify imposing a stay.

The undersigned also recommends **DENYING as MOOT** Psara's "Motion to Strike." Doc. No. 48. As a result of the pending motion to strike, the undersigned did not consider the "new arguments to which Plaintiff is not allowed to respond under the Local Rules" in the Advantage Defendants' sur-reply. Only previously addressed arguments were considered.

## IV.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen days after being served with a copy of this report, and (4) be no more than eight pages in length. *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2); LOCAL RULE CV-72(c). A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 29th day of March, 2019.

Zack Hawthorn
United States Magistrate Judge

# GAITAS EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

PSARA ENERGY, LTD.                          :
                                            :
        Plaintiff                           :
                                            :
SPACE SHIPPING, LTD., ET AL.                :       C.A. NO. 1:18-CV-00178
                                            :       ADMIRALTY
        Defendants                          :
                                            :

**PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS ON STAY PENDING APPEAL**

It is respectfully submitted, the Report and Recommendations ("R&R") regarding stay

pending appeal (Doc. 50) should not be adopted. Plaintiff specifically objects to the following:

**1.      The Report that Plaintiff has not made a strong showing that it is likely to prevail on
the merits is based on an erroneous interpretation of the charter party arbitration
clause.**

The R&R considers immaterial Defendants' failure to cite supporting precedent referring

to arbitration for decision the Rule B issues of: (1) corporate identity of the owner of the asset

seized; (2) fraudulent transfer.   Doc. 50, p.3.   The R&R finds the citation of authority

"unnecessary" as "...the arbitration clause within the charter party at issue is straightforward: 'This

Contract shall be governed by and construed in accordance with English law and *any dispute

arising out of or in connection with this Contract* shall be referred to arbitration in London...'".

*Id.* at pp. 3-4. The R&R concludes: "Psara cannot credibly argue that the dispute over whether the

Advantage Defendants are fraudulent transferees of Space Shipping is not a dispute arising out of

or *in connection with* Space Shipping's alleged breach of the charter party." (emphasis added) *Id.*

at p. 4.  Plaintiff respectfully objects to this conclusion for the following reasons:

First, in *Polar Shipping, Ltd. v. Oriental Shipping Corp.,* 680 F.2d 627, 632 (9th Cir.1982),

an admiralty Rule B case, the Ninth Circuit Court of Appeals (referring to a similarly worded

1

forum selection clause[1]) considered whether prejudgment security proceedings or post-judgment enforcement actions are within the scope of the wording. It determined: "[a]n attachment does not fit neatly within the word 'dispute'." *Id.* Plaintiff would underscore that the CV STEALTH charter arbitration clause, as in *Polar Shipping,* is limited to 'disputes,' and a foreign attachment to secure an admiralty claim is not a dispute. The same principle was followed in another Rule B case, *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 311 (S.D.N.Y. 2007); aff'd *Consub Del. LLC v. Schahin Engenharia Limitada*, 543 F.3d 104 (2nd Cir. 2008), abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). In *Consub*, the Southern District of New York, and the Second Circuit Court of Appeals, held that attachments are not disputes, under similar arbitration clause wordings, and are not limited by the forum selection clauses.

Second, Plaintiff would note that the charter party, apart from its arbitration clause, contains additional wording under Rider Clause No. 10, which does not restrict Plaintiff as Owner to arbitrate its prejudgment security claims in England under English law. Under Rider Clause No. 10, in the event of default, as set out therein, Owners may terminate the chartering of the vessel, and take action "...to recover amounts, to claim damages and/or to exercise any other right or remedy to which the owners may be entitled under this Charter or at law, in equity or otherwise as a consequence of the occurrence of the termination event." (emphases added) (Doc. 1-1, p. 22 of 47). Accordingly, Plaintiff, as Owner of the CV STEALTH, is free and entitled to resort to other remedies - including attachment - and is not restricted from pursuing claims in other jurisdictions, courts or tribunals. Moreover, Rider Clause No. 12 provides: "[i]f there happens to be a discrepancy between the 'Barecon 01' as mutually agreed and amended by Owners and Charterers

---

[1] Arbitration clauses are a species of forum selection clauses. *See Andros Compania Maritima, S.A. v. Andre & Cie, S.A.*, 430 F. Supp. 88, 94 (S.D.N.Y. 1977).

and the Owners additional terms, then additional terms to always supersede the C/P." (Doc 1-1, p. 23 of 47). It follows, Rider Clause No. 10 supersedes the standard 'Barecon 01' terms as the latter - as interpreted by the R&R – conflicts with Plaintiff's right to pursue ancillary proceedings for security.

The additional rights and remedies that Plaintiff is entitled to exercise under Rider Clause No. 10 entitles it to attach property with ancillary Rule B proceedings. *See Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 312-313 (S.D.N.Y. 2007).

Third, as the Ninth Circuit Court of Appeals observed in *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982), "[t]here is…no indication, from either the charter or the record, that the parties intended to limit proceedings to obtain prejudgment security to that forum. If the parties had so intended, they could easily have worded clause 22 to so provide. They did not do so." Here the parties expressly agreed, under Rider Clause No. 10, not to limit prejudgment security proceedings.

As Plaintiff noted, no less than two courts of appeal cases support its reasoning and contradict the Defendants' contentions, accepted by the R&R interpretation of the arbitration clause. The judicial interpretation of similarly worded arbitration clauses, and the charter party additional wording contained in the Rider Clauses, further strengthen Plaintiff's argument that it is likely to prevail on appeal.

2.    **The R&R suggests Plaintiff has not made a strong showing it is likely to prevail on the merits, as it "waived" argument on the non-arbitrability of claims under the performance guarantee.**

Plaintiff respectfully disagrees that it has not made a strong showing it is likely to prevail on the merits, as it "waived" its argument on the non-arbitrability of claims under the performance guarantee. (Doc. 50, p. 3). The R&R reasons that the district court has already overruled Plaintiff's objections based on the non-arbitrable Geden performance guarantee. Plaintiff objects for the

3

reason that a 9 U.S.C. § 4 motion to compel arbitration contemplates <u>a trial and a hearing of the</u> <u>issue in a contested arbitration agreement</u>. Such a hearing was actually held on October 11, 2018. (Doc. 43; Doc. 50, p. 2). At the hearing, Plaintiff presented arguments and expressly referred to the record of the case which included the Verified Complaint and Exhibit 2 thereto, which includes the non-arbitrable performance guarantee of Geden Holdings, Ltd. *See* October 11[2] transcript, Doc. 43, pp. 5:18-25[2], 6:1-12, 7:1-25; Doc No. 1-1, pp. 32-33. Pleadings are always considered by the courts and need to be taken into account in deciding whether an issue is arbitrable. *See e.g. LeBlanc v. Edwin Epstein, Jr. Operating Co.*, 2003 U.S. Dist. LEXIS 26830 at *2 (S.D. Tex. Aug. 5, 2003); *Poolre Ins. Corp. v. Organizational Strategies, Inc.*, 2013 U.S. Dist. LEXIS 105536 at * 1 (S.D. Tex. July 29, 2013). The performance guarantee, made part of the pleadings, has been before the Court since suit was filed. Alternatively, if the motion to compel arbitration is as Defendants styled it, one under Fed. R. Civ. P. 12(b)(3) (Doc. 29, pp. 14-15), the Court must view such a motion in the light most favorable to the non-moving party. The court may consider "evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008)). The upshot of this is that Plaintiff affirmatively asserted and did not waive its non-arbitrability claim based on the performance guarantee.

3.    **The Report states that Plaintiff has not made a strong showing it is likely to prevail on the merits, suggesting Plaintiff's application for Rule B security based on the performance guarantee was premature.**

Plaintiff respectfully objects to the R&R in this regard. The R&R states: "[y]et, the district court stated in the alternative, that even if Psara did not waive such an argument, it still had no

---

[2] For the sake of ease, when citing to a transcript, Plaintiff will first cite the relevant page number, followed by a colon, and then the relevant lines, *e.g.* page 5, lines 18 through 25.

4

merit. See Doc. No. 40 at 2." (Doc. 50, p.3). The District Court reasoned that the recovery under

"the performance guarantee '[is] just available' unless and until Psara presents a certified copy of

the final arbitration award to Geden. Performance Guarantee, Doc. No. 1-1, at 31. Psara has not

alleged nor provided any evidence in the record this has taken place." (Doc. 40, p. 2). It is

respectfully submitted that in Rule B cases this is not required. "In maritime attachment cases (not

based upon a claim for contingent indemnity), courts allow a plaintiff to apply for an attachment

in contemplation of litigation." *Wilhelmsen Premier Marine Fuels v. UBS Provedores Pty. Ltd.*,

519 F. Supp. 2d 399, 403 (S.D.N.Y. 2007). In *Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl

Rohren, Ltd.*, 485 F. Supp. 2d 399, 404 (S.D.N.Y. 2007), the court remarked: "[t]he entire point of

an attachment, as a provisional remedy before trial, is to secure a plaintiff's claim before it can be

adjudicated. In a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of

convenience and flows of currencies, maritime attachments have particular importance." The claim

at hand is not one for contingent indemnity but for performance by the guarantor as primary obligor

and not as a mere surety. (Doc. 1-1, p. 30).

**4.    The Order of the Court compelling arbitration of non-arbitrable claims without dealing at all with the issue of arbitrability is per se irreparable harm.**

The issue of arbitrability was duly raised by Plaintiff: in opposing the motion to compel

arbitration (Doc. 30, pp. 9-14); in its objections to the R&R following the October 11th hearing

(Doc. 38, pp.1-8); and finally, in the motion for stay pending appeal (Doc. 42, pp. 11-12). *In Paine

Webber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990), the Third Circuit Court of Appeals

stated "the harm to a party would be per se irreparable if a court were to abdicate its responsibilities

to determine the scope of an arbitrator's jurisdiction and, instead, were to compel a party who has

not agreed to do so, to submit to an arbitrator's own determination of his authority." The Fifth

Circuit Court of Appeals took note of this in *Sapic v. Gov't of Turkmenistan*., 345 F.3d 347, 354

at Fn. 4 (5th Cir. 2003). The law governing arbitrability makes it clear; when a case comes before

a court on a motion to compel arbitration "[f]irst, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." When considering the first question, there are two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The Order compelling arbitration does not bear out that an enquiry was made by the Court regarding the issue of arbitrability. In opposing arbitration, Plaintiff cited *Webb v. Investacorp, Inc.* 89 F.3d 252, 258 at n. 3 (5th Cir. 1996) (referring to the arbitrability threshold enquiry), which held "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." (Doc 30, p.10). There is no finding of clear and unmistakable evidence in the Court's Order adopting the Report & Recommendations (Doc. 40) or, indeed, any reference to arbitrability whatsoever.

5.    **The Order of the Court compelling arbitration of non-arbitrable claims, which are within its exclusive jurisdiction under 28 U.S.C. § 1333 and Rule B, is irreparable harm.**

With reference to the Court's admiralty jurisdiction to order maritime attachment, in practical and pragmatic terms, the harm to Plaintiff, from referring to arbitration resolution of the Rule B issues, is loss of security. The reference to arbitration, as the Order directs, carries with it the choice of English law - incorporated in the arbitration clause. In *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 496 (2d Cir. 2013), the Second Circuit Court of Appeals held the garnishee's legal status as an alter ego of the plaintiff's obligor - as distinguished from the charterer's breach of the charter party - was the substance of the attachment claim, which was collateral to the charter party. Accordingly, the court was not bound by the charter party choice of law provisions. The Second Circuit Court of Appeals held, in making its own choice of law

6

decision as to what substantive law to apply, that the relevant transaction was not the breach of the charter party but the plaintiff's claim to pierce the corporate veil. "Accordingly, United States law has the strongest 'points of contact' with this claim by virtue of the location of HNA's property, Blue Whale's [plaintiff's] corresponding choice of forum and the unavailability of an alternative forum, and the absence of a dominant foreign choice of law." *Id.* at pp. 499-500.

The Court's jurisdiction to order maritime attachments is exclusive. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437-438 (2d Cir. 2006); 28 U.S.C. §1333; *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 670 (1982). "As a remedy quasi in rem, the validity of a Rule B attachment depends entirely on the determination that the res at issue is the property of the defendant at the moment the res is attached." *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69 (2d Cir. 2009). The determination of ownership of the property attached is one made by the court that orders the attachment. Deferring to charter party choice of law provisions in every Rule B attachment to determine whether the court has jurisdiction to grant the attachment remedy under the chosen foreign law would substantially defeat this remedy within the admiralty courts' exclusive jurisdiction under 28 U.S.C. § 1333. *See* concurring opinion of Judge Wilkinson in *Flame S.A. v. Freight Bulk Pte. Ltd.*, 762 F.3d 352, 364-366 (4th Cir. 2014); *see also Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Lux.) II SCA)*, 535 B.R. 543, 2015 Bankr. LEXIS 2756 at ** 42-43 (Bankr. S.D.N.Y. 2015). In his R&R, the Magistrate Judge states "In any event, should Psara succeed on appeal before the Fifth Circuit, any injury suffered in arbitration will be ameliorated by the Court of Appeals' mandate. Thus, such an injury cannot be characterized as 'irreparable.'" (Doc. 50, p. 4). Plaintiff would respectfully disagree. The U.S. Supreme court in *Swift Co Packers v. Compania Colombiana Del Caribe* 339 U.S. 684, 689 (1950) suggests what may be "irreparable" in the context of attachment, stating "[a]ppellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been

7

released and the restoration of the attachment only theoretically possible." *See also Heidmar, Inc. v. Anomina Ravennate di Armamento Sp.A*, 132 F.3d 264, 267 (5th Cir. 1998).

6.      **Defendants knowingly incurred the increased costs and delay engendered by moving to compel arbitration. Granting of a stay will not increase costs beyond their calculated choices. These considerations favor granting the stay.**

Defendants chose to hedge their bets against losing their motion to vacate. Compelling arbitration was part of their litigation strategy. Plaintiff clearly argued Defendants had waived arbitration. (Doc. 30, pp. 14-15). However, they persisted. This appeal and the costs should not surprise them. The Court ordered the amount of substitute security and approved the form. (Doc. 23, pp. 1-4). The Special release bond expressly contemplates appeals. (Doc. 24, p. 2).

7.      **The Public interest aligns in the direction of retaining and fully adjudicating the Rule B issues of fraudulent transfer and successor corporation liability.**

As noted in the foregoing, the recommendation to deny the stay rests on the erroneous premise that the arbitration clause requires attachment issues to be decided in London arbitration. *Supra.* at pp. 1-3. This interpretation pits the exclusive admiralty jurisdiction of a U.S. court under 28 U.S.C. §1333 to fully adjudicate Rule B issues against referring attachments to arbitration for resolution. The latter is contrary to any known or existing authority as noted in the foregoing. It is also contrary to existing policy as expressed in Rule B and 28 U.S.C. §1333.

## CONCLUSION

In conclusion, Plaintiff respectfully renews its motion to stay to allow the Fifth Circuit Court of Appeals to resolve the issues appealed, sparing the parties of the conflict, costs, and confusion of precipitous and duplicative arbitration proceedings.

Dated: April 12, 2019                        Respectfully submitted,
        Houston, Texas
                                             GAITAS & CHALOS, P.C.

                                    By:      /s/George A. Gaitas
                                             George A. Gaitas
                                             State Bar No. 24058885

8

Federal Bar No. 705176
Jonathan M. Chalos
State Bar No. 24097482
Federal Bar No. 3008683
6250 Westpark Dr., Ste. 222
Houston, Texas 77057
Telephone: 281-501-1800
Fax: 832-962-8178
E-mail:gaitas@gkclaw.com
          chalos@gkclaw.com

*Attorneys for Plaintiff*
Psara Energy, Ltd.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was served on all counsel of record via the Court's CM/ECF system on this 12th day of April, 2019.

/s/ George A. Gaitas__
George A. Gaitas