## REASONS FOR AND FORMING PART OF THE FINAL AWARD

**Introduction**

1. It is unusual that the hearing of a preliminary issue as to the applicable law of a dispute should end with both parties agreeing that the Tribunal issue a declaration that the Tribunal has no jurisdiction over the Claimant's claims in the reference, although they did not agree the wording of the declaration.

2. That is what has occurred in this reference following an oral hearing on 4th October 2019, in which both sides were represented by Leading Counsel.

**The factual background**

3. By a Charter party dated 23rd February 2010 on an amended Barecon 2001 form ("the Charterparty"), the Claimant Owners, Psara Energy Limited ("Owners") chartered MT "CV Stealth" ("the Vessel") to Geden Holdings Limited ("Geden Holdings") or its guaranteed nominee.

4. Clause 30 of the Charterparty headed dispute resolution provided as follows:

   "This Contract shall be governed and construed in accordance with English Law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or enactment thereof save to the extent necessary to give effect to the provisions of this Clause".

5. On 2 June 2010 Geden Holdings nominated Space Shipping Limited ("Charterers") as charterers under the Charterparty.

6. The first and second Respondents are the owners of the "ADVANTAGE ARROW" and the "ADVANTAGE START" which were attached pursuant to Rule B proceedings in the states of Texas and Louisiana. The other Respondents are or were associated with the ownership of the "ADVANTAGE ARROW" and "ADVANTAGE START". They are hereinafter referred to collectively as the "Advantage Respondents".

7. By an Irrevocable Performance Guarantee dated 4th March 2010 Geden Holdings unconditionally and irrevocably guaranteed as primary obligor on first demand the full and timely performance of Charterers under the Charterparty.

8. The Irrevocable Performance Guaranteed provided:

   "this guarantee shall be governed by and construed in accordance with the laws of England and we submit to the non-exclusive jurisdiction of the English High Court".


EXHIBIT D

9. For a number of years, Owners and Charterers have been arbitrating their disputes under or in connection with the Charterparty arising out of the Vessel's prolonged detention in Venezuela.

10. On 29th March 2018, Owners introduced new claims against Charterers for hire amounting to US$ 233,708.33 and damages of US$ 18 million in respect of the vessel's condition on redelivery from the Charterers.

11. These claims against Charterers are not the subject of these arbitration proceedings. The merits of those claims are before a differently constituted arbitration tribunal.

12. In Rule B maritime attachment proceedings commenced before the United States District Courts in the Eastern District of Texas and in the Eastern District of Louisiana (which were subsequently transferred to the Eastern District of Texas and consolidated with the Eastern District of Texas Rule B proceedings) ("the Rule B proceedings"), Owners attached two vessels MT Advantage Arrow and MT Advantage Start. Those two vessels were in due course released against the payment of security into Court in the sums of US$ 4,000,000 and US$ 800,000.

13. In the Rule B proceedings, Owners set forth alter ego claims against Charterers and named, among others, Charterers and the five Respondents identified in the Award to which these reasons relate ("the Advantage Respondents").

14. In response to a motion by the Advantage Respondents' to refer the ending claims to London arbitration, On 28th November 2018, United States Magistrate Judge Zack Hawthorn, on November 28th 2018, issued a Report and Recommendation which ruled that the Advantage Respondents' motion should be granted and recommended that the Court direct the parties to arbitrate their dispute in London. In so ruling, Magistrate Judge Hawthorn stated:

> "In the instant case, the Advantage [Respondents] point out that [Owners'] complaint alleges claims "against all defendants based on the same facts and circumstances, rooted in the same legal theories and seeking the same form and magnitude of damages. Indeed, the complaint specifically alleges that the Advantage [Respondents] not only share common officers and directors with Geden Holdings, who is a party to the pending arbitration in London and a signatory to the charterparty, but the complaint further alleges that the Advantage [Respondents] even "assumed numerous of the latter's obligations , including long term charter parties. ...[Owners] have previously enumerated eleven grounds why the Advantage [Respondents] should be considered as a successor corporation to Geden and by extension [Charterers]. Yet

2

seemingly in the same breath [Owners] contends that despite this extensive list of reasons to group the defendants under the charterparty for liability purposes, the Advantage [Respondents] cannot compel arbitration under that same charterparty. [Owners'] own contentions about the nature of the relationship among the Advantage [Respondents], Geden Holdings and [Charterers] establishes the "tight relatedness of the parties" in which the Advantage [Respondents] can compel arbitration under the entwined claims estoppel.

Further, [Owners'] claims against the Advantage [Respondents] are intimately founded in and intertwined with the underlying contract obligations. As previously discussed, the premise of [Owners'] claims involve the charterparty between [Owners] and [Charterers] with the addition of Geden Holdings through an addendum. Without the use of the charter party and the performance guarantee as the basis of suit, [Owners] would not have a claim against the Advantage [Respondents]. **Because [Owners are] suing the Advantage Repondents as though [they are] a party to the contract, [the Owners] cannot now claim that the Advantage [Respondents] are not party to other portions of the contract**. Moreover, the enforcement of the charterparty and its arbitration provision should apply to the Advantage [Respondents] because [Owners'] claims intimately intertwine with the underlying charterparty. Therefore, this Court can also direct the parties to arbitration under principles of Texas contract law." (our emphasis added).

15. On 4th January 2000 United States District Judge Marcia Crone adopted Magistrate Judge Hawthorn's Report and recommendation and dismissed Owners' objections, stating that these were largely a restatement of the arguments in Owners' response to the Advantage Respondents' Motion for Referral to Arbitration. Judge Crone did address the Owners' argument that it was suing the Advantage Respondents and their predecessor Geden Holdings under the performance guarantee, which unlike the Charterparty does not contain an arbitration clause. First, Judge Crone noted that as Magistrate Hawthorn stated Owners waived this argument because it was not briefed in their response but raised for the first time at the hearing. Second:

"Even if [Owners] did not waive this argument, it is without merit. By its own terms, the performance guarantee "[is] just available unless and until [Owners] presents a certified copy of the final arbitration award to Geden. [Owners] have not alleged or nor provided any evidence in the record this has taken place. This particularly highlights the importance of staying these proceedings pending the ongoing
3

arbitration...Lastly, although not entirely clear, it appears that [the Owners are] already involved in arbitration proceedings against Geden, which is not a signatory to the bareboat charterparty, it is signatory to the performance guarantee."

16. By adopting the Report and Recommendation, Judge Crone granted the Advantage Respondents' Motion for Referral to Arbitration, directed the parties to arbitrate their dispute as outlined in the Charterparty, and stayed proceedings before the Eastern District of Texas pending the London arbitration of the parties' disputes. The security posted by the Advantage Respondents also remained in place with the US District Court for the Eastern District of Texas.

17. Owners subsequently appealed this ruling by Judge Crone. (That appeal is currently pending before the United States Court of Appeals for the Fifth Circuit and as of the date of this Award, remains undecided).

18. Thereafter, Owners, in accordance with Judge Crone's ruling, commenced these proceedings against the Advantage Respondents and did so on a without prejudice basis as to its arguments and positions set forth in the appeal to the US Fifth Circuit.

19. In order to understand how the matter developed in these arbitration proceedings, it is necessary to set out the thrust of the parties' respective pleadings in some detail.

20. Owners' Claim Submissions stated that "these claim submissions are served without prejudice to Owners' appeal against the Crone Order pending in the United States Court of Appeals for the Fifth Circuit, Owners' contention that the Rule B Proceedings and its alter ego claims should be determined by the Eastern District Texas Court and its contention that this Tribunal accordingly has no jurisdiction to determine these claims".

21. The relief sought in the Claim Submissions is as follows:

"79. Owners are entitled to and do claim the following declarations:

(i) Declarations that as a matter of US 5th Circuit law:

a) The Advantage Respondents are successors to Geden Holdings for the purpose of successor liability and fraudulent transferees of Geden Holding's assets.

b) Owners are accordingly entitled to enforce their claims under the Guarantee against the Rule B sums.

(ii) A declaration that as a matter of English Law, Owners are entitled to pierce the corporate veil so as to enforce as against the Advantage Respondents claims arising against Geden Holdings under the Guarantee;

4

> 80. In light of the facts that Owners are entitled to pierce the corporate veil as against the Advantage Respondents as a matter of English law, Owners are further entitled to and do claim the following monetary relief:
>
> (i) US$ 233,708.33 in unpaid hire as a debt and/or damages for breach of the Charterparty ; and
>
> (ii) US$ 18 million for breach of the maintenance obligations and/or by way of indemnification , less the net proceeds of scrappage."

22. When we first read the Claim Submissions without having read the passages in the US proceedings referred to above, two matters immediately struck us as unusual in respect of the claims set out in paragraph 79 of the Claim Submissions set out above relying on the Law of the US 5th Circuit.

23. First, the claims were stated to be against the Advantage Respondents not as successors to Charterer under the Charterparty but as successors to Geden Holdings. This would be in respect of the performance guarantee rather than the Charterparty.

24. Second, the declaration was in relation to **enforcement** of claims, which as appears below, is a matter arising after an arbitration award or judgment is issued and, as matter of English law, not within our jurisdiction.

25. This can be contrasted with the monetary claims set out in paragraph 80, which are said to be claims under the Charterparty, but claimed as a matter of English law against the Advantage Respondents by piercing the corporate veil.

26. The Owners alleged that the Rule B proceedings are ancillary to a contractual claim and are governed by the law of the US 5th Circuit applying US federal maritime conflicts of law principles. Further or in the alternative, the Owners allege: "that Rule B proceedings (and/or any issue concerning what in English Law would be characterised as piercing the corporate veil) are matters of remedy or enforcement and are thus to be governed by the lex fori, which the Claimants allege is the law of the 5th Circuit".

27. It is the distinction between matters of **"remedy"** on the one hand and **"enforcement"** on the other which became the focus of submissions between the parties at the oral hearing on 4th October 2019. The other important linked distinction, which was developed at the oral hearing, is the distinction between seeking an award of, for example, damages **under a charterparty** against a legal entity other than the named or nominated charterer and **enforcing** an award made against a charterer against the assets held by or in the name of a third party.

28. The Claim Submissions set out at some length the underlying claims for hire and alleged breach of the maintenance obligations and the basis of the claims under the law of the 5th circuit. These can be summarised as follows;
   1) As against the Advantage Respondents, between around January and May 2015 Geden Holdings and/or its ultimate beneficial owner Mehmet Emin Karamehmet caused Geden Holdings and various of its subsidiaries to transfer 11 crude oil tankers including those vessels subject to the US Rule B proceedings to the Advantage Respondents and their associates;
   2) The Advantage Group is and has at all material times been nominally owned and controlled by Mr Karamehmet's daughter Gulsen Nazil Karamehmet Williams and Ali Tugrul Tokgoz, who was also a director of Geden Holdings.
   3) It is alleged that those transfers were not bona fide arm's length transactions, but were instead a vehicle by which Mr Karamehmet could retain effective control over those vessels, albeit now in a wrapper designed to evade Geden Holding's creditors. The transfers were allegedly made pursuant to a plan devised in March 2013 by Alix Partners LLP called "Project Hermitage", which had as one of its express intentions the ringfencing of potential sources of disruption, holdout or nuisance (such as arrests or sistership arrests), against the background of aggressive actions by Geden Holdings' creditors.
   4) In other words, it is alleged, that Mr Karamehmet sought to immunise the fleet that he (through Geden Holdings) owned against attachment by transferring them into other corporate entities still under his effective control but in different nominal ownership.
   5) As a matter of US law, the Advantage Respondents are liable for Geden Holdings obligations on the basis of "successor liability " or as "fraudulent transferee".
   6) Or in the alternative, as a matter of English Law, the Owners are entitled to pierce the corporate veil so as to make the Advantage Respondents similarly liable.
29. In its Defence Submissions, the Advantage Respondents (repeating an earlier request) invited the Tribunal to determine the applicable law of the dispute as a preliminary issue. They stated that pending the tribunal's ruling on the applicable law, they would not address the claims under US Law.
30. The thrust of the Advantage Respondents' Submissions can be summarised as follows;
   1) Owners and Charters had been arbitrating their claims for many years and a number of final awards have been made. It has been (according to the Advantage Respondents) common ground that English Law is the applicable law.

2) The new claims for hire and damages of US$18 million between Owners and Charterers were referred to a differently constituted tribunal and therefore the Respondents would not address the merits before us.

3) In order to obtain security for the new claims, the Owners arrested two vessels belonging not to Charterers but to the Advantage Respondents.

4) Those vessels were arrested in Texas and Louisiana on the basis that the Advantage Respondents were liable under the subject Charter for the claims against Charterers. It was submitted that under English Law such liability can only exist if the Advantage Respondents are a sham and in reality the alter ego of the Charterers.

5) Because the claims against the Advantage Respondents are said to be claims under or in connection with a Charterparty containing a London Arbitration Clause, the US Court stayed the US proceedings.

6) The only basis for the Owners alleging the applicability of US Law would appear to be the fact that the Owners managed to arrest two Advantage vessels in the United States. But the claims must have pre-existed the arrest. There had to be an applicable law governing claims prior to arrest. After all what would the applicable law in respect of these claims against Advantage Respondents have been if no Advantage vessel had every visited the States? English Law is plainly the applicable law.

7) It is common ground that Space Shipping were nominated as Charterers under the Charterparty and that the Owners have various claims against Charterers. Yet in these proceedings, the Owners seeks an Award against different entities, namely the Advantage Respondents in respect of Charterers' liability (if any) under the Charterparty.

8) The Tribunal would have no jurisdiction against the Advantage Respondents, unless the Advantage Respondents were in effect the same entity as Charterers. In other words, the Owners must satisfy the Tribunal that the Advantage Respondents are sham entities. It cannot do so.

9) Claims under the Guarantee are referable to the High Court. The Tribunal has no jurisdiction in respect of any such claim.

10) The claim in this arbitration is not under Rule B but a claim under the Charterparty to the effect that the Advantage Respondents are liable for the debts under the Charterparty.

11) The claim is not one of "remedy" or "enforcement" but a claim of substantive liability by the Advantage Respondents under or in connection with the Charterparty.

31. The Advantage Respondents also dealt with the alleged underlying facts at some length.
32. In their Reply, Owners asserted that the Advantage Respondents' characterisation of the claim was based on a "false conflation" of :
   1) "Whether or not the Advantage Respondents are in principle answerable for the liabilities of Charterers and/or Geden Holdings incurred under the Charterparty and Guarantee , whatever those liabilities might be found to be (what Owners called "the corporate liability issues"); and
   2) Whether, if so, the Advantage Respondents are in fact liable to Owners pursuant to the Charterparty and the Guarantee respectively, whether for unpaid hire and/or breach of the maintenance and/or redelivery obligations, or otherwise" (what Owners called "the underlying liability issues)".
33. Owners accepted in their Reply Submissions that the underlying liability issues are to be determined in accordance with English Law, pursuant to the express terms of the Charterparty. However, they contended that the corporate liability issue is subject to US law.
34. At the oral hearing, Owners submitted that the reference to the "Advantage Respondents" in the summary of the underlying liability quoted in paragraph 30 (2) above, should read "Space and/or Geden" and subsequently applied to amend the pleading. Owners explanation that this was an error and should have referred to Space and Geden seems more consistent with the remainder of the pleading, though we note that Owners repeated the same error in a message to the Tribunal dated 30th August 2019. Given the way that the argument developed at the oral hearing and in particular the confirmation at the hearing that Owners were not asking us to determine what they called the underlying liability issues, however framed, it is not necessary for us to consider the application to amend the pleadings for the purposes of the matters before us.
35. We can however see how the reference to the Advantage Respondents being liable pursuant to the Charterparty could reasonably lead Charterers to consider that a claim was being made for a remedy under the Charterparty or at the least lead to some confusion as to the nature of the claim being pursued.
36. In August 2019 the Tribunal as then constituted ordered that the issue of the applicable law to govern the claims at issue in these pleadings should be dealt with as a preliminary issue.

**The Hearing of the Preliminary Issue**

37. What emerges from the parties' respective pleadings as summarised above is that the parties had different views as to the nature of the claim which Owners were pursuing against the Advantage Respondents.

38. The Advantage Respondents were treating the claim **as a substantive claim under the charterparty**, whereby the Tribunal, if Owners were correct, would issue a substantive award making them liable **under** the Charterparty.

39. Hence, their reference in their submissions to the fact that the claim against them had to exist prior to and independent from the arrests and the fact that could only be found liable if Owners could establish a sham transaction.

40. Owners on the other hand were suggesting that they were seeking **enforcement** against the Advantage Respondents of an award of liability against Space Shipping or Geden. However as explained above this was confused in their pleadings by the alternative claim under English Law for monetary sums for piercing the corporate veil, by the reference to "remedies" as well as enforcement and by the reference to the Advantage Respondents when describing the underlying liability.

41. The difference between a substantive claim against Y and the enforcement of an Award or Judgment against X against the assets of Y has been discussed by the English Courts in number of cases, including the two cases referred to in paragraphs 55-59 below.

42. This difference in approach was highlighted by the way each party described the preliminary issue in their speaking notes for the hearing on 4th October 2019.

43. Owners summarised the Preliminary Issue as follows:

    "The key issue ("the Issue") in this reference is:

    Are Owners entitled to enforce their claims against Geden Holdings/Charterers under the Guarantee/Charterparty against the Rule B Sums,[1] nominally belonging to the Advantage Respondents, held in the US District Court for the Eastern District of Texas?

    The question on this preliminary issue hearing is what substantive law governs the determination of the Issue, US law as applied in the 5th Circuit or English law?"

44. The Advantage Respondents put the preliminary issue as follows:

    "The preliminary issue with which this hearing is concerned is: what law should be applied to determine whether the Advantage Respondents should be treated as Space Shipping Ltd for the purposes of the Charterparty dated 23 February 2010? The

---

[1] US$4.8 million

candidates are English law (as the Rs contend) or US law, specifically the law of the US 5th circuit (as C contends)."

45. Owners in their oral submissions argued: (1) the US Court had not considered arbitrability of the issues as a matter of English Law and that the decision was wrong as a matter of US Law and English Law; (2) in any event the US Court did not make any finding as to the applicable law; (3) the Advantage Respondents are not parties to the Contract; (4) the Owners claim is not a contractual claim and clause 30 (a) of the Charterparty only applies to Contractual claims; (5) the Tribunal has a discretion to choose the conflicts of law rules to apply and should choose US Court's conflicts of law rules; (6) English Law Rules also require applying US Conflict of Law Rules.

46. As to the last argument, Owners stated:

"English conflict of laws rules also mandates applying US Federal maritime law. That is because (i) Owners' claim against R concerns *enforcing* Geden's/Charterers' liability to Owners against the Rule B sum held by the US Court and (ii) it is a *"cardinal principle"* that:

*"any question as to enforcement would be dealt with in the courts of the forum in which was found an asset against which enforcement was attempted and determined according to the applicable local law"* (*Vitol SA v Capri Marine* [2010] EWHC 458 (Comm))".

47. They also made clear that the Advantage Respondents were incorporated after the Charterparty was agreed and showed us various certificates of incorporation dated after the Charterparty was concluded. In doing so they explained that their claim was not that the Advantage Respondent were party to the contract on the basis of a sham or piercing the corporate veil, because they were not even in existence at the time that the Charterparty was concluded and that they were not seeking to claim against them under the Charterparty. Instead, they emphasised that their claim was to enforce any liability of Charterers or Geden Holdings against assets nominally held in the name of the Advantage Holdings.

48. It was thus clear, at least by these submissions, if not before, that the claim against the Advantage Respondents was an enforcement claim.

49. The Advantage Respondents in their oral Submissions emphasised that our jurisdiction could only flow from and was circumscribed by the arbitration clause in the Charterparty. This was summarised in their speaking note as follows:

"The starting point to have in mind is that C's claim against the Rs is under the Charterparty dated 23 February 2010. That is, and can be, the only claim over which this Tribunal (appointed pursuant to the arbitration agreement in the Charterparty) has jurisdiction."

50. Against that background, they submitted as set out in their speaking note that:

   1) By Clause 30(a) of the Charterparty, the parties agreed a standard law and arbitration provision, which provided, in relevant part, that:

   *"This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 ..."* (emphasis added);

   2) That the express agreement of English law as the *lex causae* or governing law is, or should be, the end of the preliminary issue. The parties have chosen English law as the substantive law of the dispute: that choice must be respected;

   3) The Tribunal should here have in mind s.46 of the Arbitration Act 1996:

   *"46.   Rules applicable to substance of dispute.*

   *(1)   The arbitral tribunal shall decide the dispute -*

   *(a)   in accordance with the law chosen by the parties as applicable to the substance of the dispute, or*

   *(b)   if the parties so agree, in accordance with such other considerations as are agreed by them or determined by the tribunal.*

   *(2)   For this purpose, the choice of the laws of a country shall be understood to refer to the substantive laws of that country and not its conflict of laws rules.*

   *(3)   If or to the extent that there is no such choice or agreement, the tribunal shall apply the law determined by the conflict of laws rules which it considers applicable."* (emphasis added);

   4) The parties have chosen English law as the law *"applicable to the substance of the dispute"* (s.46(1)(a)). That choice must be understood as a reference to English substantive law and not English conflicts principles (s.46(2)). C's reliance on English (or US) conflicts principles is, therefore, misplaced.

51. The Advantage Respondents alleged that Owners had confused or conflated the substantive claim and enforcement. They put the position as follows;

1) "Owners seeks to draw a distinction between what it calls the Underlying Liability Issues[2] and the Corporate Liability Issue[3] - and e.g. the Gaitas message of 30 August 2019. In so doing, Owners accepts that the former are governed by English law but seeks to argue that the latter should be governed by US law.

2) This is a false distinction. Both the Underlying Liability Issues and the Corporate Liability Issue are <u>part and parcel of the substantive claim</u> against the Advantage Respondents. The Final Award that the Tribunal is being asked to make by Owners is an award for hire and damages against the Advantage Respondents. In order to do that, as part of determining the substantive claim, it will need to consider both the Underlying Liability Issues and the Corporate Liability Issue. And, in doing so, the Tribunal is obliged to apply the parties' chosen law - English law.

3) Owners' response to this is to say that, whilst the Underlying Liability Issues are part of the substantive claim, the Corporate Liability Issue is a matter of *"remedy or enforcement"*[4] and as a result, it was said, subject to a different law - the *lex fori* through a process of applying English conflicts of law principles.

4) A few points might be made here:
   a) **First**, at the risk of repetition, this distinction between the Underlying Liability Issues and the Corporate Liability Issue does not exist or, at least, is meaningless in circumstances where the Owners are inviting the Tribunal, as a matter of its substantive decision, to hold that the Advantage Respondents are liable for the alleged hire and damages. They all form part of the substantive claim.
   b) **Second**, whilst the Tribunal has jurisdiction to deal with *"remedy"* in respect of the substantive claim - i.e. damages, injunctive relief, declaratory relief etc. - it does <u>not</u> have jurisdiction to deal with *"enforcement"*.

5) In relation to *"remedy"* in the context of the substantive claims, the Tribunal must apply the chosen substantive law, i.e. English law.

6) As for *"enforcement"*, that is not a matter for the Tribunal. It only arises if <u>and after</u> the Tribunal were to make an award in Owners' favour, at which point *enforcement* of

---

[2] Underlying Liability Issues = whether hire and/or damages are due under the Charterparty.
[3] Corporate Liability Issue = whether hire and damages are due from the Rs, instead of or in addition to the actual nominated charterer, Space Shipping Ltd.
[4] Claim Submissions §67.

12

that award would be a matter for the court of whichever country Owners were seeking to enforce in. District Judge Crone expressly retained jurisdiction to enforce any eventual arbitral award. Thus, to the extent that Owners' case is that its US law arguments are a matter of *"enforcement"*, they are not a matter for this Tribunal."

52. As set out above, the Advantage Respondents' position was that while matters of remedy (damages, injunctive relief, declaratory relief etc.) fall within our jurisdiction, matters of enforcement do not.

53. Following the Advantage Respondents' oral submissions, we gave the Owners some time to consider the impact of the Advantage Respondents' contention that questions of enforcement are outside our Jurisdiction given that the Owners' preliminary issue referred to whether Owners are entitled to **enforce** their claim against Geden Holdings and Charterers under the Guarantee and Charterparty against assets nominally held by the Advantage Respondents.

54. In their oral reply, the Owners confirmed that the only claim that they were seeking to advance was to **enforce** their claims against Geden Holdings and Charterers under the Guarantee and Charterparty against the Rule B sums nominally belonging to the Respondents held in the US District Court for the Eastern District of Texas. Notwithstanding the apparent terms of paragraph 80 of the Claim Submissions, they confirmed that they were not pursuing a substantive claim under the Charterparty against the Advantage Respondents or contending that the Advantage Respondents were party to the Charterparty.

55. They agreed that an arbitration Tribunal seated in England does not have jurisdiction over matters of enforcement and that it would be appropriate for the Tribunal to issue a declaration that they did not have jurisdiction over such proceedings. They also confirmed in their oral reply that they did not wish to rely on any alternative arguments before us.

56. Both parties agreed that the arbitration clause itself is subject to English Law and therefore it is hardly surprising that both parties should agree that the Tribunal does not have jurisdiction over matters of enforcement as a matter of English Law, which was not a matter dealt with before the US Courts.

57. The position under English Law is clear from the decisions of Mr Justice Tomlinson in *Vitol SA v Capri Marine & Others* [2010] EWHC 458 (Comm) and Mr Justice Burton in *Brave Bulk Transport Limited v Spot On Shipping Limited* [2009] 2 Lloyd's Rep 115.

58. In *Vitol SA v Capri Marine & Others*, Vitol sought to enforce a Judgement of the English Court against Capri Marine SA by commencing Rule B attachment procedures against other parties (among other Sparticus Navigation Corporation and Primrose Shipping Co Ltd) in Baltimore, Maryland on the basis that the assets of those other parties should be treated in common with those of Capri Marine SA and thus available for execution of judgement against Capri Marine on the basis that the corporate veil can be pierced in cases of fraud or on occasion (albeit less readily than in a case of fraud) when an individual so conducts his business as to ignore corporate separation.

59. Capri Marine SA sought an anti-suit injunction on the grounds that the Charterparty contained a Law and Litigation Clause providing that "the Charter shall be construed and the relations between the parties determined in accordance with the Laws of England. Any dispute arising out of or in connection with this Charter …shall be subject to the jurisdiction of the English High Court".

60. Mr Justice Tomlinson (as he then was) rejected the application for an anti-suit injunction on the basis that the claim for enforcement fell outside the terms of the Law and Litigation Clause.

61. He explained the position as follows:

> 33. "…The rights and obligations which were once governed by the charter have merged into the judgment. Vitol and Capri would have known that any judgment which the one obtained against the other was unlikely to be capable of enforcement in England, in which neither of them had a corporate presence. It is most unlikely that they intended that matters concerning the enforceability of any judgment obtained the one against the other should be governed by the laws of England or be subject to the exclusive jurisdiction of the English court. They would rather have expected that any question as to enforcement would be dealt with in the courts of the forum in which was found an asset against which enforcement was attempted and determined according to the applicable local law. See generally Dicey, Morris and Collins, The Conflict of Laws, 14th Edition, paragraph 7-008. I agree with [Counsel] for Vitol that this cardinal principle underpins the observations to be found in a number of the English cases and underpins also the Brussels Convention and Regulation and the European jurisprudence.
>
> 34. It follows that I regard Capri's reliance on the Law and Litigation clause as misplaced. I am comforted to find that this is precisely the conclusion to which Burton J came in *Brave Bulk Transport Ltd v. Spot On Shipping Ltd* [2009] 2 Lloyd's Rep 115. That was a case concerned with a clause conferring exclusive jurisdiction upon this court "with respect to any suit action or proceedings relating to this Agreement". At page 122 Burton J said this:
>
>> "… I conclude that the attempt by the respondent in the light of an unsatisfied judgment to recover the judgment debt in proceedings against another party,

14

based on the alter ego doctrine as understood in New York law, is not a claim which falls within the jurisdiction clause in the FFA. It does not <u>relate</u> to the FFA, however broadly construed (*Fiona Trust and Holding Corporation v. Privalov* [2008] 1 Lloyd's Rep 254.""

62. It is clear to us that Owners are advancing their claim on a similar basis. They are not advancing a claim that the Advantage Respondents are parties to the Charterparty. They were incorporated after the Charterparty was concluded. Rather, the assertion is that the Owners are entitled to **enforce** their claims against Charterers under the Charterparty or Geden Holdings under the Guarantee against assets nominally belonging to the Advantage Respondents. The merits of those underlying claims against Charterers and Geden Holdings are not before us.

63. Since it is common ground that claims of enforcement are outside our Jurisdiction and since the Owners had made clear that the only claims being advanced against the Advantage Respondents are for enforcement, the parties agreed at the end of the oral hearing that we should issue a declaration that we had no jurisdiction over the claims made by the Owners against the Advantage Respondents in this reference.

64. At the end of the oral hearing we gave Counsel for the parties 7 days to agree the wording of an appropriate declaration. They were unable to do so.

65. Accordingly, in circumstances where:
   1) Owners have confirmed that they are not bringing any substantive claims against the Advantage Respondents under the Charterparty before us;
   2) Owners have confirmed that their only claim against the Advantage Respondents or assets nominally belonging to them is to enforce any sums that may be awarded against Geden Holdings under the Guarantee or against Charterers under the Charterparty;
   3) It is common ground between the parties that enforcement proceedings fall outside our jurisdiction under the arbitration clause contained in the Charterparty.

   We therefore declare that we have no jurisdiction over the claims made by the Owners in this reference.

66. Both parties asked us to reserve any question of costs, until after publication of our Award.