IN THE IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PSARA ENERGY, LTD. | : | |
| Plaintiff | : | |
| SPACE SHIPPING, LTD., ET AL. | : | C.A. NO. 1:18-CV-00178 |
| Defendants | : | ADMIRALTY |

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Psara Energy Limited, by and through undersigned counsel, responds as follows to the motion of the movant Defendants (hereinafter "Defendants") styled "ADVANTAGE DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION TO HOLD PLAINTIFF IN CONTEMPT" (Doc. 53) (hereinafter "Motion to Dismiss").

## I. STATUS AND PROCEDURAL BACKGROUND

With its Order of January 4, 2019 (Doc. 40) (hereinafter "the Referring Order") the Court overruled Plaintiff's objections and adopted the report and recommendations of the Magistrate Judge (Doc. 37) directing the parties to submit the "arbitrable issues" that arose from the attachment of the motor tankers ADVANTAGE ARROW and ADVANTAGE START to London Arbitration. *See* Doc. 40; Doc. 37, p. 1. It was - and remains - Plaintiff's position that the issue of the property over the attached vessels, based on Plaintiff's allegations of liability of their respective owners and holding companies as successor corporations and fraudulent transferees, is an issue that may not and cannot be decided by maritime arbitration in London under English law. Plaintiff appealed the District Court's Order to the Fifth Circuit Court of Appeals which recently dismissed

1

the appeal holding that the Referring Order was interlocutory and, therefore, not appealable. A copy of the Fifth Circuit reasoned judgment is hereto attached as GAITAS EXHIBIT 1.[1]

In the interim, the parties arbitrated in London, as the Court had ordered, in accordance with the Rules of the London Maritime Arbitrators Association ("LMAA"), with each party appointing their respective arbitrators. Plaintiff appointed Mr. George Tsimis and Defendants appointed Mr. Mark Hamsher. The two so chosen, appointed Mr. Luke Parsons, Q.C. as the third arbitrator (collectively, the "Tribunal"). Following initial submissions, Defendants (who were the Respondents in the arbitration) applied to the Arbitration Tribunal to determine as a preliminary issue the law that should be applied in deciding the dispute. Plaintiff (Claimant in the arbitration) submitted that the applicable law for the decision of substantive issues relating to the ownership of the property attached in the Rule B attachments should be United States law. Defendants, on the other hand, contended that the applicable law should be English law. The parties made their respective choice of law submissions in writing, and on October 4, 2019, the Tribunal held a hearing in the matter. Defendants were represented at the hearing by their counsel Mr. Yash Kulkarni, Q.C., and their solicitor Mr. Mike Lax. Plaintiff was represented at the hearing by its counsel Mr. Chirag Karia, Q.C., and Mr. George Gaitas. Following the hearing on November 22, 2019, the tribunal issued its Final Award (hereinafter referred to as "Award" and attached hereto as GAITAS EXHIBIT 2); and its Reasons for and Forming Part of the Final Award (hereinafter referred to as "Reasons" and attached hereto as GAITAS EXHIBIT 3). In the course of the hearing, the Tribunal noted Defendants' contention made in their oral submissions "...that questions of enforcement are outside our Jurisdiction given that the Owners' preliminary issue referred to whether Owners are entitled to enforce their claim against Geden Holdings and

---

[1] All documentary exhibits to this response are authenticated in the Declaration of George Gaitas to which they are attached and are referred to as "GAITAS EXHIBIT" followed by the number of the respective exhibit.

2

Charterers under the Guarantee and Charterparty against assets nominally held by the Advantage Respondents." *See,* GAITAS EXHIBIT 3, ¶¶52, 53. The Tribunal also noted that in their oral reply "....Owners confirmed that the only claim that they were seeking to advance was to enforce their claims against Geden Holdings and Charterers under the Guarantee and Charterparty against the Rule B sums nominally belonging to the Respondents held in the US District Court for the Eastern District of Texas." *Id.* at ¶ 54.

The Tribunal noted in its Reasons that Plaintiff is not "...advancing a claim that the Advantage Respondents are parties to the Charterparty. They were incorporated after the Charterparty was concluded. Rather, the assertion is that the Owners are entitled to enforce their claims against Charterers under the Charterparty or Geden Holdings under the Guarantee against assets nominally belonging to the Advantage Respondents. The merits of those underlying claims against Charterers and Geden Holdings are not before us." *Id.* at ¶ 62.

The Tribunal concluded in its Reasons that, "Since it is common ground that claims of enforcement are outside our Jurisdiction and since the Owners had made clear that the only claims being advanced against the Advantage Respondents are for enforcement, the parties agreed at the end of the oral hearing that we should issue a declaration that we had no jurisdiction over the claims made by the Owners against the Advantage Respondents in this reference." *Id.* at ¶ 63.

The Tribunal also concluded the following in the Award:

> WE FURTHER DECLARE that this Award is FINAL as to the matters determined and we reserve to ourselves the jurisdiction to deal with any other matters outstanding between the parties to this reference. The reasons for this Award are attached to and form part of this Award.

GAITAS EXHIBIT 2, ¶ 17.

Defendants had 28 days to appeal the arbitration award to the English High Court if they felt it was incorrectly decided under English law. They did not take an appeal. Instead, they filed the Motion to Dismiss (Doc. 53) to which this is a response.

Plaintiff fully intends to move the Court to confirm the Award but has not done so yet because it has requested the Tribunal to correct a clerical error in the Award itself and provide Plaintiff with a certified copy of the corrected Award and Reasons. *See* relevant e-mail correspondence with the Tribunal dated January 8, 2020 attached hereto as GAITAS EXHIBIT 4.

## II. ARGUMENT

Defendants' Motion to Dismiss is based on gross misstatements of the facts and a distortion of the Award made by the arbitration Tribunal. Contrary to Defendants' representations (Doc. 53 at p. 7), it is the Defendants who argued in the first instance that the Tribunal did not have jurisdiction to rule in matters regarding the enforcement of Plaintiff's claim. GAITAS EXHIBIT 3, ¶¶ 52, 53. The record, in the form of the arbitration award Reasons, speaks for itself. Plaintiff, on invitation of the Tribunal as to whether it would join the Defendants in this regard, agreed. Accordingly, the Tribunal accepted that it was common ground that the arbitration Tribunal was without jurisdictional authority to decide enforcement issues which, under the laws of the United Kingdom, may not to be decided under English law in English proceedings. There are, however, several other additional reasons why Defendants' Motion to Dismiss is simply not only without merit, but altogether untenable. These reasons include the following:

A. <u>Defendants' complaints regarding the basis on which Plaintiff submitted its claim for decision to the arbitration tribunal are entirely unfounded</u>

Defendants seek to transform into victory the defeat they sustained following the issuance of the Tribunal's well-reasoned Award holding the arbitrators did not have jurisdiction to arbitrate issues relating to the enforcement (Rule B) aspects of Plaintiff's claims. Defendants argue that

4

Plaintiff, somehow, showed contempt for the Court's order by arguing the arbitral panel could not exercise jurisdiction over its claims against the Advantage Defendants. Doc. 53, p. 7. They also argue that if the Court does not dismiss Plaintiff's claim with prejudice, this would "nullify this Court's prior determination that Psara could not pursue its claims against the Advantage Defendants other than in arbitration." *Id.* at p. 9. It is respectfully submitted these arguments are entirely unfounded; contrary to the Federal Arbitration Act; contrary to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (hereinafter "the New York Convention") 21 U.S.T. 2517; and contrary to any ruling of this Court made in referring Plaintiff's claims to arbitration.

> i.   *There is nothing in the Referring Order of the Court limiting the issues to be arbitrated*

The Court is without authority to dismiss a case based on the Tribunal's ruling that under the laws of the country where the arbitration is held it has no jurisdiction to decide certain issues. An arbitration panel is not required to assume jurisdiction over all of a party's claims in order to render an enforceable award. "Arbitrators are required to assess their jurisdiction on a claim-by-claim basis, and numerous courts have confirmed arbitral awards …. where some (but not all) claims fell within the arbitrators' jurisdiction." *See, Berhad v. E\*HealthLine.com Inc.*, 344 F. Supp. 3d 1136, 1445 (E.D. Cal. 2018), and case law cited therein. Contrary to what Defendants argue, there was nothing in the Referring Order (Doc. 40) limiting the issues to be submitted to arbitration. The Magistrate Judge's Report and Recommendation ("R&R") which recommended granting the motion to stay and refer issues to arbitration states: "The undersigned recommends granting the motion, directing the parties to arbitration, and staying the case pending resolution of the arbitrable issues." (Doc. 37 at p.1). In their opposition to Plaintiff's Objections to the R&R Defendants argued:

> Although Plaintiff complains in its Objection that the Court must determine what issues are arbitrable, the Report & Recommendation correctly recognizes that the entirety of Plaintiff's claims are arbitrable, by recommending that the Court direct the parties to arbitrate their dispute in London, pursuant to the charter party and Section 206 of the FAA. By so recommending, Magistrate Hawthorn in fact determined that all issues between the parties are arbitrable, because they are issues arising out of or in connection with the agreement that contains the arbitration clause. (internal quotations omitted).

Doc. 39 at pp. 5 – 6.

In *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 355 (5th Cir. 2004), *overruled on other grounds*, 562 F.3d 349 (5th Cir. 2009), where the court order directing the parties to arbitrate placed no limitation on the arbitrator, the Fifth Circuit held:

> [I]n deciding whether the arbitrator exceeded his jurisdiction, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration…We held that the decision as to whether or not an issue is arbitrable is for the arbitrator to decide if the subject matter of the dispute is arguably arbitrable, and that courts have no business overruling an arbitrator because their interpretation of the contract is different from his. (internal citations and quotations omitted).

*Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 355 (5th Cir. 2004), *overruled on other grounds*, 562 F.3d 349 (5th Cir. 2009).

Obviously in the case at hand the parties were not in any way restrained, either by the Court, or under the applicable law, on what issues to submit to the Tribunal for decision.

        *ii.*    *Under the New York Convention Defendants have no basis to oppose confirmation of the Award – The Court is bound under statute to confirm and enforce the award.*

The Federal Arbitration Act provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

*See,* 9 U.S.C. § 207

The grounds on which a court may refuse to recognize or enforce an arbitration award are set out in Article V of the New York Convention. 21 U.S.T. 2517. None of these grounds have

6

been raised by Defendants in their "Motion to Dismiss." Indeed, Defendants indirectly concede that the Award should be recognized and enforced, since their entire Motion to Dismiss is predicated on the validity and enforceability of the Award. As noted in the foregoing, Plaintiff intends to file a motion in parallel to this opposition under 9 U.S.C. § 207 requesting the Court to confirm the arbitration award.

In an action to confirm an award rendered in a foreign jurisdiction, the grounds for relief set forth in Article V of the Convention are the only grounds available for refusing to enforce an arbitral award. The party opposing confirmation bears the burden of demonstrating grounds for setting aside the award. *Henry v. Murphy, M-82* (PART I JFK), 2002 U.S. Dist. LEXIS 227 (S.D.N.Y. Jan. 8, 2002) at* 8; *Continental Grain Co. v. Foremost farms*, 1998 U.S. Dist. LEXIS 3509 (S.D.N.Y. Mar. 20, 1998) at * 4; *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974).

The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997); *Ministry of Defense & Support v. Cubic Defense Systems*, 665 F.3d 1091, 1094 (9th Cir. 2011) at fn. 1. It follows, that an order of confirmation of the Award here, would be tantamount to a judgment of this Court stating that the issues of enforceability of the judgment against the property which was attached and then released against substitute security, are matters over which the Tribunal is without jurisdiction to decide.

An international arbitration award is not capable of being vacated by the District Court under the New York Convention. A motion to vacate a foreign arbitration award "may be heard only in the courts of the country where the arbitration occurred or in the courts of any country whose procedural law was specifically invoked in the contract calling for arbitration of contractual

disputes." *Aggarao v. MOL Ship Management Co.*, 2014 U.S. Dist. LEXIS 108692 (D. Md. Aug. 7, 2014) at fn. 5 (citing *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 849 (6th Cir. 1996)); *see also, Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 29 F. Supp. 2d 1168, 1172 (S.D. Cal. 1998); *IMAX Corp. v. Giencourt Investments, S.A.*, 2019 U.S. Dist. LEXIS 168828 (S.D. Fla. Sep. 27, 2019) at * 15; *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004).

The Court with primary jurisdiction over the Award that had authority to consider an application to vacate it would have been the High Court in England. If Defendants had legally supportable reasons to vacate the Award, they could have filed an appeal within 28 days from its issuance. *See*, U.K. Arbitration Act 1996 ¶¶ 30; 67; 68; 70 extracted and set out in GAITAS EXHIBIT 5**.** The Defendants chose not to pursue an appeal in the High Court. Thus, Defendants' only hope to challenge the Award would be to either urge this Court not to confirm it under one of the seven reasons for which the competent authority where the recognition and enforcement is sought (this court); or urge some other reason, altogether outside the New York Convention that might justify the Court in nullifying the award of the Tribunal. The "reason" Defendants have found and are offering as their argument - unsupported by the record of the arbitration proceedings and without citing a single decision of any court of the United States dealing with arbitration issues - is the falsehood that Plaintiff was bound by the Referring Order to arbitrate enforcement in a Tribunal that did not have jurisdiction. The contemporaneous records generated in the process of the arbitration proceedings entirely discredit Defendants' argument.

> iii. *Defendants are attempting to re-argue issues which have been finally arbitrated*

Both the Award and Reasons contradict Defendants' arguments in the Motion to Dismiss. Indeed, the Award and Reasons render a complete falsehood and directly refute Defendants' representations that somehow Plaintiff beguiled the Defendants and three learned arbitrators into making a ruling contrary to the order of the Court to submit matters to arbitration. The Reasons given for the Award extensively quote the orders of this Court and the recommendations of the Magistrate Judge which referred the case to arbitration. GAITAS EXHIBIT 3, ¶¶ 14, 15. Moreover, the Tribunal had the benefit of access to the entire record of the proceedings in this Court and in the United States District Court for the Eastern District of Louisiana, which they ordered Plaintiff at the October 4, 2019 hearing to make available to the Tribunal. Access to the entire record on appeal was provided to the Tribunal on October 9, 2019 as shown in the e-mail to the Tribunal of the same day, hereto attached and made part of GAITAS EXHIBIT 6. The Tribunal had complete access to every pleading, brief, argument, and order which the Court made in these proceedings. The Tribunal was well aware of the Court's Order that based their appointment and scope of the arbitration as circumscribed by the arbitration clause of the charter party. GAITAS EXHIBIT 3, ¶ 16.

Having failed to persuade the Tribunal to make an award favorable to them, and having no sustainable grounds to support a successful challenge to the Award under the New York Convention, Defendants are attempting to raise in the Eastern District of Texas the same arguments that they unsuccessfully attempted to raise with e-mailed written submissions after the time for submissions closed at the conclusion of the October 4, 2019 hearing before the Tribunal. In this regard, Plaintiff would bring to the Court's attention the October 4, 2019 e-mail correspondence of Defendants' solicitor Mike Lax to the Tribunal (attached hereto in GAITAS EXHIBIT 6) raising several hours after the hearing had been concluded, essentially the same arguments as Defendants'

Motion to Dismiss (Doc. 53). Plaintiff would also bring to the Court's attention the October 5, 2019 e-mail response of the Tribunal to the parties rejecting additional written submissions, also contained in GAITAS EXHIBIT 6. In its e-mail of October 10, 2019, the Tribunal repeated once again its order to the parties not to make any further submissions. *See,* GAITAS EXHBIT 7. It is clear from the orders of the Tribunal to the parties that submissions closed on the conclusion of the hearing of October 4, 2019, with the specific exception of documents that the Tribunal requested the parties to submit. *Id*. If Defendants in their submissions to the Tribunal conceded, as they did, that matters of enforcement issues are not within the jurisdiction of an English arbitration tribunal (GAITAS EXHIBIT 3, ¶ 52), and they failed to timely amend their submission before the conclusion of the hearing, they have but themselves to blame. At the arbitration hearing, Defendants were represented by leading counsel and two seasoned solicitors. The parties were afforded ample opportunity to raise any challenge to the Tribunal's proposal to make a ruling on its own jurisdiction as Defendants themselves had requested. Defendants failed to object or raise any of the new arguments they tried to raise after submissions had closed. Their Motion to Dismiss is nothing other than an attempt to argue in this Court what they failed to argue by the close of submissions at the October 4, 2019 hearing by the Tribunal.

As noted in the foregoing, Defendants' Motion to Dismiss the entire action is an attempt borne out of their inability as a matter of law to challenge the Award under the narrow grounds of the New York Convention. The arbitrators already rejected Defendants' belated attempt to offer such submissions out of time on October 4, 2019, after the conclusion of the hearing. Such an attempt, which the arbitrators rejected, is not countenanced by the courts. *See e.g.*, *BAXTER International, Inc. v. ABBOTT Laboratories*, 315 F.3d 829, 831 (7th Cir. 2003) ("But the initial question is whether Baxter is entitled to reargue an issue that was resolved by the arbitral tribunal.

We think not"); *see also, Central Montana Rail v. BNSF Ry. Co.*, 2009 U.S. Dist. LEXIS 138336 (D. Mont. July 30, 2009) at * 4; *Parker v. J.C. Penney Corp.*, 2009 U.S. Dist. LEXIS 124022 (E.D. Tex. Dec. 28, 2009) at * 7; *Rite Industries v. Spielman*, 1997 U.S. Dist. LEXIS 10289 (M.D.N.C. May 1, 1997) at * 12.

        *iv.     Defendants' argument that the Award forecloses Plaintiff's recourse against the substitute security held in Court is mistaken*

In their Motion to Dismiss, Defendants argue that, as a result of the Tribunal's ruling that it was without jurisdiction to make a ruling on enforcement issues, Plaintiff may not have recourse against the substitute security. Doc. 53 at pp. 8-9. Defendants' argument seems to be based on confusion. There is already an arbitration underway against Space Shipping, Ltd., the bareboat charterer, which eventually will determine its liability and damages recoverable by Plaintiff as owner. The Tribunal has referred to these matters in the Award at ¶¶ 1-5 and in the Reasons at ¶¶ 3-5, 9, 11. *See,* GAITAS EXHIBIT 2 and 3, respectively. In paragraph 11 of the Reasons, the Tribunal noted: "These claims against Charterers are not the subject of these arbitration proceedings. The merits of those claims are before a differently constituted arbitration tribunal." GAITAS EXHIBIT 3, ¶ 11.

Plaintiff's claim from the time of filing the complaints in these proceedings has been based on the derivative liability of the Advantage Defendants. The liability of corporate parties brought as defendants in a civil proceeding as successor corporations or fraudulent transferees is derivative, as opposed to direct. *See* e.g., *Santa Maria v. Owens-Illinois, Inc.*, 808 F.2d 848, 851 (1st Cir. 1986) at fn. 5 ("[S]uccessor liability is a form of derivative or vicarious liability, predicated upon the existence of liability on the part of a predecessor entity."); *In re W.R. Grace & Co.*, 607 B.R. 419, 424 (Bankr. D. Del. 2019) ("In the fraudulent transfer context, a creditor's claim against the recipient of a fraudulent transfer is derivative because it is based upon: (1) the creditor's claim

11

against the debtor for an unpaid debt; and (2) the debtor's fraudulent transfer claim against the recipient."); *See also, Biliouris v. Sundance Resources, Inc*., 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008).

The ruling of the Tribunal was that it was this derivative liability of the Advantage Defendants (enforcement against the attached assets), which cannot be arbitrated. *See* GAITAS EXHIBIT 3, ¶¶27, 40, 54-56, 62-64. The English High Court legal precedents cited in the Tribunal's Reasons underscore this position. The High Court rationale in *Vitol SA v. Capri Marine*, cited and discussed in the Reasons at ¶¶ 57-61, was accepted by the United States District Court for the District of Maryland in a Rule B attachment case involving the same claim and the same parties, styled *Vitol, S.A. v. Capri Marine, LTD*, No. MJG-09-3430, 2010 U.S. Dist. LEXIS 143095 (D. Md. Dec. 23, 2010). Judge Garbis, noting that "[t]he underlying charter party agreement between Plaintiff and Capri contained a law and jurisdiction clause that required that all disputes arising out of the contract be determined by English law", held that, nevertheless, plaintiff was not barred from pursuing its alter ego claims in the District of Maryland. *Id*. at *11-12. Rejecting the contentions of defendants who had argued in favor of English jurisdiction, the court agreed with the High Court that "…any question as to enforcement would be dealt with in the courts of the forum in which was found an asset against which enforcement was attempted and determined according to the applicable local law." *Id.*

Accordingly, this Court is vested with jurisdiction to decide the enforcement claims. The arbitration award against Space Shipping, or the anticipated judgment against Geden Holdings, Ltd. could be satisfied against the substitute security, if the Court favorably decides Plaintiff's successor corporation or fraudulent transfer claims.

- B. <u>The Court continues to be vested with authority to adjudicate the issues of successor corporation liability and fraudulent transfer, irrespective of the Award of the Tribunal</u>

The Federal Arbitration Act, under 9 U.S. Code § 8, preserves intact for maritime claimants, notwithstanding agreements to arbitrate, their right to commence proceedings by means of libel and seizure of the vessel or property of the other party according to the usual course of admiralty. So strong is the policy expressed in the statute that the Supreme Court has ruled that it cannot be contracted out by agreement. It so held in *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 46 (1944). When a court sitting in admiralty directs a cause, or issues relating to a cause of action, which are otherwise justiciable in admiralty to be arbitrated, one of the possible outcomes of the arbitration may be that the arbitrators will rule some claims or issues to be not arbitrable. This is precisely what happened in this case in which the Tribunal ruled it did not have jurisdiction to decide certain issues relating to the enforcement of an award under either the charter party or the performance guarantee. In such circumstances it would be erroneous for a court to dismiss the complaint. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) the Supreme Court of the United States noted that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." The Court's jurisdiction for the enforcement of Owners' rights remains intact notwithstanding the Tribunal's ruling that it lacks jurisdiction to resolve the enforcement issues.

An argument quite similar to that of Defendants requesting dismissal of an admiralty claim was made by the defendants in *Nissho Iwai Corp. v. M/V Joy Sea*, 2002 U.S. Dist. LEXIS 877 (E.D. La. Jan. 7, 2002). The claim had been brought *in rem* and *in personam* by cargo interests respectively against the carrying vessel and her owners. Just as in the case at hand, the defendants persuaded the court to refer the dispute to arbitration. The arbitrator in *Nissho* was Mr. Hamsher, who was nominated as arbitrator by Defendants in the present case. He "… determined that, under

English law, none of the claims here was subject to arbitration." *Id.* at *6. In *Nissho,* the defendants argued that since the arbitrator did not reach the merits of the issues, the award of the arbitrator was neither final nor enforceable. Judge Berrigan who presided over the *Nissho* case disagreed, noting:

> The parties submitted a number of disputed issues to the arbitrator arising out of this lawsuit, not for debating purposes. It is true that the arbitrator did not determine the underlying claims. Nevertheless, under English law, as the arbitrator's decision makes plain, there is no need to arbitrate those claims-they simply are not arbitrable. Thus, the arbitrator's decision is final and enforceable.

*Id.* at *6.

The court in *Nissho*, accordingly, lifted the stay and reinstated the case on the docket for adjudication. *Id* at *20. The court similarly rejected the defendants' arguments that the arbitrator was not authorized to arbitrate the issue of arbitrability. It noted that the parties themselves jointly submitted the issue to the arbitrator for decision. *Id.* at * 12. In this case also, the parties submitted to the Tribunal the issue of jurisdiction and by extension the issue of arbitrability (GAITAS EXHIBIT 3, ¶¶ 1-2, 53-54), and also agreed that the Tribunal's determination of the issue was governed by English law. *Id.* at ¶ 56. There was nothing in the Court's order (Doc. 40) precluding the parties from arbitrating any issue, as was also the case in *Nissho*. *Nissho,* 2002 U.S. Dist. LEXIS 877 at * 10.

The parties, not unlike the parties in *Nissho*, submitted to the Tribunal the issue of the Tribunal's jurisdiction over the enforcement claims and it decided that it did not have jurisdiction over these. *Id*. at *12-13. Considering that the Defendants themselves agreed, indeed insisted "that the entirety of Plaintiff's claims are arbitrable" (Doc. 39 at pp. 5-6), they should have no reason to complain that the Tribunal arbitrated the issue of its own jurisdiction over the "enforcement claims" and determined that it did not have any.

Accordingly, in the circumstances, it would make eminent sense for the Court to do as the courts in *Nissho Iwai Corp. v. M/V Joy Sea*, 2002 U.S. Dist. LEXIS 877 (E.D. La. Jan. 7, 2002) and *Vitol, S.A. v. Capri Marine, LTD*, No. MJG-09-3430, 2010 U.S. Dist. LEXIS 143095 (D. Md. Dec. 23, 2010), which is to restore the case on the docket for adjudication of the issues over which the Tribunal has ruled it has no jurisdiction. This result is foreshadowed in the judgment of the Fifth Circuit Court of Appeals dismissing the appeal in which it held:

> Moreover, this case commenced not as a suit simply to compel arbitration pursuant to the FAA, but to obtain relief against the defendants for, inter alia, breach of the charter party agreements and fraudulent transfer of assets. It is not inconceivable in such a situation that, although the defendants prevailed on a claim seeking arbitration, some aspects of the case might not be resolved in the arbitral forum, and the district court would have to reopen the case for purposes other than to enforce the arbitral award.

GAITAS EXHIBIT 1, p.7.

C. <u>Defendants' pleas to dismiss the suit and return the substitute security is frivolous</u>

As discussed in the foregoing, the Referring Order did not restrict the Parties from arbitrating any issue. Moreover, it was Defendants who raised the issue of the Tribunal's lack of jurisdiction, and tried to backpedal from it after closing submissions at the arbitration hearing. Defendants have a penchant to routinely demand sanctions, costs, attorney fees, and the like as a means of coercing opponents to bend to their demands. Their "contempt" arguments in Doc. 53 are a variation on this same theme. Their most recent request along similar lines in this case was denied by the Fifth Circuit. *See*, *Psara Energy Limited v. Advantage Arrow Shipping, LLC*, No. 19-40071, Fifth Circuit Court of Appeals Letter dated Jan 9, 2020 hereto attached as GAITAS EXHIBIT 8. Their request in this instance is baseless, and unsustainable.

### III.    CONCLUSION

For the foregoing, Defendants' Motion to Dismiss should be denied in its entirety. Plaintiff anticipates filing a motion to confirm the arbitration award as soon as a certified copy is made

15

available.  In view of the developments in this case, Plaintiff respectfully requests the Court to schedule a status conference to be attended by the parties' attorneys.

Dated: January 16, 2020
      Houston, Texas

Respectfully submitted,

GAITAS & CHALOS, P.C.

By:   /s/George A. Gaitas
      George A. Gaitas
      State Bar No. 24058885
      Federal Bar No. 705176
      Jonathan M. Chalos
      State Bar No. 24097482
      Federal Bar No. 3008683
      1908 N Memorial Way
      Houston, Texas 77007
      Telephone: 281-501-1800
      Fax: 832-962-8178
      E-mail: gaitas@gkclaw.com
             chalos@gkclaw.com

*Attorneys for Plaintiff*
Psara Energy, Ltd.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing pleading was served on all counsel of record via the Court's CM/ECF system on this 16th day of January, 2020.

                                          /s/ George A. Gaitas
                                          George A. Gaitas