**IN THE IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **SPACE SHIPPING, LTD., ET AL.** | : | **C.A. NO. 1:18-CV-00178** |
| | : | **ADMIRALTY** |
| **Defendants** | : | |
| | : | |
| | : | |

## DECLARATION OF ATTORNEY GEORGE A. GAITAS

I, George A. Gaitas, pursuant to Section 1746 of Title 28 United States Code, hereby declare and say the following under the penalty of perjury:

1.       I am an individual of sound mind and have never been convicted of a crime of moral turpitude.

2.       I am a member of the law firm Gaitas & Chalos, P.C., and my firm represents Psara Energy Limited in the above titled action. I make this declaration on personal knowledge.

3.       I represent Plaintiff as its attorney in London Maritime Arbitration in the proceedings styled:  PSARA ENERGY LIMITED, Claimants (Owners)  and (1) ADVANTAGE ARROW SHIPPING LLC (2) ADVANTAGE START SHIPPING LLC (3) ADVANTAGE TANKERS LLC (4) ADVANTAGE HOLDINGS LLC and (5) FORWARD HOLDINGS LLC, Respondents ("Advantage Respondents").  (Hereinafter "the London Arbitration")

4.       In connection with the London Arbitration I participated in a hearing on October 4, 2019 in London before arbitrators:  Messrs. Mark Hamsher; George Tsimis; and Luke Parsons, QC. (hereinafter collectively referred to as the "Arbitration Tribunal").

5.       The purpose of this Declaration is to authenticate documents which have been

1

generated in relation to the London Arbitration, the above captioned proceedings, and an appeal in the Fifth Circuit Court of Appeals.

6.      Attached to this Declaration as EXHIBIT 1 is a reasoned decision of the United States Court of Appeals for the Fifth Circuit, on an appeal between the above parties, under No. No. 19-40071, dated January 9, 2020 dismissing Plaintiff's appeal of the Court's order of January 4, 2019, which had directed the stay of these proceedings and the submission of disputes to London arbitration.

7.      Attached to this Declaration as EXHIBIT 2 is a copy of an Arbitration Award made and published by the Arbitration Tribunal on November 22, 2019.

8.      Attached to this Declaration as EXHIBIT 3 is a copy of the Tribunal's Reasons for the award which form part of the Tribunal's award.

9.      Attached to this Declaration as EXHIBIT 4 is my  January 8, 2020 e-mail to the Arbitration Tribunal and response thereto regarding typographical error in the Award and its correction.

10.      Attached to this Declaration as EXHIBIT 5 are extracts from the United Kingdom 1996 Arbitration Act (Cover page and Sections 30, 67, 68,70), which I downloaded from the U.K. Government site:  http://www.legislation.gov.uk/ukpga/1996/23/data.pdf. on January 14, 2020.

11.      Attached to this declaration as EXHIBIT 6 are the following e-mails in reverse chronological order:

- October 9, 2019 e-mail correspondence of George Gaitas with the Arbitration Tribunal and all solicitors providing access to the record of all proceedings in this matter in the United States District Court for the Eastern Districts of Texas and Louisiana, and an index to the Record on Appeal;

- October 5, 2019 e-mail correspondence of the Arbitration Tribunal with the respective solicitors of the parties to the arbitration;

- October 5, 2019 e-mail correspondence of George Gaitas with the Arbitration Tribunal regarding Respondents' making alternative submissions after conclusion of the October 4, 2019 hearing;

- October 4, 2019 e-mail correspondence of Mr. Mike Lax to the Arbitration Tribunal putting forward alternative written submissions after conclusion of the hearing;

- September 30, 2019 e-mail correspondence of Mr. Mike Lax transmitting copy of the Advantage Respondents' skeleton argument;

12.     Attached to this Declaration as EXHIBIT 7 is e-mail correspondence dated October 10, 2019, from the Arbitration Tribunal addressed to all solicitors and counsel regarding further submissions by the parties following conclusion of the October 4, 2019 hearing.

13.     Attached to this Declaration as EXHIBIT 8 is the Fifth Circuit Court of Appeals Letter dated Jan 9, 2020, denying Defendants' Motion for FRAP Rule 38 damages and attorney fees.

14.     All of the documents referred to in the foregoing are genuine and copies of originals that I received, transmitted, or was copied in, or copies of documents contained in Public Records.

I declare under penalties of perjury under the laws of the United States that the above and foregoing is true and correct.

Signed in Houston, Texas on this _16th_ day of January 2020.

George A. Gaitas



EXHIBIT 1

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40071

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2020

Lyle W. Cayce
Clerk

PSARA ENERGY, LIMITED,

        Plaintiff - Appellant

v.

ADVANTAGE ARROW SHIPPING, L.L.C.;
ADVANTAGE TANKERS, L.L.C.;
ADVANTAGE HOLDINGS, L.L.C.;
FORWARD HOLDINGS, L.L.C.,

        Defendants – Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PSARA ENERGY, LIMITED,

        Plaintiff - Appellant

v.

ADVANTAGE START SHIPPING, L.L.C.; ADVANTAGE TANKERS, L.L.C.;
ADVANTAGE HOLDINGS, L.L.C.; FORWARD HOLDINGS, L.L.C.,

        Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff Psara Energy Limited appeals the district court's January 2019 Order granting a motion to refer to arbitration this suit filed against Defendant-Appellees, Advantage Arrow Shipping, LLC; Advantage Holdings, LLC; Advantage Tankers, LLC; and Forward Holdings, LLC, (collectively, "the Advantage Defendants" or "Advantage"). We DISMISS this appeal for lack of appellate jurisdiction because the district court's Order, which administratively closed the case, is not a final, appealable order either as we have construed the Federal Arbitration Act ("FAA") or under any other theory.

## BACKGROUND

In 2010, Psara entered into a bareboat charter agreement with Defendant Space Shipping, Ltd. ("Space Shipping") to charter the vessel CV STEALTH.[1] Through an amendment to the charter party later that year, Geden Holdings, Ltd. ("Geden") was made the "performance guarantor" of Space Shipping.

In 2014, the CV STEALTH was detained in Venezuela for more than three years by prosecutorial authorities, and Space Shipping failed to return the ship by the latest contractual redelivery date of June 22, 2015. When the CV STEALTH was finally released from Venezuela, it was out-of-class and so

---

[1] The Bareboat Charter agreement also included a provision that:

> (a) This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of the Clause.

The charter party refers "any dispute arising out of or in connection with the Contract" to arbitration in London, England.

extensively damaged due to neglect that it was incapable of sailing and in need of extensive repairs. Space Shipping towed the CV STEALTH to Trinidad where Psara took possession on March 24, 2018. She was sold as scrap. As a result of the damage, Psara initiated a London maritime arbitration claim against Space Shipping and Geden for damages equivalent to the repaired market value of the ship ($18,000,000.00) and amounts for unpaid charter hire, legal costs, interest, and other costs (an additional $1,860,063.80).

Shortly after the contractual redelivery date but before it commenced arbitration, Psara discovered that Geden Holdings had transferred its entire fleet of vessels to other corporate entities (including the Advantage Defendants). Based on the transfer of the fleet, Psara brought the instant suit in April 2018 against Space Shipping, Geden, and the Advantage Defendants alleging breach of contract, fraudulent transfer and corporate succession theories. In conjunction with its lawsuit, Psara sought and obtained a maritime attachment against the ADVANTAGE ARROW, one of the defendants' vessels found within the Eastern District of Texas. Psara obtained similar relief against the MV ADVANTAGE START in the Eastern District of Louisiana. The Louisiana case was transferred to the Eastern District of Texas under 28 U.S.C. § 1404(a) and consolidated with Psara's case pending there.

The Advantage Defendants' motions under Supplemental Admiralty Rule E(4)(f) to vacate the respective attachments were rejected, but the vessels were released upon the posting of substitute security.[2] In the case of the ADVANTAGE ARROW, the district court's order stated, "[t]he court will address the 'Motion to Vacate Attachment' at a later time."

---

[2] The ADVANTAGE ARROW was secured for the amount of $4,000,000 and the ADVANTAGE START was secured for $800,000. After transfer, the total amount of substitute security for the vessels stands at $4,800,000.

No. 19-40071

In June 2018, the Advantage Defendants moved for referral to arbitration in London on the basis that Psara's claims all arise from the charter party between Psara and Space Shipping, which contains a valid and enforceable arbitration clause. The Advantage Defendants contended that they should be included in Psara's ongoing arbitration proceedings against Space Shipping because Psara claims that the Advantage Defendants are a successor to Space Shipping and therefore liable for Psara's losses under the charter party. As Psara points out, however, the Advantage Defendants are non-signatories to the charter party and should not normally benefit from its arbitration provision. *Al Rushaid v. Nat'l Oilwell Varco, Inc.,* 814 F.3d 300, 305 (5th Cir. 2016) (describing limited theories of nonsignatory participation in arbitrations).

The district court granted the motion to refer to arbitration. The court found that the Advantage Defendants invoked the intertwined claims rule because without the underlying charter party and performance guarantee, Psara has no claims against the Advantage Defendants. Moreover, Psara cannot be permitted to sue the Advantage Defendants for contractual claims while insisting they are not entitled to the benefit of the arbitration clause in those underlying agreements. The district court further held that, while the dispute is being arbitrated, the Rule B attachments (for the vessels ARROW and START) remain in effect with posted security for Psara's potential arbitral award pursuant to the district court's jurisdiction under Sections 8 and 207 of the FAA. The district court then "administratively closed" the case, denied pending motions as moot, and retained jurisdiction to enforce any arbitration award.

Months later, the district court denied Psara's motion to stay the referral to arbitration pending appeal, and this court denied an identical motion. Psara timely appealed.

## DISCUSSION

A preliminary, and here dispositive, issue is whether the district court's order referring the suit to arbitration and administratively closing the case constitutes an appealable order. "If not, then this Court lacks jurisdiction and the appeal should be dismissed, which would pretermit any consideration of the merits of [the Appellant's] appeal." *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 165 (5th Cir. 2004).

The Advantage Defendants question our appellate jurisdiction, and Psara responds that either the district court's order compelling arbitration is final and appealable under 9 U.S.C. § 16(a)(3), or it is appeable pursuant to the collateral order doctrine. We discuss each theory in turn.

Psara's first theory turns on whether the district court's order is final. Section 16 of the FAA "governs appellate review of arbitration orders." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003). The statute accomplishes Congress's intent to favor arbitration "by authorizing immediate appeals from orders disfavoring arbitration and forbidding immediate appeals from orders favoring arbitration." *S. La. Cement, Inc. v. Van Aalst Bulk Handling, B.V.*, 383 F.3d 297, 300 (5th Cir. 2004). Thus, 9 U.S.C. § 16(a)(3) permits appeals taken from "a final decision with respect to an arbitration that is subject to this title," but § 16(b)(3) explicitly denies appellate jurisdiction over *nonfinal* orders "compelling arbitration under section 206." *See also S. La. Cement*, 383 F.3d at 300.

The Supreme Court has explained that a "final decision with respect to an arbitration" means "a decision that ends the litigation on the merits and

leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). In *Green Tree*, because the district court "ordered the parties to proceed to arbitration, and dismissed all the claims before it," the order constituted a final, appealable decision. *Id.* at 89. Crucially, the Supreme Court went on to state that "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not be appealable." *Id.* at 87 n.2; *see also Mire*, 389 F.3d at 165.

Acknowledging the dichotomy expressed in *Green Tree*, this Circuit has repeatedly held that "[a]n arbitration order entering a stay, as opposed to a dismissal, is not an appealable final order." *S. La. Cement*, 383 F.3d at 300; *see also Apache*, 330 F.3d at 309 ("An arbitration order entering a stay, as opposed to a dismissal, is not an appealable final order."); *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 697, 701–02 (5th Cir.2003) (dismissing for lack of appellate jurisdiction because the stay pending arbitration was not "a final judgment by the district court"). Nearly on point with this case, the court held in *Mire* that administratively closing a case "is the functional equivalent of a stay" and "thus not an appealable order under the FAA." *Mire,* 389 F.3d at 167. This is because the entry of a stay, as opposed to a dismissal, indicates that "the district court perceives that it might have more to do than execute the judgement once arbitration has been completed." *Apache,* 330 F.3d at 309 (quoting *ATAC Corp. v. Arthur Treacher's Inc.,* 280 F.3d 1091, 1099 (6th Cir. 2002)).

In contrast, "[a] district court order that compels arbitration and dismisses or closes a case outright possesses finality and confers jurisdiction on this court." *Sw. Elec. Power Co. v. Certain Underwriters at Lloyds of London*, 772 F.3d 384, 387 (5th Cir. 2014); *see also Am. Heritage Life Ins. Co.*

*v. Orr*, 294 F.3d 702, 707–08 (5th Cir. 2002) (holding an order final and appealable that "closed" the case; the only claim before the court was one seeking to compel arbitration, hence there was "no practical distinction between 'dismiss' and 'close' for the purposes of [that] appeal").

The district court here adopted the magistrate judge's report and recommendation ("R&R"), "granting the [referral to arbitration], directing the parties to arbitration, and staying the case pending resolution of the arbitrable issues" in London. The district court then ordered the case "administratively closed" and retained jurisdiction to enforce any arbitration award. By adopting the R&R, the district court stayed the case, and by ordering administrative closure, it provided itself an additional safe harbor from the district courts' periodic reporting conditions. Moreover, this case commenced not as a suit simply to compel arbitration pursuant to the FAA, but to obtain relief against the defendants for, *inter alia*, breach of the charter party agreements and fraudulent transfer of assets. It is not inconceivable in such a situation that, although the defendants prevailed on a claim seeking arbitration, some aspects of the case might not be resolved in the arbitral forum, and the district court would have to reopen the case for purposes other than to enforce the arbitral award. The court's order aligns with "our case law [that] has developed clear distinction between final orders dismissing cases after compelling arbitration and interlocutory orders staying and administratively closing cases pending arbitration." *Sw. Electric*, 772 F.3d at 387. "The effect of an administrative closure is no different from a simple stay," which district courts often use "to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending)." *Mire*, 389 F.3d at 167. The court's order staying and

administratively closing the case pending arbitration was nonfinal for purposes of appellate review.

As an alternative ground for jurisdiction, Psara does not argue that its appeal satisfies the standards of 28 U.S.C. § 1292(b), which renders only some interlocutory orders appealable. Instead, Psara contends that the collateral order doctrine, an exception to the statute, authorizes appellate jurisdiction over interlocutory appeals from orders compelling arbitration. We rejected this argument in *Al Rushaid*, following the Supreme Court's admonition that, as a "narrow exception" to finality provisions, the collateral order doctrine should "never be allowed to swallow the general rule." *Dig. Equip. Corp.*, 511 U.S. at 868. Plainly, "[s]ection 16 provides a specific framework for determining whether and when an appeal is proper, and we will not interfere with the statutory design." *Al Rushaid*, 814 F.3d at 304. Every other circuit has reached the same outcome on this issue. *See Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1022 (9th Cir. 2014); *ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1211 (11th Cir. 2007); *ATAC Corp.*, 280 F.3d at 1101–02.

Against this conclusion, Psara draws our attention to two cases, *Atl. Fertilizer & Chem. Corp. v. Italmare, S.p.A. of Ravenna*, 117 F.3d 266 (5th Cir. 1997) and *Heidmar, Inc. v. Anomina Ravennate di Armamento Sp.A*, 132 F.3d 264 (5th Cir. 1998). Neither case, however, applied the collateral order doctrine to authorize appellate review of interlocutory orders compelling arbitration, nor did either case consider the interaction between the clear statutory directive in FAA § 16(b) and the collateral order doctrine. *Atlantic Fertilizer* dealt with the district court's summary denial of a request for counter-security in light of a pending arbitration. 117 F.3d at 269. In *Heidmar,* the appellate court reviewed, pursuant to the collateral order

doctrine, an order vacating attachment pending arbitration because conducting appellate review of the order at a later date "would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." 132 F.3d at 267 (quoting *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950)). But in this case, Psara has the security it sought because "the Rule B attachment still remains in effect in this court and applies as valid security for the claim," and the district court held than any arbitral award "could come from the Rule B attachment."

Finally, we are obliged to consider whether appellate jurisdiction exists over the order compelling arbitration under 28 U.S.C. § 1292(a)(3), which confers jurisdiction over "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." We hold this avenue is also closed to Psara.

In reaching this conclusion, we adopt the reasoning provided in dicta from a previous unpublished decision, *Bordelon Marine, L.L.C. v. Bibby Subsea Rov, L.L.C.*, 685 F. App'x. 330 (5th Cir. 2017). In *Bordelon*, this court considered whether to exercise jurisdiction over the district court's denial of the appellant's motion to re-open to enforce the method of selecting arbitrators. The court held that Appellant waived his argument under § 1292(a)(3) because it was raised for the first time at oral argument. *Id.* at 335. Nevertheless, the court explained in a footnote that the appellant's argument was unavailing even if it had not been forfeited. *Id.* at 335 n.5. The court reasoned that compelling arbitration and determining the appointment of arbitrators "was not a determination of the rights and liabilities of the parties; rather, it merely settled 'how and where the rights and liabilities would be determined.'" *Id.*

(quoting *In re Ingram Towing Co.*, 59 F.3d 513, 517 (5th Cir. 1995)). We agree with that reasoning and find it equally applicable here.

This holding is consistent with our precedent limiting the applicability of § 1292(a)(3) to orders determining the parties' substantive rights and liabilities. These cases take a strict view of the statute's language about "determining the rights and liabilities." *See, e.g., Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 480–81 (5th Cir. 2014) (finding jurisdiction to review the district court's grant of summary judgment but not jurisdiction to review a Rule 60(b) order); *In re Ingram Towing Co.*, 59 F.3d 513, 517 (5th Cir. 1995) ("Orders which do not determine parties' substantive rights or liabilities . . . are not appealable under section 1292(a)(3) even if those orders have important procedural consequences." (quoting *Francis v. Forest Oil Corp.*, 798 F.2d 147, 150 (5th Cir. 1986))); *In re Patton–Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1983) (holding that the appealed order must "finally determine the rights or liabilities of either party to this dispute"); *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs of Port of New Orleans*, 636 F.3d 161, 165 (5th Cir. 2011).

The district court's order to stay and administratively close Psara's case is not a final order for purposes of FAA § 16(a)(3); the collateral order doctrine does not apply to orders concerning arbitration governed by the FAA; and § 1292(a)(3) is inapplicable to referrals to arbitration in admiralty cases that do not determine a party's substantive rights or liabilities. Consequently, this court lacks jurisdiction to review this appeal and does not reach the merits of Psara's other issues.

## CONCLUSION

For the foregoing reasons, the appeal is **DISMISSED**.



EXHIBIT 2

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**

**BETWEEN:**

**PSARA ENERGY LIMITED**

**Claimants**
**("Owners")**

**- and -**

**(1) ADVANTAGE ARROW SHIPPING LLC**
**(2) ADVANTAGE START SHIPPING LLC**
**(3) ADVANTAGE TANKERS LLC**
**(4) ADVANTAGE HOLDINGS LLC**
**(5) FORWARD HOLDINGS LLC**

**Respondents**
**("Advantage Respondents")**

---

**AWARD**

---

1. By a Charter party dated 23rd February 2010 on an amended Barecon 2001 form ("the Charterparty") , the Claimant Owners, Psara Energy Limited ("Owners") chartered MT "CV Stealth" ("the Vessel") to Geden Holdings Limited ("Geden Holdings") or its guaranteed nominee.

2. Clause 30 of the Charterparty (the Charterparty Arbitration Clause) headed dispute resolution provided as follows:

   "This Contract shall be governed and construed in accordance with English Law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

3. On 2 June 2010 Geden Holdings nominated Space Shipping Limited ("Charterers") as charterers under the Charterparty.

4. By an Irrevocable Performance Guarantee dated 4th March 2010 Geden Holdings unconditionally and irrevocably guaranteed as primary obligor on first demand the full and timely performance of Space Shipping/Charterers under the Charterparty.

5. The Irrevocable Performance Guaranteed provided:

   "this guarantee shall be governed by and construed in accordance with the laws of England and we submit to the non-exclusive jurisdiction of the English High Court.

6. In 2018, Rule B maritime attachment proceedings were brought in the United States by Owners against the MT ADVANTAGE ARROW and MT ADVANTAGE START and their respective owners, as well as Charterers ("the Advantage Respondents"). These Rule B proceedings were subsequently consolidated before the United States District Court for the Eastern District of Texas. The Advantage Respondents posted security to release the two vessels from attachment. The Advantage Respondents subsequently moved for and obtained an order from Judge Marcia Crone of the United States District Court for the Eastern District of Texas which referred the pending disputes before it to London arbitration ("the Crone Order"). Owners appealed the Crone Order to the United States Court of Appeals for the Fifth Circuit.

7. The undersigned, George Tsimis and Mark Hamsher were appointed by the Owners and Advantage Respondents purportedly under the above Charterparty Arbitration Clause. Owners did so without prejudice to their rights in the pending appeal before the US Fifth Circuit.

8. Following exchange of written Claim, Defence and Reply Submissions, the undersigned George Tsimis and Mark Hamsher ordered the hearing of a preliminary issue as to the applicable law of the issues raised in the written Submissions and appointed the undersigned Mr Luke Parsons QC as Third Arbitrator.

9. The Seat of the arbitration is London, England.

10. In their written submissions/speaking note, the Owners defined the Preliminary Issue as follows:

    "The key issue ("the Issue") in this reference is:

    Are Owners entitled to enforce their claims against Geden Holdings/Charterers under the Guarantee/Charterparty against the Rule B Sums, nominally belonging to the Advantage Respondents, held in the US District Court for the Eastern District of Texas?

    The question on this preliminary issue hearing is what substantive law governs the determination of the Issue, US law as applied in the 5th Circuit or English law?"

11. In their written submissions/speaking note, the Advantage Respondents defined the Preliminary Issue as follows:

"The preliminary issue with which this hearing is concerned is: what law should be applied to determine whether the Advantage Respondents should be treated as Space Shipping Ltd for the purposes of the Charterparty dated 23 February 2010? The candidates are English law (as the Owners contend) or US law, specifically the law of the US 5th circuit (as the Advantage Respondents contend)."

12. An oral hearing took place on 4th October 2019 at the International Dispute Resolution Centre, 70 Fleet Street London, EC4Y 1EU where the parties were represented by Leading Counsel.

13. NOW WE, George Tsimis, Mark Hamsher Luke Parsons QC, and having carefully and conscientiously considered the written and oral submissions addressed to us and finding ourselves in agreement do HEREBY MAKE this Final Award.

14. Whereas:

    1) The Owners have confirmed that they are not bringing any substantive claims against the Advantage Respondent under the Charterparty before us.

    2) The Owners have confirmed that their only claim against the Advantage Respondents or assets nominally belonging to them is to enforce any sums that may be awarded against Geden Holdings under the above Guarantee or against Charterers under the above Charterparty.

    3) It is common ground between the parties that enforcement proceedings fall outside our jurisdiction under the arbitration clause contained in the above Charterparty.

15. WE DECLARE that we have no jurisdiction over the claims made by the Owners in this reference.

16. At the request of the parties we reserve all questions of costs of this reference including any issues relating to our fees and disbursements (amounting to £61,200 including disbursements of £ 2,250).

17. WE FURTHER DECLARE that this Award is FINAL as to the matters determined and we reserve to ourselves the jurisdiction to deal with any other matters outstanding between the parties to this reference. The reasons for this Award are attached to and form part of this Award.

George Tsimis

Mark Hamsher

Luke Parsons QC

22nd November 2019



EXHIBIT 3

## REASONS FOR AND FORMING PART OF THE FINAL AWARD

### Introduction

1. It is unusual that the hearing of a preliminary issue as to the applicable law of a dispute should end with both parties agreeing that the Tribunal issue a declaration that the Tribunal has no jurisdiction over the Claimant's claims in the reference, although they did not agree the wording of the declaration.

2. That is what has occurred in this reference following an oral hearing on 4th October 2019, in which both sides were represented by Leading Counsel.

### The factual background

3. By a Charter party dated 23rd February 2010 on an amended Barecon 2001 form ("the Charterparty") , the Claimant Owners, Psara Energy Limited ("Owners") chartered MT "CV Stealth" ("the Vessel") to Geden Holdings Limited ("Geden Holdings") or its guaranteed nominee.

4. Clause 30 of the Charterparty headed dispute resolution provided as follows:

   "This Contract shall be governed and construed in accordance with English Law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or enactment thereof save to the extent necessary to give effect to the provisions of this Clause".

5. On 2 June 2010 Geden Holdings nominated Space Shipping Limited ("Charterers") as charterers under the Charterparty.

6. The first and second Respondents are the owners of the "ADVANTAGE ARROW" and the "ADVANTAGE START" which were attached pursuant to Rule B proceedings in the states of Texas and Louisiana. The other Respondents are or were associated with the ownership of the "ADVANTAGE ARROW" and "ADVANTAGE START". They are hereinafter referred to collectively as the "Advantage Respondents".

7. By an Irrevocable Performance Guarantee dated 4th March 2010 Geden Holdings unconditionally and irrevocably guaranteed as primary obligor on first demand the full and timely performance of Charterers under the Charterparty.

8. The Irrevocable Performance Guaranteed provided:

   "this guarantee shall be governed by and construed in accordance with the laws of England and we submit to the non-exclusive jurisdiction of the English High Court".

9. For a number of years, Owners and Charterers have been arbitrating their disputes under or in connection with the Charterparty arising out of the Vessel's prolonged detention in Venezuela.

10. On 29th March 2018, Owners introduced new claims against Charterers for hire amounting to US$ 233,708.33 and damages of US$ 18 million in respect of the vessel's condition on redelivery from the Charterers.

11. These claims against Charterers are not the subject of these arbitration proceedings. The merits of those claims are before a differently constituted arbitration tribunal.

12. In Rule B maritime attachment proceedings commenced before the United States District Courts in the Eastern District of Texas and in the Eastern District of Louisiana (which were subsequently transferred to the Eastern District of Texas and consolidated with the Eastern District of Texas Rule B proceedings) ("the Rule B proceedings"), Owners attached two vessels MT Advantage Arrow and MT Advantage Start. Those two vessels were in due course released against the payment of security into Court in the sums of US$ 4,000,000 and US$ 800,000.

13. In the Rule B proceedings, Owners set forth alter ego claims against Charterers and named, among others, Charterers and the five Respondents identified in the Award to which these reasons relate ("the Advantage Respondents").

14. In response to a motion by the Advantage Respondents' to refer the ending claims to London arbitration, On 28th November 2018, United States Magistrate Judge Zack Hawthorn, on November 28th 2018, issued a Report and Recommendation which ruled that the Advantage Respondents' motion should be granted and recommended that the Court direct the parties to arbitrate their dispute in London. In so ruling, Magistrate Judge Hawthorn stated:

> "In the instant case, the Advantage [Respondents] point out that [Owners'] complaint alleges claims "against all defendants based on the same facts and circumstances, rooted in the same legal theories and seeking the same form and magnitude of damages. Indeed, the complaint specifically alleges that the Advantage [Respondents] not only share common officers and directors with Geden Holdings, who is a party to the pending arbitration in London and a signatory to the charterparty, but the complaint further alleges that the Advantage [Respondents] even "assumed numerous of the latter's obligations , including long term charter parties. …[Owners] have previously enumerated eleven grounds why the Advantage [Respondents] should be considered as a successor corporation to Geden and by extension [Charterers]. Yet

seemingly in the same breath [Owners] contends that despite this extensive list of reasons to group the defendants under the charterparty for liability purposes, the Advantage [Respondents] cannot compel arbitration under that same charterparty. [Owners'] own contentions about the nature of the relationship among the Advantage [Respondents], Geden Holdings and [Charterers] establishes the "tight relatedness of the parties" in which the Advantage [Respondents] can compel arbitration under the entwined claims estoppel.

Further, [Owners'] claims against the Advantage [Respondents] are intimately founded in and intertwined with the underlying contract obligations. As previously discussed, the premise of [Owners'] claims involve the charterparty between [Owners] and [Charterers] with the addition of Geden Holdings through an addendum. Without the use of the charter party and the performance guarantee as the basis of suit, [Owners] would not have a claim against the Advantage [Respondents]. **Because [Owners are] suing the Advantage Repondents as though [they are] a party to the contract, [the Owners] cannot now claim that the Advantage [Respondents] are not party to other portions of the contract**. Moreover, the enforcement of the charterparty and its arbitration provision should apply to the Advantage [Respondents] because [Owners'] claims intimately intertwine with the underlying charterparty. Therefore, this Court can also direct the parties to arbitration under principles of Texas contract law." (our emphasis added).

15. On 4th January 2000 United States District Judge Marcia Crone adopted Magistrate Judge Hawthorn's Report and recommendation and dismissed Owners' objections, stating that these were largely a restatement of the arguments in Owners' response to the Advantage Respondents' Motion for Referral to Arbitration. Judge Crone did address the Owners' argument that it was suing the Advantage Respondents and their predecessor Geden Holdings under the performance guarantee, which unlike the Charterparty does not contain an arbitration clause. First, Judge Crone noted that as Magistrate Hawthorn stated Owners waived this argument because it was not briefed in their response but raised for the first time at the hearing. Second:

"Even if [Owners] did not waive this argument , it is without merit. By its own terms , the performance guarantee "[is] just available unless and until [Owners] presents a certified copy of the final arbitration award to Geden. [Owners] have not alleged or nor provided any evidence in the record this has taken place. This particularly highlights the importance of staying these proceedings pending the ongoing

arbitration...Lastly, although not entirely clear, it appears that [the Owners are] already involved in arbitration proceedings against Geden, which is not a signatory to the bareboat charterparty, it is signatory to the performance guarantee."

16. By adopting the Report and Recommendation, Judge Crone granted the Advantage Respondents' Motion for Referral to Arbitration, directed the parties to arbitrate their dispute as outlined in the Charterparty, and stayed proceedings before the Eastern District of Texas pending the London arbitration of the parties' disputes. The security posted by the Advantage Respondents also remained in place with the US District Court for the Eastern District of Texas.

17. Owners subsequently appealed this ruling by Judge Crone. (That appeal is currently pending before the United States Court of Appeals for the Fifth Circuit and as of the date of this Award, remains undecided).

18. Thereafter, Owners, in accordance with Judge Crone's ruling, commenced these proceedings against the Advantage Respondents and did so on a without prejudice basis as to its arguments and positions set forth in the appeal to the US Fifth Circuit.

19. In order to understand how the matter developed in these arbitration proceedings, it is necessary to set out the thrust of the parties' respective pleadings in some detail.

20. Owners' Claim Submissions stated that "these claim submissions are served without prejudice to Owners' appeal against the Crone Order pending in the United States Court of Appeals for the Fifth Circuit, Owners' contention that the Rule B Proceedings and its alter ego claims should be determined by the Eastern District Texas Court and its contention that this Tribunal accordingly has no jurisdiction to determine these claims".

21. The relief sought in the Claim Submissions is as follows:

"79. Owners are entitled to and do claim the following declarations:

(i) Declarations that as a matter of US 5th Circuit law:

a) The Advantage Respondents are successors to Geden Holdings for the purpose of successor liability and fraudulent transferees of Geden Holding's assets.

b) Owners are accordingly entitled to enforce their claims under the Guarantee against the Rule B sums.

(ii) A declaration that as a matter of English Law, Owners are entitled to pierce the corporate veil so as to enforce as against the Advantage Respondents claims arising against Geden Holdings under the Guarantee;

4

80. In light of the facts that Owners are entitled to pierce the corporate veil as against the Advantage Respondents as a matter of English law, Owners are further entitled to and do claim the following monetary relief:

(i) US$ 233,708.33 in unpaid hire as a debt and/or damages for breach of the Charterparty ; and

(ii) US$ 18 million for breach of the maintenance obligations and/or by way of indemnification , less the net proceeds of scrappage."

22. When we first read the Claim Submissions without having read the passages in the US proceedings referred to above, two matters immediately struck us as unusual in respect of the claims set out in paragraph 79 of the Claim Submissions set out above relying on the Law of the US 5th Circuit.

23. First, the claims were stated to be against the Advantage Respondents not as successors to Charterer under the Charterparty but as successors to Geden Holdings. This would be in respect of the performance guarantee rather than the Charterparty.

24. Second, the declaration was in relation to **enforcement** of claims, which as appears below, is a matter arising after an arbitration award or judgment is issued and, as matter of English law, not within our jurisdiction.

25. This can be contrasted with the monetary claims set out in paragraph 80, which are said to be claims under the Charterparty, but claimed as a matter of English law against the Advantage Respondents by piercing the corporate veil.

26. The Owners alleged that the Rule B proceedings are ancillary to a contractual claim and are governed by the law of the US 5th Circuit applying US federal maritime conflicts of law principles. Further or in the alternative, the Owners allege: "that Rule B proceedings (and/or any issue concerning what in English Law would be characterised as piercing the corporate veil) are matters of remedy or enforcement and are thus to be governed by the lex fori, which the Claimants allege is the law of the 5th Circuit".

27. It is the distinction between matters of "**remedy**" on the one hand and "**enforcement**" on the other which became the focus of submissions between the parties at the oral hearing on 4th October 2019. The other important linked distinction, which was developed at the oral hearing, is the distinction between seeking an award of, for example, damages **under a charterparty** against a legal entity other than the named or nominated charterer and **enforcing** an award made against a charterer against the assets held by or in the name of a third party.

28. The Claim Submissions set out at some length the underlying claims for hire and alleged breach of the maintenance obligations and the basis of the claims under the law of the 5th circuit. These can be summarised as follows;

1) As against the Advantage Respondents, between around January and May 2015 Geden Holdings and/or its ultimate beneficial owner Mehmet Emin Karamehmet caused Geden Holdings and various of its subsidiaries to transfer 11 crude oil tankers including those vessels subject to the US Rule B proceedings to the Advantage Respondents and their associates;

2) The Advantage Group is and has at all material times been nominally owned and controlled by Mr Karamehmet's daughter Gulsen Nazil Karamehmet Williams and Ali Tugrul Tokgoz, who was also a director of Geden Holdings.

3) It is alleged that those transfers were not bona fide arm's length transactions , but were instead a vehicle by which Mr Karamehmet could retain effective control over those vessels, albeit now in a wrapper designed to evade Geden Holding's creditors. The transfers were allegedly made pursuant to a plan devised in March 2013 by Alix Partners LLP called "Project Hermitage", which had as one of its express intentions the ringfencing of potential sources of disruption, holdout or nuisance (such as arrests or sistership arrests), against the background of aggressive actions by Geden Holdings' creditors.

4) In other words, it is alleged, that Mr Karamehmet sought to immunise the fleet that he (through Geden Holdings) owned against attachment by transferring them into other corporate entities still under his effective control but in different nominal ownership.

5) As a matter of US law, the Advantage Respondents are liable for Geden Holdings obligations on the basis of "successor liability " or as "fraudulent transferee".

6) Or in the alternative , as a matter of English Law , the Owners are entitled to pierce the corporate veil so as to make the Advantage Respondents similarly liable.

29. In its Defence Submissions, the Advantage Respondents (repeating an earlier request) invited the Tribunal to determine the applicable law of the dispute as a preliminary issue. They stated that pending the tribunal's ruling on the applicable law, they would not address the claims under US Law.

30. The thrust of the Advantage Respondents' Submissions can be summarised as follows;

1) Owners and Charters had been arbitrating their claims for many years and a number of final awards have been made. It has been (according to the Advantage Respondents) common ground that English Law is the applicable law.

2) The new claims for hire and damages of US$18 million between Owners and Charterers were referred to a differently constituted tribunal and therefore the Respondents would not address the merits before us.

3) In order to obtain security for the new claims, the Owners arrested two vessels belonging not to Charterers but to the Advantage Respondents.

4) Those vessels were arrested in Texas and Louisiana on the basis that the Advantage Respondents were liable under the subject Charter for the claims against Charterers. It was submitted that under English Law such liability can only exist if the Advantage Respondents are a sham and in reality the alter ego of the Charterers.

5) Because the claims against the Advantage Respondents are said to be claims under or in connection with a Charterparty containing a London Arbitration Clause, the US Court stayed the US proceedings.

6) The only basis for the Owners alleging the applicability of US Law would appear to be the fact that the Owners managed to arrest two Advantage vessels in the United States. But the claims must have pre-existed the arrest. There had to be an applicable law governing claims prior to arrest. After all what would the applicable law in respect of these claims against Advantage Respondents have been if no Advantage vessel had every visited the States? English Law is plainly the applicable law.

7) It is common ground that Space Shipping were nominated as Charterers under the Charterparty and that the Owners have various claims against Charterers. Yet in these proceedings, the Owners seeks an Award against different entities, namely the Advantage Respondents in respect of Charterers' liability (if any)  under the Charterparty.

8) The Tribunal would have no jurisdiction against the Advantage Respondents, unless the Advantage Respondents were in effect the same entity as Charterers. In other words, the Owners  must satisfy the Tribunal that the Advantage Respondents are sham entities. It cannot do so.

9)  Claims under the Guarantee are referable to the High Court. The Tribunal has no jurisdiction in respect of any such claim.

10) The claim in this arbitration is not under Rule B but a claim under the Charterparty to the effect that the Advantage Respondents are liable for the debts under the Charterparty.

11) The claim is not one of "remedy" or "enforcement" but a claim of substantive liability by the Advantage Respondents under or in connection with the Charterparty.

31. The Advantage Respondents also dealt with the alleged underlying facts at some length.

32. In their Reply, Owners asserted that the Advantage Respondents' characterisation of the claim was based on a "false conflation" of :

   1) "Whether or not the Advantage Respondents are in principle answerable for the liabilities of Charterers and/or Geden Holdings incurred under the Charterparty and Guarantee , whatever those liabilities might be found to be (what Owners called "the corporate liability issues"); and

   2) Whether, if so, the Advantage Respondents are in fact liable to Owners pursuant to the Charterparty and the Guarantee respectively, whether for unpaid hire and/or breach of the maintenance and/or redelivery obligations, or otherwise" (what Owners called "the underlying liability issues)".

33. Owners accepted in their Reply Submissions that the underlying liability issues are to be determined in accordance with English Law, pursuant to the express terms of the Charterparty. However, they contended that the corporate liability issue is subject to US law.

34. At the oral hearing, Owners submitted that the reference to the "Advantage Respondents" in the summary of the underlying liability quoted in paragraph 30 (2) above, should read "Space and/or Geden" and subsequently applied to amend the pleading. Owners explanation that this was an error and should have referred to Space and Geden seems more consistent with the remainder of the pleading, though we note that Owners repeated the same error in a message to the Tribunal dated 30th August 2019. Given the way that the argument developed at the oral hearing and in particular the confirmation at the hearing that Owners were not asking us to determine what they called the underlying liability issues, however framed, it is not necessary for us to consider the application to amend the pleadings for the purposes of the matters before us.

35. We can however see how the reference to the Advantage Respondents being liable pursuant to the Charterparty could reasonably lead Charterers to consider that a claim was being made for a remedy under the Charterparty or at the least lead to some confusion as to the nature of the claim being pursued.

36. In August 2019 the Tribunal as then constituted ordered that the issue of the applicable law to govern the claims at issue in these pleadings should be dealt with as a preliminary issue.

**The Hearing of the Preliminary Issue**

37. What emerges from the parties' respective pleadings as summarised above is that the parties had different views as to the nature of the claim which Owners were pursuing against the Advantage Respondents.

38. The Advantage Respondents were treating the claim **as a substantive claim under the charterparty**, whereby the Tribunal, if Owners were correct, would issue a substantive award making them liable **under** the Charterparty.

39. Hence, their reference in their submissions to the fact that the claim against them had to exist prior to and independent from the arrests and the fact that could only be found liable if Owners could establish a sham transaction.

40. Owners on the other hand were suggesting that they were seeking **enforcement** against the Advantage Respondents of an award of liability against Space Shipping or Geden. However as explained above this was confused in their pleadings by the alternative claim under English Law for monetary sums for piercing the corporate veil, by the reference to "remedies" as well as enforcement and by the reference to the Advantage Respondents when describing the underlying liability.

41. The difference between a substantive claim against Y and the enforcement of an Award or Judgment against X against the assets of Y has been discussed by the English Courts in number of cases, including the two cases referred to in paragraphs 55-59 below.

42. This difference in approach was highlighted by the way each party described the preliminary issue in their speaking notes for the hearing on 4th October 2019.

43. Owners summarised the Preliminary Issue as follows:

> "The key issue ("the Issue") in this reference is:
>
> Are Owners entitled to enforce their claims against Geden Holdings/Charterers under the Guarantee/Charterparty against the Rule B Sums,[1] nominally belonging to the Advantage Respondents, held in the US District Court for the Eastern District of Texas?
>
> The question on this preliminary issue hearing is what substantive law governs the determination of the Issue, US law as applied in the 5th Circuit or English law?"

44. The Advantage Respondents put the preliminary issue as follows:

> "The preliminary issue with which this hearing is concerned is: what law should be applied to determine whether the Advantage Respondents should be treated as Space Shipping Ltd for the purposes of the Charterparty dated 23 February 2010? The

---

[1] US$4.8 million

candidates are English law (as the Rs contend) or US law, specifically the law of the US 5th circuit (as C contends)."

45. Owners in their oral submissions argued: (1) the US Court had not considered arbitrability of the issues as a matter of English Law and that the decision was wrong as a matter of US Law and English Law; (2) in any event the US Court did not make any finding as to the applicable law; (3) the Advantage Respondents are not parties to the Contract; (4) the Owners claim is not a contractual claim and clause 30 (a) of the Charterparty only applies to Contractual claims; (5) the Tribunal has a discretion to choose the conflicts of law rules to apply and should choose US Court's conflicts of law rules; (6) English Law Rules also require applying US Conflict of Law Rules.

46. As to the last argument, Owners stated:

"English conflict of laws rules also mandates applying US Federal maritime law. That is because (i) Owners' claim against R concerns *enforcing* Geden's/Charterers' liability to Owners against the Rule B sum held by the US Court and (ii) it is a "*cardinal principle*" that:

"*any question as to enforcement would be dealt with in the courts of the forum in which was found an asset against which enforcement was attempted and determined according to the applicable local law*" (*Vitol SA v Capri Marine* [2010] EWHC 458 (Comm))".

47. They also made clear that the Advantage Respondents were incorporated after the Charterparty was agreed and showed us various certificates of incorporation dated after the Charterparty was concluded. In doing so they explained that their claim was not that the Advantage Respondent were party to the contract on the basis of a sham or piercing the corporate veil, because they were not even in existence at the time that the Charterparty was concluded and that they were not seeking to claim against them under the Charterparty. Instead, they emphasised that their claim was to enforce any liability of Charterers or Geden Holdings against assets nominally held in the name of the Advantage Holdings.

48. It was thus clear, at least by these submissions, if not before, that the claim against the Advantage Respondents was an enforcement claim.

49. The Advantage Respondents in their oral Submissions emphasised that our jurisdiction could only flow from and was circumscribed by the arbitration clause in the Charterparty. This was summarised in their speaking note as follows:

"The starting point to have in mind is that C's claim against the Rs is under the Charterparty dated 23 February 2010. That is, and can be, the only claim over which this Tribunal (appointed pursuant to the arbitration agreement in the Charterparty) has jurisdiction."

50. Against that background, they submitted as set out in their speaking note that:

1) By Clause 30(a) of the Charterparty, the parties agreed a standard law and arbitration provision, which provided, in relevant part, that:

   *This Contract **shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract** shall be referred to arbitration in London in accordance with the Arbitration Act 1996 …*" (emphasis added);

2) That the express agreement of English law as the *lex causae* or governing law is, or should be, the end of the preliminary issue. The parties have chosen English law as the substantive law of the dispute: that choice must be respected;

3) The Tribunal should here have in mind s.46 of the Arbitration Act 1996:

   "*46.    Rules applicable to substance of dispute.*

   *(1)    **The arbitral tribunal shall decide the dispute -***

   *(a)    **in accordance with the law chosen by the parties as applicable to the substance of the dispute**, or*

   *(b)    if the parties so agree, in accordance with such other considerations as are agreed by them or determined by the tribunal.*

   *(2)    For this purpose, **the choice of the laws of a country shall be understood to refer to the substantive laws of that country and not its conflict of laws rules**.*

   *(3)    If or to the extent that there is no such choice or agreement, the tribunal shall apply the law determined by the conflict of laws rules which it considers applicable.*" (emphasis added);

4) The parties have chosen English law as the law "*applicable to the substance of the dispute*" (s.46(1)(a)). That choice must be understood as a reference to English substantive law and not English conflicts principles (s.46(2)). C's reliance on English (or US) conflicts principles is, therefore, misplaced.

51. The Advantage Respondents alleged that Owners had confused or conflated the substantive claim and enforcement. They put the position as follows;

1) "Owners seeks to draw a distinction between what it calls the Underlying Liability Issues[2] and the Corporate Liability Issue[3] - and e.g. the Gaitas message of 30 August 2019. In so doing, Owners accepts that the former are governed by English law but seeks to argue that the latter should be governed by US law.

2) This is a false distinction. Both the Underlying Liability Issues and the Corporate Liability Issue are part and parcel of the substantive claim against the Advantage Respondents. The Final Award that the Tribunal is being asked to make by Owners is an award for hire and damages against the Advantage Respondents. In order to do that, as part of determining the substantive claim, it will need to consider both the Underlying Liability Issues and the Corporate Liability Issue. And, in doing so, the Tribunal is obliged to apply the parties' chosen law - English law.

3) Owners' response to this is to say that, whilst the Underlying Liability Issues are part of the substantive claim, the Corporate Liability Issue is a matter of "*remedy or enforcement*"[4] and as a result, it was said, subject to a different law - the *lex fori* through a process of applying English conflicts of law principles.

4) A few points might be made here:

   a) **First**, at the risk of repetition, this distinction between the Underlying Liability Issues and the Corporate Liability Issue does not exist or, at least, is meaningless in circumstances where the Owners are inviting the Tribunal, as a matter of its substantive decision, to hold that the Advantage Respondents are liable for the alleged hire and damages. They all form part of the substantive claim.

   b) **Second**, whilst the Tribunal has jurisdiction to deal with "*remedy*" in respect of the substantive claim - i.e. damages, injunctive relief, declaratory relief etc. - it does not have jurisdiction to deal with "*enforcement*".

5) In relation to "*remedy*" in the context of the substantive claims, the Tribunal must apply the chosen substantive law, i.e. English law.

6) As for "*enforcement*", that is not a matter for the Tribunal. It only arises if and after the Tribunal were to make an award in Owners' favour, at which point *enforcement* of

---

[2] Underlying Liability Issues = whether hire and/or damages are due under the Charterparty.
[3] Corporate Liability Issue = whether hire and damages are due from the Rs, instead of or in addition to the actual nominated charterer, Space Shipping Ltd.
[4] Claim Submissions §67.

that award would be a matter for the court of whichever country Owners were seeking to enforce in. District Judge Crone expressly retained jurisdiction to enforce any eventual arbitral award. Thus, to the extent that Owners' case is that its US law arguments are a matter of "*enforcement*", they are not a matter for this Tribunal."

52. As set out above, the Advantage Respondents' position was that while matters of remedy (damages , injunctive relief, declaratory relief etc.) fall within our jurisdiction, matters of enforcement do not.

53. Following the Advantage Respondents' oral submissions, we gave the Owners some time to consider the impact of the Advantage Respondents' contention that questions of enforcement are outside our Jurisdiction given that the Owners' preliminary issue referred to whether Owners are entitled to **enforce** their claim against Geden Holdings and Charterers under the Guarantee and Charterparty against assets nominally held by the Advantage Respondents.

54. In their oral reply, the Owners confirmed that the only claim that they were seeking to advance was to **enforce** their claims against Geden Holdings and Charterers under the Guarantee and Charterparty against the Rule B sums nominally belonging to the Respondents held in the US District Court for the Eastern District of Texas. Notwithstanding the apparent terms of paragraph 80 of the Claim Submissions, they confirmed that they were not pursuing a substantive claim under the Charterparty against the Advantage Respondents or contending that the Advantage Respondents were party to the Charterparty.

55. They agreed that an arbitration Tribunal seated in England does not have jurisdiction over matters of enforcement and that it would be appropriate for the Tribunal to issue a declaration that they did not have jurisdiction over such proceedings. They also confirmed in their oral reply that they did not wish to rely on any alternative arguments before us.

56. Both parties agreed that the arbitration clause itself is subject to English Law and therefore it is hardly surprising that both parties should agree that the Tribunal does not have jurisdiction over matters of enforcement as a matter of English Law, which was not a matter dealt with before the US Courts.

57. The position under English Law is clear from the decisions of Mr Justice Tomlinson in *Vitol SA v Capri Marine & Others* [2010] EWHC 458 (Comm) and Mr Justice Burton in *Brave Bulk Transport Limited v Spot On Shipping Limited* [2009] 2 Lloyd's Rep 115.

58. In *Vitol SA v Capri Marine & Others*, Vitol sought to enforce a Judgement of the English Court against Capri Marine SA by commencing Rule B attachment procedures against other parties (among other Sparticus Navigation Corporation and Primrose Shipping Co Ltd) in Baltimore, Maryland on the basis that the assets of those other parties should be treated in common with those of Capri Marine SA and thus available for execution of judgement against Capri Marine on the basis that the corporate veil can be pierced in cases of fraud or on occasion (albeit less readily than in a case of fraud) when an individual so conducts his business as to ignore corporate separation.

59. Capri Marine SA sought an anti-suit injunction on the grounds that the Charterparty contained a Law and Litigation Clause providing that "the Charter shall be construed and the relations between the parties determined in accordance with the Laws of England. Any dispute arising out of or in connection with this Charter ...shall be subject to the jurisdiction of the English High Court".

60. Mr Justice Tomlinson (as he then was) rejected the application for an anti-suit injunction on the basis that the claim for enforcement fell outside the terms of the Law and Litigation Clause.

61. He explained the position as follows:

> 33. "...The rights and obligations which were once governed by the charter have merged into the judgment. Vitol and Capri would have known that any judgment which the one obtained against the other was unlikely to be capable of enforcement in England, in which neither of them had a corporate presence. It is most unlikely that they intended that matters concerning the enforceability of any judgment obtained the one against the other should be governed by the laws of England or be subject to the exclusive jurisdiction of the English court. They would rather have expected that any question as to enforcement would be dealt with in the courts of the forum in which was found an asset against which enforcement was attempted and determined according to the applicable local law. See generally Dicey, Morris and Collins, The Conflict of Laws, 14th Edition, paragraph 7-008. I agree with [Counsel] for Vitol that this cardinal principle underpins the observations to be found in a number of the English cases and underpins also the Brussels Convention and Regulation and the European jurisprudence.

> 34. It follows that I regard Capri's reliance on the Law and Litigation clause as misplaced. I am comforted to find that this is precisely the conclusion to which Burton J came in *Brave Bulk Transport Ltd v. Spot On Shipping Ltd* [2009] 2 Lloyd's Rep 115. That was a case concerned with a clause conferring exclusive jurisdiction upon this court "with respect to any suit action or proceedings relating to this Agreement". At page 122 Burton J said this:

>> "... I conclude that the attempt by the respondent in the light of an unsatisfied judgment to recover the judgment debt in proceedings against another party,

based on the alter ego doctrine as understood in New York law, is not a claim which falls within the jurisdiction clause in the FFA. It does not <u>relate</u> to the FFA, however broadly construed (*Fiona Trust and Holding Corporation v. Privalov* [2008] 1 Lloyd's Rep 254.""

62. It is clear to us that Owners are advancing their claim on a similar basis. They are not advancing a claim that the Advantage Respondents are parties to the Charterparty. They were incorporated after the Charterparty was concluded. Rather, the assertion is that the Owners are entitled to **enforce** their claims against Charterers under the Charterparty or Geden Holdings under the Guarantee against assets nominally belonging to the Advantage Respondents. The merits of those underlying claims against Charterers and Geden Holdings are not before us.

63. Since it is common ground that claims of enforcement are outside our Jurisdiction and since the Owners had made clear that the only claims being advanced against the Advantage Respondents are for enforcement, the parties agreed at the end of the oral hearing that we should issue a declaration that we had no jurisdiction over the claims made by the Owners against the Advantage Respondents in this reference.

64. At the end of the oral hearing we gave Counsel for the parties 7 days to agree the wording of an appropriate declaration. They were unable to do so.

65. Accordingly, in circumstances where:

   1) Owners have confirmed that they are not bringing any substantive claims against the Advantage Respondents under the Charterparty before us;

   2) Owners have confirmed that their only claim against the Advantage Respondents or assets nominally belonging to them is to enforce any sums that may be awarded against Geden Holdings under the Guarantee or against Charterers under the Charterparty;

   3) It is common ground between the parties that enforcement proceedings fall outside our jurisdiction under the arbitration clause contained in the Charterparty.

   We therefore declare that we have no jurisdiction over the claims made by the Owners in this reference.

66. Both parties asked us to reserve any question of costs, until after publication of our Award.



EXHIBIT 4

| | |
|---|---|
| **From:** | Luke Parsons QC <Luke.Parsons@quadrantchambers.com> |
| **Sent:** | Thursday, January 09, 2020 7:53 AM |
| **To:** | George A. Gaitas |
| **Cc:** | Mark Hamsher; gtsimis@gjtmarine.com; Mike Lax |
| **Subject:** | Re: ADVANTAGE START / ADVANTAGE ARROW / CV STEALTH - AWARD |

Dear Colleagues,

Thank you to Mr Gaitas for the e mail below.

Please could the Advantage Respondents indicate whether they are content ( with all rights reserved) for the Tribunal to make the requested amendment or whether they have any objection.

We would also be grateful for an indication as to when the Advantage Respondents will be in a position to make further submissions on costs.

Regards,

Luke Parsons QC
For the Tribunal.

On 8 Jan 2020, at 18:43, George A. Gaitas <gaitas@gkclaw.com> wrote:

External Email

Dear Sirs

We thank the Tribunal for the Award dated 22 November 2019 and accompanying reasons.

It has come to our attention that there is a small error in paragraph 11 of the Award which states as follows:

"*In their written submissions/speaking note, the Advantage Respondents defined the Preliminary Issue as follows:*

"*The preliminary issue with which this hearing is concerned is: what law should be applied to determine whether the Advantage Respondents should be treated as Space Shipping Ltd for the purposes of the Charterparty dated 23 February 2010? The candidates are English law (as the Owners contend) or US law, specifically the law of the US 5th circuit (as the Advantage Respondents contend).*"

The underlined words above are the wrong way round, as it was the Advantage Respondents that contended that English law should be applied, and Owners who argued for US law. Please also refer to paragraph 1 of the Advantage Respondents' skeleton attached which is also correctly referred to in paragraph 44 of the Reasons.

We would therefore be grateful if the Tribunal could please amend the wording of the Award accordingly and provide corrected versions.  Please can we be provided with original versions of the corrected Award so that we can present them to the US Court.

We look forward to hearing from the Tribunal.

Best regards

**George A. Gaïtas**

<image001.png>

**1908 N. Memorial Way**
**Houston, Texas 77007**
**Tel: +1-281-501-1800**
**Mobile: +1-612-810-8675**
**GR: +30 694-612-1006**
**Fax: +1-832-962-8178**
**E-mail:** gaitas@gkclaw.com
**www.theshippinglawyers.com**

<Advantage Skeleton v2 (30 9 19).pdf>



EXHIBIT 5

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* Arbitration Act 1996 is up to date with all changes known to be in force on or before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)



# Arbitration Act 1996

## 1996 CHAPTER 23

An Act to restate and improve the law relating to arbitration pursuant to an arbitration agreement; to make other provision relating to arbitration and arbitration awards; and for connected purposes. [17th June 1996]

Be it enacted by the Queen's most Excellent Majesty, by and with the advice and consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the authority of the same, as follows:—

---

**Annotations:**

**Extent Information**

E1    This Act extends to England, Wales and Northern Ireland; for exceptions see s.108

**Modifications etc. (not altering text)**

C1    Act modified (11.11.1999) by 1999 c. 31, **s. 8(1)(2)** (with application as mentioned in s. 10(2)(3))

C2    Act excluded (31.1.1997) by 1966 c. 41, **s. 3** (as substituted by 1996 c. 23, s. 107(1), **Sch. 3 para. 24** (with s. 81(2)); S.I. 1996/3146, art. 3 (with transitional provisions in art. 4, **Sch. 2**)

Act excluded (1.8.1998) by 1992 c. 52, **s. 212A(6)** (as inserted (1.8.1998) by 1998 c. 8, **s. 7**; S.I. 1998/1658, art. 2(1), **Sch. 1**

Act excluded (N.I.) (1.3.1999) by S.I. 1998/3162 (N.I. 21), **art. 89(6)**; S.R. 1999/81, **art. 3**

Act excluded (31.3.2002) by The Dairy Produce Quotas Regulations 2002 (S.I. 2002/457), regs. 2, 9(b), 10(1)(b)(4)(b), 11(2), 33(5)(b)(iii), **Sch. 1 para. 34**

Act excluded (31.3.2002) by The Dairy Produce Quotas (Wales) Regulations 2002 (S.I. 2002/897), regs. 2, 9(b), 10(1)(b)(4)(b), 11(2), 33(5)(b)(iii), **Sch. 1 para. 34**

C3    Power to apply conferred (11.9.1996 for certain purposes and otherwise 1.5.1998) by 1996 c. 53, **s. 108(6)**; S.I. 1996/2352, **art. 2(2)**; S. I. 1998/650, **art. 2**

C4    Act applied (E.) (4.7.2002) by Vehicular Access Across Common and Other Land (England) Regulations 2002 (S.I. 2002/1711), regs. 1, **12(3)(b)**

C5    Act applied (W.) (9.2.2004) by The Vehicular Access Across Common and Other Land (Wales) Regulations 2004 (S.I. 2004/248), regs. 1, **12(3)(b)**

C6    Act excluded (31.3.2005) by The Dairy Produce Quotas Regulations 2005 (S.I. 2005/465), regs. 10(2), 11, 12(3), 39(4), **Sch. 1 para. 34**

*Arbitration Act 1996 (c. 23)*
*Part I – Arbitration pursuant to an arbitration agreement*
*Document Generated: 2019-04-15*

15

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: Arbitration Act 1996 is up to date with all changes known to be in force on or*
*before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have*
*been made appear in the content and are referenced with annotations. (See end of Document for details)*

**29      Immunity of arbitrator.**

(1) An arbitrator is not liable for anything done or omitted in the discharge or purported discharge of his functions as arbitrator unless the act or omission is shown to have been in bad faith.

(2) Subsection (1) applies to an employee or agent of an arbitrator as it applies to the arbitrator himself.

(3) This section does not affect any liability incurred by an arbitrator by reason of his resigning (but see section 25).

*Jurisdiction of the arbitral tribunal*

**30      Competence of tribunal to rule on its own jurisdiction.**

(1) Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to—

(a)   whether there is a valid arbitration agreement,

(b)   whether the tribunal is properly constituted, and

(c)   what matters have been submitted to arbitration in accordance with the arbitration agreement.

(2) Any such ruling may be challenged by any available arbitral process of appeal or review or in accordance with the provisions of this Part.

**31      Objection to substantive jurisdiction of tribunal.**

(1) An objection that the arbitral tribunal lacks substantive jurisdiction at the outset of the proceedings must be raised by a party not later than the time he takes the first step in the proceedings to contest the merits of any matter in relation to which he challenges the tribunal's jurisdiction.

A party is not precluded from raising such an objection by the fact that he has appointed or participated in the appointment of an arbitrator.

(2) Any objection during the course of the arbitral proceedings that the arbitral tribunal is exceeding its substantive jurisdiction must be made as soon as possible after the matter alleged to be beyond its jurisdiction is raised.

(3) The arbitral tribunal may admit an objection later than the time specified in subsection (1) or (2) if it considers the delay justified.

(4) Where an objection is duly taken to the tribunal's substantive jurisdiction and the tribunal has power to rule on its own jurisdiction, it may—

(a)   rule on the matter in an award as to jurisdiction, or

(b)   deal with the objection in its award on the merits.

If the parties agree which of these courses the tribunal should take, the tribunal shall proceed accordingly.

(5) The tribunal may in any case, and shall if the parties so agree, stay proceedings whilst an application is made to the court under section 32 (determination of preliminary point of jurisdiction).

*Arbitration Act 1996 (c. 23)*
*Part I – Arbitration pursuant to an arbitration agreement*
*Document Generated: 2019-04-15*

31

***Status:*** *This version of this Act contains provisions that are prospective.*
***Changes to legislation:*** *Arbitration Act 1996 is up to date with all changes known to be in force on or before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

(2) Where leave is so given, judgment may be entered in terms of the award.

(3) Leave to enforce an award shall not be given where, or to the extent that, the person against whom it is sought to be enforced shows that the tribunal lacked substantive jurisdiction to make the award.

The right to raise such an objection may have been lost (see section 73).

(4) Nothing in this section affects the recognition or enforcement of an award under any other enactment or rule of law, in particular under Part II of the [M5]Arbitration Act 1950 (enforcement of awards under Geneva Convention) or the provisions of Part III of this Act relating to the recognition and enforcement of awards under the New York Convention or by an action on the award.

---

**Annotations:**

**Modifications etc. (not altering text)**

C76　S. 66 applied (with modifications) (E.W.) (21.5.2001) by S.I. 2001/1185, **arts. 2,** 3 Sch. para. 159(1) (which amending S.I. was revoked (6.4.2004) by S.I. 2004/753, **art. 3** (subject to art. 8))

C77　S. 66 applied (with modifications) (E.W.) (6.4.2003) by The ACAS (Flexible Working) Arbitration Scheme (England and Wales) Order 2003 (S.I. 2003/694), art. 2, **Sch. para. 111** (which amending S.I. was revoked (1.10.2004) by S.I. 2004/2333, art. 3 (subject to art. 6))

C78　S. 66 applied (with modifications) (E.W.) (6.4.2004) by The ACAS Arbitration Scheme (Great Britain) Order 2004 (S.I. 2004/753), art. 1, **Sch. para. 183EW**

C79　S. 66 applied (with modifications) (E.W.) (1.10.2004) by The ACAS (Flexible Working) Arbitration Scheme (Great Britain) Order 2004 (S.I. 2004/2333), art. 4, **Sch. para. 135EW** (with art. 6)

C80　S. 66 applied (with modifications) (N.I.) (21.5.2006) by The Labour Relations Agency (Flexible Working) Arbitration Scheme Order (Northern Ireland) 2006 (S.R. 2006/206), arts. 2, 3, **Sch. para. 111**

C81　S. 66 applied (with modifications) (N.I.) (27.9.2012) by The Labour Relations Agency Arbitration Scheme Order (Northern Ireland) 2012 (S.R. 2012/301), art. 1, **Sch. para. 108**

**Marginal Citations**

M5　1950 c. 27.

---

## 67　Challenging the award: substantive jurisdiction.

(1) A party to arbitral proceedings may (upon notice to the other parties and to the tribunal) apply to the court—

    (a)　challenging any award of the arbitral tribunal as to its substantive jurisdiction; or

    (b)　for an order declaring an award made by the tribunal on the merits to be of no effect, in whole or in part, because the tribunal did not have substantive jurisdiction.

A party may lose the right to object (see section 73) and the right to apply is subject to the restrictions in section 70(2) and (3).

(2) The arbitral tribunal may continue the arbitral proceedings and make a further award while an application to the court under this section is pending in relation to an award as to jurisdiction.

32

*Arbitration Act 1996 (c. 23)*
*Part I – Arbitration pursuant to an arbitration agreement*
*Document Generated: 2019-04-15*

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** Arbitration Act 1996 is up to date with all changes known to be in force on or
before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have
been made appear in the content and are referenced with annotations. (See end of Document for details)

(3) On an application under this section challenging an award of the arbitral tribunal as to its substantive jurisdiction, the court may by order—

    (a)   confirm the award,

    (b)   vary the award, or

    (c)   set aside the award in whole or in part.

(4) The leave of the court is required for any appeal from a decision of the court under this section.

---

**Annotations:**

**Modifications etc. (not altering text)**

**C82**  S. 67 applied (with modifications) (E.W.) (21.5.2001) by S.I. 2001/1185, arts. 2, 3, **Sch. para. 162(1)** (which amending S.I. was revoked (6.4.2004) by S.I. 2004/753, **art. 3** (subject to art. 8))

**C83**  S. 67 applied (with modifications) (E.W.) (6.4.2003) by The ACAS (Flexible Working) Arbitration Scheme (England and Wales) Order 2003 (S.I. 2003/694), art. 2, **Sch. para. 113** (which amending S.I. was revoked (1.10.2004) by S.I. 2004/2333, art. 3 (subject to art. 6))

**C84**  S. 67 applied (with modificataions) (E.W.) (6.4.2004) by The ACAS Arbitration Scheme (Great Britain) Order 2004 (S.I. 2004/753), art. 1, **Sch. para. 187EW**

**C85**  S. 67 applied (with modifications) (E.W.) (1.10.2004) by The ACAS (Flexible Working) Arbitration Scheme (Great Britain) Order 2004 (S.I. 2004/2333), art. 4, **Sch. para. 138EW (with art. 6)**

**C86**  S. 67 applied (with modifications) (N.I.) (21.5.2006) by The Labour Relations Agency (Flexible Working) Arbitration Scheme Order (Northern Ireland) 2006 (S.R. 2006/206), arts. 2, 3, **Sch. para. 113**

**C87**  S. 67 applied (with modifications) (N.I.) (27.9.2012) by The Labour Relations Agency Arbitration Scheme Order (Northern Ireland) 2012 (S.R. 2012/301), art. 1, **Sch. para. 110**

---

**68**    **Challenging the award: serious irregularity.**

(1) A party to arbitral proceedings may (upon notice to the other parties and to the tribunal) apply to the court challenging an award in the proceedings on the ground of serious irregularity affecting the tribunal, the proceedings or the award.

A party may lose the right to object (see section 73) and the right to apply is subject to the restrictions in section 70(2) and (3).

(2) Serious irregularity means an irregularity of one or more of the following kinds which the court considers has caused or will cause substantial injustice to the applicant—

    (a)   failure by the tribunal to comply with section 33 (general duty of tribunal);

    (b)   the tribunal exceeding its powers (otherwise than by exceeding its substantive jurisdiction: see section 67);

    (c)   failure by the tribunal to conduct the proceedings in accordance with the procedure agreed by the parties;

    (d)   failure by the tribunal to deal with all the issues that were put to it;

    (e)   any arbitral or other institution or person vested by the parties with powers in relation to the proceedings or the award exceeding its powers;

    (f)   uncertainty or ambiguity as to the effect of the award;

    (g)   the award being obtained by fraud or the award or the way in which it was procured being contrary to public policy;

    (h)   failure to comply with the requirements as to the form of the award; or

***Status:** This version of this Act contains provisions that are prospective.*
***Changes to legislation:** Arbitration Act 1996 is up to date with all changes known to be in force on or before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

(i) any irregularity in the conduct of the proceedings or in the award which is admitted by the tribunal or by any arbitral or other institution or person vested by the parties with powers in relation to the proceedings or the award.

(3) If there is shown to be serious irregularity affecting the tribunal, the proceedings or the award, the court may—

(a) remit the award to the tribunal, in whole or in part, for reconsideration,

(b) set the award aside in whole or in part, or

(c) declare the award to be of no effect, in whole or in part.

The court shall not exercise its power to set aside or to declare an award to be of no effect, in whole or in part, unless it is satisfied that it would be inappropriate to remit the matters in question to the tribunal for reconsideration.

(4) The leave of the court is required for any appeal from a decision of the court under this section.

---

**Annotations:**

**Modifications etc. (not altering text)**

C88   S. 68 applied (with modifications) (E.W.) (21.5.2001) by S.I. 2001/1185, arts. 2, 3, **Sch. para. 163(1)** (which amending S.I. was revoked (6.4.2004) by S.I. 2004/753, **art. 3** (subject to art. 8))

C89   S. 68 applied (with modifications) (E.W.) (6.4.2003) by The ACAS (Flexible Working) Arbitration Scheme (England and Wales) Order 2003 (S.I. 2003/694), art. 2, **Sch. para. 114** (which amending S.I. was revoked (1.10.2004) by S.I. 2004/2333, art. 3 (subject to art. 6))

C90   S. 68 applied (with modifictaions) (E.W.) (6.4.2004) by The ACAS Arbitration Scheme (Great Britain) Order 2004 (S.I. 2004/753), art. 1, **Sch. para. 194EW**

C91   S. 68 applied (with modifications) (E.W.) (1.10.2004) by The ACAS (Flexible Working) Arbitration Scheme (Great Britain) Order 2004 (S.I. 2004/2333), art. 4, **Sch. para. 145EW (with** art. 6)

C92   S. 68 applied (with modifications) (N.I.) (21.5.2006) by The Labour Relations Agency (Flexible Working) Arbitration Scheme Order (Northern Ireland) 2006 (S.R. 2006/206), arts. 2, 3, **Sch. para. 114**

C93   S. 68 applied (with modifications) (N.I.) (27.9.2012) by The Labour Relations Agency Arbitration Scheme Order (Northern Ireland) 2012 (S.R. 2012/301), art. 1, **Sch. para. 111**

---

**69      Appeal on point of law.**

(1) Unless otherwise agreed by the parties, a party to arbitral proceedings may (upon notice to the other parties and to the tribunal) appeal to the court on a question of law arising out of an award made in the proceedings.

An agreement to dispense with reasons for the tribunal's award shall be considered an agreement to exclude the court's jurisdiction under this section.

(2) An appeal shall not be brought under this section except—

(a) with the agreement of all the other parties to the proceedings, or

(b) with the leave of the court.

The right to appeal is also subject to the restrictions in section 70(2) and (3).

(3) Leave to appeal shall be given only if the court is satisfied—

(a) that the determination of the question will substantially affect the rights of one or more of the parties,

*Status: This version of this Act contains provisions that are prospective.*

*Changes to legislation: Arbitration Act 1996 is up to date with all changes known to be in force on or before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

**C99** S. 69 applied (with modifications) (N.I.) (27.9.2012) by The Labour Relations Agency Arbitration Scheme Order (Northern Ireland) 2012 (S.R. 2012/301), art. 1, **Sch. para. 112**

**70** **Challenge or appeal: supplementary provisions.**

(1) The following provisions apply to an application or appeal under section 67, 68 or 69.

(2) An application or appeal may not be brought if the applicant or appellant has not first exhausted—

    (a) any available arbitral process of appeal or review, and

    (b) any available recourse under section 57 (correction of award or additional award).

(3) Any application or appeal must be brought within 28 days of the date of the award or, if there has been any arbitral process of appeal or review, of the date when the applicant or appellant was notified of the result of that process.

(4) If on an application or appeal it appears to the court that the award—

    (a) does not contain the tribunal's reasons, or

    (b) does not set out the tribunal's reasons in sufficient detail to enable the court properly to consider the application or appeal,

the court may order the tribunal to state the reasons for its award in sufficient detail for that purpose.

(5) Where the court makes an order under subsection (4), it may make such further order as it thinks fit with respect to any additional costs of the arbitration resulting from its order.

(6) The court may order the applicant or appellant to provide security for the costs of the application or appeal, and may direct that the application or appeal be dismissed if the order is not complied with.

The power to order security for costs shall not be exercised on the ground that the applicant or appellant is—

    (a) an individual ordinarily resident outside the United Kingdom, or

    (b) a corporation or association incorporated or formed under the law of a country outside the United Kingdom, or whose central management and control is exercised outside the United Kingdom.

(7) The court may order that any money payable under the award shall be brought into court or otherwise secured pending the determination of the application or appeal, and may direct that the application or appeal be dismissed if the order is not complied with.

(8) The court may grant leave to appeal subject to conditions to the same or similar effect as an order under subsection (6) or (7).

This does not affect the general discretion of the court to grant leave subject to conditions.

**Annotations:**

**Modifications etc. (not altering text)**

**C100** S. 70 applied (with modifications) (E.W.) (21.5.2001) by S.I. 2001/1185, arts. 2, 3, **Sch. para. 165(1)** (which amending S.I. was revoked (6.4.2004) by S.I. 2004/753, **art. 3** (subject to art. 8))

***Status:*** *This version of this Act contains provisions that are prospective.*

***Changes to legislation:*** *Arbitration Act 1996 is up to date with all changes known to be in force on or*
*before 15 April 2019. There are changes that may be brought into force at a future date. Changes that have*
*been made appear in the content and are referenced with annotations. (See end of Document for details)*

> **C99** S. 69 applied (with modifications) (N.I.) (27.9.2012) by The Labour Relations Agency Arbitration
> Scheme Order (Northern Ireland) 2012 (S.R. 2012/301), art. 1, **Sch. para. 112**

**70** **Challenge or appeal: supplementary provisions.**

(1) The following provisions apply to an application or appeal under section 67, 68 or 69.

(2) An application or appeal may not be brought if the applicant or appellant has not first exhausted—

    (a) any available arbitral process of appeal or review, and

    (b) any available recourse under section 57 (correction of award or additional award).

(3) Any application or appeal must be brought within 28 days of the date of the award or, if there has been any arbitral process of appeal or review, of the date when the applicant or appellant was notified of the result of that process.

(4) If on an application or appeal it appears to the court that the award—

    (a) does not contain the tribunal's reasons, or

    (b) does not set out the tribunal's reasons in sufficient detail to enable the court properly to consider the application or appeal,

the court may order the tribunal to state the reasons for its award in sufficient detail for that purpose.

(5) Where the court makes an order under subsection (4), it may make such further order as it thinks fit with respect to any additional costs of the arbitration resulting from its order.

(6) The court may order the applicant or appellant to provide security for the costs of the application or appeal, and may direct that the application or appeal be dismissed if the order is not complied with.

The power to order security for costs shall not be exercised on the ground that the applicant or appellant is—

    (a) an individual ordinarily resident outside the United Kingdom, or

    (b) a corporation or association incorporated or formed under the law of a country outside the United Kingdom, or whose central management and control is exercised outside the United Kingdom.

(7) The court may order that any money payable under the award shall be brought into court or otherwise secured pending the determination of the application or appeal, and may direct that the application or appeal be dismissed if the order is not complied with.

(8) The court may grant leave to appeal subject to conditions to the same or similar effect as an order under subsection (6) or (7).

This does not affect the general discretion of the court to grant leave subject to conditions.

---

**Annotations:**

**Modifications etc. (not altering text)**
> **C100** S. 70 applied (with modifications) (E.W.) (21.5.2001) by S.I. 2001/1185, arts. 2, 3, **Sch. para. 165(1)**
> (which amending S.I. was revoked (6.4.2004) by S.I. 2004/753, **art. 3** (subject to art. 8))



EXHIBIT 6

# George A. Gaitas

| | |
|---|---|
| **From:** | George A. Gaitas |
| **Sent:** | Wednesday, October 09, 2019 10:53 AM |
| **To:** | Luke Parsons QC |
| **Cc:** | Mike Lax; Jonathan M. Chalos; Mark Hamsher; George Tsimis; Catriona Lewis |
| **Subject:** | RE: ADVANTAGE START / ADVANTAGE ARROW / CV STEALTH |

Dear Sirs,

Referring to the last paragraph of the Tribunal's October 5, 2019 e-mail I am providing below access in electronic online form to the documents requested together with a table of contents which I have prepared that sets out the page numbers of the production where the documents will be found; and my instructions on how to access them. Essentially the documents produced are the record on appeal, which includes all documents from the proceedings in the Eastern Districts of Texas and Louisiana:

Please note that by visiting the website below you will obtain the entire record of all proceeding, respectively, in the U.S. District Courts for the Eastern District of Texas (ADVANTAGE ARROW attachment) and Eastern District of Louisiana (ADVANTAGE START attachment).

1) To obtain the documents please use the following URL: https://gkclaw-my.sharepoint.com/:f:/p/justinian/EmBx6oaSL_5EqzRY4DBrEwgB0tkIZIX8B3DLfsA3EWqIoQ?e=SYPUnM

2) In your browser screen you will see the court records in the respective jurisdictions.

3) On the left hand side of the two records you will see a "radio button" that allows you to select which record you wish to download.

4) Once you have selected click on the "Download" arrow on the upper left hand side of the display.

5) In the selection window that pops up select the Open with Adobe Acrobat Reader and "OK"

6) In the screen that opens for the EDTX you will see six heading: Docket Sheet; Pleadings volume 1,2,3; and Motion hearings for 4/30/2019 and motion hearing 10/11.18.

7) Select the item you would like to see, and in the middle of the screen at approximately the top 1/3 use the mouse to move the top border of the page upward so that you have an expanded view of the page.

Please note that on the bottom right hand corner of each page there is a record on appeal page number in red. The number used in the following table of contents refers to this pagination.

## ADVANTAGE ARROW ATTACHMENT (Record on Appeal (Texas Proceedings).pdf)

Table of contents

Pleadings Volume 1

Verified Complaint and exhibits forming part of the Complaint: 9-159

Plaintiff's Motion for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment : 164-170

Proposed Order Authorizing Issuance of Process of Maritime Attachment and Garnishment: 171-173

Order Authorizing Issuance of Process of maritime Attachment and Garnishment: 177-179

Process of Maritime Attachment and Garnishment: 180-182

Advantage Motion to Vacate Attachment and Garnishment: 184-203

<u>Pleadings Volume 2</u>

Advantage Motion to Vacate Attachment and Garnishment (Continuing): 387-435

Order of reference to magistrate: 438

Plaintiff's opposition to Motion to Vacate Attachment: 439-629

Order for release against substitute security: 710-721

<u>Pleadings Volume 3</u>

Special release Bond:  797-800

Motion to refer case to arbitration: 808-828

Plaintiff's opposition to referral to arbitration: 829-853

Defendants' Reply: 855-860

Order Consolidating ADVANTAGE ARROW and ADVANTAGE START proceedings: 861

Magistrate Judge's Report and Recommendation: 867-883

Plaintiff's Objections to R&R: 884-891

Defendant's Response to Plaintiff's objections: 892-898

Order Overruling Objections and Adopting R&R: 928-930

**<u>ADVANTAGE START ATTACHMENT (Record on Appeal (Louisiana proceedings.pdf)</u>**

<u>Pleadings – 1:18-CV-364</u>

Verified Complaint and exhibits forming part of the Complaint:  1164-1314

Plaintiff's Motion for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment: 1321-1328

Advantage Motion to Vacate Attachment and Memorandum in Support: 1336-1345

Plaintiff's Response in Opposition to Motion to Vacate Attachment: 1414-1419

Advantage Reply to Plaintiff's Response in Opposition to Motion to Vacate Attachment: 1425-1430

Order for release against substitute security:  1478-1479

Special release Bond:   1474-1477

Trust the above will meet the Tribunal's requirements.

Respectfully



**1908 N. Memorial Way**
**Houston, Texas 77007**
**Tel: +1-281-501-1800**
**Mobile: +1-612-810-8675**
**GR: +30 694-612-1006**
**Fax: +1-832-962-8178**
**E-mail:** gaitas@gkclaw.com
**www.theshippinglawyers.com**

**From:** Luke Parsons QC <Luke.Parsons@quadrantchambers.com>
**Sent:** Saturday, October 05, 2019 8:46 PM
**To:** George A. Gaitas <gaitas@gkclaw.com>
**Cc:** Mike Lax <mike.lax@laxlaw.co.uk>; Jonathan M. Chalos <chalos@gkclaw.com>; Mark Hamsher <mark@markhamsher.com>; George Tsimis <gtsimis@gjtmarine.com>; Catriona Lewis <catriona.lewis@laxlaw.co.uk>
**Subject:** Re: ADVANTAGE START / ADVANTAGE ARROW / CV STEALTH

Dear all,

We refer to the two e mails below.

We would ask that Leading Counsel on both sides confer and seek to agree appropriate declarations as far as possible  based on their respective instructions.

If the parties cannot agree by the end of the week we will rule and issue such declarations as we consider appropriate.

Both parties have made their submissions orally, which closed on Friday afternoon with Mr Karia QC's reply.

We do not consider it sensible or helpful for there to be further debate between the parties in correspondence with the Tribunal at this stage.

If the Tribunal require further clarification or assistance we will ask for it.

 In that regard, we would ask that the remaining US documents referred to on Friday be provided to us by 5.00 pm London time on Wednesday if at all possible ( unless everything is agreed before hand) so that we can review and consider if we need to ask the parties any questions in the light of those documents.

Regards,

Luke Parsons QC

For the Tribunal.

On 5 Oct 2019, at 14:59, George A. Gaitas <gaitas@gkclaw.com> wrote:

External Email

Dear Sirs,

We refer to Lax & Co's email below.

The parties' counsel made extensive submissions yesterday regarding the Tribunal's jurisdiction and it was clearly agreed that the matter would be disposed of by the parties agreeing the wording of an order stating that the Tribunal has no jurisdiction to deal with matters of enforcement, which is what is before the Tribunal.

It is simply not open to Mr. Lax to put forward alternative submissions now which essentially row back on everything agreed yesterday and his message below should accordingly be disregarded by the Tribunal.

As a next step we will revert with a draft declaration as was agreed by both Counsel and the Tribunal at the hearing.

We look forward to hearing from the Tribunal.


Best Regards

**George A. Gaïtas**

<image001.png>

**1908 N. Memorial Way**
**Houston, Texas 77007**
**Tel: +1-281-501-1800**
**Mobile: +1-612-810-8675**
**GR: +30 694-612-1006**
**Fax: +1-832-962-8178**
**E-mail:** gaitas@gkclaw.com
**www.theshippinglawyers.com**

**From:** Mike Lax <mike.lax@laxlaw.co.uk>
**Sent:** Friday, October 04, 2019 9:39 PM
**To:** Jonathan M. Chalos <chalos@gkclaw.com>
**Cc:** Mark Hamsher <mark@markhamsher.com>; George Tsimis <gtsimis@gjtmarine.com>; Luke Parsons QC <Luke.Parsons@quadrantchambers.com>; Catriona Lewis <catriona.lewis@laxlaw.co.uk>; George A. Gaitas <gaitas@gkclaw.com>
**Subject:** RE: ADVANTAGE START / ADVANTAGE ARROW / CV STEALTH
**Importance:** High

Dear Sirs

With reference to this afternoon's hearing, it might be helpful if we were to explain our reluctance to attempt to formulate and agree the wording of any declaration this evening. We anticipate that some

guidance from the tribunal might be needed even before we engage in correspondence with the Claimants on this matter.

1. The preliminary issue that we understood the tribunal had ordered to be determined at today's hearing was that set out in paragraph 1 of our counsel's skeleton, which had its origins in our emails of 20 June and 28 June 2019, namely whether English Law or US law was the law that should be applied to determine whether the Advantage Respondents should be treated as Space Shipping for the purposes of the Charterparty.

2. The Claimant's formulation, introduced by way of a "speaking note" for the first time this afternoon, was different i.e. whether Owners were entitled *"to enforce their claims against Geden Holdings/Charterers under the Guarantee/ c/pp against the Rule B sums, nominally belonging to the Respondents, held in the US District Court for the Eastern District of Texas".*

3. During the course of the hearing, a debate arose as to what issues the US Courts had referred to London arbitration. This prompted the tribunal to request copies of the Claimants' Verified Complaint and other documents from the US proceedings. A copy of the Verified Complaint in respect of the START was provided (further copy attached) and we referred the tribunal specifically to Paragraph 79 which referred to maritime claims against the Defendants (which includes the Advantage Respondents) for beach of charter. The tribunal has requested other documents from the US proceedings in this respect and these will be provided.

4. However, during the hearing and particularly towards the end of the hearing the Claimant renounced any claim "under the charter". If that were the case, then we said, through counsel, that we wished the tribunal to reflect this in its award because if there are no longer any claims "under the charter", then our clients can apply to the US Courts for the security to be released, since that security was expressly provided by Advantage to cover the breaches of charter, in particular the large claim for redelivery of the vessel at the end of the charter in a poor condition. However, it then became clear at the end of the hearing that what Psara meant by having no claims "under the charter" was that it did not consider its claims against Advantage for alter ego liability/successor liability to be "claims under the charter" notwithstanding that they had been pleaded in its Points of Claim,. However, if that were the case, then those claims should never have been advanced in the points of claim in the first place; it was only claims "under the charter" that could have been- and were- referred to arbitration by the US Court. It is plain from the documents in the US proceedings to which the tribunal has been referred so far (other documents are to follow) that certainly the US Court understood Psara to be advancing claims against Advantage "under the charter", which included the alter ego/successor liability claims, and it is equally clear that it was those claims which the US Court decided should be referred to London arbitration and that Psara has therefore advanced those claims in the London arbitration on that basis.

5. This all gave rise to a discussion about the tribunal's jurisdiction. It was common ground (we believe) that the tribunal only had jurisdiction over "claims under the Charter" and there was discussion about the tribunal making a declaration to that effect. But this in turn raises the question as to what constitutes claims "under the Charter". In this connection, we would not wish to agree to the wording of any declaration that might cut across or conflict with what the US Court has already decided. And we imagine that the tribunal would equally loathe to do so and which would lend support to the Claimant's repeated submission that the US decision was "erroneous". Both because of the way the claims were advanced in the Rule B action by the Claimant and, just as importantly or even more importantly, because of the Court's ruling as to what it considered were the claims in the Rule B application that Psara was advancing against Advantage and which the Court ruled should be referred to arbitration in London i.e. in effect all

of Psara's claim against Advantage, if Psara are now renouncing its "claims under the Charter" that must include those claims that appeared in its points of claim.

6. Yet, at the end of the hearing, it seemed to us that that was NOT what Psara was saying. It was contending that not only was the US Court wrong to refer Psara's claims to arbitration but that the tribunal should make a declaration that, irrespective of what the US Court decided, its alter ego claims and successor liability claims were NOT claims under the Charter and that therefore the tribunal had no jurisdiction over those claims in spite of the fact that the US Court had expressly referred those claims to London arbitration. This goes way beyond what the preliminary issue was supposed to be about and in any case is wrong.

7. We would not be prepared to agree to any wording which would invite the tribunal to make any such declaration. On the contrary, our position is that it would be wrong for the tribunal to do so. The tribunal's declaration should either be a) limited to a declaration of applicable law- which was plainly the issue that had been set aside for determination today as the preliminary issue or b), if the tribunal is to go further than that, it can declare that it has no jurisdiction over claims which are not claims "under the charter". But that leaves open what is meant by "claims under the charter". In this connection, we submit that what the tribunal cannot legitimately do is to rule that the claims advanced by the Claimants in their points of claim are not "claims under the charter" because, as we say, that would cut across what the US Court has already decided.

8. This email has been drafted by us without reference to counsel because we did not wish for there to be any delay in setting out our position. We will revert if counsel has any different or additional comments.

Regards
Mike Lax
Lax & Co
78 Cornhill
London EC3V 3QQ
Cell:     +44 7802 627087
Office: +44 207 623 9434

**From:** Mike Lax
**Sent:** 30 September 2019 19:43
**To:** 'Jonathan M. Chalos' <chalos@gkclaw.com>
**Cc:** Mark Hamsher <mark@markhamsher.com>; George Tsimis <gtsimis@gjtmarine.com>; Luke Parsons QC <Luke.Parsons@quadrantchambers.com>; Catriona Lewis <catriona.lewis@laxlaw.co.uk>; George A. Gaitas <gaitas@gkclaw.com>
**Subject:** RE: ADVANTAGE START / ADVANTAGE ARROW / CV STEALTH

Dear Sirs

The Advantage skeleton is attached.

Regards



EXHIBIT 7

**From:** Luke Parsons QC <Luke.Parsons@quadrantchambers.com>
**Sent:** Thursday, October 10, 2019 11:10 AM
**To:** Chirag Karia QC; 'mark@markhamsher.com'; 'gtsimis@gjtmarine.com'
**Cc:** Jonathan M. Chalos; George A. Gaitas; catriona.lewis@laxlaw.co.uk; 'mike.lax@laxlaw.co.uk'; Yash Kulkarni QC
**Subject:** Re: ADVANTAGE START / ADVANTAGE ARROW / CV STEALTH - Application re Lax & Co's Letter & email of 9 Oct 19

**Importance:** High

Dear all,

The Tribunal made clear the position on Sunday:

"Both parties have made their submissions orally, which closed on Friday afternoon with Mr Karia QC's reply.

We do not consider it sensible or helpful for there to be further debate between the parties in correspondence with the Tribunal at this stage.

If the Tribunal require further clarification or assistance we will ask for it."

Therefore apart from (1) the two proposed declarations (which we have received) ; and (2) the specific documents we requested at the end of Friday (which we have not yet had an opportunity to consider), the parties should proceed on the basis that we closed the submissions with the oral reply on Friday and that we do not permit ( and will not consider) any other submissions, unless and until the Tribunal request further assistance from the parties.

We would therefore be grateful if both parties would refrain from making any further submissions, unless requested to do so.

Regards,

Luke Parsons QC



General: +44 (0)20 7583 4444
Fax: +44 (0)20 7583 4455

This email and the information it contains are intended for the addressee only. It may be confidential, privileged and protected by law. If you are not the intended recipient, please delete it and inform me immediately.--



EXHIBIT 8

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

January 09, 2020

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

      No. 19-40071    Psara Energy, Limited v. Space Shipping,
                       Limited, et al
                       USDC No. 1:18-CV-178
                       USDC No. 1:18-CV-364

The court has taken the following action in this case: Motion for
Rule 38 damages is denied and motion for attorney fees is denied.

               Sincerely,

               LYLE W. CAYCE, Clerk

               By: _____
               Laney L. Lampard, Deputy Clerk

Mr. Jonathan Michael Chalos
Mr. George A. Gaitas
Mr. Marcus Grant Matthews
Mr. David O'Toole