IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| PSARA ENERGY, LTD.,<br><br>    Plaintiff,<br>vs.<br><br>SPACE SHIPPING, LTD., GEDEN HOLDINGS, LTD., ADVANTAGE ARROW SHIPPING, LLC, GENEL DENIZCILIK NAKLIYATI A.S., ADVANTAGE TANKERS, LLC, ADVANTAGE HOLDINGS, LLC, FORWARD HOLDINGS, LLC, MEHMET EMIN KARAMEHMET, GULSUN NAZLI KARAMEHMET-WILLIAMS, TUGRUL TOKGOZ,<br><br>    Defendants. | NO.1:18-CV-00178-MAC |

**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD, DENYING DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION TO HOLD PLAINTIFF IN CONTEMPT, DENYING PLAINTIFF'S MOTION TO STRIKE, AND GRANTING DEFENDANTS' MOTION TO DEEM NOTICE TIMELY**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and has been referred to the undersigned for pre-trial management. Pending before the court is Defendants Advantage Arrow Shipping, LLC, Advantage Start Shipping, LLC, Advantage Tankers, LLC, Advantage Holdings, LLC, and Forward Holdings, LLC's (collectively the "Advantage Defendants") "Motion to Dismiss and Alternate Motion to Hold Plaintiff in Contempt" (Doc. No. 53) and "Opposed Motion to Deem Their Notice Regarding Arbitral Award as Timely" (Doc. No. 68). Also pending before the court is Plaintiff Psara Energy, Ltd.'s ("Psara") "Opposed Motion to Confirm Arbitration Award" (Doc. No. 57) and "Opposed Motion to Strike" (Doc. No. 63). The undersigned recommends granting Psara's motion to confirm arbitration award

(Doc. No. 57) and denying Advantage Defendants' motion to dismiss and alternate motion to hold plaintiff in contempt (Doc. No. 53). The undersigned also recommends denying Psara's motion to strike (Doc. No. 63) and granting Advantage Defendants' "Opposed Motion to Deem Their Notice Regarding Arbitral Award as Timely" (Doc. No. 68). Finally, the undersigned recommends that this case be stayed pending an award in the parallel arbitration between Psara and Geden and/or Space Shipping.

## I. Background

On April 20, 2018, Psara filed suit for breach of contract against the Advantage Defendants pursuant to Fed. E.D. R. Civ. P. 9(h), Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims (Rule B), and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration. Doc. No. 1 at 1-2. In their complaint, Psara alleges that they entered into a bareboat charter party agreement with Defendant Space Shipping, Ltd. ("Space Shipping") on February 23, 2010 to charter the CV STEALTH vessel ("STEALTH"). *Id.* at 5. Through a subsequent amendment to the bareboat charter party on June 2, 2010, Geden Holdings, Ltd. became the performance guarantor of Space Shipping. *Id.* Psara alleges that Space Shipping failed to maintain and keep up-to-date classifications on the vessel, despite their obligation to do so. *Id.*

In 2014, the STEALTH was detained in Venezuela for more than three years by prosecutorial authorities, and Space Shipping failed to return the ship by the latest contractual redelivery date of June 22, 2015. *Id.* at 7. When the STEALTH was finally released from Venezuela, it was out-of-class and so extensively damaged due to neglect that it was incapable of sailing and in need of extensive repairs. Doc. No. 1 at 8. Space Shipping towed the STEALTH to Trinidad where Psara took possession on March 24, 2018. *Id.* Due to extensive damage to the STEALTH, Psara initiated a London maritime arbitration claim for damages equivalent to the

repaired market value of the ship ($18,000,000.00) and amounts for unpaid charter hire, legal costs, interest, and other costs (an additional $1,860,063.80). *Id.* at 10, 25. Due to the transfer of a vessel fleet from Geden Holdings, Ltd. to other corporate entities (including the Advantage Defendants), Psara brought suit against the current slate of Defendants under fraudulent transfer and corporate succession theories.

Accordingly, on April 20, 2018, Psara filed a "Motion for Writ of Maritime Attachment and Garnishment" of the Advantage Defendants' vessel, the ADVANTAGE ARROW ("ARROW"). Doc. No. 3 at 2. In their motion, Psara showed a valid admiralty claim existed against the Advantage Defendants, who could not be found within the district but that their property (the ARROW) could be, and that there was no statutory or maritime bar to the attachment. *Id.* As a result, this court issued an order of maritime attachment due to Psara satisfying the filing and service requirements of Rules B and E to initiate a Rule B attachment proceeding. Doc. No. 4. Concurrent with this court's Rule B attachment proceeding, on April 20, 2018, Psara also filed a motion in the Eastern District of Louisiana for the issuance of process of maritime attachment and garnishment of another one of the Advantage Defendants' vessels, the MT ADVANTAGE START ("START"). *See Psara Energy, Ltd. v. Space Shipping, Ltd. et al.,* C.A. No. 2:18-cv-04111-ILRL-JCW, Doc. No. 28. Following the seizure of the START, Psara filed a motion to transfer venue of the Rule B attachment proceeding for the START from the Eastern District of Louisiana to this court. *Id.* The Eastern District of Louisiana granted the motion to transfer under 28 U.S.C. § 1404(a) and the action consolidated into a single proceeding before this court.

On June 15, 2018, the Advantage Defendants filed a "Motion for Referral to Arbitration" arguing that Psara's claims allegedly arise from the charter party between Psara and Space Shipping, which contains a valid and enforceable arbitration clause. Doc. No. 29. The Advantage

3

Defendants claimed that Psara's current arbitration proceedings against Space Shipping should include the Advantage Defendants, particularly because Psara claims that the Advantage Defendants are a successor to Space Shipping and therefore liable for losses incurred by Psara under the charter party. *Id.* However, Psara contended that the Advantage Defendants cannot compel this matter to the London arbitration because the Advantage Defendants are not signatories to the charter party that contains the arbitration agreement. Doc. No. 30 at 5. The relevant provision in the charter party states that:

> This Contract shall be governed by and construed in accordance with English law and *any dispute arising out of or in connection with this Contract* shall be referred to arbitration London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

Doc. No. 1-1 at 11 (emphasis added) (the "arbitration clause").

On November 20, 2018, the undersigned entered a report and recommendation granting Advantage Defendants' motion for referral to arbitration (Doc. No. 37), which the presiding district judge subsequently adopted (Doc. No. 40). This court wrote extensively on the enforceability of the relevant arbitration agreement in finding that Advantage Defendants can compel arbitration as non-signatories. *See* Doc. No. 37. The district court ordered the parties to arbitrate the dispute in London pursuant to the charter party and Section 206 of the Federal Arbitration Act ("FAA"). Doc. No. 40. The district court further held that while the dispute is being arbitrated, the Rule B attachments for the vessels ARROW and START remain in effect pending a potential arbitral award pursuant to the district court's jurisdiction under Section 8 and 207 of the FAA. The district court then "administratively closed" the case and retained jurisdiction to enforce any arbitral award. Doc. No. 37, 40.

Psara appealed the district court's order referring the parties to arbitration (Doc. No. 41) and the district court denied Psara's motion to stay the case pending the appeal. Doc. No. 50, 52.

*See also* Doc. No. 42. On January 9, 2020, the Fifth Circuit ruled that the district court's order directing the parties to arbitrate and administratively closing the case (Doc. No. 40) is not a final and appealable order, and consequently, the Fifth Circuit lacked jurisdiction to review the appeal. *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C. et al.,* 946 F.3d 803, 809 (5th Cir. 2020).

The parties eventually submitted their claim submissions to the arbitral panel in London. Doc. No. 53-3. In their initial claim submissions, Psara alleged successor liability and/or fraudulent transferee claims under U.S. law and, in the alternative, their entitlement to pierce the corporate as a matter of English law. Doc. No. 53-3 at 3; Doc. No. 55 at 7. The arbiters noted that the underlying charter party agreement requires that all disputes arising "out of the contract" be arbitrated and resolved by English law. Doc. No. 53-4 at 11. At an oral hearing, Advantage Defendants argued that the substantive claims raised by Psara are subject to arbitration under English law, whereas, the tribunal lacks jurisdiction over any enforcement claims. Doc. No. 62-1 at 8. At this oral hearing, Psara either changed course or clarified, according to Advantage Defendants and Psara, respectively, that their sole claim against Advantage Defendants is to "enforce any sums that may be awarded against Geden Holdings under the Guarantee or against the Charterers under the Charterparty." Doc. No. 62-1 at ¶ 21(b). Both parties—Psara and Advantage Defendants—agreed that the panel should issue a declaration that it lacks jurisdiction over claims made by Advantage Defendants. Doc. No. 53-4 at 15.

In their reasoning for the final award, the panel disentangles Psara and Advantage's alleged enforcement and substantive claims, respectively. Doc. No. 53-4 at 15.

> They [Psara] are not advancing a claim that the Advantage Respondents are parties to the Charterparty. They [Advantage Respondents] were incorporated after the Charterparty was concluded. Rather, the assertion is that the Owners [Psara] are entitled to enforce their claims against Charterers under the Charterparty or Geden Holdings under the Guarantee against assets nominally belonging to the Advantage Respondents. The merits of those underlying claims against Charterers and Geden

5

> Holdings are not before us. Since it is common ground that claims of enforcement are outside our Jurisdiction and since the Owners had made clear that the only claims being advanced against the Advantage Respondents are for enforcement, the parties agreed at the end of the oral hearing that we should issue a declaration that we had no jurisdiction over the claims made by the Owners against the Advantage Respondents in this reference.

Doc. No. 53-4 at 15. Because Psara's claims against Advantage Defendants boil down to an enforcement claim based on Space Shipping and/or Geden's liability, the arbitral panel found that Psara's claims are ultimately enforcement claims. Doc. No. 53-4 at 13-15. And because the tribunal lacks jurisdiction over enforcement claims under English law, the tribunal dismissed Psara's claims for lack of jurisdiction. *Id.*

In the majority award and reasoning, the panel found that Psara was the unsuccessful party because Psara failed in their initial, substantive claims. Doc. No. 62-1 at 9. Accordingly, the panel ordered Psara to pay the tribunal's fees—£6,177.00. Doc. No. 62-1 at ¶ 30; 62-3 at 7-9. One arbiter issued a dissenting opinion largely excusing Psara from altering their claims after Advantage Defendants compelled the claims to arbitration. The dissenting arbiter opined that each party should bear their own costs given the protracted litigation. Doc. No. 62-2 at 11-12.

On January 3, 2020, Advantage Defendants filed a "Motion to Dismiss and Alternate Motion to Hold Plaintiff in Contempt" arguing that successfully claiming a lack of arbitral jurisdiction renders a final arbitral award that allows Psara no recovery. Doc. No. 53 at 8-9. Advantage Defendants argue that with no award to execute, the bonds held by this court should be released back to Advantage Defendants. *Id.* Following release of these bonds, Advantage Defendants claim that "the res conferring this Court with subject matter jurisdiction will have been extinguished, and Psara's claims should be dismissed with prejudice." Doc. No. 53 at 9. In the alternative, Advantage Defendants ask this court to hold Psara in contempt because Psara delayed

arbitration and because Psara argued a lack of jurisdiction before the arbitral panel in contravention of this court's order. *Id.* at 10-11.

In their response, Psara maintains that their claims are based on Advantage's "liability of their respective owners and holding companies as successor corporations and fraudulent transferees" and that this issue "may not and cannot be decided by maritime arbitration in London under English law." Doc. No. 54 at 1. Psara alleges that their actions at arbitration were consistent with this court's directive to arbitrate the "arbitrable issues" and that Advantage Defendants are attempting to re-argue issues which have already been arbitrated. *Id*. at 5-6, 8-9. Psara states that this court continues to be vested with the authority to adjudicate the issues of successor liability and fraudulent transfer. *Id.* at 11-15.

On March 6, 2020, Psara filed an "Opposed Motion to Confirm Arbitration Award" (Doc. No. 57). In their response, Advantage Defendants also agreed that the arbitration award should be confirmed. Doc. No. 59 at 2 ("there is no reason to refuse the recognition and confirmation of the Award."). The disagreement, it appears, is the impact of the arbitration award on Psara's claims.

On April 30, 2020, Advantage Defendants filed a "Notice" regarding the tribunal's majority award on costs. Doc. No. 62. Psara subsequently filed an "Opposed Motion to Strike" (Doc. No. 63) alleging that the notice (Doc. No. 62) was improper for failure to comply with Local Rule CV-7 to "meet and confer." Doc. No. 63 at 2. Psara also alleges that the notice is misleading, both in wording and in the exclusion the panel's clarification in response to Psara's objection. Doc. No. 63 at 3-5. Advantage Defendants filed an "Opposed Motion to Deem Their Notice Regarding Arbitral Award as Timely" (Doc. No. 68). Psara filed a response opposing Advantage Defendants' motion to deem their notice timely. Doc. No. 69.

On May 1, 2020, the undersigned set an in-person hearing for June 24, 2020 to consider the pending motions. Doc. No. 64. Due to the ongoing COVID-19 situation and following requests from both parties, the undersigned permitted both parties to appear at the hearing by video. *See* Doc. No. 70. On June 24, 2020, the undersigned conducted a video hearing with both parties.

## II.     Legal Analysis

### A.  Arbitral Panel's Award

Psara's "*Opposed* Motion to Confirm Arbitration Award" (Doc. No. 57) (emphasis added) is not actually opposed as Advantage Defendants agree that the arbitral award should be confirmed (Doc. No. 59 at 2 ("there is no reason to refuse the recognition and confirmation of the Award.")). The disagreement, it appears, is the impact of the award on Psara's claims, and this issue is taken up later when determining Advantage Defendants' motion to dismiss (Doc. No. 53). *Supra* at 9-11.

To confirm a foreign arbitration award in a United States' court, the parties must follow the proper procedure pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "New York Convention"). 21 U.S.T. 2517 (1970). The New York Convention was adopted by the United States in 1970, and the Federal Arbitration Act provides this court with jurisdiction to implement the New York Convention. 21 U.S.T. 2517 (1970); 9 U.S.C. §§ 1, 202-208. Countries that are parties to the New York Convention, including the United States and the United Kingdom, agree to recognize each other's arbitral awards and to enforce them in accordance with the rules of procedure where the award is relied upon. *See Geotech Lizenz AG v. Evergreen Sys., Inc.*, 697 F.Supp. 1248, 1252 (E.D.N.Y. 1988).

Because a foreign arbitration award is not self-executing, the award must be converted to a court judgment in order to be enforceable. *Schlumberger Tech. Corp. v. United States*, 195 F.3d

8

216, 220 (5th Cir. 1999). Confirmation of a foreign arbitral award is characterized as a "summary proceeding," which converts a final arbitral decision into a judgment of a court. *Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Medical & Scientific Corp*., 399 F.Supp.2d 165, 168 (E.D.N.Y. 2005).

The procedure for enforcing a foreign award is fairly straightforward: the party seeking enforcement must submit an authentic copy of the award, the original agreement to arbitrate, and, if the award is in a language other than English, a certified translation. 21 U.S.T. 2517 Art. IV (1970). Upon submission of these materials, the party resisting confirmation bears the burden of demonstrating one of the circumstances warranting denial of enforcement, as detailed in the New York Convention. *Jiangsu Changlong Chems., Co*., 399 F.Supp.2d at 168. Article V of the New York Convention lists the exclusive grounds for courts to refuse recognition and enforcement of arbitral awards. *Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp*., 512 F.3d 742, 747 (5th Cir. 2008). The grounds are strictly limited and, because of the strong public policy favoring arbitration, are to be narrowly construed. *Jiangsu Changlong Chems., Co*., 399 F.Supp.2d at 168.

Psara has submitted the requisite materials to confirm the award: an authentic copy of the award in English and the charter party arbitration clause. The parties do not allege any of the narrow exceptions permitting the court to reject recognition and enforcement of the award. Furthermore, the parties agree that the arbitration award should be confirmed. Doc. No. 57, 59 at 2. Because Psara has submitted the requisite materials to confirm the award and absent an enumerated ground to refuse recognition and enforcement, the arbitral award should be confirmed. *See* 21 U.S.T. 2517 Art. IV (1970). Therefore, I recommend that Psara's motion to confirm the arbitration award (Doc. No. 57) be granted.

## B. Motion to Dismiss

Now that the arbitration award should be confirmed, the central question is the award's impact on Psara's claims. *See* Doc. No. 59 at 2. Advantage Defendants argue that following confirmation of the arbitral award and their requested bond release, this court lacks subject matter jurisdiction and should dismiss the case. Doc. No. 53 at 8-9. Advantage Defendants argue that because the arbitral panel concluded that the claims presented are not arbitrable, the final arbitral award allows Psara no recovery. *Id*. at 8-9. In the absence of a monetary or declaratory award in favor of Psara, Advantage Defendants ask that the bonds be returned to them. *Id*. Following the release of these bonds, Advantage Defendants alleges that "the *res* conferring this Court with subject matter jurisdiction will have been extinguished, and Psara's claims should be dismissed with prejudice." *Id*. at 9.

In its response to Advantage Defendants' motion to dismiss, Psara argues that their claims regarding the attached vessels are based on Advantage Defendants' liability to Geden and/or Space Shipping and that this enforcement issue cannot be decided by arbitration in London under English law. Doc. No. 54 at 1. Psara alleges that their actions at arbitration were consistent with this court's directive to arbitrate the "arbitrable issues" and that this court continues to be vested with the authority to adjudicate the issues of successor liability and fraudulent transfer. *Id.* at 5-6, 11-15.

### 1. Psara's Enforcement Claims

This case turns on the parties' actions during an arbitration hearing on October 4, 2019. During this hearing, Advantage Defendants argued that while the panel has jurisdiction over Psara's substantive claims, the panel lacks jurisdiction over any enforcement claims. Doc. No. 62-1 at 8. This opened the door for Psara to reframe its claims as enforcement actions against

Advantage Defendants based on Geden and/or Space Shipping's liability. The arbitral panel agreed. Doc. No. 53-4 at 15. The panel explains that under English law, Psara's claims against Advantage Defendants are not based on the charter party but are instead based on enforcement of Geden and/or Space Shipping's liability against Advantage Defendants. *Id.* The parties agreed that under English law, the arbitration tribunal does not have jurisdiction over matters of enforcement. Doc. No. 53-4 at 13. Because Psara's claims against Advantage Defendants boil down to enforcement actions based on successor liability, the panel agreed with the parties that it lacks jurisdiction over Psara's enforcement claims. Doc. No. 53-4 at 13-15. The undersigned likewise interprets Psara's successor liability/fraudulent transfer claims as enforcement actions.

   2. **Arbitration of Arbitrability**

Having determined that Psara's claims are ultimately enforcement actions, the issue is whether the parties agreed to arbitrate arbitrability. Unlike the strong public policy favoring arbitration, "[i]n determining whether a party has agreed that arbitrators should decide arbitrability, . . . the presumption in favor of arbitrability is reversed." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–945 (1995). *See also Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Medical & Scientific Corp*., 399 F.Supp.2d 165, 168 (E.D.N.Y. 2005). The question of "who has the primary power to decide arbitrability turns upon whether the parties agreed to submit that question to arbitration. If so, then the court should defer to the arbitrator's arbitrability decision. If not, then the court should decide the question independently." *First Options of Chicago, Inc.,* 514 U.S at 938 (internal quotations omitted). Courts must determine whether there exists "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *First Options of Chicago, Inc.,*514 U.S at 944.

Although "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue," the parties in this case did not merely argue the arbitrability issue. *Cf. First Options of Chicago, Inc,* 514 U.S. at 944. Here, the parties *agreed* that the panel lacks jurisdiction over Psara's enforcement claim, indicating their "clear and unmistakable" agreement to be bound by the panel's arbitrability ruling. Doc. No. 53-4 at 15. Advantage Defendants fail to address the fact that they agreed that the panel lacks enforcement jurisdiction at the oral hearing. Furthermore, Advantage Defendants failed to appeal the panel's decision. Because Psara and Advantage clearly and unmistakably intended to agree to arbitrate arbitrability, as demonstrated by their agreement regarding the panel's lack of enforcement jurisdiction, it was within the arbitral panel's power to decide that Psara's enforcement claims were not proper under English law and could not be arbitrated.

### 3. Jurisdiction in the Eastern District of Texas, Beaumont Division

Both parties misconstrue the arbitral panel's determination of non-jurisdiction as a victory. *See* Doc. No. 53 at 8-9; Doc. No. 54 at 4. In their "Reasons for and Forming Part of the Final Award," the arbitral panel thoroughly explains that it considered only the arbitrability of Psara's enforcement claim, and upon finding that it lacks jurisdiction, did not provide an award on the substantive claims. Doc. No. 53-4 at 13-15. Because of the panel's lack of jurisdiction, it did not determine the parties' underlying disputes. *Id.* It is well established that claims not covered by an arbitration clause remain within the jurisdiction of the court. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614 n. 7 (1985). Furthermore, the Fifth Circuit predicted the possibility of remaining issues following arbitration, writing that "[i]t is not inconceivable in such a situation that, although the defendants prevailed on a claim seeking arbitration, some aspects of the case might not be resolved in the arbitral forum, and the district court would have to reopen

the case for purposes other than to enforce the arbitral award." *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C. et al.,* 946 F.3d 803, 808 (5th Cir. 2020). Because this court retains jurisdiction over all claims not resolved in arbitration, Advantage Defendants' motion to dismiss for lack of jurisdiction should be denied.

**C. Contempt**

Advantage Defendants allege that Psara deliberately contravened this court's order by arguing that "that the arbitral panel had no jurisdiction to award any sums from the Advantage Defendants to Psara" despite this court's order "that all its claims against the Advantage Defendants were to be arbitrated." Doc. No. 53 at 8. Advantage Defendants ask this court to hold Psara in contempt because Psara first delayed arbitration and then contravened this court's order by alleging that the arbitral panel lacks jurisdiction over Psara's claims. *Id.* at 10-11. Psara disagrees and claims that their actions at arbitration were consistent with this court's directive to arbitrate the "arbitrable issues" and that they did not contravene this court's orders. Doc. No. 54 at 5-6.

In their motion to dismiss, Advantage Defendants claim this court's order to arbitrate the "arbitrable issues" as an order to arbitrate "*all* [Psara's] claims," presumably including any successor liability claims Psara may have against Advantage Defendants. *Compare* Doc. No. 37 at 1 *with* Doc. No. 53 at 8. As support, Advantage Defendants largely point to statements made by the undersigned at hearings, rather than the official report and recommendation (Doc. No. 37) and subsequent order adopting (Doc. No. 40). *See* Doc. No. 53, 55. In reality, the undersigned's report and recommendation did not limit the issues submitted to arbitration, including arbitrability. *See* Doc. No. 37 at 1 ("The undersigned recommends granting the motion, directing the parties to arbitration, and staying the case pending resolution of the arbitrable issues."). This report and

13

recommendation (Doc. No. 37) was adopted by the District Court and the parties were ordered to arbitrate the dispute in London pursuant to the charter party and Section 206 of the FAA. Doc. No. 40.

As discussed, it was permissible for the panel to arbitrate arbitrability because of "clear and unmistakable" evidence that the parties intended to—and indeed, agreed—to the arbitrability issue. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Nissho Iwai Corp. v. M/V JOY SEA*, No. CIV.A. 98-1655, at *5 (E.D. La. Jan. 8, 2002). Because Psara complied with this court's order to submit their claims to arbitration (which the panel declined to consider after finding no jurisdiction), the undersigned finds that Psara should not be held in contempt and, therefore, Advantage Defendants' alternative motion to hold plaintiff in contempt should be denied. Doc. No. 53.

### D. Remaining Claims

All claims not covered by an arbitration clause remain within the jurisdiction of the court. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614 n. 7 (1985). As discussed, the arbitral panel declined to consider Psara's substantive claims after finding no jurisdiction and did not proffer an award on the Psara's substantive claims. Because no substantive claims were resolved at arbitration, all claims originally raised by Psara remain before this court. Although both parties attempt to frame the arbitral award as a victory for themselves, the reality is that the substantive claims remain undecided and neither party has yet to prevail. *See* Doc. No. 53 at 8-9; Doc. No. 54 at 4.

On June 24, 2020, the undersigned conducted a video hearing to consider the pending motions. At this hearing, Psara updated the court on their ongoing arbitration with Geden and/or Space Shipping. Psara states that the parallel arbitration is progressing and expects a final award

to be issued in a matter of months. As discussed, Psara's claims and ability to collect through Advantage Defendants hinge on the contractual liability of Geden and/or Space Shipping. Because litigation against Advantage Defendants is fruitless until an arbitral panel determines liability of Geden and/or Space Shipping, the undersigned recommends that this case be stayed pending an award in the parallel arbitration. Psara shall inform this court when an arbitral award is issued.

### III. Recommendation

Because Psara has submitted the requisite materials to confirm the award and absent an enumerated ground to refuse recognition and enforcement, it is recommended that Psara's "Opposed Motion to Confirm Arbitration Award" (Doc. No. 57) be **GRANTED.** Because the undersigned retains jurisdiction over Psara's substantive claims and because Psara complied with this court's order referring the claims to arbitration, it is recommended that Advantage Defendants' "Motion to Dismiss and Alternate Motion to Hold Plaintiff in Contempt" (Doc. No. 53) be **DENIED**. It is further recommended that Psara's "Opposed Motion to Strike" (Doc. No. 63) be **DENIED** and that Advantage Defendants' "Opposed Motion to Deem Their Notice Regarding Arbitral Award as Timely" (Doc. No. 68) be **GRANTED**. It is recommended that this case be **STAYED** pending parallel arbitration between Psara and Geden and/or Space Shipping and that Psara inform this court when an arbitral award is issued.

### IV. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report; and

(4) be no more than eight pages in length. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c). A party who objects to this Report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 17th day of July, 2020.

_____
Zack Hawthorn
United States Magistrate Judge